# Exhibit 5

# Registrar Accreditation Agreement

This page is available in:

English  |
العربية (https://www.icann.org/resources/pages/ra-agreement-2009-05-21-ar)  |
Español (https://www.icann.org/resources/pages/ra-agreement-2009-05-21-es)  |
Français (https://www.icann.org/resources/pages/ra-agreement-2009-05-21-fr)  |
日本語 (https://www.icann.org/resources/pages/ra-agreement-2009-05-21-ja)  |
한국어 (https://www.icann.org/resources/pages/ra-agreement-2009-05-21-ko)  |
Русский (https://www.icann.org/resources/pages/ra-agreement-2009-05-21-ru)  |
中文 (https://www.icann.org/resources/pages/ra-agreement-2009-05-21-zh)

(21 May 2009)
(Updated 2 August 2012 to reflect ICANN (Internet Corporation for Assigned Names and Numbers)'s new mailing address)

## Index

1. DEFINITIONS

2. ICANN (Internet Corporation for Assigned Names and Numbers) OBLIGATIONS

3. REGISTRAR OBLIGATIONS

4. PROCEDURES FOR ESTABLISHMENT OR REVISION OF SPECIFICATIONS AND POLICIES

5. MISCELLANEOUS PROVISIONS

**NOTE: Section 3.10 of this agreement, regarding registrar insurance was waived by the ICANN (Internet Corporation for Assigned Names and Numbers) Board of Directors, effective 28 September 2015. For additional information about this waiver, see the ICANN (Internet Corporation for Assigned Names and Numbers) blog (https://www.icann.org/news/blog/icann-waives-registrar-insurance-requirement-levels-playing-field-for-registrars-globally**

**(/news/blog/icann-waives-registrar-insurance-requirement-levels-
playing-field-for-registrars-globally))** and the RAA (Registrar
Accreditation Agreement) Insurance Waiver FAQs
**[https://www.icann.org/resources/pages/raa-insurance-faqs-2015-09-30-
en (/resources/pages/raa-insurance-faqs-2015-09-30-en)].**

## Appendices

.aero Appendix (/en/registrars/aero-appendix-21may09.htm)
.asia Appendix (/en/registrars/asia-appendix-21may09.htm)
.biz Appendix (/en/registrars/biz-appendix-21may09.htm)
.cat Appendix (/en/registrars/cat-appendix-21may09.htm)
.com Appendix (/en/registrars/com-appendix-21may09.htm)
.coop Appendix (/en/registrars/coop-appendix-21may09.htm)
.info Appendix (/en/registrars/info-appendix-21may09.htm)
.jobs Appendix (/en/registrars/jobs-appendix-21may09.htm)
.mobi Appendix (/en/registrars/mobi-appendix-21may09.htm)
.museum Appendix (/en/registrars/museum-appendix-21may09.htm)
.name Appendix (/en/registrars/name-appendix-21may09.htm)
.net Appendix (/en/registrars/net-appendix-21may09.htm)
.org Appendix (/en/registrars/org-appendix-21may09.htm)
.pro Appendix (/en/registrars/pro-appendix-21may09.htm)
.tel appendix (/en/registrars/tel-appendix-21may09.htm)
.travel appendix (/en/registrars/travel-appendix-21may09.htm)
Logo License Appendix (/en/registrars/logo-license-appendix-
21may09.htm)

This REGISTRAR ACCREDITATION AGREEMENT ("Agreement") is by and
between the Internet Corporation for Assigned Names and Numbers, a
California non-profit, public benefit corporation, and [Registrar Name], a
[Organization type and jurisdiction] ("Registrar"), and shall be deemed made
on _____, at Los Angeles, California, USA.

**1. DEFINITIONS.** For purposes of this Agreement, the following definitions
shall apply:

1.1 "Accredit" means to identify and set minimum standards for the
performance of registration functions, to recognize persons or entities
meeting those standards, and to enter into an accreditation agreement that

sets forth the rules and procedures applicable to the provision of Registrar Services.

1.2 "DNS (Domain Name System)" refers to the Internet domain-name system.

1.3 The "Effective Date" is _____.

1.4 The "Expiration Date" is _____.

1.5 "ICANN (Internet Corporation for Assigned Names and Numbers)" refers to the Internet Corporation for Assigned Names and Numbers, a party to this Agreement.

1.6 "Personal Data" refers to data about any identified or identifiable natural person.

1.7 "Registered Name" refers to a domain name within the domain of a TLD (Top Level Domain) that is the subject of an appendix to this Agreement, whether consisting of two (2) or more (e.g., john.smith.name) levels, about which a TLD (Top Level Domain) Registry Operator (or an affiliate engaged in providing Registry Services) maintains data in a Registry Database, arranges for such maintenance, or derives revenue from such maintenance. A name in a Registry Database may be a Registered Name even though it does not appear in a zone file (e.g., a registered but inactive name).

1.8 "Registered Name Holder" means the holder of a Registered Name.

1.9 The word "Registrar," when appearing with an initial capital letter, refers to [Registrar Name], a party to this Agreement.

1.10 The word "registrar," when appearing without an initial capital letter, refers to a person or entity that contracts with Registered Name Holders and with a Registry Operator and collects registration data about the Registered Name Holders and submits registration information for entry in the Registry Database.

1.11 "Registrar Services" means services provided by a registrar in connection with a TLD (Top Level Domain) as to which it has an agreement with the TLD (Top Level Domain)'s Registry Operator, and includes contracting with Registered Name Holders, collecting registration data about

the Registered Name Holders, and submitting registration information for entry in the Registry Database.

1.12 "Registry Data" means all Registry Database data maintained in electronic form, and shall include TLD (Top Level Domain) Zone-File Data, all data used to provide Registry Services and submitted by registrars in electronic form, and all other data used to provide Registry Services concerning particular domain name registrations or nameservers maintained in electronic form in a Registry Database.

1.13 "Registry Database" means a database comprised of data about one or more DNS (Domain Name System) domain names within the domain of a registry that is used to generate either DNS (Domain Name System) resource records that are published authoritatively or responses to domain-name availability lookup requests or Whois queries, for some or all of those names.

1.14 A "Registry Operator" is the person or entity then responsible, in accordance with an agreement between ICANN (Internet Corporation for Assigned Names and Numbers) (or its assignee) and that person or entity (those persons or entities) or, if that agreement is terminated or expires, in accordance with an agreement between the US Government and that person or entity (those persons or entities), for providing Registry Services for a specific TLD (Top Level Domain).

1.15 "Registry Services," with respect to a particular TLD (Top Level Domain), shall have the meaning defined in the agreement between ICANN (Internet Corporation for Assigned Names and Numbers) and the Registry Operator for that TLD (Top Level Domain).

1.16 A Registered Name is "sponsored" by the registrar that placed the record associated with that registration into the registry. Sponsorship of a registration may be changed at the express direction of the Registered Name Holder or, in the event a registrar loses accreditation, in accordance with then-current ICANN (Internet Corporation for Assigned Names and Numbers) specifications and policies.

1.17 "Term of this Agreement" begins on the Effective Date and continues to the earlier of (a) the Expiration Date, or (b) termination of this Agreement.

1.18 A "TLD (Top Level Domain)" is a top-level domain of the DNS (Domain Name System).

1.19 "TLD (Top Level Domain) Zone-File Data" means all data contained in a DNS (Domain Name System) zone file for the registry, or for any subdomain for which Registry Services are provided and that contains Registered Names, as provided to nameservers on the Internet.

1.20 "Affiliated Registrar" is another ICANN (Internet Corporation for Assigned Names and Numbers) accredited registrar that operates under a common controlling interest.

## 2. ICANN (Internet Corporation for Assigned Names and Numbers) OBLIGATIONS.

2.1 Accreditation. During the Term of this Agreement, Registrar is hereby accredited by ICANN (Internet Corporation for Assigned Names and Numbers) to act as a registrar (including to insert and renew registration of Registered Names in the Registry Database) for the TLD (Top Level Domain) (s) that are the subject of appendices to this Agreement according to Subsection 5.5. Notwithstanding the above and except in the case of a good faith disagreement concerning the interpretation of this Agreement, ICANN (Internet Corporation for Assigned Names and Numbers) may, following notice to Registrar, suspend Registrar's ability to create new Registered Names or initiate inbound transfers of Registered Names for one or more TLDs for up to a twelve (12) month period if (i) ICANN (Internet Corporation for Assigned Names and Numbers) has given notice to Registrar of a breach that is fundamental and material to this Agreement pursuant to Subsection 5.3.4 and Registrar has not cured the breach within the period for cure prescribed by Subsection 5.3.4, or (ii) Registrar shall have been repeatedly and willfully in fundamental and material breach of its obligations at least three (3) times within any twelve (12) month period.

