UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

GOOGLE LLC,

                              Plaintiff,                          Civil Action No.: 1:21-cv-10260-DLC

- against -

DMITRY STAROVIKOV;
ALEXANDER FILIPPOV;
and Does 1-15,

                              Defendants.

-------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS DMITRY STAROVIKOV AND ALEXANDER FILIPPOV'S MOTION UNDER FED. R. CIV. P. Rule 55 (C), TO VACATE THE ENTRY OF DEFAULT AND TO DISMISS THE ACTION**

/s/ Igor Litvak, Esq.
_____

Igor B Litvak
Attorneys for Defendants
The Litvak Law Firm
1733 Sheepshead Bay Rd., Suite 22
Brooklyn, NY 11235
Tel/Fax: 718-989-2908
Email: Igor@LitvakLawNY.com

i

**TABLE OF CONTENTS**

I.   FACTUAL AND PROCEDURAL BACKGROUND ........................................................... 1

II.   THE COURT SHOULD VACATE THE ENTRY OF DEFAULT AGAINST
DEFENDANTS ..................................................................................................................... 2

   A. Standards for Motion to Set Aside an Entry of Default Pursuant to Rule 55(c) of Federal
Rules of Civil Procedure ....................................................................................................... 2

   B. Defendants' Default was Not Willful ............................................................................. 5

   C. Defendants' Default did NOT Prejudice Plaintiff ........................................................ 6

   D. Defendants Sufficiently Present Meritorious Defenses ................................................. 7

     1. The Court Lacks Personal Jurisdiction Over Defendants .................................... 7

     2. Plaintiff Fails to State a Claim for RICO Violation ........................................ 14

     3. Plaintiff Fails to State a Claim for Violation of The Electronic Communications ............ 17

     Privacy Act, 18 U.S.C. §§ 2701 et seq. ................................................................. 17

     4. Defendants Reserve Their Arguments with Respect to Whether Plaintiff Adequately
Alleges Trademark and Unfair Competition Violations, Infringement of Federally
Registered Trademark 15 U.S.C. § 1114(1), Federal Unfair Competition and False
Designation of Origin 15 U.S.C. § 1125(a), Federal False Advertising in Violation of the
Lanham Act 15 U.S.C. § 1125(a) ............................................................................. 18

     5. Plaintiff Fails to State a Claim for Tortious Interference with Business Relationship ...... 18

     6. Plaintiff Fails to State a Claim for Unjust Enrichment ...................................... 19

     7. This Court Should Dismiss the Complaint on *Forum Non Conveniens* Grounds ............ 20

III.   UPON FINDING THAT THE ENTRY OF DEFAULT IS VOID FOR WANT OF
JURISDICTION AND FOR FAILURE TO STATE A CLAIM THE COURT MUST DISMISS
THE ACTION .................................................................................................................... 22

IV. CONCLUSION ............................................................................................................... 23

Defendants DMITRY STAROVIKOV AND ALEXANDER FILIPPOV (hereinafter, "Defendants"), respectfully submit the following memorandum of law in support of their motion for an order vacating the entry of default under Fed. R. Civ. P. 55(c) and dismissing the action for lack of personal jurisdiction, failure to state a claim, and on forum *non-conveniens* grounds.

## I.        FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Google LLC ("Plaintiff") commenced this action on December 2, 2021, by filing a Complaint ("Complaint"), seeking compensatory and injunctive relief against Defendants. To wit, the complaint alleging claims under (1) the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c)-(d) (Count I); (2) the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (Count II); (3) the Electronic Communications Privacy Act, 18 U.S.C. § 2701 (Count III); (4) the Lanham Act (Count IV); (5) and common law theories of unfair competition and unjust enrichment (Counts V-VI). Subsequently, Plaintiff filed an Order to Show Cause seeking, *inter alia*, "injunctive and other relief to stop Defendants Dmitry Starovikov and Alexander Filippov, and Does 1 through 15- through their participation in, and operation of, the Glupteba Enterprise-from continuing to control and operate a botnet of over a million devices, continuing to distribute malware to infect new devices, and continuing to carry out criminal schemes." Dkt. 8 at 1. Further, Plaintiff requested the Court to "grant alternative service of the filings in this matter via mail, email, text, and/or service through ICANN because Google establishes that traditional service methods would be futile." Id. at 9.  The Court granted the request for alternative service by its Order dated December 16, 2021.  Dkt. No. 17.  Shortly, Plaintiff filed voluminous documents in support of its Motion for Temporary Restraining Order. Dkt. Nos. 18-24.

On January 31, 2022, Plaintiff filed a letter addressed to Judge Denise L. Cote, updating the Court on the status of the case and requesting the schedule for its request for entry of default and Motion for default judgment and a permanent injunction.  Dkt. No. 32. The Court granted

this request, ordering filing the request for entry of default under Rule 55(a) on February 7, 2022, and filing its Motion for default judgment under Rule 55(b) and permanent injunction "21 Days After Any Entry Of Default."  Dkt. No. 33. The clerk filed the certificate of default on February 8, 2022.  Dkt. 38.  The undersigned was retained by Defendants on February 16, 2022, and he filed his Notice of Appearance on behalf of Dmitry Starovikov on February 16, 2022, and on behalf of Alexander Filippov on February 22, 2022.  Dkt. Nos. 39, 40.

## II.     THE COURT SHOULD VACATE THE ENTRY OF DEFAULT AGAINST DEFENDANTS

Defendants' failure to answer falls within the scope of Rule 55(c) because Defendants sufficiently demonstrate that the default was NOT willful, setting aside the default would NOT prejudice the adversary and Defendants demonstrate that they have meritorious defenses. Therefore, this Court should vacate the entry of default.

