UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
GOOGLE LLC,

                Plaintiff,          Civil Action No.: 1:21-cv-10260-DLC

- against -

DMITRY STAROVIKOV;
ALEXANDER FILIPPOV;
and Does 1-15,

                Defendants.
-----------------------------------------------------------------X

## DECLARATION OF DMITRY STAROVIKOV IN SUPPORT OF DEFENDANTS' MOTION TO VACATE ENTRY OF DEFAULT AND TO DISMISS THE ACTION

I, DMITRY STAROVIKOV, declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S. Code § 1746 that the following is true and correct:

1. I am Defendant in this matter, and I am over 18 years of age and make this declaration based upon personal knowledge of the facts set forth below. If called upon to testify, I could and would testify competently as to the matters set forth herein.

2. I make this declaration in support of Defendants' motion to vacate the entry of default in this matter and to dismiss the action.

3. I did not receive any of the purportedly served documents in this case. The physical address that the papers were purportedly served is erroneous for two reasons, first, the company called Investauto LLC, was liquidated in September 23, 2021, as Plaintiff itself correctly stated in the complaint.

4. Second, at Presnenskaya Embankment 12, the address Plaintiff attempted to serve me is shared by 2 Towers, 65 and 95 floors high, also known as Moscow City, and those towers

D.S.

contain hundreds of offices rented by hundreds of firms. As such, any documents purportedly sent by Plaintiff were apparently lost as designation "Office 5," without stating the floor number, is incorrect as these towers have many offices and rooms numbered 5.

5. In the same vein, I declare that I never received any emails regarding this matter as my email account specified by Plaintiff was blocked by Google in early December 2021. With respect to texts, Plaintiff texted to a number ending in 2229, this number does not belong to me.

6. Finally, I did not read the purported notices about the lawsuit in newspapers; similarly, I never received any notification from ICANN.

7. I found out about the case only at the end of January 2022, from some friends who heard about it. Upon learning, it took me some time to translate and review the complaint as I am not a native English speaker. Even after reading the translation, I did not clearly understand what is the nature of Plaintiff's allegations against me as I am not familiar with United States law and legal procedure. It took me a while to locate and retain a qualified Russian-speaking attorney in the United States.

8. I have never performed operations or solicited business in New York or the United States or never intended to sell any product there. I do not have any ownership or affiliation with any office or a representative in New York or the United States. I do not own any real estate in New York or the United States.

9. I work for Valtron LLC as a software engineer and I know that the company's products branded Voltonwork and Undefined.team did not target the United States users or market; instead, the software targeted the former U.S.S.R. Republics, India, Indonesia. Inadvertently, the software might have been used by United States users, but I neither intended

2



that usage nor advertised or targeted it in the United States. Upon information and belief, the United States users made up less than 1% of all the users.

10. To the best of my knowledge, Valtron developed projects including various marketing and utility tools, such as software engine optimization, proxy services, mining optimization, and contextual advertising. Among those products, I recognize Extracard and Awmproxy, which are legitimate software products developed by Valtron.

11. In addition, I want to clarify the allegations in the complaint stating that I used "IP address of a Glupteba botnet proxy C2 Server" when signing up for my Gmail account. In fact, the IP address is not static, and it could have been shared among multiple users in the office building, especially given the fact that there is only a couple of internet providers serving that the Moscow City complex that has more than 100,000 people.

12. With respect to "Stolen Accounts Scheme" allegations, I participated in the development of the Dont.farm project; the project was for the sale of accounts in social networks. The project had a page Rent.dont.farm, where any Internet user could sell access to <u>his</u> Google account by giving the service a login and password for access authorization to <u>his</u> account. The project was focused on the Commonwealth of Independent States, which comprises of former Soviet Republics market, and there was a ban on any transaction involving U.S. accounts.

13. Concerning so-called "Card Fraud Scheme" allegations, to the best of my knowledge, Extracard.net service was created in partnership with Otkritie Bank, a major Russian Bank. The service is an automated software package to simplify the work of customers and Otkritie Bank. The service allows the user to register, go through the KYC procedure, replenish the balance and receive a Virtual card of the Mastercard system for using payments on the

3



Internet. After receiving the card, the user could replenish its balance, and within the amount of the balance, pay on the Internet. Also, the user can block the card at will. The service actually provides functionality similar to banking in terms of working with plastic cards. Virtual cards are issued by one of the largest banks in Russia and provided under the license of the Tochka service.

14.     Simply put, Otkritie Bank issued credit cards to Extracard.net service, who, in turn, sells the cards to webmasters after proper verification procedures, including "Know Yours Customer" vetting process. The webmaster, having received the card, has authority to act as a bank; he could replenish the card, withdraw money from it, pay on the Internet and block the card. Upon information and belief, it was the webmaster/users who could have blocked the cards in Google's advertising accounts, not Extracard.net service. I emphasize that they could do this using any banking service, not necessarily Extracard.net service. Again, Extracard.net service only sold the cards; it could not control any subsequent activity involving those cards.

15.     I am not aware of what Google called "Disruptive Ad Scheme." To the best of my knowledge, I never came across or participated in the alleged activity.

16.     With respect to "Proxy Scheme" allegations, upon information and belief, http://xtcomp.com/ provided a legitimate proxy service to its customers, who voluntarily downloaded the proxy software and installed it on their computers.

17.     Regarding "Cryptojacking Scheme" allegations, the same proxy software was legitimately provided to customers for mining purposes. All these services are regulated by a written Terms of Service agreement. This activity is not illegal as many companies like Norton Antivirus do the same. See https://www.theverge.com/2022/1/7/22869528/norton-crypto-miner-security-software-reaction.



18. In this respect, I want to emphasize that the allegations that "the power of the Glupteba botnet could be leveraged for use in a powerful ransomware or distributed denial-of-service ("DDoS") attack," is completely baseless and frivolous as, to the best of my knowledge, it was never an intent to do this, let alone the fact that this has never been done by anyone affiliated with said services.

19. Therefore, I respectfully request that for the reasons stated in my counsel motion papers, the Court grant my motion to vacate the notice of default and dismiss the case against me.

_____
DMITRY STAROVIKOV

Executed on March __14__, 2022, in Moscow, Russian Federation