## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

GOOGLE LLC,

　　　　　　　　　　*Plaintiff*,

　　　v.

DMITRY STAROVIKOV;
ALEXANDER FILIPPOV;
Does 1-15,

　　　　　　　　　　*Defendants*.

Civil Action No. 1:21-cv-10260-DLC

## GOOGLE LLC'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS DMITRY STAROVIKOV AND ALEXANDER FILIPPOV'S MOTION TO VACATE THE ENTRY OF DEFAULT AND TO DISMISS

## AND

## IN SUPPORT OF GOOGLE LLC'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................... 3

    *A.*    *The Glupteba Botnet* ............................................................................................ 3

    *B.*    *Defendants Operate The Botnet And Participate In The Illicit Schemes* ...................... 4

    *C.*    *Service On Defendants* ......................................................................................... 5

    *D.*    *Entry Of Default And The Parties' Subsequent Discussions* ...................................... 6

LEGAL STANDARD ........................................................................................................... 7

ARGUMENT ........................................................................................................................ 7

    I.    Google Is Entitled To Default Judgment Against Defendants.................................... 7

        A.    Defendants have no meritorious defense. ............................................................ 9

            1.    Defendants do not present a complete, meritorious defense based on lack of personal jurisdiction under Rule 12(b)(1)................. 9

            2.    Defendants do not present a complete, meritorious defense based on insufficient service of process under Rule 12(b)(5)............ 12

            3.    Defendants do not present a complete, meritorious defense for failure to state a claim under 12(b)(6)................................................ 13

            4.    Defendants do not present a complete, meritorious defense based on *forum non conveniens*. ......................................................... 18

        B.    Defendants' default was willful. ....................................................................... 19

        C.    Google would be prejudiced by the denial of a motion for default judgment. ..................................................................................................... 22

    II.    Google Is Entitled To A Permanent Injunction. ..................................................... 22

    III.    Default Judgment And Permanent Injunction Is Warranted Against The Doe Defendants. ....................................................................................................... 24

    IV.    Withdrawal of Google's Damages Request .......................................................... 25

CONCLUSION ................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Am. Alliance Ins. Co. v. Eagle Ins. Co.*,
  92 F.3d 57 (2d Cir. 1996) ..................................................................................20

*Amimon Inc. v. Shenzhen Hollyland Tech Co.*,
  2021 WL 5605258 (S.D.N.Y. Nov. 30, 2021) .................................................18, 19

*Antetokounmpo v. Searcy*,
  2021 WL 3233417 (S.D.N.Y. May 20, 2021) .........................................................7

*In re Apple Inc. Device Performance Litig.*,
  347 F. Supp. 3d 434 (N.D. Cal. 2018) ..................................................................16

*Arista Recs. LLC v. Media Servs. LLC*,
  2008 WL 563470 (S.D.N.Y. Feb. 25, 2008) .........................................................13

*BCRS1, LLC v. Unger*,
  2021 WL 3667094 (E.D.N.Y. Aug. 18, 2021) ......................................................19

*BMaddox Enters. LLC v. Milad Oskouie, Osko M Ltd.*,
  2021 WL 3675072 (S.D.N.Y. Aug. 18, 2021) ......................................................22

*Boyle v. United States*,
  556 U.S. 938 (2009)...............................................................................................14

*Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton
Masonry & Const., LLC*,
  779 F.3d 182 (2d Cir. 2015) (per curiam)............................................................2, 8

*Brown v. Gabbidon*,
  2007 WL 1423788 (S.D.N.Y. May 14, 2007) .........................................................8

*Burda Media, Inc. v. Blumenberg*,
  2004 WL 1110419 (S.D.N.Y. May 18, 2004) .......................................................12

*Chatwal Hotels & Resorts LLC v. Dollywood Co.*,
  90 F. Supp. 3d 97 (S.D.N.Y. 2015).......................................................................12

*Church of Scientology Int'l v. Elmira Mission of Church of Scientology*,
  794 F.2d 38 (2d Cir. 1986).....................................................................................24

*City of Almaty v. Sater*,
  503 F. Supp. 3d 51 (S.D.N.Y. 2020)......................................................................18

*Co. v. Mood Apparel, Ltd.*,
  338 F.R.D. 192 (S.D.N.Y. 2021) ..........................................................................14

*Criollo v. NY Fine Interiors Inc.*,
  2021 WL 1200318 (E.D.N.Y. Mar. 3, 2021) ........................................................13

*DiFederico v. Marriott Int'l, Inc.*,
  714 F.3d 796 (4th Cir. 2013) ............................................................................19

*Display Techs., LLC v. Leantegra, Inc.*,
  2022 WL 354667 (S.D.N.Y. Feb. 7, 2022)............................................................7

*Durso v. Mod. Food Ctr., Inc.*,
  2019 WL 2150424 (S.D.N.Y. May 17, 2019) ...................................................9, 20

*eBay Inc. v. MercExchange LLC*,
  547 U.S. 388 (2006).........................................................................................23

*Everard Findlay Consulting, LLC, v. Republic of Suriname*,
  2022 WL 845757 (S.D.N.Y. Mar. 22, 2022) .......................................................18

*FTC v. Verity Int'l, Ltd.*,
  2000 WL 1805688 (S.D.N.Y. Dec. 8, 2000) .......................................................24

*FXDirectDealer, LLC v. Abadi*,
  2012 WL 1155139 (S.D.N.Y. Apr. 5, 2012)........................................................24

*Gov't Emps. Ins. Co. v. Right Sol. Med. Supply, Inc.*,
  2012 WL 6617422 (E.D.N.Y. Dec. 19, 2012) ....................................................2, 8

*Guggenheim Cap., LLC v. Birnbaum*,
  722 F.3d 444 (2d Cir. 2013)................................................................................8

*Guzik v. Albright*,
  2018 WL 4386084 (S.D.N.Y. Sept. 14, 2018).....................................................17

*Khepera-Bey v. Santander Consumer USA, Inc.*,
  2013 WL 3199746 (D. Md. June 21, 2013)..........................................................23

*Khotovitskaya v. Shimunov*,
  2020 WL 4588345 (E.D.N.Y. Mar. 10, 2020).....................................................12

*In re Kuwait Ports Auth.*,
  2021 WL 5909999 (S.D.N.Y. Dec. 13, 2021) ........................................................9

*Lewis Fam. Grp. Fund LP v. JS Barkats PLLC*,
  2021 WL 1203383 (S.D.N.Y. Mar. 31, 2021)......................................................15

*Loop Prod. v. Cap. Connections LLC*,
  797 F. Supp. 2d 338 (S.D.N.Y. 2011).........................................................9, 17, 22

*Manzanares v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*,
2020 WL 6390162 (E.D.N.Y. Nov. 2, 2020).........................................................................20

*Mason Tenders Dist. Council v. WTC Contracting, Inc.*,
2011 WL 4348152 (S.D.N.Y. Sept. 16, 2011) (Cote, J.).....................................................12

*Microsoft Corp. v. Does 1-2*,
2021 WL 4260665 (E.D.N.Y. Mar. 5, 2020)........................................................................25

*Microsoft Corp. v. Does 1-51*,
2018 WL 3471083 (N.D. Ga. June 18, 2018).......................................................................25

*Microsoft Corp. v. Does 1-8*,
2015 WL 4937441 (E.D. Va. Aug. 17, 2015).......................................................................24