2.2 Registrar Use of ICANN (Internet Corporation for Assigned Names and Numbers) Name and Website. ICANN (Internet Corporation for Assigned Names and Numbers) hereby grants to Registrar a non-exclusive, worldwide, royalty-free license during the Term of this Agreement (a) to state that it is accredited by ICANN (Internet Corporation for Assigned Names and Numbers) as a registrar for each TLD (Top Level Domain) that is the subject of an appendix to this Agreement and (b) to link to pages and documents within the ICANN (Internet Corporation for Assigned Names and Numbers) web site. No other use of ICANN (Internet Corporation for Assigned Names

and Numbers)'s name or website is licensed hereby. This license may not be assigned or sublicensed by Registrar.

2.3 <u>General Obligations of ICANN (Internet Corporation for Assigned Names and Numbers)</u>. With respect to all matters that impact the rights, obligations, or role of Registrar, ICANN (Internet Corporation for Assigned Names and Numbers) shall during the Term of this Agreement:

> 2.3.1 exercise its responsibilities in an open and transparent manner;

> 2.3.2 not unreasonably restrain competition and, to the extent feasible, promote and encourage robust competition;

> 2.3.3 not apply standards, policies, procedures or practices arbitrarily, unjustifiably, or inequitably and not single out Registrar for disparate treatment unless justified by substantial and reasonable cause; and

> 2.3.4 ensure, through its reconsideration and independent review policies, adequate appeal procedures for Registrar, to the extent it is adversely affected by ICANN (Internet Corporation for Assigned Names and Numbers) standards, policies, procedures or practices.

2.4 <u>Use of ICANN (Internet Corporation for Assigned Names and Numbers) Accredited Registrars</u>. In order to promote competition in the registration of domain names, and in recognition of the value that ICANN (Internet Corporation for Assigned Names and Numbers)-accredited registrars bring to the Internet community, ICANN (Internet Corporation for Assigned Names and Numbers) has ordinarily required gTLD (generic Top Level Domain) registries under contract with ICANN (Internet Corporation for Assigned Names and Numbers) to use ICANN (Internet Corporation for Assigned Names and Numbers)-accredited registrars, and ICANN (Internet Corporation for Assigned Names and Numbers) will during the course of this agreement abide by any ICANN (Internet Corporation for Assigned Names and Numbers) adopted specifications or policies requiring the use of ICANN (Internet Corporation for Assigned Names and Numbers)-accredited registrars by gTLD (generic Top Level Domain) registries.

**3. REGISTRAR OBLIGATIONS.**

3.1 <u>Obligations to Provide Registrar Services</u>. During the Term of this Agreement, Registrar agrees that it will operate as a registrar for each <u>TLD (Top Level Domain)</u> for which it is accredited by <u>ICANN (Internet Corporation for Assigned Names and Numbers)</u> in accordance with this Agreement.

3.2 <u>Submission of Registered Name Holder Data to Registry</u>. During the Term of this Agreement:

> 3.2.1 As part of its registration of Registered Names in a <u>TLD (Top Level Domain)</u> as to which it is accredited, Registrar shall submit to, or shall place in the Registry Database operated by, the Registry Operator for the <u>TLD (Top Level Domain)</u> the following data elements:
>
>> 3.2.1.1 The name of the Registered Name being registered;
>>
>> 3.2.1.2 The <u>IP (Internet Protocol or Intellectual Property)</u> addresses of the primary nameserver and secondary nameserver(s) for the Registered Name;
>>
>> 3.2.1.3 The corresponding names of those nameservers;
>>
>> 3.2.1.4 Unless automatically generated by the registry system, the identity of the Registrar;
>>
>> 3.2.1.5 Unless automatically generated by the registry system, the expiration date of the registration; and
>>
>> 3.2.1.6 Any other data the Registry Operator requires be submitted to it.
>
> The appendix to this Agreement for a particular <u>TLD (Top Level Domain)</u> may state substitute language for Subsections 3.2.1.1 through 3.2.1.6 as applicable to that <u>TLD (Top Level Domain)</u>; in that event the substitute language shall replace and supersede Subsections 3.2.1.1 through 3.2.1.6 stated above for all purposes under this Agreement but only with respect to that particular <u>TLD (Top Level Domain)</u>.
>
> 3.2.2 Within five (5) business days after receiving any updates from the Registered Name Holder to the data elements listed in Subsections 3.2.1.2, 3.1.2.3, and 3.2.1.6 for any Registered Name Registrar

sponsors, Registrar shall submit the updated data elements to, or shall place those elements in the Registry Database operated by the Registry Operator.

3.2.3 In order to allow reconstitution of the Registry Database in the event of an otherwise unrecoverable technical failure or a change in the designated Registry Operator, within ten (10) days of any such request by ICANN (Internet Corporation for Assigned Names and Numbers), Registrar shall submit an electronic database containing the data elements listed in Subsections 3.2.1.1 through 3.2.1.6 for all active records in the registry sponsored by Registrar, in a format specified by ICANN (Internet Corporation for Assigned Names and Numbers), to the Registry Operator for the appropriate TLD (Top Level Domain).

3.3 Public Access to Data on Registered Names. During the Term of this Agreement:

3.3.1 At its expense, Registrar shall provide an interactive web page and a port 43 Whois service providing free public query-based access to up-to-date (i.e., updated at least daily) data concerning all active Registered Names sponsored by Registrar for each TLD (Top Level Domain) in which it is accredited. The data accessible shall consist of elements that are designated from time to time according to an ICANN (Internet Corporation for Assigned Names and Numbers) adopted specification or policy. Until ICANN (Internet Corporation for Assigned Names and Numbers) otherwise specifies by means of an ICANN (Internet Corporation for Assigned Names and Numbers) adopted specification or policy, this data shall consist of the following elements as contained in Registrar's database:

3.3.1.1 The name of the Registered Name;

3.3.1.2 The names of the primary nameserver and secondary nameserver(s) for the Registered Name;

3.3.1.3 The identity of Registrar (which may be provided through Registrar's website);

3.3.1.4 The original creation date of the registration;

3.3.1.5 The expiration date of the registration;

3.3.1.6 The name and postal address of the Registered Name Holder;

3.3.1.7 The name, postal address, e-mail address, voice telephone number, and (where available) fax number of the technical contact for the Registered Name; and

3.3.1.8 The name, postal address, e-mail address, voice telephone number, and (where available) fax number of the administrative contact for the Registered Name.

The appendix to this Agreement for a particular TLD (Top Level Domain) may state substitute language for Subsections 3.3.1.1 through 3.3.1.8 as applicable to that TLD (Top Level Domain); in that event the substitute language shall replace and supersede Subsections 3.3.1.1 through 3.3.1.8 stated above for all purposes under this Agreement but only with respect to that particular TLD (Top Level Domain).

3.3.2 Upon receiving any updates to the data elements listed in Subsections 3.3.1.2, 3.3.1.3, and 3.3.1.5 through 3.3.1.8 from the Registered Name Holder, Registrar shall promptly update its database used to provide the public access described in Subsection 3.3.1.

3.3.3 Registrar may subcontract its obligation to provide the public access described in Subsection 3.3.1 and the updating described in Subsection 3.3.2, provided that Registrar shall remain fully responsible for the proper provision of the access and updating.

3.3.4 Registrar shall abide by any ICANN (Internet Corporation for Assigned Names and Numbers) specification or policy established as a Consensus (Consensus) Policy according to Section 4 that requires registrars to cooperatively implement a distributed capability that provides query-based Whois search functionality across all registrars. If the Whois service implemented by registrars does not in a reasonable time provide reasonably robust, reliable, and convenient access to accurate and up-to-date data, the Registrar shall abide by any ICANN

(Internet Corporation for Assigned Names and Numbers) specification or policy established as a Consensus (Consensus) Policy according to Section 4 requiring Registrar, if reasonably determined by ICANN (Internet Corporation for Assigned Names and Numbers) to be necessary (considering such possibilities as remedial action by specific registrars), to supply data from Registrar's database to facilitate the development of a centralized Whois database for the purpose of providing comprehensive Registrar Whois search capability.