### A. Standards for Motion to Set Aside an Entry of Default Pursuant to Rule 55(c) of Federal Rules of Civil Procedure

"Federal Rule of Civil Procedure 55 provides a two-step process that the Court must follow before it may enter a default judgment against a defendant." Robertson v. Doe, 05-CV-7046, 2008 U.S. Dist. LEXIS 47860, at 3 (S.D.N.Y. June 19, 2008). "First, under Rule 55(a), when a party fails to 'plead or otherwise defend . . . the clerk must enter the party's default.'" Robertson, 2008 U.S. Dist. LEXIS 47860, at 3 (quoting Fed. R. Civ. P. 55(a)). "Second, pursuant to Rule 55(b)(2), the party seeking default judgment is required to present its application for entry of judgment to the court." Id. "Notice of the application must be sent to the defaulting party so that it has an opportunity to show cause why the court should not enter a default." Id.

A clerk's entry of default may be set aside by a court for good cause. Fed. R. Civ. P. 55(c). "Generally, the standard for setting aside the entry of a default pursuant to [Fed. R. Civ. P.] 55(c) is less rigorous than the 'excusable neglect' standard for setting aside a default judgment

by Motion pursuant to [Fed. R. Civ. P.] 60(b)." <u>Meehan v. Snow</u>, 652 F.2d 274, 276 (2d Cir. 1981). "Courts in this Circuit have construed 'good cause' in this context broadly." <u>Brady v. W. Overseas Corp.</u>, 04-CV-2878, 2008 U.S. Dist. LEXIS 93126, at 4 (E.D.N.Y. Nov. 14, 2008) (citing <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 96 (2d Cir. 1993). In deciding whether good cause exists, the court examines the following three factors: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." <u>Brady</u>, 2008 U.S. Dist. LEXIS 93126, at 4. "In applying this analysis, the court must bear in mind the well-established preference for resolving litigation disputes on the merits." <u>Id</u>. "**Any doubts as to whether a default should be vacated must be resolved in favor of trial on the merits**." <u>Id</u>. (emphasis added). As the Second Circuit states, **"[t]he extreme sanction of a default judgment must remain a weapon of last, rather than first, resort, which should only be imposed upon a serious showing of willful default**." <u>Davis v. Musler</u>, 713 F.2d 907, 916 (2d Cir. 1983) ("This court has never hesitated to reverse the denial of a motion to vacate a default judgment where further fact-finding was necessary to ensure that substantial justice was served.")

As to the first factor, willfulness within this Circuit does not include careless or negligent errors even when the negligence is gross. <u>See</u> <u>Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co.</u>, 92 F.3d 57, 61 (2d Cir. 1996)("[t]hough we have elaborated little on the 'willfulness' standard . . . this Court has recently implied that it will look for bad faith, or at least something more than mere negligence"). "To find that a default was willful, it must be clear the defaulting party engaged in **deliberate or egregious conduct**." <u>Argus Research Group, Inc. v. Argus Securities, Inc.</u>, 204 F. Supp. 2d 529, 531 (E.D.N.Y. 2002)(emphasis added).

As to the second factor, "[t]o establish prejudice in the context of a default, there must be a showing that the delay will result in the loss of evidence, create increased difficulties of

discovery, or provide greater opportunity for fraud and collusion." <u>Arthur F. Williams, Inc. v. Helbig</u>, 208 F.R.D. 41, 45 (E.D.N.Y. 2002) (quoting <u>Davis v. Musler</u>, 713 F.2d 907, 916 (2d Cir. 1983)) (internal quotation marks omitted). Mere delay does not constitute prejudice. <u>See</u> N.<u>Y. v. Green</u>, 420 F.3d 99, 110 (2d Cir. 2005) (affirming grant of motion to vacate default judgment because of, *inter alia*, lack of prejudice). <u>Davis</u>, 713 F. 2d at 916 ("delay alone is not a sufficient basis for establishing prejudice"). Similarly, costs and legal fees in pursuing a default judgment, as well as the costs incurred with respect to countering a defendant's motion to vacate, do not constitute prejudice. <u>See</u> <u>Hernandez v. La Cazuela de Mari Rest., Inc.</u>, 538 F. Supp. 2d 528, 534 (E.D.N.Y. 2007).

As to the third factor, a defense is meritorious where it is "good at law so as to give the fact finder some determination to make." <u>Addison v. Reitman Blacktop, Inc.</u>, 272 F.R.D. 72, 81 (E.D.N.Y. 2010). The test to determine whether a meritorious defense has been presented is measured "not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." <u>Enron Oil Corp.</u>, 10 F.3d at 98. Evidence must be submitted to support the proposed defense amounting to more than a conclusory denial. <u>Id</u>. "Although in an answer, general denials are enough to raise a meritorious defense, the moving party on a motion to reopen a default must support its general denials with some underlying facts." <u>Todtman, Nachamie, Spizz & Johns, P.C. v. Ashraf</u>, 241 F.R.D. 451, 456 (S.D.N.Y. 2007).  However, allegations can be found to be meritorious where "they contain even a hint of a suggestion which, if proven at trial, would constitute a complete defense." <u>Weisel v. Pischel</u>, 197 F.R.D. 231, 239 (E.D.N.Y. 2000). A legal defense may also satisfy the meritorious defense element of motion to set aside entry of default. <u>See</u> <u>Woodson v. Loram Maintenance of Way, Inc.</u>, 2011 WL 3608232, at 1 (W.D.N.Y. Aug. 12, 2011)("The question is not whether Defendant Grinberg's defense ultimately succeeds but rather whether the

defense could be meritorious").  It is critical to note that a defendant need not "conclusively establish the validity of the defense(s) asserted" for it to qualify as a meritorious defense. Davis, 713 F.2d at 916 (2d Cir. 1983); Govt. Emples. Ins. Co. v Five Boro Psychological Servs., P.C., No. 12-CV-2448 (JG)(VMS), 2013 U.S. Dist. LEXIS 206656, at 10 (E.D.N.Y. Feb. 8, 2013).