*N.Y.C.L. Union v. N.Y.C. Transit Auth.*,
684 F.3d 286 (2d Cir. 2012).................................................................................................23

*New York v. Green*,
420 F.3d 99 (2d Cir. 2005).............................................................................................13, 17

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
416 F.3d 146 (2d Cir. 2005)...........................................................................................18, 19

*Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc.*,
2020 WL 4497160 (S.D.N.Y. Aug. 5, 2020).......................................................................12

*RJR Nabisco, Inc. v. Eur. Cmty.*,
579 U.S. 325 (2016).......................................................................................................15, 16

*Rovio Ent., Ltd. v. Allstar Vending, Inc.*,
97 F. Supp. 3d 536 (S.D.N.Y. 2015)....................................................................................23

*S.E.C. v. McNulty*,
137 F.3d 732 (2d Cir. 1998).................................................................................................20

*Salazar v. 203 Lena Inc.*,
2020 WL 2489070 (S.D.N.Y. May 14, 2020) .....................................................................22

*Santana v. Latino Express Rests., Inc.*,
198 F. Supp. 3d 285 (S.D.N.Y. July 28, 2016)....................................................................25

*Seales v. Panamanian Aviation Co.*,
2008 WL 544705 (E.D.N.Y. Feb. 26, 2008)........................................................................18

*Simmons v. Sea Gate Ass'n*,
2013 WL 5774594 (E.D.N.Y. Oct. 24, 2013).................................................................13, 14

*Sony Corp. v. Elm State Elecs., Inc.*,
   800 F.2d 317 (2d Cir. 1986)........................................................................8

*State St. Bank & Tr. Co. v. Inversiones Errazuriz, Limitada*,
   230 F. Supp. 2d 313 (S.D.N.Y. 2002)......................................................19

*State St. Bank & Tr. v. Inversiones Errazuriz Limitada*,
   374 F.3d 158 (2d Cir. 2004)......................................................................22

*Tambriz v. Taste & Sabor LLC*,
   2021 WL 6754956 (S.D.N.Y. Dec. 29, 2021) ...................................7, 25

*Todtman, Nachamie, Spizz & Johns, P.C. v. Ashraf*,
   241 F.R.D. 451 (S.D.N.Y. 2007) ..........................................................9, 22

*United States v. Gasperini*,
   729 F. App'x 112 (2d Cir. 2018) .............................................................16

*United States v. Goldstein*,
   2005 WL 323740 (S.D.N.Y. Feb. 9, 2005)...............................................13

*United States v. Ivanov*,
   175 F. Supp. 2d 367 (D. Conn. 2001)......................................................15

*Universitas Educ., LLC v. Nova Grp., Inc.*,
   2021 WL 4443962 (S.D.N.Y. Sept. 28, 2021)..........................................10

*US Airways, Inc. v. US Airline Pilots Ass'n*,
   813 F. Supp. 2d 710 (W.D.N.C. 2011) ....................................................24

*Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*,
   455 F. App'x 102 (2d Cir. 2012) .............................................................17

*Warner Bros. Entm't Inc. v. Ideal World Direct*,
   516 F. Supp. 2d 261 (S.D.N.Y. 2007).......................................................12

*WowWee Grp. Ltd. v. Meirly*,
   2019 WL 1375470 (S.D.N.Y. Mar. 27, 2019) ........................................11

**Statutes**

15 U.S.C. § 1116(a) .........................................................................................24

18 U.S.C. § 1029(h) .........................................................................................15

18 U.S.C. § 1030...................................................................................14, 15

18 U.S.C. § 2701(a) .........................................................................................16

**Other Authorities**

N.Y. C.P.L.R. 302(a)(3)..................................................................................................................11

Plaintiff Google LLC ("Google") respectfully submits this memorandum of law in opposition to Defendants' Motion to Vacate the Entry of Default and their Motion to Dismiss, and in support of Google's Motion for a Default Judgment and Permanent Injunction against Defendants Starovikov and Filippov ("Defendants") and Does 1 through 15 ("Doe Defendants").

## PRELIMINARY STATEMENT

Google seeks a default judgment and a permanent injunction against Dmitry Starovikov, Alexander Filippov, and the Doe Defendants to disrupt their operation of a malicious and criminal botnet, known as "Glupteba," that has infected more than a million devices with malware and hijacked those devices for illicit purposes in service of a sophisticated criminal enterprise (hereinafter, the "Glupteba Enterprise" or the "Enterprise"). Defendants failed to timely appear, and on February 8, 2022, the clerk entered a Certificate of Default.

Google has established that Defendants Starovikov, Filippov, and the Doe Defendants are liable as a matter of law and that default judgment is proper. In fact, the evidence against Defendants Starovikov and Filippov (collectively, the "Defendants") is corroborated by Defendants' own, nearly identical declarations, which demonstrate that this is not a case of mistaken identity. On the contrary, Starovikov and Filippov confirm their familiarity with the storefronts used by the Enterprise to perpetrate its criminal schemes, proffering facts purporting to cast those businesses as legitimate. Those alternative facts are not only implausible but legally irrelevant, because Defendants:

- Do not deny that they distribute malware to the devices of unwitting victims, including in the United States;

- Do not deny that they steal usernames and passwords from infected devices;

- Do not deny that they sell access to stolen accounts to third parties;

- Do not deny that they attempted to evade Google's efforts to disrupt the botnet pursuant to the Temporary Restraining Order and Preliminary Injunction; and

- Admit they used the IP address of a Glupteba botnet command and control ("C2") server in signing up for their Google accounts. *See* Def. Decls. ¶ 11.[1]

Yet Defendants seek to set aside the entry of default and dismiss the claims against them. Defendants' motions are meritless and fall well short of their burden to establish good cause, which requires that Defendants present a "meritorious defense" to Google's claims, show that their default was not "willful," and demonstrate that Google would not be prejudiced. *See Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (per curiam).

"[A] defaulting defendant's failure to demonstrate the existence of a meritorious defense, standing alone, is a sufficient reason to deny the motion to vacate the entry of default." *Gov't Emps. Ins. Co. v. Right Sol. Med. Supply, Inc.*, 2012 WL 6617422, at *5 (E.D.N.Y. Dec. 19, 2012). None of Defendants' legal or factual arguments presents a complete defense to Google's claims. For example, Google has established—and Defendants do not deny—that Defendants disseminated malware to infect devices located in the United States, stole usernames and passwords that were stored on infected devices, and then sold access to those accounts to third parties (the "Stolen Accounts Scheme"). These acts constitute violations of RICO, the CFAA, ECPA, and the state law claims Google has asserted, and they stand unrebutted along with virtually all of Google's claims against Defendants.

Defendants' motion should also fail because their default was willful. Defendants' efforts to both evade detection and ignore overwhelming evidence of the claims filed against them

---

[1] As Defendants' Declarations (ECF 47-2, 47-3) are nearly identical, citations to "Def. Decls. __" refer to paragraphs that appear in both the Starovikov and Filippov declarations. Laura Harris's declaration filed in support of this motion and opposition will be cited "Harris Decl. __." Laura Harris's declaration filed in support of the entry of default will be cited "2/7/22 Harris Decl. __ (ECF 36)." Defendants' memorandum of law in support of their motion to vacate entry of default will be cited "Mot. __."

(including the disruption of the apparatus underlying their criminal Enterprise) are, at a minimum, grossly negligent. In addition, setting aside default would prejudice Google by extending an already circuitous litigation.