3.3.5 In providing query-based public access to registration data as required by Subsections 3.3.1 and 3.3.4, Registrar shall not impose terms and conditions on use of the data provided, except as permitted by policy established by ICANN (Internet Corporation for Assigned Names and Numbers). Unless and until ICANN (Internet Corporation for Assigned Names and Numbers) establishes a different policy according to Section 4, Registrar shall permit use of data it provides in response to queries for any lawful purposes except to: (a) allow, enable, or otherwise support the transmission by e-mail, telephone, or facsimile of mass, unsolicited, commercial advertising or solicitations to entities other than the data recipient's own existing customers; or (b) enable high volume, automated, electronic processes that send queries or data to the systems of any Registry Operator or ICANN (Internet Corporation for Assigned Names and Numbers)-Accredited registrar, except as reasonably necessary to register domain names or modify existing registrations.

3.3.6 In addition, Registrar shall provide third-party bulk access to the data subject to public access under Subsection 3.3.1 under the following terms and conditions:

3.3.6.1 Registrar shall make a complete electronic copy of the data available at least one (1) time per week for download by third parties who have entered into a bulk access agreement with Registrar.

3.3.6.2 Registrar may charge an annual fee, not to exceed US$10,000, for such bulk access to the data.

3.3.6.3 Registrar's access agreement shall require the third party to agree not to use the data to allow, enable, or otherwise

support any marketing activities, regardless of the medium used. Such media include but are not limited to e-mail, telephone, facsimile, postal mail, SMS, and wireless alerts.

3.3.6.4 Registrar's access agreement shall require the third party to agree not to use the data to enable high-volume, automated, electronic processes that send queries or data to the systems of any Registry Operator or ICANN (Internet Corporation for Assigned Names and Numbers)-Accredited registrar, except as reasonably necessary to register domain names or modify existing registrations.

3.3.6.5 Registrar's access agreement must require the third party to agree not to sell or redistribute the data except insofar as it has been incorporated by the third party into a value-added product or service that does not permit the extraction of a substantial portion of the bulk data from the value-added product or service for use by other parties.

3.3.7 Registrar's obligations under Subsection 3.3.6 shall remain in effect until the earlier of (a) replacement of this policy with a different ICANN (Internet Corporation for Assigned Names and Numbers) policy, established according to Section 4, governing bulk access to the data subject to public access under Subsection 3.3.1, or (b) demonstration, to the satisfaction of ICANN (Internet Corporation for Assigned Names and Numbers), that no individual or entity is able to exercise market power with respect to registrations or with respect to registration data used for development of value-added products and services by third parties.

3.3.8 To comply with applicable statutes and regulations and for other reasons, ICANN (Internet Corporation for Assigned Names and Numbers) may from time to time adopt policies and specifications establishing limits (a) on the Personal Data concerning Registered Names that Registrar may make available to the public through a public-access service described in this Subsection 3.3 and (b) on the manner in which Registrar may make such data available. In the event ICANN (Internet Corporation for Assigned Names and Numbers) adopts any such policy, Registrar shall abide by it.

3.4 <u>Retention of Registered Name Holder and Registration Data</u>.

3.4.1 During the Term of this Agreement, Registrar shall maintain its own electronic database, as updated from time to time, containing data for each active Registered Name sponsored by it within each <u>TLD (Top Level Domain)</u> for which it is accredited. The data for each such registration shall include the elements listed in Subsections 3.3.1.1 through 3.3.1.8; the name and (where available) postal address, e-mail address, voice telephone number, and fax number of the billing contact; and any other Registry Data that Registrar has submitted to the Registry Operator or placed in the Registry Database under Subsection 3.2. Also, Registrar shall either (1) include in the database the name and postal address, e-mail address, and voice telephone number provided by the customer of any privacy service or licensee of any proxy registration service offered or made available by Registrar or its affiliate companies in connection with each registration or (2) display a conspicuous notice to such customers at the time an election is made to utilize such privacy or proxy service that their data is not being escrowed.

3.4.2 During the Term of this Agreement and for three (3) years thereafter, Registrar (itself or by its agent(s)) shall maintain the following records relating to its dealings with the Registry Operator(s) and Registered Name Holders:

3.4.2.1 In electronic form, the submission date and time, and the content, of all registration data (including updates) submitted in electronic form to the Registry Operator(s);

3.4.2.2 In electronic, paper, or microfilm form, all written communications constituting registration applications, confirmations, modifications, or terminations and related correspondence with Registered Name Holders, including registration contracts; and

3.4.2.3 In electronic form, records of the accounts of all Registered Name Holders with Registrar, including dates and amounts of all payments and refunds.

3.4.3 During the Term of this Agreement and for three (3) years thereafter, Registrar shall make these records available for inspection and copying by ICANN (Internet Corporation for Assigned Names and Numbers) upon reasonable notice. ICANN (Internet Corporation for Assigned Names and Numbers) shall not disclose the content of such records except as expressly permitted by an ICANN (Internet Corporation for Assigned Names and Numbers) specification or policy.

3.4.4 Notwithstanding any other requirement in this Agreement, Registrar shall not be obligated to maintain records relating to a domain registration beginning on the date three (3) years following the domain registration's deletion or transfer away to a different registrar.

3.5 Rights in Data. Registrar disclaims all rights to exclusive ownership or use of the data elements listed in Subsections 3.2.1.1 through 3.2.1.3 for all Registered Names submitted by Registrar to the Registry Database for, or sponsored by Registrar in, each TLD (Top Level Domain) for which it is accredited. Registrar does not disclaim rights in the data elements listed in Subsections 3.2.1.4 through 3.2.1.6 and Subsections 3.3.1.3 through 3.3.1.8 concerning active Registered Names sponsored by it in each TLD (Top Level Domain) for which it is accredited, and agrees to grant non-exclusive, irrevocable, royalty-free licenses to make use of and disclose the data elements listed in Subsections 3.2.1.4 through 3.2.1.6 and 3.3.1.3 through 3.3.1.8 for the purpose of providing a service or services (such as a Whois service under Subsection 3.3.4) providing interactive, query-based public access. Upon a change in sponsorship from Registrar of any Registered Name in a TLD (Top Level Domain) for which it is accredited, Registrar acknowledges that the registrar gaining sponsorship shall have the rights of an owner to the data elements listed in Subsections 3.2.1.4 through 3.2.1.6 and 3.3.1.3 through 3.3.1.8 concerning that Registered Name, with Registrar also retaining the rights of an owner in that data. Nothing in this Subsection prohibits Registrar from (1) restricting bulk public access to data elements in a manner consistent with this Agreement and any ICANN (Internet Corporation for Assigned Names and Numbers) specifications or policies or (2) transferring rights it claims in data elements subject to the provisions of this Subsection.

3.6 Data Escrow. During the Term of this Agreement, on a schedule, under the terms, and in the format specified by ICANN (Internet Corporation for Assigned Names and Numbers), Registrar shall submit an electronic copy of

the database described in Subsection 3.4.1 to ICANN (Internet Corporation for Assigned Names and Numbers) or, at Registrar's election and at its expense, to a reputable escrow agent mutually approved by Registrar and ICANN (Internet Corporation for Assigned Names and Numbers), such approval also not to be unreasonably withheld by either party. The data shall be held under an agreement among Registrar, ICANN (Internet Corporation for Assigned Names and Numbers), and the escrow agent (if any) providing that (1) the data shall be received and held in escrow, with no use other than verification that the deposited data is complete, consistent, and in proper format, until released to ICANN (Internet Corporation for Assigned Names and Numbers); (2) the data shall be released from escrow upon expiration without renewal or termination of this Agreement; and (3) ICANN (Internet Corporation for Assigned Names and Numbers)'s rights under the escrow agreement shall be assigned with any assignment of this Agreement. The escrow shall provide that in the event the escrow is released under this Subsection, ICANN (Internet Corporation for Assigned Names and Numbers) (or its assignee) shall have a non-exclusive, irrevocable, royalty-free license to exercise (only for transitional purposes) or have exercised all rights necessary to provide Registrar Services.

3.7 Business Dealings, Including with Registered Name Holders.

3.7.1 In the event ICANN (Internet Corporation for Assigned Names and Numbers) adopts a specification or policy, supported by a consensus of ICANN (Internet Corporation for Assigned Names and Numbers)-Accredited registrars, establishing or approving a Code of Conduct for ICANN (Internet Corporation for Assigned Names and Numbers)-Accredited registrars, Registrar shall abide by that Code.

3.7.2 Registrar shall abide by applicable laws and governmental regulations.

3.7.3 Registrar shall not represent to any actual or potential Registered Name Holder that Registrar enjoys access to a registry for which Registrar is Accredited that is superior to that of any other registrar Accredited for that registry.