## B. Defendants' Default was Not Willful

Based on the Plaintiff's pattern of ineffective attempts to serve Defendants, their default is not even careless or negligent let alone willful. According to the Declaration of Laura Harris dated December 1, 2021, see Dkt. No. 7(f), Plaintiff attempted to serve Defendants at "physical address in Russia believed to be used by the Defendants: 123112, Moscow, Presnenskaya Embankment 12, Office 5," via "email addresses and text messages associated with defendants," and through "ICANN—a California non-profit partnership responsible for coordinating domain names and IP addresses worldwide." Id. at 7-8.  Additionally, Plaintiff claims that Defendants should have found out about this case from newspapers.

However, according to Mr. Starovikov and Mr. Filipov's declarations, they did not receive any of the purportedly served documents.  They state that the physical address that the papers were purportedly served is erroneous for two reasons. First, the company called Investauto LLC, was liquidated on September 23, 2021, as Plaintiff itself correctly stated in the complaint, see Dkt. No. 5 at 29. This means that in December 2021 Plaintiff was serving Defendants at an address that they Plaintiff knew was no longer used as of September 2021. Second, at Presnenskaya Embankment 12, the address Plaintiff attempted to serve Defendants is shared by 2 Towers, 65 and 95 floors high, also known as Moscow City, Exhibit 1, and those towers contain hundreds of offices rented by hundreds of firms.  Decl. at 5 As such, any documents purportedly sent by Plaintiff were apparently lost as designation "Office 5" is incorrect as these towers have many of offices numbered 5. Id

In the same vein, Defendants declare that they never received any emails regarding this matter as all their email accounts specified by Plaintiff were blocked by Google in early December 2021. Decl. at 6.  With respect to texts, Mr. Starovikov states that Plaintiff purportedly texted to an invalid number as the number ending 2229 does not belong to him. Starovikov Decl. at 6. Mr. Filipov vaguely remembers receiving a text with a link attached to it; however, he did not open it as it looked suspicious, resembling spam or a hacking attempt, so he just deleted the text without opening it. Filipov Decl. at 6.  As for the WhatsApp message, at that time that Telephone number did not have a WhatsApp installed.  Id.

Finally, Defendants indicated that they did not read the purported notices about the lawsuit in newspapers; similarly, they never received any notification from ICANN.  Decl. at 7.

In fact, Defendants found out about the case only at the end of January 2022, from some friends who heard about it. Upon learning, it took them some time to translate the complaint as they are not native English speakers.  Even after reading the translation, they did not clearly understand what is the nature of Plaintiff's allegations against them as they are not familiar with United States law and legal procedure.  Declr. at 8.  It also took them a while to locate and retain a qualified Russian-speaking attorney in this district. Therefore, Defendants' default was not willful as they have insufficient notice about this lawsuit in light of multiple failed service of process attempts.

### C. Defendants' Default did NOT Prejudice Plaintiff

It is clear based on the circumstance that a brief, month-and-a-half delay caused by the default did not "result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." Moreover, Plaintiff could only blame itself for not being diligent enough in locating and serving Defendants in Moscow. As such, Plaintiff could not establish prejudice in the context of the default.

### D. Defendants Sufficiently Present Meritorious Defenses

### 1. The Court Lacks Personal Jurisdiction Over Defendants

### i. Standards for Personal Jurisdiction Over a Party

Requiring a court to have personal jurisdiction over a party as a matter of constitutional due process "protects an individual's liberty interest in not being subject to the binding judgment of a forum with which he has established no meaningful 'contacts, ties, or relations.'" ITL Int'l, Inc. v. Constenla, S.A., 669 F.3d 493, 498 (5 Cir. 2012). A party's contacts with a forum must be sufficient for the party to "reasonably anticipate being hauled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

In Daimler AG v. Bauman, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014), the United States Supreme Court, in a unanimous decision reversed a lower court's assertion of extraterritorial jurisdiction over a foreign party - corporation holding that a United States court cannot exercise general personal jurisdiction on claims unrelated to the defendant's activities in the forum in which the court sit since general personal jurisdiction over a corporate defendant exists only in a state where that corporation's "affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." Id.

The Supreme Court's decision in Daimler continues its recent trend of restricting the jurisdiction of United States courts to hear cases brought by foreign plaintiffs against foreign defendants for conduct occurring outside of the United States.  See, e.g., Kiobel v. Royal Dutch Petroleum Co., 133 S. Ct. 1659 (2013) (alien tort claim act does not apply extraterritorially); Morrison v. National Australia Bank Ltd., 130 S. Ct. 2869 (2010) (securities laws do not apply extraterritorially); United States v. Vilar, 729 F.3d 62 (2d Cir. 2013) (criminal application of securities laws does not apply to extraterritorial conduct); Norex Petroleum Ltd. v. Access Industries, Inc., 631 F.3d 29 (2d Cir. 2010) (**applying Morrison to bar extraterritorial**

7

**application of civil RICO claims**).

The Second Circuit noted that unlike "state courts[,] [which] are courts of general jurisdiction[,] . . . federal courts are courts of limited jurisdiction which thus require a specific grant of jurisdiction." Foxhall Realty Law Offices, Inc. v. Telecomm. Premium Servs., Ltd., 156 F.3d 432, 435 (2d Cir. 1998) (citing Sheldon v. Sill, 49 U.S. (8 How.) 441, 449, 12 L. Ed. 1147 (1850)). "The validity of an order of a federal court depends upon that court's having jurisdiction over both the subject matter and the parties." Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 701, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982). While the requirement of subject matter jurisdiction "functions as a restriction on federal power," id. at 702, **the need for personal jurisdiction is fundamental to "the court's power to exercise control over the parties**," Leroy v. Great W. United Corp., 443 U.S. 173, 180, 99 S. Ct. 2710, 61 L. Ed. 2d 464 (1979)(emphasis added) "Some basis must be shown, whether arising from the respondent's residence, his conduct, his consent, the location of his property or otherwise, to justify his being subject to the court's power." Frontera Res. Azer. Corp. v. State Oil Co. of the Azer. Republic, 582 F.3d 393, 397 (2d Cir. 2009)(citations omitted).