Finally, even if the Court were to determine that default against Starovikov and Filippov should be set aside—notwithstanding their failure to assert a meritorious defense, the willfulness of their conduct, and the resulting prejudice to Google—the Court should grant default judgment and a permanent injunction against the Doe Defendants, who remain in default.

## BACKGROUND

Google will recount the relevant background sufficient to provide context for this motion.[2]

### A.  The Glupteba Botnet

Defendants have deployed the Glupteba malware to form a botnet—a network of internet-connected devices, each of which is infected by the Glupteba malware. *See* Huntley Decl. ¶¶ 13-15 (ECF 21). This malware has silently infiltrated more than a million computers and other devices around the globe and is used by the Enterprise for a variety of illicit purposes. *Id.* ¶¶ 15-17. It is used to steal personal login information in connection with the Stolen Accounts Scheme; to facilitate the use of unfunded credit cards to purchase ads ("Credit Card Fraud Scheme"); to sell disruptive ads to display on infected devices ("Disruptive Ad Scheme"); to sell access to infected devices to relay, or "proxy," communications ("Proxy Scheme"); and to hijack computing power of infected devices to generate cryptocurrency ("Cryptojacking Scheme"). *Id.* ¶¶ 43-77.

To execute these schemes, Defendants and the Enterprise used various public facing websites (or "storefronts") to, for example, sell access to stolen accounts or IP addresses for use

---

[2] Additional factual background is set forth in Google's Complaint (ECF 5), its request for a temporary restraining order (ECF 9), the Huntley Declaration (ECF 21), and the Bisbee Declaration (ECF 22).

as proxies (Dont.farm and AWMProxy.net), and to recruit developers (Voltronwork.com and Undefined.team). *Id.* ¶¶ 45-55, 65-73, 82-85.

### B.      Defendants Operate The Botnet And Participate In The Illicit Schemes

Defendants do not deny that they operate the botnet and participate in the Enterprise's illicit activities. Their declarations do not dispute: (1) that the Glupteba botnet exists; (2) that they exert control over the Glupteba botnet; (3) that users are tricked into downloading the Glupteba malware; (4) that the Glupteba malware has infected more than a million devices; (5) that the Glupteba malware provides access to users' accounts without the users' knowledge; and (6) that Defendants sell access to those stolen accounts.

Starovikov and Filippov both concede that they work for Valtron LLC as software engineers. Def. Decls. ¶ 9. Consistent with their possession of email and Google Workspace accounts associated with storefronts tied to the Enterprise, *see* Huntley Decl. ¶¶ 88-89 (ECF 21), both Defendants acknowledge their familiarity with several of the storefronts and operations Google identified as central to the Enterprise's criminal schemes, including "Dont.farm," "Awmproxy," "Voltronwork," cryptocurrency mining, and others. Def. Decls. ¶¶ 9-17. Defendants do not deny that they have worked (or even that they continue to work) at the Federation Tower office building identified in numerous marketing and other corporate materials associated with the Enterprise—the same address Filippov provided as the billing address in connection with one of his email accounts. Huntley Decl. ¶¶ 81, 85, 89 (ECF 21).

In addition, neither Defendant denies he signed up for a Google account and executed Google's Terms of Service from the IP Address assigned to a C2 server used to control the botnet in connection with its deployment of proxies onto infected devices. *Id.* ¶¶ 87, 89. Ignoring their many links to the Enterprise, both Defendants speculate without evidence that perhaps someone

else in the Federation Tower office building controlled the botnet using the same IP Address that they had used, but for a different purpose. Def. Decls. ¶ 11.

Defendants also demonstrate they have personal knowledge of the Enterprise's operations, purpose, and intent. Defendants do not deny that the botnet *could be* used to conduct distributed denial of service and other cyber attacks, but insist "it was never an intent to do this." *Id.* ¶ 18.

### C.   *Service On Defendants*

As discussed in detail in Google's Request for Entry of Default (ECF 37), Google served Defendants with copies of the Complaint, the summons, the TRO motion, and its supporting declarations and exhibits, using methods authorized by the Court pursuant to Rule 4(f)(3). *See* 2/7/22 Harris Decl. ¶ 2 (ECF 36), Proofs of Service (ECF 15, 34); TRO ¶ 18 (ECF 8).

Pursuant to the Court's authorization, Google sent a text message to Filippov and a WhatsApp message to Starovikov providing a link to the relevant materials. Harris Decl. ¶¶ 28, 29. Filippov admits that he received Google's text message serving the relevant materials. *See* Filippov Decl. ¶ 5 ("I vaguely remember receiving a text with a link attached to it."). He claims he did not open the link with the materials because he believed it resembled a hacking attempt. *Id.*

Google also effected service on Filippov and Starovikov by sending hard copies of the relevant materials to both Defendants at the Federation Tower: 123112, Moscow, Presnenskaya Embankment 12, Office 5. *See* Certificate of Service (ECF 15). Defendants do not deny that they work at that address. Indeed, Defendants admit they are associated with Valtron LLC. Def. Decls. ¶ 9. Valtron LLC advertises its address at the same Federation Tower address that Google used to effect service. ECF 21-16 at 3 (job posting listing Valtron LLC address); ECF 21-17 at 4 (same); ECF 21-22 (employee reviews of Valtron LLC listing the same address). The website Undefined.team, which Defendants also define as a "brand product" of Valtron LLC, Def. Decls. ¶ 9, also lists the same Federation Tower address, ECF 21-19. And Filippov's Undefined.team

email account used a recovery email address that listed the Federation Tower as the billing address. Huntley Decl. ¶ 89 (ECF 21).

Defendants speculate that the service package was "lost" because the address used by Plaintiff to effectuate service did not include a floor number. Def. Decls. ¶ 4. Yet Valtron LLC does not include a floor number in its own address at the Federation Tower. ECF 21-16 at 3, ECF 21-17 at 4; *see also* ECF 21-15 at 4. Further, Defendants do not deny that they work in "Office 5," the office number to which the materials were sent. Def. Decls. ¶ 9; Proof of Service (ECF 15).

### D.   *Entry Of Default And The Parties' Subsequent Discussions*

On February 8, 2022, the Clerk entered a Certificate of Default, certifying that Defendants "have not filed an answer or otherwise moved with respect to the complaint." ECF 38.

On February 15, 2022, Mr. Litvak contacted counsel for Google by email. Harris Decl. ¶ 10, Ex. 12. In that communication, he stated unequivocally that Defendants "will consent to personal jurisdiction in this matter." *Id.* On a subsequent phone call on February 17, 2022, Mr. Litvak again stated Defendants would consent to personal jurisdiction. *Id.* ¶ 11. And at the status conference with the Court on March 1, 2022, he similarly stated Defendants were "willing to admit to personal jurisdiction as long as [Google] vacate[s] the entry of default so we can move forward with litigation." *Id.*, Ex. 13 (Mar. 1, 2022 Hr'g Tr. at 5:15-19).

In the February 17 phone call, Mr. Litvak also stated that Defendants wished to reach a settlement by which they would "cooperate" with and assist Google's disruption of the Glupteba botnet and requested that Google agree to set aside the entry of default. *Id.* ¶ 12; *see also id.*, Ex. 12 at 7 (email discussing a proposal to discuss "settlement" and "potential cooperation"). Counsel for Google requested detail concerning the type of "cooperation" Defendants proposed to offer, and, to the extent Defendants sought to set aside the entry of default, a factual or legal basis for their request. Mr. Litvak indicated he would follow up to provide any information his clients could

6

offer. He responded several days later and stated Defendants were "not ready to discuss any potential cooperation right now" and intended to file a motion to vacate the entry of default. *Id.*, Ex. 12 at 2-3. He noted that, if Google were "willing to set aside the notice of default voluntarily," the case could proceed to "discovery, cooperation, and settlement much faster." *Id.*

Defendants filed their motion to vacate the entry of default, which Google now opposes.