3.7.4 Registrar shall not activate any Registered Name unless and until it is satisfied that it has received a reasonable assurance of payment of its registration fee. For this purpose, a charge to a credit card, general

commercial terms extended to creditworthy customers, or other mechanism providing a similar level of assurance of payment shall be sufficient, provided that the obligation to pay becomes final and non-revocable by the Registered Name Holder upon activation of the registration.

3.7.5 At the conclusion of the registration period, failure by or on behalf of the Registered Name Holder to consent that the registration be renewed within the time specified in a second notice or reminder shall, in the absence of extenuating circumstances, result in cancellation of the registration by the end of the auto-renew grace period (although Registrar may choose to cancel the name earlier).

3.7.5.1 Extenuating circumstances are defined as: UDRP (Uniform Domain-Name Dispute Resolution Policy) action, valid court order, failure of a Registrar's renewal process (which does not include failure of a registrant to respond), the domain name is used by a nameserver that provides DNS (Domain Name System) service to third-parties (additional time may be required to migrate the records managed by the nameserver), the registrant is subject to bankruptcy proceedings, payment dispute (where a registrant claims to have paid for a renewal, or a discrepancy in the amount paid), billing dispute (where a registrant disputes the amount on a bill), domain name subject to litigation in a court of competent jurisdiction, or other circumstance as approved specifically by ICANN (Internet Corporation for Assigned Names and Numbers).

3.7.5.2 Where Registrar chooses, under extenuating circumstances, to renew a domain name without the explicit consent of the registrant, the registrar must maintain a record of the extenuating circumstances associated with renewing that specific domain name for inspection by ICANN (Internet Corporation for Assigned Names and Numbers) consistent with clauses 3.4.2 and 3.4.3 of this registrar accreditation agreement.

3.7.5.3 In the absence of extenuating circumstances (as defined in Section 3.7.5.1 above), a domain name must be deleted within 45 days of either the registrar or the registrant terminating a registration agreement.

3.7.5.4 Registrar shall provide notice to each new registrant describing the details of their deletion and auto-renewal policy including the expected time at which a non-renewed domain name would be deleted relative to the domain's expiration date, or a date range not to exceed ten (10) days in length. If a registrar makes any material changes to its deletion policy during the period of the registration agreement, it must make at least the same effort to inform the registrant of the changes as it would to inform the registrant of other material changes to the registration agreement (as defined in clause 3.7.7 of the registrars accreditation agreement).

3.7.5.5 If Registrar operates a website for domain name registration or renewal, details of Registrar's deletion and auto-renewal policies must be clearly displayed on the website.

3.7.5.6 If Registrar operates a website for domain registration or renewal, it should state, both at the time of registration and in a clear place on its website, any fee charged for the recovery of a domain name during the Redemption Grace Period.

3.7.5.7 In the event that a domain which is the subject of a UDRP (Uniform Domain-Name Dispute Resolution Policy) dispute is deleted or expires during the course of the dispute, the complainant in the UDRP (Uniform Domain-Name Dispute Resolution Policy) dispute will have the option to renew or restore the name under the same commercial terms as the registrant. If the complainant renews or restores the name, the name will be placed in Registrar HOLD and Registrar LOCK status, the WHOIS (WHOIS (pronounced "who is"; not an acronym)) contact information for the registrant will be removed, and the WHOIS (WHOIS (pronounced "who is"; not an acronym)) entry will indicate that the name is subject to dispute. If the complaint is terminated, or the UDRP (Uniform Domain-Name Dispute Resolution Policy) dispute finds against the complainant, the name will be deleted within 45 days. The registrant retains the right under the existing redemption grace period provisions to recover the name at any time during the Redemption Grace Period, and retains the right to renew the name before it is deleted.

3.7.6 Registrar shall not insert or renew any Registered Name in any registry for which Registrar is accredited by ICANN (Internet Corporation for Assigned Names and Numbers) in a manner contrary to an ICANN (Internet Corporation for Assigned Names and Numbers) policy stating a list or specification of excluded Registered Names that is in effect at the time of insertion or renewal.

3.7.7 Registrar shall require all Registered Name Holders to enter into an electronic or paper registration agreement with Registrar including at least the following provisions (except for domains registered by the Registrar for the purpose of conducting its Registrar Services where the Registrar is also the Registered Name Holder, in which case the Registrar shall submit to the following provisions and shall be responsible to ICANN (Internet Corporation for Assigned Names and Numbers) for compliance with all obligations of the Registered Name Holder as set forth in this Agreement and ICANN (Internet Corporation for Assigned Names and Numbers) policies established according to this Agreement):

3.7.7.1 The Registered Name Holder shall provide to Registrar accurate and reliable contact details and promptly correct and update them during the term of the Registered Name registration, including: the full name, postal address, e-mail address, voice telephone number, and fax number if available of the Registered Name Holder; name of authorized person for contact purposes in the case of an Registered Name Holder that is an organization, association, or corporation; and the data elements listed in Subsections 3.3.1.2, 3.3.1.7 and 3.3.1.8.

3.7.7.2 A Registered Name Holder's willful provision of inaccurate or unreliable information, its willful failure promptly to update information provided to Registrar, or its failure to respond for over fifteen (15) calendar days to inquiries by Registrar concerning the accuracy of contact details associated with the Registered Name Holder's registration shall constitute a material breach of the Registered Name Holder-registrar contract and be a basis for cancellation of the Registered Name registration.

3.7.7.3 Any Registered Name Holder that intends to license use of a domain name to a third party is nonetheless the Registered

Name Holder of record and is responsible for providing its own full contact information and for providing and updating accurate technical and administrative contact information adequate to facilitate timely resolution of any problems that arise in connection with the Registered Name. A Registered Name Holder licensing use of a Registered Name according to this provision shall accept liability for harm caused by wrongful use of the Registered Name, unless it promptly discloses the current contact information provided by the licensee and the identity of the licensee to a party providing the Registered Name Holder reasonable evidence of actionable harm.

3.7.7.4 Registrar shall provide notice to each new or renewed Registered Name Holder stating:

3.7.7.4.1 The purposes for which any Personal Data collected from the applicant are intended;

3.7.7.4.2 The intended recipients or categories of recipients of the data (including the Registry Operator and others who will receive the data from Registry Operator);

3.7.7.4.3 Which data are obligatory and which data, if any, are voluntary; and

3.7.7.4.4 How the Registered Name Holder or data subject can access and, if necessary, rectify the data held about them.

3.7.7.5 The Registered Name Holder shall consent to the data processing referred to in Subsection 3.7.7.4.

3.7.7.6 The Registered Name Holder shall represent that notice has been provided equivalent to that described in Subsection 3.7.7.4 to any third-party individuals whose Personal Data are supplied to Registrar by the Registered Name Holder, and that the Registered Name Holder has obtained consent equivalent to that referred to in Subsection 3.7.7.5 of any such third-party individuals.

3.7.7.7 Registrar shall agree that it will not process the Personal Data collected from the Registered Name Holder in a way incompatible with the purposes and other limitations about which it has provided notice to the Registered Name Holder in accordance with Subsection 3.7.7.4 above.

3.7.7.8 Registrar shall agree that it will take reasonable precautions to protect Personal Data from loss, misuse, unauthorized access or disclosure, alteration, or destruction.

3.7.7.9 The Registered Name Holder shall represent that, to the best of the Registered Name Holder's knowledge and belief, neither the registration of the Registered Name nor the manner in which it is directly or indirectly used infringes the legal rights of any third party.

3.7.7.10 For the adjudication of disputes concerning or arising from use of the Registered Name, the Registered Name Holder shall submit, without prejudice to other potentially applicable jurisdictions, to the jurisdiction of the courts (1) of the Registered Name Holder's domicile and (2) where Registrar is located.

3.7.7.11 The Registered Name Holder shall agree that its registration of the Registered Name shall be subject to suspension, cancellation, or transfer pursuant to any ICANN (Internet Corporation for Assigned Names and Numbers) adopted specification or policy, or pursuant to any registrar or registry procedure not inconsistent with an ICANN (Internet Corporation for Assigned Names and Numbers) adopted specification or policy, (1) to correct mistakes by Registrar or the Registry Operator in registering the name or (2) for the resolution of disputes concerning the Registered Name.