When a defendant files a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of proving grounds for jurisdiction by a preponderance of the evidence. The general rule, when no discovery has been completed, is that a Plaintiff need only make a *prima facie* showing of jurisdiction at the motion to dismiss stage. Landoil Resources Corp. v. Alexander & Alexander Services, Inc., 918 F.2d 1039, 1043 (2d Cir. 1990); Gessler v. Sobieski Destylarnia S.A., No. 06 Civ. 6510, 2010 U.S. Dist. LEXIS 71414 (S.D.N.Y. July 16, 2010).

The due process test for personal jurisdiction has two related components: the "minimum contacts" inquiry and the "reasonableness" inquiry.  See Metropolitan Life Ins. Co. v. Robertson-

Ceco Corp., 84 F.3d 560, 567-568, 1996 U.S. App. LEXIS 11784, 15-16 (2d Cir. 1996).  The court must first determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction. See International Shoe Company v. Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945).

For purposes of this initial inquiry, a distinction is made between "specific" jurisdiction and "general" jurisdiction. Specific jurisdiction exists when "a state exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum"; a court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts. See Metropolitan Life Ins. Co., 84 F.3d at 567-68(citation omitted).  Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's "continuous and systematic general business contacts. Id. at 568.

The second stage of the due process inquiry asks whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice"--that is, whether it is reasonable under the circumstances of the particular case.  See International Shoe, 326 U.S. at 316.  The Supreme Court has held that the court must evaluate the following factors as part of this "reasonableness" analysis: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.  Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 113, 107 S. Ct. 1026, 1033, 94 L. Ed. 2d 92, 105 (1987).

The two components of the due process inquiry are related inasmuch as both originated in

9

the idea that a court cannot subject a person to its authority where the maintenance of the suit would offend "traditional notions of fair play and substantial justice." See International Shoe, 326 U.S. at 316.

A reviewing court must first examine the defendant's contacts with the forum. If the same does not exist in sufficient abundance, that is, if the constitutionally necessary first-tier minimum is lacking, the inquiry ends. Donatelli v. NHL, 893 F.2d 459, 465, 1990 U.S. App. LEXIS 393, 16 (1990) (emphasis added). The Second Circuit instructed that for general jurisdiction purposes "contacts are commonly assessed over a period of years prior to the plaintiff's filing of the complaint." Metropolitan Life Ins. Co., 84 F.3d at 569.

### ii. Defendants Have No Contacts Whatsoever with the Forum State or the United States Generally

In the case at bar, Defendants have no contacts whatsoever with either the forum state or the United States regarding allegations in the complaint. Defendants have never performed operations or solicited business within the state or intend to sell any product to the forum state. See Declr. at 9. They have never had any office or a representative in the forum state or in the United States. Id. It is well-settled that mere solicitation of business through visits, telephone calls, and telexes to the forum state does not support general jurisdiction, see Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1984 U.S. App. LEXIS 18194 (9th Cir. 1984), cert. denied, 471 U.S. 1066, 105 S. Ct. 2143, 85 L. Ed. 2d 500 (1985). Defendants worked for Valtrorn LLC as software engineers and the company's products branded Voltonwork and Undefined.team did not target the United States users/market; instead, the software targeted customers in the former U.S.S.R. Republics, India, Indonesia. Id. at 10. Inadvertently, the software might have been used by the United States users, but Defendants neither intended that usage nor advertised or solicited it in the United States. Id. It should be noted that any financial activity in a forum that is

unrelated to any systematic business conducted in that forum is generally insufficient for jurisdictional purposes.   See, e.g., First City Nat'l Bank and Trust Co. v. Zuckerman, 682 F. Supp. 182, 183 (S.D.N.Y. 1987)(finding no personal jurisdiction even where "defendant borrowed money from a New York bank, agreed to provide financial information to that bank, agreed to repay the loan in New York, agreed that the note would be governed by New York law, and directed that the money be paid to a third-party").

While Plaintiff alleged that Defendants "have transacted business and engaged in tortious conduct in the United States and in New York," Compl. at 20, such conclusory allegations are insufficient to make a *prima facie* showing of jurisdiction; i.e. to demonstrate the requisite minimum contacts between the Defendants and the forum state. This Court is not bound by a pleading's "legal conclusions," or its "unsupported conclusions," or its "unwarranted inferences,"  or its "unwarranted deductions,"  or its "footless conclusions of law,"  or its "mere conclusory statements," and its "sweeping legal conclusions cast in the form of factual allegations."[1]   As such, the Court is not required to continue to the "reasonableness" stage of the inquiry and apply the five-factor test of Asahi to assess whether the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice."

Even assuming for the sake of the argument that Plaintiff demonstrated the requisite minimum contacts between Defendants and the forum state, the "reasonableness" analysis cannot pass the requisite muster.  To wit, Defendants are foreign residents. The Russian Federation has

---

[1] Legal conclusions are not taken as true. They may form the framework of a complaint but also must be supported by factual allegations. Levista, Inc. v. Ranbaxy Pharmaceuticals, Inc., 2010 WL 5067843 (E.D. N.Y. 2010), judgment aff'd, 450 Fed. Appx. 54 (2d Cir. 2011);  In re Terrorist Attacks on September 11, 2001, 714 F.3d 118, 124 (2d Cir. 2013) (legal conclusions not accepted as true); Beauvoir v. Israel, 794 F.3d 244, 248 (2d Cir. 2015); Cantor Fitzgerald Inc. v. Lutnick, 313 F.3d 704 (2d Cir. 2002) (no credence given to conclusory allegations); Modelist v. Miller, 445 Fed. Appx. 737 (5th Cir. 2011) ("conclusory allegations, unwarranted deductions or legal conclusions"); Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010) (court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences"); Swedish Civil Aviation Admin. v. Project Management Enterprises, Inc., 190 F.Supp.2d 785 (D.C. MD. 2002) ("legal conclusions couched as factual allegations, or conclusory factual allegations devoid of any reference to actual events").