## LEGAL STANDARD

"Once the Clerk issues a certificate of default, the moving party may apply for entry of default judgment, pursuant to Rule 55(b)." *Antetokounmpo v. Searcy*, 2021 WL 3233417, at *2 (S.D.N.Y. May 20, 2021). The Clerk's entry of "default constitutes an admission of all well-pleaded factual allegations in the complaint, and the allegations as they pertain to liability are deemed true." *Id.* Default judgment is appropriate where the "well-pleaded allegations against the defaulting party establish liability as a matter of law." *Display Techs., LLC v. Leantegra, Inc.*, 2022 WL 354667, at *2 (S.D.N.Y. Feb. 7, 2022). "The legal sufficiency of a non-defaulting party's claims 'is analyzed under the familiar plausibility standard enunciated in [*Twombly*] and [*Iqbal*], aided by the additional step of drawing inferences in the movant's favor.'" *Id.* (citation omitted). "The court may also rely on factual allegations pertaining to liability contained in affidavits and declarations submitted by the plaintiff." *Tambriz v. Taste & Sabor LLC*, 2021 WL 6754956, at *3 (S.D.N.Y. Dec. 29, 2021).

## ARGUMENT

The Court should deny Defendants' motion to vacate default, grant Google default judgment against all Defendants, and enter a permanent injunction.

## I. Google Is Entitled To Default Judgment Against Defendants.

"[C]ourts within this district consider three factors" when deciding both whether to enter default judgment and whether to vacate an entry of default: (1) "whether the defendant has a

meritorious defense to plaintiff's claims"; (2) "whether the defendant's default was willful"; and (3) "the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Id.*; *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 454-55 (2d Cir. 2013). Whether to enter default judgment and whether to set aside an entry of default are both left to the district court's sound discretion. *See, e.g.*, *Bricklayers*, 779 F.3d at 186; *Guggenheim*, 722 F.3d at 454.

All three factors weigh against vacating the entry of default. But the lack of a meritorious defense deserves particular attention. "[T]he absence of a meritorious defense alone is sufficient to warrant denial of a motion to vacate." *United Pet Grp.*, 2013 WL 5592617, at *5. The Second Circuit has affirmed the denial of a motion to vacate a default based solely on a lack of meritorious defense. *Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 320-21 (2d Cir. 1986).

Even where "Defendant's failure to respond may not have been willful and vacating the default may not prejudice the Plaintiff, Defendant must demonstrate something more—i.e., a meritorious defense." *Brown v. Gabbidon*, 2007 WL 1423788, at *4 (S.D.N.Y. May 14, 2007). The court in *Brown*, for example, denied a motion to vacate based on a lack of meritorious defense even after holding that the failure to appear was not willful and that the plaintiff would not be prejudiced if the default was vacated. *Id.* at *3-*5.

This makes sense. "[I]n the absence of any reason to believe there is a meritorious defense, setting aside the default would be a pointless exercise that would serve only to impose needless burdens on the parties and the court." *Gov't Emps. Ins. Co. v. Right Sol. Med. Supply, Inc.*, 2012 WL 6617422, at *6 (E.D.N.Y. Dec. 19, 2012). And denying a motion to vacate default based on "defendants' failure to identify any viable factual or legal defense" is "entirely consistent with the strong preference in this circuit for resolving disputes on the merits." *Id.*; *see also id.* at *5

(collecting cases). Accordingly, a court may deny a motion to vacate a default "where it is clear from the record that the defendant failed to demonstrate that it possessed a meritorious defense." *See Durso v. Mod. Food Ctr., Inc.*, 2019 WL 2150424, at *13 (S.D.N.Y. May 17, 2019) (internal quotation marks omitted) (collecting cases).

### A.      Defendants have no meritorious defense.

"To show a meritorious defense, 'the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense.'" *Todtman, Nachamie, Spizz & Johns, P.C. v. Ashraf*, 241 F.R.D. 451, 455 (S.D.N.Y. 2007) (citation omitted). In the absence of "factual elucidation of" of purported defenses, a defendant's "conclusory statement" that "there exist meritorious defenses" is not enough. *Loop Prod. v. Cap. Connections LLC*, 797 F. Supp. 2d 338, 348 (S.D.N.Y. 2011).

Defendants contend that the Complaint should be dismissed due to (1) lack of personal jurisdiction, (2) insufficient service of process, (3) *forum non conveniens*, and (4) failure to state a claim for certain—but not all—of Google's claims. ECF 47-1 at 7-22. None of Defendants' arguments constitutes a "meritorious defense." On that basis alone, Defendants' motion to vacate should be denied in favor of Google's motion for default judgment.

### 1.      Defendants do not present a complete, meritorious defense based on lack of personal jurisdiction under Rule 12(b)(1).

Defendants waived any personal jurisdiction defense through their counsel's repeated representations that Defendants "will consent to personal jurisdiction in this matter." *See, e.g.*, Harris Decl., Ex 12 (Feb. 15, 2022 Email from I. Litvak). Courts in this District thus have found waiver of any objection to personal jurisdiction where, as here, the party's counsel has indicated consent to personal jurisdiction in email correspondence to opposing counsel. *See In re Kuwait Ports Auth.*, 2021 WL 5909999, at *7 n.9 (S.D.N.Y. Dec. 13, 2021) ("[E*Trade] waived any

objection to personal jurisdiction" where its deputy general counsel "wrote that 'E*TRADE does not intend to oppose the Application'") (brackets omitted). A defendant also "waive[s] any personal jurisdiction defense he might have had" when he does so "explicitly, in open court," as did Defendants' counsel. *Universitas Educ., LLC v. Nova Grp., Inc.*, 2021 WL 4443962, at *5 (S.D.N.Y. Sept. 28, 2021).

Here, the Defendants repeatedly consented to the Court's jurisdiction through communications to Plaintiff's counsel and to the Court. First, in Defendants' counsel initial communication to Google's counsel, he stated in writing that Defendants "will consent to personal jurisdiction in this matter." Harris Decl., Ex 12 (Feb. 15, 2022 Email from I. Litvak). Second, defense counsel repeated that representation orally in a February 17, 2022 phone call with Google's counsel. *Id.* ¶ 11. Third, in a subsequent email, defense counsel reaffirmed the Defendants' consent to the Court's personal jurisdiction by explaining that Defendants "would like to file a motion to set aside the Notice of Default, and then, if it's successful, . . . [to] work on everything else, discovery, settlement, potential cooperation, etc." *Id.,* Ex. 12.

Fourth, consistent with those representations, at the March 1, 2022 conference, defense counsel represented to the Court that Defendants intended to answer and that they are "willing to submit to personal jurisdiction as long as [Google] vacate[s] the entry of default so we can move forward with litigation." *Id.* at Ex. 14 (Mar. 1, 2022 Hr'g Tr. at 5:15-19.). These "circumstances weigh overwhelmingly in favor of a conclusion that [Defendants] waived any objections [they] might have had to this Court's exercise of personal jurisdiction over [them]." *Universitas Educ., LLC*, 2021 WL 4443962, at *5.