3.7.7.12 The Registered Name Holder shall indemnify and hold harmless the Registry Operator and its directors, officers, employees, and agents from and against any and all claims, damages, liabilities, costs, and expenses (including reasonable legal fees and expenses) arising out of or related to the Registered Name Holder's domain name registration.

3.7.8 Registrar shall abide by any specifications or policies established according to Section 4 requiring reasonable and commercially practicable (a) verification, at the time of registration, of contact information associated with a Registered Name sponsored by Registrar or (b) periodic re-verification of such information. Registrar shall, upon notification by any person of an inaccuracy in the contact information associated with a Registered Name sponsored by Registrar, take reasonable steps to investigate that claimed inaccuracy. In the event Registrar learns of inaccurate contact information associated with a Registered Name it sponsors, it shall take reasonable steps to correct that inaccuracy.

3.7.9 Registrar shall abide by any ICANN (Internet Corporation for Assigned Names and Numbers) adopted specifications or policies prohibiting or restricting warehousing of or speculation in domain names by registrars.

3.7.10 Nothing in this Agreement prescribes or limits the amount Registrar may charge Registered Name Holders for registration of Registered Names.

3.8 Domain-Name Dispute Resolution. During the Term of this Agreement, Registrar shall have in place a policy and procedures for resolution of disputes concerning Registered Names. Until different policies and procedures are established by ICANN (Internet Corporation for Assigned Names and Numbers) under Section 4, Registrar shall comply with the Uniform Domain Name (Domain Name) Dispute Resolution Policy identified on ICANN (Internet Corporation for Assigned Names and Numbers)'s website (www.icann.org/general/consensus-policies.htm).

3.9 Accreditation Fees. As a condition of accreditation, Registrar shall pay accreditation fees to ICANN (Internet Corporation for Assigned Names and Numbers). These fees consist of yearly and variable fees.

3.9.1 Yearly Accreditation Fee. Registrar shall pay ICANN (Internet Corporation for Assigned Names and Numbers) a yearly accreditation fee in an amount established by the ICANN (Internet Corporation for Assigned Names and Numbers) Board of Directors, in conformity with ICANN (Internet Corporation for Assigned Names and Numbers)'s bylaws and articles of incorporation. This yearly accreditation fee shall

not exceed US$4,000. Payment of the yearly fee shall be due within thirty (30) days after invoice from ICANN (Internet Corporation for Assigned Names and Numbers), provided that Registrar may elect to pay the yearly fee in four (4) equal quarterly installments.

3.9.2 Variable Accreditation Fee. Registrar shall pay the variable accreditation fees established by the ICANN (Internet Corporation for Assigned Names and Numbers) Board of Directors, in conformity with ICANN (Internet Corporation for Assigned Names and Numbers)'s bylaws and articles of incorporation, provided that in each case such fees are reasonably allocated among all registrars that contract with ICANN (Internet Corporation for Assigned Names and Numbers) and that any such fees must be expressly approved by registrars accounting, in the aggregate, for payment of two-thirds of all registrar-level fees. Registrar shall pay such fees in a timely manner for so long as all material terms of this Agreement remain in full force and effect, and notwithstanding the pendency of any dispute between Registrar and ICANN (Internet Corporation for Assigned Names and Numbers).

3.9.3 For any payments thirty (30) days or more overdue, Registrar shall pay interest on late payments at the rate of 1.5% per month or, if less, the maximum rate permitted by applicable law from later of the date of the invoice or the date the invoice is sent pursuant to Section 5.11 of this Agreement. On reasonable notice given by ICANN (Internet Corporation for Assigned Names and Numbers) to Registrar, accountings submitted by Registrar shall be subject to verification by an audit of Registrar's books and records by an independent third-party that shall preserve the confidentiality of such books and records (other than its findings as to the accuracy of, and any necessary corrections to, the accountings).

3.10 Insurance. Registrar shall maintain in force commercial general liability insurance with policy limits of at least US$500,000 covering liabilities arising from Registrar's registrar business during the term of this Agreement.

3.11 Obligations of Registrars under common controlling interest. Registrar shall be in breach of this Agreement if:

3.11.1 ICANN (Internet Corporation for Assigned Names and Numbers) terminates an Affiliated Registrar's accreditation agreement with

ICANN (Internet Corporation for Assigned Names and Numbers) (an
"Affiliate Termination");

3.11.2 Affiliated Registrar has not initiated arbitration challenging
ICANN (Internet Corporation for Assigned Names and Numbers)'s right
to terminate the Affiliated Registrar's accreditation agreement under
Section 5.6 of this Agreement, or has initiated such arbitration and has
not prevailed;

3.11.3 the Affiliate Termination was the result of misconduct that
materially harmed consumers or the public interest;

3.11.4 a second Affiliated Registrar has pursued, after the Affiliate
Termination, the same course of conduct that resulted in the Affiliate
Termination; and

3.11.5 ICANN (Internet Corporation for Assigned Names and Numbers)
has provided Registrar with written notice that it intends to assert the
provisions of this Section 3.11 with respect to Registrar, which notice
shall identify in reasonable detail the factual basis for such assertion,
and Registrar has failed to cure the impugned conduct within fifteen
(15) days of such notice.

3.12 Obligations of Third-Party Resellers. If Registrar enters into an
agreement with a reseller of Registrar Services to provide Registrar Services
("Reseller"), such agreement must include at least the following provisions:

3.12.1 Reseller is prohibited from displaying the ICANN (Internet
Corporation for Assigned Names and Numbers) or ICANN (Internet
Corporation for Assigned Names and Numbers)-Accredited Registrar
logo, or from otherwise representing itself as accredited by ICANN
(Internet Corporation for Assigned Names and Numbers) unless it has
written permission from ICANN (Internet Corporation for Assigned
Names and Numbers) to do so.

3.12.2 Any registration agreement used by reseller shall include all
registration agreement provisions and notices required by the ICANN
(Internet Corporation for Assigned Names and Numbers) Registrar
Accreditation Agreement and any ICANN (Internet Corporation for
Assigned Names and Numbers) Consensus (Consensus) Policies, and

shall identify the sponsoring registrar or provide a means for identifying the sponsoring registrar, such as a link to the InterNIC Whois lookup service.

3.12.3 Reseller shall identify the sponsoring registrar upon inquiry from the customer.

3.12.4 Reseller shall ensure that the identity and contact information provided by the customer of any privacy or proxy registration service offered or made available by reseller in connection with each registration will be deposited with Registrar or held in escrow or, alternatively, display a conspicuous notice to such customers at the time an election is made to utilize such privacy or proxy service that their data is not being escrowed. Where escrow is used, the escrow agreement will provide, at a minimum, that data will be released to registrar in the event reseller breaches the reseller agreement, and such breach is harmful to consumers or the public interest. In the event that ICANN (Internet Corporation for Assigned Names and Numbers) makes available a program granting recognition to resellers that escrow privacy or proxy registration data as detailed above, and reseller meets any other criteria established by ICANN (Internet Corporation for Assigned Names and Numbers) in accordance with its Bylaws, reseller shall be permitted to apply to ICANN (Internet Corporation for Assigned Names and Numbers) for such recognition.

3.12.5 To the extent that Registrar is obligated to provide a link to an ICANN (Internet Corporation for Assigned Names and Numbers) webpage, as detailed in subsection 3.15 below, Reseller also shall be under an obligation to provide such linkage.

3.12.6 If Registrar becomes aware that such a Reseller is in breach of any of the provisions of Section 3.12 of this Agreement, Registrar shall take reasonable steps to notify the Reseller that it is in breach of the reseller agreement and that Registrar has the right to terminate such agreement.

3.13 Registrar Training. Registrar's primary contact as identified in Subsection 5.11 below or designee (so long as the designee is employed by Registrar or an Affiliated Registrar) shall complete a training course covering registrar obligations under ICANN (Internet Corporation for Assigned Names

and Numbers) policies and agreements. The training course will be
developed in consultation with registrars. The course will be provided by
ICANN (Internet Corporation for Assigned Names and Numbers) at no
expense to Registrar, and shall be available in an online format.