far more significant interests in resolving the dispute. Plaintiff cannot show how its interests in proceeding in a convenient forum would be served by subjecting Defendants to a lawsuit in New York. Plaintiff has not identified any witnesses or other evidence more convenient to this forum. Defendants face tremendous burdens to defend themselves in a foreign jurisdiction thousands of miles away from their home, especially in light of the fact that the Russian Federation is currently subjected to overwhelming sanctions, air travel is blocked, and it is literally impossible for them to appear in the Court here.

Accordingly, there are no minimum contacts between Defendants and the forum state.

### iii.  Defendants Were NOT Served in This Lawsuit

Even if the arguments in the previous section are rejected, the Court lacks personal jurisdiction since Plaintiff failed to effect proper service of process. This is because proper service is essential for the court to "exercise power over" a party. See Murphy Bros., Inc. v. Michetti Pipe Stringing, 526 U.S. 344, 350, 143 L. Ed. 2d 448, 119 S. Ct. 1322 (1999).  Pursuant to Rule 12(b)(5), Fed. R. Civ. P., "a complaint may be dismissed for insufficient service of process." See Howard v. Klynveld Peat Marwick Goerdeler, 977 F. Supp. 654, 658 (S.D.N.Y. 1997); see also Hawthorne v. Citicorp Data Sys., Inc., 219 F.R.D. 47, 49 (E.D.N.Y. 2003) ("Without proper service a court has no personal jurisdiction over a defendant.").  On such jurisdictional matters, the plaintiff bears the burden of proof.  See Commer v. McEntee, 283 F. Supp. 2d 993, 997 (S.D.N.Y 2003) ("Once a defendant challenges the sufficiency of service of process, the burden of proof is on the plaintiff to show the adequacy of service."); see also Weston Funding, LLC v. Consorcio G Grupo Dina, S.A. de C.V., 451 F. Supp. 2d 585, 589 (S.D.N.Y. 2006); Howard Johnson International, Inc. v. Wang, 7 F. Supp. 2d 336, 339 (S.D.N.Y. 1998) (where a judgment obtained without proper service of the summons and complaint is void); BMG Music Publ. Ltd. v. Croma Music Co., 2002 U.S. Dist. LEXIS 11467, 5, 2002 WL

1379996 (S.D.N.Y. June 26, 2002) (same).

Further, "defective service [cannot] be ignored on the mere assertion that a defendant had "actual notice." Russ Berrie & Co. v. T.L. Toys (HK) Ltd., No. 01 Civ. 4715 (LMM), 2002 U.S. Dist. LEXIS 21882, 2002 WL 31458232, at 2 (S.D.N.Y. Nov. 4, 2002) ("[A]ctual notice of the action will not, in itself, cure an otherwise defective service.") (internal quotation marks omitted).  See also Weston Funding, LLC v. Consorcio G Grupo Dina, S.A. de C.V., 451 F. Supp. 2d 585, 589, 2006 U.S. Dist. LEXIS 63231, 9 (S.D.N.Y. 2006) (same)

Here, as described in detail above, all Plaintiff's attempts to serve Defendants were inadequate to put them on notice about this lawsuit. Even assuming for the sake of argument that Defendants learned about this lawsuit from a third-party, as observed by one court in this district, there is no case law that supports the "redelivery" principle, i.e. the delivery from one company to another when a service was made on a different company even where an employee of that company later gave the documents to the proper company. See Luv N' Care, Ltd. v. Babelito, S.A., 306 F. Supp. 2d 468, 471, 2004 U.S. Dist. LEXIS 3399, 7 (S.D.N.Y. 2004) (declining to validate service based on the "redelivery" principle where the summons was served on a wrong company and later was delivered to the correct company.)

Moreover, Plaintiff for some strategic reasons chose not to name and to serve the company - Valtron LLC, which, according to the nature and the substance of Plaintiff's allegations, is an indispensable party in this lawsuit.[2] Instead, it targeted to serve individual software engineers, who should not be responsible for the company's actions.  Again, due to insufficient service of process, the Court does not have personal jurisdiction over Defendants.

---

[2] Defendants reserve the argument that the complaint should be dismissed pursuant to Fed. R. Civ. P 12(b), for "failure to join a party under Rule 19."

## 2. Plaintiff Fails to State a Claim for RICO Violation

In considering RICO claims, courts must attempt to achieve results "consistent with Congress's goal of protecting legitimate businesses from infiltration by organized crime." United States v. Porcelli, 865 F.2d 1352, 1362 (2d Cir. 1989). As one district court within this circuit has stated "Civil RICO is an unusually potent weapon -- the litigation equivalent of a thermonuclear device." Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 655 (S.D.N.Y. 1996). "Because the 'mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . **courts should strive to flush out frivolous RICO allegations at an early stage of the litigation**.'" Id. (emphasis added). Thus, courts must always be on the lookout for the putative RICO case that is really "nothing more than an ordinary fraud case clothed in the Emperor's trendy garb." In re Integrated Resources Real Estate, 850 F. Supp. 1105, 1148 (S.D.N.Y. 1994); Schmidt v. Fleet Bank, 16 F. Supp 2d 340, 346 (S.D.N.Y. 1998).