Furthermore, notwithstanding Defendants' waiver, the undisputed facts establish the Court's personal jurisdiction over Defendants. The "jurisdictional net cast by" New York's long-

arm statute "reaches those defendants who, under the totality of circumstances, purposefully avail themselves of the privilege of conducting activities within New York, thus invoking the benefits and protections of its law." *WowWee Grp. Ltd. v. Meirly*, 2019 WL 1375470, at *3 (S.D.N.Y. Mar. 27, 2019) (internal quotation marks omitted).[3] Personal jurisdiction is proper here because, among other things, Defendants have intentionally caused Glupteba malware to be downloaded on victims' devices in this district, in New York, and throughout the United States; have intentionally directed victims' devices in this District, in New York, and throughout the United States to participate in Defendants' illicit schemes; and have directed multiple forms of communication to co-conspirators in the United States. Compl. ¶ 20 (ECF 5); *see also* Huntley Decl. ¶ 92 (ECF 21).

Defendants admit that their "products branded Voltronwork and Undefined.team"—which appears to refer to the Glupteba malware—"might have been used by United States users," *i.e.* victims of the botnet. Def. Decls. ¶ 9. Dont.farm sold access to stolen accounts in the United States as part of its "premium" service. Harris Decl., Ex. 36; *see also id.*, Ex. 37 (AWMProxy.net listing United States proxies for sale).

Indeed, Google's investigation revealed that "thousands of infected devices in New York City have connected to Glupteba domains through the Google DNS (and many more may have connected through DNS operated by entities other than Google)." Huntley Decl. ¶ 92 (ECF 21). The possibility that thousands of infected devices in New York represent only a small percentage of the number of infected devices worldwide does not excuse Defendants from answering for their

---

[3] Under New York's long-arm statute, "'a court may exercise personal jurisdiction over any non-domiciliary . . . who . . . transacts any business within the state or contracts anywhere to supply goods or services in the state.'" *Id.* (quoting N.Y. C.P.L.R. 302(a)(1) (omissions in original)). The long-arm statute also extends jurisdiction where a defendant "commits a tortious act without the state causing injury to person or property within the state" and "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y. C.P.L.R. 302(a)(3).

actions in New York. *See Chatwal Hotels & Resorts LLC v. Dollywood Co*., 90 F. Supp. 3d 97, 102, 106 (S.D.N.Y. 2015) (finding the long-arm statute satisfied where "more than 30,000 people signed up" to receive email notifications, "and approximately 1% of these individuals were New York residents"); *Warner Bros. Entm't Inc. v. Ideal World Direct*, 516 F. Supp. 2d 261, 266-67 (S.D.N.Y. 2007) (holding that a website operator subject to personal jurisdiction where "at least 379" of 8,253 file transfers were "with residents of New York").

### 2. Defendants do not present a complete, meritorious defense based on insufficient service of process under Rule 12(b)(5).

Defendants next argue that service was defective "[p]ursuant to Rule 12(b)(5)." Mot. 14. This does not represent a complete defense. In any event, Google properly served Defendants.

The Court ordered service by alternative means pursuant to Federal Rule of Civil Procedure 4(f)(3). ECF 8, ¶ 18; *see also* ECF 5, ¶¶ 21-22. Here, "service was in fact made using the [the methods] authorized under the order of service—even if [Defendants] claim[] not to have received notice as a result of that service." *See Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc.*, 2020 WL 4497160, at *6 (S.D.N.Y. Aug. 5, 2020); *cf. Khotovitskaya v. Shimunov*, 2020 WL 4588345, at *4-*5 (E.D.N.Y. Mar. 10, 2020) (finding service proper where "[p]laintiff demonstrated proof of service in accordance with the Federal Rules" notwithstanding defendant's affidavit claiming that he was not served); *Burda Media, Inc. v. Blumenberg*, 2004 WL 1110419, at *7 (S.D.N.Y. May 18, 2004) (finding service proper where defendant did "not allege[] that [plaintiff] failed to comply with Hague Convention procedures" nor "claimed that he was not given actual notice").

Defendant Filippov *concedes* that he received a text message providing notice of this action, but chose to delete it. *See* Filippov Decl. ¶ 5; *see also Mason Tenders Dist. Council v. WTC Contracting, Inc.*, 2011 WL 4348152, at *3 (S.D.N.Y. Sept. 16, 2011) (Cote, J.) ("[T]he facts

suggest that [defendant] received the notices of this action and deliberately decided not to accept, open, read or act on them, deliberately deciding not to appear in this case."). Of course, a defendant served with papers at his own front door cannot avoid service by thereafter throwing them out. Likewise, Defendant Filippov cannot avoid service by deleting a text message. Defendant Starovikov was also properly served, as Google sent papers to a known address associated with his businesses, consistent with the Court's Orders. *See* Compl. ¶¶ 21-22 (ECF 5); TRO ¶ 18 (ECF 8); *supra* Background § D.

In any event, the purported lack of service does not constitute a meritorious defense to Google's claims because, as Defendants concede, Defendants have actual notice of the lawsuit. *See Arista Recs. LLC v. Media Servs. LLC*, 2008 WL 563470, at *1-*2 (S.D.N.Y. Feb. 25, 2008) (denying defendant's motion to dismiss and granting plaintiff's cross motion for service by alternative means under Rule 4(f)(3) through service on Defendant's New York attorneys); *see also Criollo v. NY Fine Interiors Inc.*, 2021 WL 1200318, at *7 (E.D.N.Y. Mar. 3, 2021).

### 3. Defendants do not present a complete, meritorious defense for failure to state a claim under 12(b)(6).

Beyond their procedural arguments, Defendants argue wrongly that certain of Google's claims fail under Rule 12(b)(6). Mot. 14-20. To "make a sufficient showing of a meritorious defense," however, a defendant must put forward evidence that "would constitute a complete defense." *New York v. Green*, 420 F.3d 99, 109 (2d Cir. 2005) (internal quotation marks omitted). Accordingly, a defendant must generally "set forth a meritorious defense as to each cause of action in the complaint." *United States v. Goldstein*, 2005 WL 323740, at *2 (S.D.N.Y. Feb. 9, 2005). If a defendant sets forth a defense as to some claims but not others, the defendant must at a minimum demonstrate that there "is some possibility that the outcome of the suit will be different than if the entry of default is allowed to stand." *Simmons v. Sea Gate Ass'n*, 2013 WL 5774594, at *7

(E.D.N.Y. Oct. 24, 2013); *see also Wildflower + Co. v. Mood Apparel, Ltd.*, 338 F.R.D. 192, 198 (S.D.N.Y. 2021) (stating that a party must present meritorious defense "to all claims where independent damages flow from the various claims pled").

Here, among other deficiencies, Defendants fail to mount a defense to Google's alleged CFAA violations, which also serve as RICO predicate acts. Google's proposed relief—a permanent injunction substantially similar to the preliminary injunction already entered—is justified on these claims alone. *See* 18 U.S.C. § 1030(g).