3.14 Registrar Audits. Registrar shall, upon no less than fifteen (15) days
notice and as part of any reasonable contractual compliance audit, (1) timely
provide the documents and information known by Registrar necessary to
demonstrate compliance with the terms of this Agreement; and (2) permit
ICANN (Internet Corporation for Assigned Names and Numbers) to conduct
site visits in compliance with all applicable laws to assess compliance with the
terms of this Agreement, provided that ICANN (Internet Corporation for
Assigned Names and Numbers), in its notice, states the specific compliance
audit that it intends to conduct. ICANN (Internet Corporation for Assigned
Names and Numbers) shall not disclose Registrar confidential information
gathered through such audits except as expressly permitted by an ICANN
(Internet Corporation for Assigned Names and Numbers) specification or
policy. If such specification or policy permits such disclosure, ICANN (Internet
Corporation for Assigned Names and Numbers) will provide Registrar no less
than fifteen (15) days notice of its intent to disclose such information. Such
notice shall include to whom and in what manner ICANN (Internet
Corporation for Assigned Names and Numbers) plans to disclose such
information.

3.15 In the event that ICANN (Internet Corporation for Assigned Names and
Numbers) gives reasonable notice to Registrar that ICANN (Internet
Corporation for Assigned Names and Numbers) has published a webpage
that identifies available registrant rights and responsibilities, and the content
of such webpage is developed in consultation with registrars, Registrar shall
provide a link to the webpage on any website it may operate for domain name
registration or renewal clearly displayed to its Registered Name Holders at
least as clearly as its links to policies or notifications required to be displayed
under ICANN (Internet Corporation for Assigned Names and Numbers)
Consensus (Consensus) Policies.

3.16 Registrar shall provide on its web site its accurate contact details
including a valid email and mailing address.

# 4. PROCEDURES FOR ESTABLISHMENT OR REVISION OF
# SPECIFICATIONS AND POLICIES.

4.1 <u>Registrar's Ongoing Obligation to Comply With New or Revised
Specifications and Policies</u>. During the Term of this Agreement, Registrar
shall comply with the terms of this Agreement on the schedule set forth in
Subsection 4.4, with

> 4.1.1 new or revised specifications (including forms of agreement to
> which Registrar is a party) and policies established by <u>ICANN (Internet
> Corporation for Assigned Names and Numbers)</u> as <u>Consensus
> (Consensus)</u> Policies in the manner described in Subsection 4.3,
>
> 4.1.2 in cases where:
>
>> 4.1.2.1 this Agreement expressly provides for compliance with
>> revised specifications or policies established in the manner set
>> forth in one or more subsections of this Section 4; or
>>
>> 4.1.2.2 the specification or policy concerns one or more topics
>> described in Subsection 4.2.

4.2 <u>Topics for New and Revised Specifications and Policies</u>. New and revised
specifications and policies may be established on the following topics:

> 4.2.1 issues for which uniform or coordinated resolution is reasonably
> necessary to facilitate interoperability, technical reliability, and/or
> operational stability of Registrar Services, Registry Services, the <u>DNS
> (Domain Name System)</u>, or the Internet;
>
> 4.2.2 registrar policies reasonably necessary to implement <u>ICANN
> (Internet Corporation for Assigned Names and Numbers)</u> policies or
> specifications relating to a <u>DNS (Domain Name System)</u> registry or to
> Registry Services;
>
> 4.2.3 resolution of disputes concerning the registration of Registered
> Names (as opposed to the use of such domain names), including
> where the policies take into account use of the domain names;
>
> 4.2.4 principles for allocation of Registered Names (e.g., first-
> come/first-served, timely renewal, holding period after expiration);

4.2.5 prohibitions on warehousing of or speculation in domain names by registries or registrars;

4.2.6 maintenance of and access to accurate and up-to-date contact information regarding Registered Names and nameservers;

4.2.7 reservation of Registered Names that may not be registered initially or that may not be renewed due to reasons reasonably related to (a) avoidance of confusion among or misleading of users, (b) intellectual property, or (c) the technical management of the DNS (Domain Name System) or the Internet (e.g., "example.com" and names with single-letter/digit labels);

4.2.8 procedures to avoid disruptions of registration due to suspension or termination of operations by a registry operator or a registrar, including allocation of responsibility among continuing registrars of the Registered Names sponsored in a TLD (Top Level Domain) by a registrar losing accreditation; and

4.2.9 the transfer of registration data upon a change in registrar sponsoring one or more Registered Names.

Nothing in this Subsection 4.2 shall limit Registrar's obligations as set forth elsewhere in this Agreement.

4.3 Manner of Establishment of New and Revised Specifications and Policies.

4.3.1 "Consensus (Consensus) Policies" are those specifications or policies established based on a consensus among Internet stakeholders represented in the ICANN (Internet Corporation for Assigned Names and Numbers) process, as demonstrated by (a) action of the ICANN (Internet Corporation for Assigned Names and Numbers) Board of Directors establishing the specification or policy, (b) a recommendation, adopted by at least a two-thirds vote of the council of the ICANN (Internet Corporation for Assigned Names and Numbers) Supporting Organization (Supporting Organization) to which the matter is delegated, that the specification or policy should be established, and (c) a written report and supporting materials (which must include all substantive submissions to the Supporting Organization (Supporting Organization) relating to the proposal) that (i) documents the extent of

agreement and disagreement among impacted groups, (ii) documents the outreach process used to seek to achieve adequate representation of the views of groups that are likely to be impacted, and (iii) documents the nature and intensity of reasoned support and opposition to the proposed policy.

4.3.2 In the event that Registrar disputes the presence of such a consensus, it shall seek review of that issue from an Independent Review Panel established under ICANN (Internet Corporation for Assigned Names and Numbers)'s bylaws. Such review must be sought within fifteen (15) working days of the publication of the Board's action establishing the policy. The decision of the panel shall be based on the report and supporting materials required by Subsection 4.3.1. In the event that Registrar seeks review and the Independent Review Panel sustains the Board's determination that the policy is based on a consensus among Internet stakeholders represented in the ICANN (Internet Corporation for Assigned Names and Numbers) process, then Registrar must implement such policy unless it promptly seeks and obtains a stay or injunctive relief under Subsection 5.6.

4.3.3 If, following a decision by the Independent Review Panel convened under Subsection 4.3.2, Registrar still disputes the presence of such a consensus, it may seek further review of that issue within fifteen (15) working days of publication of the decision in accordance with the dispute resolution procedures set forth in Subsection 5.6; provided, however, that Registrar must continue to implement the policy unless it has obtained a stay or injunctive relief under Subsection 5.6 or a final decision is rendered in accordance with the provisions of Subsection 5.6 that relieves Registrar of such obligation. The decision in any such further review shall be based on the report and supporting materials required by Subsection 4.3.1.

4.3.4 A specification or policy established by the ICANN (Internet Corporation for Assigned Names and Numbers) Board of Directors on a temporary basis, without a prior recommendation by the council of an ICANN (Internet Corporation for Assigned Names and Numbers) Supporting Organization (Supporting Organization), shall also be considered to be a Consensus (Consensus) Policy if adopted by the ICANN (Internet Corporation for Assigned Names and Numbers) Board of Directors by a vote of at least two-thirds of its members, so long as

the Board reasonably determines that immediate temporary
establishment of a specification or policy on the subject is necessary to
maintain the operational stability of Registrar Services, Registry
Services, the DNS (Domain Name System), or the Internet, and that
the proposed specification or policy is as narrowly tailored as feasible
to achieve those objectives. In establishing any specification or policy
under this provision, the ICANN (Internet Corporation for Assigned
Names and Numbers) Board of Directors shall state the period of time
for which the specification or policy is temporarily adopted and shall
immediately refer the matter to the appropriate Supporting
Organization (Supporting Organization) for its evaluation and review
with a detailed explanation of its reasons for establishing the temporary
specification or policy and why the Board believes the policy should
receive the consensus support of Internet stakeholders. If the period of
time for which the specification or policy is adopted exceeds ninety (90)
days, the Board shall reaffirm its temporary establishment every ninety
(90) days for a total period not to exceed one (1) year, in order to
maintain such specification or policy in effect until such time as it meets
the standard set forth in Subsection 4.3.1. If the standard set forth in
Subsection 4.3.1 is not met within the temporary period set by the
Board, or the council of the Supporting Organization (Supporting
Organization) to which it has been referred votes to reject the
temporary specification or policy, it will no longer be a "Consensus
(Consensus) Policy."

4.3.5 For all purposes under this Agreement, the policies specifically
identified by ICANN (Internet Corporation for Assigned Names and
Numbers) on its website (www.icann.org/general/consensus-
policies.htm) at the date of this Agreement as having been adopted by
the ICANN (Internet Corporation for Assigned Names and Numbers)
Board of Directors before the date of this Agreement shall be treated in
the same manner and have the same effect as "Consensus
(Consensus) Policies" and accordingly shall not be subject to review
under Subsection 4.3.2.