In Reves v. Ernst & Young, 507 U.S. 170, 179 (1993), the Supreme Court held that the "operation or management" test provides the appropriate standard for determining this element of RICO liability. "As interpreted by courts in this district and others, the 'operation and management' test . . . is a very difficult test to satisfy." LaSalle Nat'l, Bank v. Duff & Phelps Credit Rating Co., 951 F. Supp. 1071, 1090 (S.D.N.Y. 1996). As the Second Circuit has held, "simple taking of directions and performance of tasks that are 'necessary and helpful' to the enterprise, without more, is insufficient to bring a defendant within the scope of § 1962(c)." United States v. Viola, 35 F.3d 37, 41 (2d Cir. 1994). "Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable as a result." LaSalle, 951 F. Supp. at 1090. Accordingly, courts within this circuit have repeatedly dismissed RICO claims which failed to meet these stringent standards. See e.g., Azrielli v. Cohen Law Offices, 21 F.3d 512, 521-22 (2d Cir. 1994); Redtail Leasing, Inc. v. Bellezza, No. 95 Civ. 5191,

1997 U.S. Dist. LEXIS 14821, 13 (S.D.N.Y. Sept. 30, 1997); Hayden v. Paul, Weiss, Rifkind,
Wharton & Garrison, 955 F. Supp. 248, 254 (S.D.N.Y. 1997); Sundial Int'l. Fund v. Delta
Consultants, Inc., 923 F.Supp. 38, 41 (S.D.N.Y. 1996); Amalgamated Bank of N.Y. v. Marsh,
823 F. Supp.209, 221 (S.D.N.Y. 1993).

Moreover, a RICO plaintiff must allege adequately that defendants "conspired" to
participate in a RICO "enterprise."   The RICO enterprise must always have an ascertainable
structure distinct from that inherent in the conduct of a "pattern of racketeering."   As the
Supreme Court stated in Turkette, "the enterprise is not the 'pattern of racketeering'; it is an entity
separate and apart from the pattern of activity in which it engages." United States v. Turkette,
452 U.S. 576, 583 (1981). In other words, the members of "the group as a whole must have a
common link other than the racketeering activity." McDonough v. National Home Ins. Co., 108
F.3d 174, 177 (8th Cir. 1997). Thus, "in assessing whether an alleged enterprise has an
ascertainable structure distinct from that inherent in a pattern of racketeering," it is appropriate to
consider whether "the enterprise would still exist were the predicate acts removed from the
equation." Handeen v. LeMaire, 112 F.3d 1339, 1352 (8th Cir. 1997).

Here, it is evident that the complaint merely alleges that Defendants "operate[] the
Glupteba botnet and help[] lead the criminal schemes of the Glupteba Enterprise." Compl. at 94,
95. The complaint fails to describe the different roles played by the members of the enterprise, it
basically restates the allegations against each of the Defendants without explaining the
interrelationship of these actions or defining coordinated roles played by the purported
enterprise's members. There is no allegation of any kind of chain of command or functional
integration, as is typical of classic RICO enterprises. The only common factor joining
Defendants is their alleged participation in Glupteba botnet scheme to defraud Plaintiff. As such,
the complaint does not allege facts sufficient to support an inference that the enterprise existed as

a continuous structure "separate and apart" from the commission of the predicate acts alleged, or that there was an organized mechanism for directing the enterprise's affairs on an ongoing basis beyond the fraudulent scheme alleged. See, e.g., Ray v. Gen. Motors Acceptance Corp., No. 92 Civ. 5043, 1995 WL 151852, at 3 (S.D.N.Y. Mar. 28, 1995) (dismissing RICO claim alleging secondary liability in Ponzi scheme where plaintiff failed to plead with sufficient particularity the requisite elements that defendant was associated with an enterprise, and that the enterprise was separate and distinct from the alleged pattern of racketeering activity).

Moreover, the complaint does not sufficiently allege the RICO Conspiracy. The complaint simply restates the statutory language without adequately pleading facts. See Compl. at 138-40. The Second Circuit has held that there can be no RICO conspiracy without a substantive RICO violation. Thus, if "the prior claims do not state a cause of action for substantive violations of RICO," then a RICO conspiracy claim necessarily "does not set forth a conspiracy to commit such violations." Discon, Inc. v. Nynex Corp., 93 F.3d 1055, 1064 (2d Cir. 1996), cert. denied, 139 L. Ed. 2d 14, 118 S. Ct. 49 (1997), and cert. granted, 118 S. Ct. 1298 (1998); Goldberg v. Lynch, No. 97 Civ. 8779, 1998 U.S. Dist. LEXIS 8906 at 3 (S.D.N.Y. June 18, 1998) (dismissing RICO conspiracy claim for failure adequately to allege RICO enterprise); NRB Indus., Inc. v. R.A. Taylor & Assoc., Inc., No. 97 Civ. 181, 1998 U.S. Dist. LEXIS 25 at 3 (S.D.N.Y. Jan. 7, 1998) (Rakoff, J.) ("because the claims under sections 1962 (a) and (c) fail as a matter of law, the conspiracy claim under section 1962(d) likewise must be dismissed"); Katzman, 167 F.R.D. 649 at 658 ("failure to adequately plead facts that would satisfy the pleading requirements of §§ 1962(a), 1962(b) or 1962(c) necessarily dooms any claim [plaintiff] might assert arising under § 1962(d)."). In this case, for the reasons stated above, since Plaintiff has failed adequately to allege a § 1962(c) violation, the RICO conspiracy claim should be dismissed as well.

16

Alternatively, Plaintiff's RICO conspiracy claim against Defendants fails as a matter of law because the complaint fails to provide specific factual allegations supporting an inference that Defendants entered into an agreement to facilitate the goals of Glupteba Enterprise. "Bare and conclusory allegations are insufficient to withstand a motion to dismiss and a plaintiff must plead facts sufficient to show that each defendant knowingly agreed to participate in the conspiracy." Colony at Holbrook, Inc. v. Strata G.C., Inc., 928 F. Supp. 1224, 1238 (E.D.N.Y. 1996); Schmidt v. Fleet Bank, 16 F. Supp 2d 340, 353-354 (S.D.N.Y. 1998)(unspecific allegations are insufficient to show that Defendant "knowingly agreed to participate in the conspiracy" and that it "understood the scope of the enterprise or knew what . . . the other members of the enterprise were up to.")