**CFAA.** Google has established that Defendants have violated the CFAA in at least two ways. *See generally* ECF 19 at 10-12 (establishing Defendants' CFAA liability). First, they have (1) intentionally accessed (2) without authorization (3) and thereby obtained information (4) from a "protected computer." 18 U.S.C. § 1030(a)(2)(C). Second, they intentionally accessed a protected computer without authorization, causing damage. 18 U.S.C. § 1030(a)(2)(C). Defendants fail to address the CFAA claim in their motion, and thereby fail to establish that there "is some possibility that the outcome of the suit will be different than if the entry of default is allowed to stand." *Simmons*, 2013 WL 5774594, at *7. Accordingly, Defendants' motion to set aside the entry of default must fail, and Google's motion for default judgment and a permanent injunction should be granted.

**RICO.** First, Defendants contend that Google's RICO claim must be dismissed because the Complaint does not sufficiently allege an enterprise, arguing "[t]here is no allegation of any kind of chain of command or functional integration." Mot. 15. But an "association-in-fact" enterprise "need not have a hierarchical structure or a 'chain of command.'" *Boyle v. United States*, 556 U.S. 938, 948 (2009). Rather, it is enough that there is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Id.* at 944. Google has amassed a wealth of

14

evidence establishing the Glupteba Enterprise. *See* Compl. ¶¶ 53-87, 92-95, 109-15 (ECF 5); Huntley Decl. ¶¶ 43-85 (ECF 21).

Second, Defendants assert that Google's RICO conspiracy claim fails "to provide specific factual allegations supporting an inference that Defendants entered into an agreement to facilitate the goals of Glupteba Enterprise." Mot. 17. But "[i]t is not necessary for the conspiratorial agreement to be express, so long as its existence can plausibly be inferred from words, actions, and the interdependence of activities and persons involved." *Lewis Fam. Grp. Fund LP v. JS Barkats PLLC*, 2021 WL 1203383, at *9 (S.D.N.Y. Mar. 31, 2021). This merely requires allegations that "defendants each worked together to commit [the predicate acts] in furtherance of their fraudulent scheme." *Id.* The Complaint and evidence detail Defendants' work with others in the Enterprise in furtherance of their criminal schemes. *See* Compl. ¶¶ 92-95, 109-15 (ECF 5); Huntley Decl. ¶¶ 43-89 (ECF 21).

Finally, Defendants' concerns regarding extraterritorial application of RICO are meritless. A RICO violation "may be based on a pattern of racketeering that includes predicate offenses committed abroad, provided that each of those offenses violates a predicate statute that is itself extraterritorial." *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 340 (2016). Here, for example, Google asserts as predicate acts violations of the CFAA and federal access device fraud statute, *see* Compl. ¶¶ 120-25, 134-36 (ECF 5), both of which have clear extraterritorial application, *see, e.g.*, 18 U.S.C. § 1030(e)(2)(B) (CFAA applies to any "computer located outside the United States that is used in a manner that affects interstate or foreign commerce"); 18 U.S.C. § 1029(h) (access device fraud statute applies to acts "outside the jurisdiction of the United States" that involve "an access device issued, owned, managed, or controlled" by a U.S. entity); *see also United States v. Ivanov*, 175 F. Supp. 2d 367, 374-75 (D. Conn. 2001) (CFAA and access device statute apply

extraterritorially); *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 448-49 (N.D. Cal. 2018) (CFAA applies extraterritorially).

Google also asserts as predicate acts violations of the wire fraud and identity fraud statutes, *see* Compl. ¶¶ 126-33 (ECF 5), but seeks relief for exclusively *domestic* violations of those statutes. *See RJR Nabisco*, 579 U.S. at 345 (pattern of racketeering conduct that includes domestic violations of wire fraud statute is not impermissibly extraterritorial); *see also United States v. Gasperini*, 729 F. App'x 112, 114 (2d Cir. 2018) (finding CFAA violations were domestic where defendant "accessed, without authorization, nearly 2000 computers in the United States").

Defendants infected devices located in New York and throughout the United States with malware, stole identifying information from or otherwise hijacked the use of those devices, and continued to infect those devices with malware to carry out criminal activities. *See* Huntley Decl. ¶¶ 28-32, 43-77, 92 (ECF 21); *see also* Def. Decls. ¶ 9 (acknowledging domestic "users" of "software"). Their conduct is not immunized by the presumption against extraterritoriality.

*ECPA.* The ECPA prohibits "intentionally access[ing] without authorization a facility through which an electronic communication service is provided" to "obtain[], alter[], or prevent[] authorized access to a wire or electronic communication while it is in electronic storage." 18 U.S.C. § 2701(a). Defendants assert that the Dont.farm "project had a page Rent.dont.farm, where any internet user could sell access to **his** Google account by giving the service a login and password for access authorization to **his** account." Def. Decls. ¶ 12 (emphasis in original). Even if credited, Defendants do not deny that they *also* infected devices with malware, stole user account information, and provided access to the stolen accounts via Dont.farm, in violation of the ECPA. Defendants therefore have failed to assert a complete defense as to Google's ECPA claim as well.

***Lanham Act.*** Defendants offer no substantive defense to Google's Lanham Act claims. Rather, they "reserve their arguments" with respect to those claims. Mot. 18. That is insufficient to satisfy their burden to establish a complete defense. *See, e.g.*, *Green*, 420 F.3d at 110 ("[D]efendant must present more than conclusory denials when attempting to show the existence of a meritorious defense.") (internal citation omitted); *Loop Prod.*, 797 F. Supp. 2d at 348 (concluding it insufficient to assert "there exist meritorious defenses").

***Tortious Interference with Business Relationships.*** Defendants contend that an interference claim must be motivated by "malice" that goes beyond mere economic interests. This is an incorrect statement of law. To establish liability, a defendant must "act with a wrongful purpose" *or* "utilize wrongful means" *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 F. App'x 102, 105 (2d Cir. 2012). Here, Google has established that Defendants have used "dishonest, unfair, or improper means," therefore it need not show malice. *Guzik v. Albright*, 2018 WL 4386084, at *5 (S.D.N.Y. Sept. 14, 2018) (noting that a plaintiff must prove, among other elements, that "the defendant acts with the sole purpose of harming the plaintiff, or, failing that level of malice, uses dishonest, unfair, or improper means").[4]

***Unjust Enrichment.*** Defendants argue again that their so-called "voluntary" selling of accounts means that Google fails to state a claim for unjust enrichment. Mot. 19. Again, even if credited, Defendants' argument fails to establish a meritorious defense because it does not dispute that Defendants provided access to numerous accounts without the true user's consent, thereby unjustly profiting from their unauthorized use of Google's systems. *See, e.g.*, *City of Almaty v. Sater*, 503 F. Supp. 3d 51, 60-61 (S.D.N.Y. 2020).

---

[4] Defendants also point to their so-called "voluntary" selling of accounts, which is irrelevant even if credited for the reasons already discussed in connection with the ECPA claim.

### 4. Defendants do not present a complete, meritorious defense based on *forum non conveniens*.

"A defendant who invokes *forum non conveniens* generally bears 'a heavy burden' in opposing a plaintiff's chosen forum." *Amimon Inc. v. Shenzhen Hollyland Tech Co.*, 2021 WL 5605258, at *6 (S.D.N.Y. Nov. 30, 2021) (internal citation omitted). Whether to grant dismissal for *forum non conveniens* is committed to the district court's broad discretion, guided by a three-step process: (1) "a court determines the degree of deference properly accorded the plaintiff's choice of forum"; (2) "it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute"; and (3) it "balances the private and public interests implicated in the choice of forum." *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005). Defendants have not come close to meeting their burden to show dismissal is warranted on these grounds.