4.3.6 In the event that, at the time the ICANN (Internet Corporation for
Assigned Names and Numbers) Board of Directors establishes a
specification or policy under Subsection 4.3.1 during the Term of this
Agreement, ICANN (Internet Corporation for Assigned Names and
Numbers) does not have in place an Independent Review Panel

established under ICANN (Internet Corporation for Assigned Names
and Numbers)'s bylaws, the fifteen-working-day period allowed under
Subsection 4.3.2 to seek review shall be extended until fifteen (15)
working days after ICANN (Internet Corporation for Assigned Names
and Numbers) does have such an Independent Review Panel in place
and Registrar shall not be obligated to comply with the specification or
policy in the interim.

4.4 Time Allowed for Compliance. Registrar shall be afforded a reasonable
period of time after notice of the establishment of a specification or policy
under Subsection 4.3 is e-mailed to Registrar and posted on the ICANN
(Internet Corporation for Assigned Names and Numbers) website at
<www.icann.org/general/consensus-policies.htm> in which to comply with that
specification or policy, taking into account any urgency involved.

## 5. MISCELLANEOUS PROVISIONS.

5.1 Specific Performance. While this Agreement is in effect, either party may
seek specific performance of any provision of this Agreement in the manner
provided in Section 5.6 below, provided the party seeking such performance
is not in material breach of its obligations.

5.2 Termination of Agreement by Registrar. This Agreement may be
terminated before its expiration by Registrar by giving ICANN (Internet
Corporation for Assigned Names and Numbers) thirty (30) days written
notice. Upon such termination by Registrar, Registrar shall not be entitled to
any refund of fees paid to ICANN (Internet Corporation for Assigned Names
and Numbers) pursuant to this Agreement.

5.3 Termination of Agreement by ICANN (Internet Corporation for Assigned
Names and Numbers). This Agreement may be terminated before its
expiration by ICANN (Internet Corporation for Assigned Names and
Numbers) in any of the following circumstances:

5.3.1 There was a material misrepresentation, material inaccuracy, or
materially misleading statement in Registrar's application for
accreditation or any material accompanying the application.

5.3.2 Registrar:

5.3.2.1 is convicted by a court of competent jurisdiction of a felony or other serious offense related to financial activities, or is judged by a court of competent jurisdiction to have committed fraud or breach of fiduciary duty, or is the subject of a judicial determination that ICANN (Internet Corporation for Assigned Names and Numbers) reasonably deems as the substantive equivalent of those offenses; or

5.3.2.2 is disciplined by the government of its domicile for conduct involving dishonesty or misuse of funds of others.

5.3.3 Any officer or director of Registrar is convicted of a felony or of a misdemeanor related to financial activities, or is judged by a court to have committed fraud or breach of fiduciary duty, or is the subject of a judicial determination that ICANN (Internet Corporation for Assigned Names and Numbers) deems as the substantive equivalent of any of these; provided, such officer or director is not removed in such circumstances. Upon the execution of this agreement, Registrar shall provide ICANN (Internet Corporation for Assigned Names and Numbers) with a list of the names of Registrar's directors and officers. Registrar also shall notify ICANN (Internet Corporation for Assigned Names and Numbers) within thirty (30) days of any changes to its list of directors and officers.

5.3.4 Registrar fails to cure any breach of this Agreement (other than a failure to comply with a policy adopted by ICANN (Internet Corporation for Assigned Names and Numbers) during the term of this Agreement as to which Registrar is seeking, or still has time to seek, review under Subsection 4.3.2 of whether a consensus is present) within fifteen (15) working days after ICANN (Internet Corporation for Assigned Names and Numbers) gives Registrar notice of the breach.

5.3.5 Registrar fails to comply with a ruling granting specific performance under Subsections 5.1 and 5.6.

5.3.6 Registrar continues acting in a manner that ICANN (Internet Corporation for Assigned Names and Numbers) has reasonably determined endangers the stability or operational integrity of the Internet after receiving three (3) days notice of that determination.

5.3.7 Registrar becomes bankrupt or insolvent.

This Agreement may be terminated in circumstances described in Subsections 5.3.1 - 5.3.6 above only upon fifteen (15) days written notice to Registrar (in the case of Subsection 5.3.4 occurring after Registrar's failure to cure), with Registrar being given an opportunity during that time to initiate arbitration under Subsection 5.6 to determine the appropriateness of termination under this Agreement. If Registrar acts in a manner that ICANN (Internet Corporation for Assigned Names and Numbers) reasonably determines endangers the stability or operational integrity of the Internet and upon notice does not immediately cure, ICANN (Internet Corporation for Assigned Names and Numbers) may suspend this Agreement for five (5) working days pending ICANN (Internet Corporation for Assigned Names and Numbers)'s application for more extended specific performance or injunctive relief under Subsection 5.6. This Agreement may be terminated immediately upon notice to Registrar in circumstance described in Subsection 5.3.7 above.

5.4 Term of Agreement; Renewal; Right to Substitute Updated Agreement. This Agreement shall be effective on the Effective Date and shall have an initial term running until the Expiration Date, unless sooner terminated. Thereafter, if Registrar seeks to continue its accreditation, it may apply for renewed accreditation, and shall be entitled to renewal provided it meets the ICANN (Internet Corporation for Assigned Names and Numbers)-adopted specification or policy on accreditation criteria then in effect, is in compliance with its obligations under this Agreement, as it may be amended, and agrees to be bound by terms and conditions of the then-current Registrar accreditation agreement (which may differ from those of this Agreement) that ICANN (Internet Corporation for Assigned Names and Numbers) adopts in accordance with Subsection 2.3 and Subsection 4.3. In connection with renewed accreditation, Registrar shall confirm its assent to the terms and conditions of the then-current Registrar accreditation agreement by signing that accreditation agreement. In the event that, during the Term of this Agreement, ICANN (Internet Corporation for Assigned Names and Numbers) posts on its web site an updated form of registrar accreditation agreement applicable to Accredited registrars, Registrar (provided it has not received (1) a notice of breach that it has not cured or (2) a notice of termination of this Agreement under Subsection 5.3 above) may elect, by giving ICANN (Internet Corporation for Assigned Names and Numbers) written notice, to enter an agreement in the updated form in place of this Agreement. In the event of

such election, Registrar and ICANN (Internet Corporation for Assigned Names and Numbers) shall promptly sign a new accreditation agreement that contains the provisions of the updated form posted on the web site, with the length of the term of the substituted agreement as stated in the updated form posted on the web site, calculated as if it commenced on the date this Agreement was made, and this Agreement will be deemed terminated.

5.5 <u>Addition or Deletion of TLDs for Which Registrar Accredited</u>. On the Effective Date, Registrar shall be accredited according to Subsection 2.1 for each TLD (Top Level Domain) as to which an appendix executed by both parties is attached to this Agreement. During the Term of this Agreement, Registrar may request accreditation for any additional TLD (Top Level Domain)(s) by signing an additional appendix for each additional TLD (Top Level Domain) in the form prescribed by ICANN (Internet Corporation for Assigned Names and Numbers) and submitting the appendix to ICANN (Internet Corporation for Assigned Names and Numbers). In the event ICANN (Internet Corporation for Assigned Names and Numbers) agrees to the request, ICANN (Internet Corporation for Assigned Names and Numbers) will sign the additional appendix and return a copy of it to Registrar. The mutually signed appendix shall thereafter be an appendix to this Agreement. During the Term of this Agreement, Registrar may abandon its accreditation for any TLD (Top Level Domain) under this Agreement (provided that Registrar will thereafter remain accredited for at least one (1) TLD (Top Level Domain) under this Agreement) by giving ICANN (Internet Corporation for Assigned Names and Numbers) written notice specifying the TLD (Top Level Domain) as to which accreditation is being abandoned. The abandonment shall be effective thirty (30) days after the notice is given.