Most importantly, the Second Circuit's precedent **bars extraterritorial application of civil RICO claims**.  In Norex Petroleum Ltd. v. Access Industries, Inc., 631 F.3d 29, 33 (2d Cir. 2010), the court applying Supreme Court's decision in Morrison v. National Australian Bank, 561 U.S. 247 (2010), held that since "RICO is silent as to any extraterritorial application . . . simply alleging that **some domestic conduct** occurred cannot support a claim of domestic application."  Here, as in Norex, the "slim contacts with the United States" alleged by Plaintiff are "insufficient to support extraterritorial application of the RICO statute."   As such, as in Norex, the Court should grant dismissal of the RICO claim pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

### 3. Plaintiff Fails to State a Claim for Violation of The Electronic Communications Privacy Act, 18 U.S.C. §§ 2701 et seq.

The complaint alleges that "Defendants knowingly and intentionally accessed and continue to access Google accounts and Google's servers running such services without authorization or in excess of any authorization granted by Google or any other party."  Compl. at

157. However, this allegation is flatly contradicted by the fact that Google accounts owners

**VOLUNTARILY** sold access to their Google accounts by disclosing to Rent.dont.farm their

own logins and passwords for access authorization to their accounts. Starovikov Decl. at 13,

Filippov Decl. at 13.  As such, there is not any privacy violation.

### 4. Defendants Reserve Their Arguments with Respect to Whether Plaintiff Adequately Alleges Trademark and Unfair Competition Violations, Infringement of Federally Registered Trademark 15 U.S.C. § 1114(1), Federal Unfair Competition and False Designation of Origin 15 U.S.C. § 1125(a), Federal False Advertising in Violation of the Lanham Act 15 U.S.C. § 1125(a)

Defendants' position is that they did not participate in the Disruptive Ad Scheme or

related activity that allegedly violated Google Trademark(s) and related claims.  Starovikov

Decl. at 16, Filippov Decl. at 16.  As such, at this stage of preceding this denial is sufficient for

purposes of setting aside the notice of default.  Still, Defendants state that the complaint is

deficient as it fails to provide specific factual allegations supporting those claims. See Berman v.

Sugo LLC, 580 F. Supp. 2d 191, 199 (S.D.N.Y. 2008) ("Factual allegations must be enough to

raise a right to relief above the speculative level," and if a claimant "has not nudged its claims

across the line from conceivable to plausible," its claims "must be dismissed.").

### 5. Plaintiff Fails to State a Claim for Tortious Interference with Business Relationship

To establish a tortious interference with current and prospective business advantage

plaintiff must plead the following elements: (i) there is a business relation with a third party, (ii)

defendant interfered with those business relations, (iii) the defendants acted with the sole purpose

of harming the plaintiff or used dishonest, unfair, or improper means, (iv) and an injury to the

relationship resulted. Purgess v. Sharrock, 33 F.3d 134, 141 (2d Cir. 1994). Tortious interference

with prospective business relations claim requires that "plaintiff must demonstrate that defendant

`interfered with the plaintiff's business relationships either with the sole purpose of harming the

plaintiff or by means that were unlawful or improper.'" Redeye Grill, L.P. v. Rest. Opportunities

18

Ctr. of N. Y, Inc., 13 Misc. 3d 1212(A), 824 N.Y.S.2d 758 (N.Y. Sup. Ct. 2006). To meet this requirement, "defendant's conduct [must be] motivated solely by malice or to inflict injury by unlawful means, beyond mere self-interest or other economic considerations." Shared Commc'ns Servs. of ESR, Inc. v. Goldman Sachs & Co., 23 A.D.3d 162, 803 N.Y.S.2d 512, 513 (1st Dep't 2005); Am. Bldg. Maintenance Co. v. ACME Prop. Servs., 515 F. Supp. 2d at 317 (New York law states that acts motivated by economic self-interest are not ones taken solely out of malice, as is required to meet this element of tortious interference).

Here, there is not even an allegation that non-economic considerations motivated Defendants' alleged actions, let alone that they were the sole type of motive.  See, e.g., Chamilia, LLC, 2007 U.S. Dist. LEXIS 71246, at 59.  Moreover, Google accounts owners voluntarily sold access to their Google accounts by disclosing to Rent.dont.farm their own logins and passwords for access authorization to their accounts. Starovikov Decl. at 13, Filippov Decl. at 13.  As such, Defendants did not interfere with business relationship by "means that were unlawful or improper."

### 6. Plaintiff Fails to State a Claim for Unjust Enrichment

"Under New York law, a plaintiff has stated a claim for unjust enrichment when it alleges '(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution.'" Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000);  Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586 (2d Cir. 2006).

As discussed above, Google accounts owners voluntarily sold access to their Google accounts by disclosing to Rent.dont.farm their own logins and passwords for the access authorization to their accounts. Starovikov Decl. at 13, Filippov Decl. at 13. Therefore, since

Defendants did not "access[], without authorization, Google's Gmail system," they did not "profit[] unjustly from their unauthorized use of Google's systems and networks."

### 7. This Court Should Dismiss the Complaint on *Forum Non-Conveniens* Grounds

Even if this Court rejected the previous arguments regarding Plaintiff's failure to state a clam, this Court should dismiss the Complaint on *forum non-conveniens* grounds.  The Supreme Court has stated that:

> The principle of *forum non-conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute. These statutes are drawn with a necessary generality and usually give a plaintiff a choice of courts, so that he may be quite sure of some place in which to pursue his remedy. But the open door may admit those who seek not simply justice but perhaps justice blended with some harassment. A plaintiff sometimes is under temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself.

Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507, 67 S. Ct. 839, 842 (1947).

Courts analyze the *forum non-conveniens* doctrine in two parts.  First, an adequate alternative forum must exist. See Gilbert, 330 U.S. at 506-07; Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41, 46 (2d Cir. 1996).  If the Court finds that an adequate forum does exist, it then must determine, by balancing the private interests of the litigants and the public interest concerns of the Court, whether adjudication of the action in the chosen forum would be inconvenient and unjust. See Gilbert, 330 U.S. at 508-09.

An alternative forum is ordinarily adequate if (1) the defendants are amenable to service of process there and (2) the forum permits litigation of the subject matter of the dispute. See Ilusorio v. Ilusorio-Bildner, 103 F. Supp. 2d 672, 674 (S.D.N.Y. 2000), aff'd, 2001 U.S. App. LEXIS 17157 (2d Cir. 2001).  In this case, it is undisputed that all the parties are amenable to suit in the Russian Federation and Google even has an office there.  Additionally, the Court must

consider the following private interests of the litigants: (a) the ease of access to evidence; (b) the availability of compulsory process; (c) the cost for cooperative witnesses to attend trial; (d) the enforceability of a judgment; and (e) all other practical matters that might shorten any trial or make it less expensive.  See Gilbert, 330 U.S. at 508; Ilusorio, 103 F. Supp. 2d at 675-76.

In the case at bar, it is not disputed that most of the evidence and witnesses relevant for these proceedings are located outside of the United States, most of the documents are in Russian language, and the witnesses are beyond the subpoena power of this Court and cannot be compelled to appear at a proceeding in the United States.  In addition, there is no evidence that Defendants have any assets in the United States from which Plaintiff could recover.  Similarly, there is no evidence that the judgment would be easier to enforce against Defendants in the United States rather than in the Russian Federation. Finally, other practical matters, such as Defendants' inability to travel to the United States due to the recent sanctions against the Russian Federation and judicial economy would be well served by having this case litigated there.  Thus, the balance of private interest factors weighs heavily in favor of the dismissal of this action.

The public interest factors to be weighed by the Court include: (a) administrative difficulties relating to court congestion; (b) imposing jury duty on citizens of the forum; (c) having local disputes settled locally; and (d) avoiding problems associated with the application of foreign law.  See Gilbert, 330 U.S. at 508-09; Ilusorio, 103 F. Supp. 2d at 678.

In the case at bar, Russian courts appear no more congested than the busy courts in this District.  Second, there is a significant interest in having localized matters decided at home with local law governing the case.  See Ilusorio, 103 F. Supp. 2d at 678.  Moreover, "there is a legitimate interest in ensuring that disputes with little connection to the district be litigated elsewhere." CCS Int'l, Ltd. v. ECI Telesystems, Ltd., No. 97 Civ. 4646, 1998 U.S. Dist. LEXIS 12755, 30, 1998 WL 512951, at 10 (S.D.N.Y. Aug. 18, 1998).  Next, there is no connection

between the dispute herein and New York or the United States, as discussed in detail above. Also, it is anticipated that the parties inevitably raise issues concerning the law of a foreign country (Russian Federation) in connection with this matter, as much of the activity described by Plaintiff as illegal is in fact legal in Russia.  Although reluctance to apply foreign law is not dispositive, courts have a legitimate interest in avoiding the difficulty with questions of conflicts of law and the application of foreign law.  See Boosey & Hawkes Music Publishers Ltd. v. Walt Disney Co., 145 F.3d 481, 491 (2d Cir. 1998).

Accordingly, this Court should conclude that private and public interest concerns weigh heavily in favor of dismissal of the case.  Thus, this Court should dismiss the action on *forum non-conveniens* grounds.

### III.   UPON FINDING THAT THE ENTRY OF DEFAULT IS VOID FOR WANT OF JURISDICTION AND FOR FAILURE TO STATE A CLAIM THE COURT MUST DISMISS THE ACTION

"A decision that a default judgment is void for want of jurisdiction must be accompanied by dismissal of the action." First Fidelity Bank, N.A. v. Government of Antigua & Barbuda-Permanent Mission, 877 F.2d 189, 196, 1989 U.S. App. LEXIS 8445, 20 (2d Cir. 1989); Thos. P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica, 614 F.2d 1247, 1256 (9th Cir. 1980); Gregorian v. Izvestia, 658 F. Supp. 1224, 1229, 1987 U.S. Dist. LEXIS 14315, 12 (C.D. Cal. 1987), aff'd in part, rev'd in part on other grounds, 871 F.2d 1515 (9th Cir. 1989) ("once a court makes a finding that a decision was void, it must proceed to simultaneously dismiss the action on which the decision was made").

As discussed above, since this Court lacks personal jurisdiction over Defendants, based on the doctrine of *forum non-conveniens,* and for failure to state a claim under Fed. R. Civ. P. 12(b)(6), upon vacating the notice of default, the Court should dismiss the complaint.

## IV. CONCLUSION

For the foregoing reasons, this Court should grant Defendants' motion under Fed. R. Civ. P. Rule 55(c), vacating the notice of default and dismissing the case against Defendants, for lack of personal jurisdiction, for failure to state a claim, and on forum *non conveniens* grounds, together with costs, expenses, and such other and further relief as it deems just and proper under the circumstances.

Dated: March 14, 2022
Brooklyn, New York

<div style="margin-left:40%">

Respectfully Submitted,

/s/ Igor Litvak, Esq.
_____
Igor B Litvak
Attorneys for Defendants

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the above document to be served on counsel of record for

the Plaintiff by filing it via the Court's CM/ECF system on this 14th day of March, 2022.


<u>/s/ Igor Litvak, Esq.</u>

Igor B Litvak