*First*, this case "presents a situation in which courts should initially be at their most deferential: a U.S. plaintiff suing at home for valid reasons." *Seales v. Panamanian Aviation Co.*, 2008 WL 544705, at *4 (E.D.N.Y. Feb. 26, 2008). That deference "is fortified where an American plaintiff brings suit against a foreign entity and the alternative forum is foreign." *Everard Findlay Consulting, LLC, v. Republic of Suriname*, 2022 WL 845757, at *4 (S.D.N.Y. Mar. 22, 2022).

*Second*, "[t]o secure dismissal of an action on grounds of forum non conveniens, a movant must demonstrate the availability of an adequate alternative forum." *Norex*, 416 F.3d at 157. "If the movant fails to carry this burden, the forum non conveniens motion *must be denied* regardless of the degree of deference accorded plaintiff's forum choice." *Id.* (emphasis added)

As Defendants admit, an alternative forum is adequate if "(1) the defendants are amenable to service of process there and (2) the forum permits litigation of the subject matter of the dispute." Mot. 20; *see also Norex*, 416 F.3d at 157 (2d Cir. 2005). But Defendants do not even attempt to

address this prong. Mot. 20-21. By failing to proffer any evidence or argument in support of an element on which they bear the burden, Defendants' argument necessarily fails. *See, e.g.*, *Amimon Inc. v. Shenzhen Hollyland Tech Co.*, 2021 WL 5605258, at *7 (S.D.N.Y. Nov. 30, 2021) (denying *forum non conveniens* motion where defendant did "not provide any specific information as to how a Chinese court would permit litigation of the specific U.S. and New York law violations at issue"); *BCRS1, LLC v. Unger*, 2021 WL 3667094, at *8 (E.D.N.Y. Aug. 18, 2021) ("Defendant's argument consists of a single paragraph, and defendant has not submitted any evidence that plaintiff could pursue its claims in Canada.").

Additionally, the State Department currently warns United States citizens "not [to] travel to Russia due to the unprovoked and unjustified attack by Russian military forces in Ukraine." Harris Decl., Ex. 38. It has issued a "Level 4: Do not travel" advisory, its "highest advisory level due to greater likelihood of life-threatening risks." *Id.* Russia is therefore not a "presently available adequate alternative forum." *Norex*, 416 F.3d at 160; *see DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 804 (4th Cir. 2013) (relying on State Department travel warning).

*Finally*, even if the court were to reach the third step, there "would [not] be any net reduction in hardship if this litigation were pursued in a [Russian] court"—that "would simply shift to [Google] the very costs that [D]efendants seek to avoid." *See State St. Bank & Tr. Co. v. Inversiones Errazuriz, Limitada*, 230 F. Supp. 2d 313, 321 (S.D.N.Y. 2002). Finally, as to the competing public interests, the United States "has a strong interest in upholding its federal" cybersecurity laws to protect its citizens from organized cybercrime. *See Villella*, 2017 WL 1169629, at *9 (S.D.N.Y. Mar. 28, 2017).

### B.   Defendants' default was willful.

While a lack of a meritorious defense is alone sufficient to deny Defendants' motion, their default was also willful.

"A default is considered willful when the defendant fails to answer a complaint without explanation or justification." *S.E.C. v. McNulty*, 137 F.3d 732, 738-39 (2d Cir. 1998). The address used for service is advertised by both their employer, Valtron LLC, and numerous of the other entities that comprise the Enterprise as well. Although a failure to provide an accurate address in is not necessarily evidence of bad faith, willfulness can be inferred from both gross negligence, *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996), and efforts to make a "correct address unavailable", *Durso*, 2019 WL 2150424, at *5.

Yet Defendants' elusiveness is not accidental—it is by design. Defendants operate a botnet that relies on stealth and evasion in order to operate its criminal schemes. *See generally* Huntley Decl. (ECF 21). Dont.farm—which Defendants admittedly helped to develop, Def. Decls. ¶ 12—instructs their customers on how to use the stolen accounts in a way that minimizes their detection by both the true user and Google. Huntley Decl. ¶¶ 47-50.

Default is also willful when a party provides "flimsy reasons" for failing to comply with court orders, *McNulty*, 137 F.3d at 739, and when it proffers "less than credible testimony" in the face of "highly reliable evidence" of both service and actual notice, *Manzanares v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*, 2020 WL 6390162, at *2 (E.D.N.Y. Nov. 2, 2020). Although Google does not speculate as to why Defendants now choose to appear, Defendants' insistence that they were unaware of the claims filed against them is simply not credible. In the weeks following the TRO, Defendants confronted widespread outages of not only the primary storefronts associated with the botnet, but also the C2 servers that direct its operations, and the many Google email accounts and workspaces that Defendants used in connection with the Enterprise. 2/7/22 Harris Decl. ¶¶ 19-21 (ECF 36). The Enterprise was well aware of these impacts: Dont.farm attempted to reassure its customers that the disruption resulted from an "update[]" to fix a "speed

20

issue." Harris Decl. ¶ 32, Ex 14. Meanwhile, Defendants persistently attempted to undermine Google's disruption efforts by transmitting new C2 information through the blockchain. 2/7/22 Harris Decl. ¶¶ 20-21 (ECF 36).

As Google's technical disruption efforts took hold, Google served Defendants, providing notice of the Complaint and Preliminary Injunction, including through text messages Filippov acknowledges receiving. *See supra* § I.A.2. Had Defendants harbored any doubts about the veracity of these multiple notices, the extensive coverage that the litigation received in both Russian media and in online fora should have been sufficient to confirm their legitimacy. Indeed, the lawsuit was discussed extensively on BlackHatWorld.com, an online forum of which Dont.farm was an active participant; a forum staffer stated on December 15, 2021 that they "informed" Dont.farm of the allegations in the lawsuit and froze its "ad account." Harris Decl. ¶ 32, Ex. 14. At the same time, the lawsuit was covered extensively by Russian-language news media, which often expressly named the Defendants and recited the allegations against them in detail.[5]

The nature of Defendants' criminal activities, their efforts to evade detection, their attempts to thwart Google's disruption efforts, the extensive media coverage, and efforts by Google and others to inform them of the litigation—not to mention Filippov's admitted actual notice— establish that Defendants' default was willful.

---

[5] The Russian media outlets that reported the litigation include: TASS (the largest state-run news agency in Russia); BBC News Russia; Gazeta.ru (a popular source of online news for Russian citizens that translates to "Newspaper.ru"); *Novaya Gazeta* (a well-regarded newspaper whose editor-in-chief shared the 2021 Nobel Peace Prize); Tsargrad (a pro-Kremlin media organization); RAPSI (the Russian news agency for legal news); Govorit Moskva (a Moscow local news website); and Moskovskaya Gazeta (a Moscow local news website). Harris Decl. ¶¶ 33-35; *see also* 2/7/22 Harris Decl. ¶ 22 (ECF 36) (describing English language media coverage).

**C.      Google would be prejudiced by the denial of a motion for default judgment.**

The Court need not find prejudice to grant Google's motion for default judgment because Defendants have willfully defaulted and failed to establish a meritorious defense. *See, e.g.*, *State St. Bank & Tr. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 174 (2d Cir. 2004). Yet Google would be prejudiced should the Court grant Defendants' motion to vacate the entry of default and deny Google's motion for default judgment.