5.6 <u>Resolution of Disputes Under this Agreement</u>. Disputes arising under or in connection with this Agreement, including (1) disputes arising from ICANN (Internet Corporation for Assigned Names and Numbers)'s failure to renew Registrar's accreditation and (2) requests for specific performance, shall be resolved in a court of competent jurisdiction or, at the election of either party, by an arbitration conducted as provided in this Subsection 5.6 pursuant to the International Arbitration Rules of the American Arbitration Association ("AAA"). The arbitration shall be conducted in English and shall occur in Los Angeles County, California, USA. There shall be three (3) arbitrators: each party shall choose one (1) arbitrator and, if those two (2) arbitrators do not agree on a third arbitrator, the third shall be chosen by the AAA. The parties shall bear the costs of the arbitration in equal shares, subject to the right of

the arbitrators to reallocate the costs in their award as provided in the AAA rules. The parties shall bear their own attorneys' fees in connection with the arbitration, and the arbitrators may not reallocate the attorneys' fees in conjunction with their award. The arbitrators shall render their decision within ninety (90) days of the conclusion of the arbitration hearing. In the event Registrar initiates arbitration to contest the appropriateness of termination of this Agreement by ICANN (Internet Corporation for Assigned Names and Numbers) or suspension of Registrar's ability to create new Registered Names or initiate inbound transfers of Registered Names under Section 2.1 above, Registrar may at the same time request that the arbitration panel stay the termination or suspension until the arbitration decision is rendered. The arbitration panel shall order a stay: (i) upon showing by Registrar that continued operations would not be harmful to consumers or the public interest, or (ii) upon appointment by the arbitration panel of a qualified third party to manage the operations of the Registrar until the arbitration decision is rendered. In furtherance of sub-clause (ii) above, the arbitration panel is hereby granted all necessary authority to appoint a qualified third-party to manage the operations of the Registrar upon the Registrar's request and if the panel deems it appropriate. In selecting the third-party manager, the arbitration panel shall take into consideration, but shall not be bound by, any expressed preferences of Registrar. In the event Registrar initiates arbitration to contest an Independent Review Panel's decision under Subsection 4.3.3 sustaining the Board's determination that a specification or policy is supported by consensus, Registrar may at the same time request that the arbitration panel stay the requirement that it comply with the policy until the arbitration decision is rendered, and that request shall have the effect of staying the requirement until the decision or until the arbitration panel has granted an ICANN (Internet Corporation for Assigned Names and Numbers) request for lifting of the stay. In all litigation involving ICANN (Internet Corporation for Assigned Names and Numbers) concerning this Agreement (whether in a case where arbitration has not been elected or to enforce an arbitration award), jurisdiction and exclusive venue for such litigation shall be in a court located in Los Angeles, California, USA; however, the parties shall also have the right to enforce a judgment of such a court in any court of competent jurisdiction. For the purpose of aiding the arbitration and/or preserving the rights of the parties during the pendency of an arbitration, the parties shall have the right to seek temporary or preliminary injunctive relief from the arbitration panel or in a court located in Los Angeles, California, USA, which shall not be a waiver of this arbitration agreement.

5.7 <u>Limitations on Monetary Remedies for Violations of this Agreement</u>. <u>ICANN (Internet Corporation for Assigned Names and Numbers)</u>'s aggregate monetary liability for violations of this Agreement shall not exceed the amount of accreditation fees paid by Registrar to <u>ICANN (Internet Corporation for Assigned Names and Numbers)</u> under Subsection 3.9 of this Agreement. Registrar's monetary liability to <u>ICANN (Internet Corporation for Assigned Names and Numbers)</u> for violations of this Agreement shall be limited to accreditation fees owing to <u>ICANN (Internet Corporation for Assigned Names and Numbers)</u> under this Agreement and, except in the case of a good faith disagreement concerning the interpretation of this agreement, reasonable payment to <u>ICANN (Internet Corporation for Assigned Names and Numbers)</u> for the reasonable and direct costs including attorney fees, staff time, and other related expenses associated with legitimate efforts to enforce Registrar compliance with this agreement and costs incurred by <u>ICANN (Internet Corporation for Assigned Names and Numbers)</u> to respond to or mitigate the negative consequences of such behavior for registered name holders and the Internet community. In the event of repeated willful material breaches of the agreement, Registrar shall be liable for sanctions of up to five (5) times <u>ICANN (Internet Corporation for Assigned Names and Numbers)</u>'s enforcement costs, but otherwise in no event shall either party be liable for special, indirect, incidental, punitive, exemplary, or consequential damages for any violation of this Agreement.

5.8 <u>Handling by ICANN (Internet Corporation for Assigned Names and Numbers) of Registrar-Supplied Data</u>. Before receiving any Personal Data from Registrar, <u>ICANN (Internet Corporation for Assigned Names and Numbers)</u> shall specify to Registrar in writing the purposes for and conditions under which <u>ICANN (Internet Corporation for Assigned Names and Numbers)</u> intends to use the Personal Data. <u>ICANN (Internet Corporation for Assigned Names and Numbers)</u> may from time to time provide Registrar with a revised specification of such purposes and conditions, which specification shall become effective no fewer than thirty (30) days after it is provided to Registrar. <u>ICANN (Internet Corporation for Assigned Names and Numbers)</u> shall not use Personal Data provided by Registrar for a purpose or under conditions inconsistent with the specification in effect when the Personal Data was provided. <u>ICANN (Internet Corporation for Assigned Names and Numbers)</u> shall take reasonable steps to avoid uses of the Personal Data by third parties inconsistent with the specification.

5.9 <u>Assignment; Change of Ownership or Management</u>.

5.9.1 Either party may assign or transfer this Agreement only with the prior written consent of the other party, which shall not be unreasonably withheld.

5.9.2 To the extent that an entity acquires a controlling interest in Registrar's stock, assets or business, Registrar shall provide ICANN (Internet Corporation for Assigned Names and Numbers) notice within thirty (30) days of such an acquisition. Such notification shall include a statement that affirms that Registrar meets the ICANN (Internet Corporation for Assigned Names and Numbers)-adopted specification or policy on accreditation criteria then in effect, and is in compliance with its obligations under this Agreement. Within thirty (30) days of such notification, ICANN (Internet Corporation for Assigned Names and Numbers) may request additional information from the Registrar establishing compliance with this Agreement, in which case Registrar must supply the requested information within fifteen (15) days. Any disputes concerning Registrar's continued accreditation shall be resolved pursuant to Subsection 5.6.

5.10 No Third-Party Beneficiaries. This Agreement shall not be construed to create any obligation by either ICANN (Internet Corporation for Assigned Names and Numbers) or Registrar to any non-party to this Agreement, including any Registered Name Holder.

5.11 Notices, Designations, and Specifications. Except as provided in Subsection 4.4, all notices to be given under this Agreement shall be given in writing at the address of the appropriate party as set forth below, unless that party has given a notice of change of address in writing. Each party shall notify the other party within thirty (30) days of any change to its contact information. Any notice required by this Agreement shall be deemed to have been properly given when delivered in person, when sent by electronic facsimile with receipt of confirmation of delivery, or when scheduled for delivery by internationally recognized courier service. Designations and specifications by ICANN (Internet Corporation for Assigned Names and Numbers) under this Agreement shall be effective when written notice of them is deemed given to Registrar.

If to ICANN (Internet Corporation for Assigned Names and Numbers), addressed to:

Internet Corporation for Assigned Names and Numbers
12025 Waterfront Drive, Suite 300
Los Angeles, California 90094-2536 USA
Attention: Registrar Relations
Telephone: 1/310/823-9358
Facsimile: 1/310/823-8649

If to Registrar, addressed to:

[Registrar Name]
[Courier Address]
[Mailing Address]
Attention: [contact person]
Registrar Website URL (Uniform Resource Locator): [URL (Uniform Resource Locator)]
Telephone: [telephone number]
Facsimile: [fax number]
e-mail: [e-mail address]

5.12 Dates and Times. All dates and times relevant to this Agreement or its performance shall be computed based on the date and time observed in Los Angeles, California, USA.

5.13 Language. All notices, designations, and specifications made under this Agreement shall be in the English language.

5.14 Amendments and Waivers. No amendment, supplement, or modification of this Agreement or any provision hereof shall be binding unless executed in writing by both parties. No waiver of any provision of this Agreement shall be binding unless evidenced by a writing signed by the party waiving compliance with such provision. No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provision hereof, nor shall any such waiver constitute a continuing waiver unless otherwise expressly provided.

5.15 Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

5.16 Entire Agreement. Except to the extent (a) expressly provided in a written agreement executed by both parties concurrently herewith or (b) of

written assurances provided by Registrar to ICANN (Internet Corporation for Assigned Names and Numbers) in connection with its Accreditation, this Agreement (including the appendices, which form part of it) constitutes the entire agreement of the parties pertaining to the accreditation of Registrar and supersedes all prior agreements, understandings, negotiations and discussions, whether oral or written, between the parties on that subject.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed in duplicate by their duly authorized representatives.

ICANN (Internet Corporation for Assigned Names and Numbers)

By: _____

[Registrar]

By: _____

Name: _____

Title: _____