Prejudice exists where the delay from vacating default "may result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion," or "may thwart plaintiff's recovery or remedy." *Salazar v. 203 Lena Inc.*, 2020 WL 2489070, at *3 (S.D.N.Y. May 14, 2020) (citation omitted); *Todtman*, 241 F.R.D. at 455. Here, while Google acted to disrupt the Glupteba botnet pursuant to this Court's TRO and Preliminary Injunction Order, the Enterprise acted to reconstitute it, establishing new C2 servers and directing infected devices to these servers through the blockchain. *See* 2/7/22 Harris Decl. ¶ 21 (ECF 36). These facts not only "demonstrate that any further delay might result in the loss of evidence," *see Loop Prod.*, 797 F. Supp. 2d at 348, but also that denying default judgment would sanction Defendants' abuse of the Court's prior orders, *Todtman*, 241 F.R.D. at 455 (finding prejudice where defendant seeking to set aside default had violated the TRO).

**II.      Google Is Entitled To A Permanent Injunction.**

"It is well established that a court may grant a permanent injunction as part of a default judgment." *BMaddox Enters. LLC v. Milad Oskouie, Osko M Ltd.*, 2021 WL 3675072, at *15 (S.D.N.Y. Aug. 18, 2021); *see Rovio Ent., Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 546 (S.D.N.Y. 2015) (collecting cases). The Court has already granted a TRO and a preliminary injunction, the latter of which remains in effect. *See* ECF 9. "The requirements for a permanent injunction are 'essentially the same' as for a preliminary injunction, except that the moving party

22

must demonstrate 'actual success' on the merits." *N.Y.C.L. Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012). Because a default judgment is warranted, Google is also entitled to a permanent injunction.

More specifically, to secure a permanent injunction, a plaintiff must demonstrate that: (1) it has suffered an irreparable injury; (2) remedies available at law are inadequate to compensate for that injury; (3) in light of the hardships on the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange LLC*, 547 U.S. 388, 391 (2006). All four factors are met here.

**Irreparable injury and inadequate remedies at law**. Google has established that it was irreparably injured and that legal remedies are inadequate to compensate for that harm. "[C]ircumstances[] such as insolvency or unsatisfiability of a money judgment, can show irreparable harm." *Khepera-Bey v. Santander Consumer USA, Inc.*, 2013 WL 3199746, at \*4 (D. Md. June 21, 2013). The Glupteba Enterprise has already infected one million devices with malware. Without continued injunctive relief to prevent its reconstitution, the Enterprise will continue to infect thousands of new devices, conscripting those machines into tools for its cybercrimes. *See* Compl. ¶ 29 (ECF 5); Huntley Decl. ¶¶ 4, 90 (ECF 21).

In addition, Defendants' conduct is tarnishing Google's valuable trademarks, injuring Google's goodwill, and damaging its reputation by creating confusion as to the source of the Glupteba malware. Consumer confusion and injury to business goodwill constitute irreparable harm. *E.g., Church of Scientology Int'l v. Elmira Mission of Church of Scientology*, 794 F.2d 38, 44 (2d Cir. 1986); *see also, e.g., Microsoft Corp. v. Does 1-8*, 2015 WL 4937441, at \*10 (E.D. Va. Aug. 17, 2015) (finding that the Shylock botnet "is damaging to the Plaintiffs' brands and the

customer goodwill"). Google is also entitled to a presumption of irreparable harm upon a showing, as here, that it has stated a claim under the Lanham Act. *See* 15 U.S.C. § 1116(a).

**Balance of the hardships.** The equities also favor a permanent injunction. Defendants' criminal enterprise defrauds consumers and injures Google. There is no countervailing weight. *See, e.g.*, *FTC v. Verity Int'l, Ltd.*, 2000 WL 1805688, at *1 (S.D.N.Y. Dec. 8, 2000) (finding that the balance of equities weighs in favor of injunctive relief where defendant's practices violate a federal statute); *US Airways, Inc. v. US Airline Pilots Ass'n*, 813 F. Supp. 2d 710, 736 (W.D.N.C. 2011) (same).

**Public interest.** Finally, a permanent injunction would serve the public interest. Prior to this Court's injunctive relief, as many as 60,000 devices became infected with Glupteba malware in a single day. As noted above, even after this Court's preliminary injunction, Defendants have continued their attempts to evade detection and reconstitute the botnet by deploying new C2 servers and attempting to direct infected devices to those servers by posting new domains to the blockchain. 2/7/22 Harris Decl. ¶¶ 20-21 (ECF 36). The public interest is clearly served by enforcing statutes designed to protect the public, such as the CFAA, ECPA, and Lanham Act. *See, e.g.*, *FXDirectDealer, LLC v. Abadi*, 2012 WL 1155139, at *8 (S.D.N.Y. Apr. 5, 2012) ("[T]he public has an interest in seeing that . . . cyber-fraud is prevented.").

The Court's preliminary injunction therefore should be made permanent.

## III.   Default Judgment And Permanent Injunction Is Warranted Against The Doe Defendants.

Even should the Court vacate the entry of default as to Defendants Starovikov and Filippov, default judgment and a permanent injunction is still warranted as to the Doe Defendants. Where defendants fail to appear and respond to the complaint, all three of the factors weigh in favor of default judgment. *See, e.g.*, *Tambriz*, 2021 WL 6754956, at *2 (noting that meritorious defenses

cannot be established where defendants have not responded to the claim, defendants' "failure to respond to the Complaint or otherwise appear indicate willful conduct," and that plaintiffs will be prejudiced if they are "unable to vindicate [their] rights"); *Santana v. Latino Express Rests., Inc.*, 198 F. Supp. 3d 285, 291 n.2 (S.D.N.Y. July 28, 2016). As explained above, Google has established liability on all of its claims. By entering Default Judgment and Permanent Injunction, the Court will ensure that the Glupteba botnet will remain disrupted and will not simply be reconstituted to continue to support the Glupteba Enterprise's cybercrimes.[6]

## IV.     Withdrawal of Google's Damages Request

Google's Complaint sought a judgment awarding (i) actual damages, (ii) enhanced, exemplary, and special damages, and (iii) attorneys' fees and costs, *see* ECF 5 (Prayer for Relief, G-I); however, Google hereby withdraws its request for monetary damages in connection with its motion for Default Judgment and a Permanent Injunction.

## CONCLUSION

For the foregoing reasons, this Court should enter default judgment for Google and issue a permanent injunction against Defendants.

---

[6] Courts have granted permanent injunctions and entered default judgments against doe defendants in similar cases involving botnets. *See, e.g.*, *Microsoft Corp. v. Does 1-2*, 2021 WL 4260665, at *1 (E.D.N.Y. Mar. 5, 2020); *Microsoft Corp. v. Does 1-51*, 2018 WL 3471083, at *2 (N.D. Ga. June 18, 2018).

DATED: March 25, 2022          Respectfully submitted,

*/s/ Laura Harris*
Laura Harris
Andrew Michaelson
Kathleen E. McCarthy
Matthew L. Bush
KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036
Telephone: (212) 790-5356
Fax: (212) 556-2222
lharris@kslaw.com
amichaelson@kslaw.com
kmccarthy@kslaw.com
mbush@kslaw.com

Sumon Dantiki (*pro hac vice*)
David P. Mattern (*pro hac vice*)
KING & SPALDING LLP
1700 Pennsylvania Ave., NW, 2nd Floor
Washington, DC 20006
Telephone: (202) 626-5591
Fax: (202) 626-3737
sdantiki@kslaw.com
dmattern@kslaw.com

*Counsel for Plaintiff Google LLC*