UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

GOOGLE LLC,

                  Plaintiff,                        Civil Action No.: 1:21-cv-10260-DLC

- against -

DMITRY STAROVIKOV;
ALEXANDER FILIPPOV;
and Does 1-15,

                  Defendants.

---------------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION AND IN FURTHER SUPPORT OF THE DEFENDANT'S MOTION UNDER FED. R. CIV. P. Rule 55 (C), TO VACATE THE ENTRY OF DEFAULT AND TO DISMISS THE ACTION**

/s/ Igor Litvak, Esq.
_____

Igor B Litvak
Attorneys for Defendants
The Litvak Law Firm
1733 Sheepshead Bay Rd., Suite 22
Brooklyn, NY 11235
Tel/Fax: 718-989-2908
Email: Igor@LitvakLawNY.com

**TABLE OF CONTENTS**

I. PLAINTIFF MISCHARACTERIZED FACTS STATED IN DEFENDANT'S DECLARATIONS IN SUPPORT OF THEIR MOTION ............................................................. 1

II. THE COURT SHOULD VACATE THE ENTRY OF DEFAULT AGAINST DEFENDANTS AND DENY MOTION FOR DEFAULT JUDGMENT ............................................................. 2

  A. Defendants' Default Was Not Willful .................................................................................. 3

  B. Defendants Sufficiently Present Multiple Meritorious and Complete Defenses ................... 4

    i. Since Defendants Have No Contacts Whatsoever With the Forum State or the United States Generally Court Lacks Personal Jurisdiction Over Defendants.................................... 4

    ii.  Defendants Were NOT Served in This Lawsuit .............................................................. 6

    iii. Several Causes of Actions Should be Dismissed Under Rule 12(b)(6) as Defendants Provided Complete Defenses.................................................................................................. 7

    iv. Defendants present a complete, meritorious defense on *Forum Non-Conveniens* ........... 14

  C. Defendants' Default Did Not Prejudice Plaintiff ................................................................ 17

III. DEFAULT JUDGMENT AND PERMANENT INJUNCTION ARE NOT WARRANTED AGAINST THE DOE DEFENDANTS SINCE THE DOE DEFENDANTS WERE NEVER IDENTIFIED OR SERVED ............................................................................................. 18

IV. PLAINTIFF IS NOT ENTITLED TO A PERMANENT INJUNCTION ............................. 19

V. CONCLUSION ................................................................................................................. 19

Defendants DMITRY STAROVIKOV AND ALEXANDER FILIPPOV (hereinafter, "<u>Defendants</u>"), respectfully submit the following memorandum of law in opposition to Plaintiff's Motion for a Default Judgment and Permanent Injunction and in further support of their Motion for an order vacating the entry of default under Fed. R. Civ. P. 55(c) and dismissing the action for lack of personal jurisdiction, failure to state a claim, and on forum *non-conveniens* grounds.

## I. PLAINTIFF MISCHARACTERIZED FACTS STATED IN DEFENDANT'S DECLARATIONS IN SUPPORT OF THEIR MOTION

Plaintiff egregiously claims that

Defendants do not deny that they operate the botnet and participate in the Enterprise's illicit activities. Their declarations do not dispute: (1) that the Glupteba botnet exists; (2) that they exert control over the Glupteba botnet; (3) that users are tricked into downloading the Glupteba malware; (4) that the Glupteba malware has infected more than a million devices; (5) that the Glupteba malware provides access to users' accounts without the users' knowledge; and (6) that Defendants sell access to those stolen accounts.

Mem. at 11.  Moreover, Plaintiff summarized the relevant facts claiming that Defendants

• Do not deny that they distribute malware to the devices of unwitting victims, including in the United States;

• Do not deny that they steal usernames and passwords from infected devices;

• Do not deny that they sell access to stolen accounts to third parties;

• Do not deny that they attempted to evade Google's efforts to disrupt the botnet pursuant to the Temporary Restraining Order and Preliminary Injunction; and

• Admit they used the IP address of a Glupteba botnet command and control ("C2") server in signing up for their Google accounts. <u>See</u> Def. Decls. ¶ 11.

Mem. at 1-2. In fact, the content of the Defendants' declarations does not support that "summary."  Indeed, paragraph 10 of each declaration (the one that Plaintiff relies upon to

support its far-fetching conclusion that Defendants admitted the critical facts at dispute) states

that

> To the best of my knowledge, Valtron developed projects
> including various marketing and utility tools, such as software
> engine optimization, proxy services, mining optimization, and
> contextual advertising. Among those products, I recognize
> Extracard and Awmproxy, which are legitimate software products
> developed by Valtron.

Defs. Decls. at ¶10. Later in their respective Declarations, Defendants testified that 1) IP address

of a Glupteba botnet proxy C2 Server was shared among "more than 100,000 people," Defs.

Decls. at ¶11; 2) Google account login credentials were not stolen as "any Internet user could sell

access to **his** Google account by giving the service a login and password for access authorization

to his account,"  Defs. Decls. at ¶12; 3) "unfunded credit cards" were issued by one of the largest

banks in Russia - Otkritie Bank and that Defendant had no control over "any subsequent activity

involving those cards," Defs. Decls. at ¶¶13-14; 4) Defendants did not participate in a disruptive

add scheme nor distribute malware to the devices of unwitting victims" Defs. Decls. at ¶¶15-16;

and 5) "Cryptojacking Scheme" was legitimately provided to customers for mining purposes,

which were regulated by a written Terms of Service agreement. Defs. Decls. at ¶¶17. Most

importantly, Defendants worked as "software engineers" for Voltron LLC, and as such, they

have limited knowledge of the details and content of its business activities and goals. Defs.

Decls. at ¶9.

Therefore, Plaintiff's conclusion that "[n]one of Defendants' legal or factual arguments

presents a complete defense to Google's claims" as "they stand unrebutted along with virtually

all of Google's claims against Defendants," Mem at 2, has no merits whatsoever.

## II. THE COURT SHOULD VACATE THE ENTRY OF DEFAULT AGAINST DEFENDANTS AND DENY MOTION FOR DEFAULT JUDGMENT

Defendants' failure to answer falls within the scope of Rule 55(c) because Defendants

sufficiently demonstrate that the default was NOT willful, setting aside the default would NOT prejudice the adversary and Defendants demonstrate that they have meritorious defenses. Therefore, this Court should vacate the entry of default and deny Plaintiff's motion for default judgment.

Indeed, defaults are not favored, particularly when the case presents issues of fact, and doubts are to be resolved in favor of a trial on the merits. See Klapprott v. United States, 335 U.S. 601 (1949); Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). Moreover, the standard for setting aside the entry of default pursuant to [Fed. R. Civ. P.] 55(c) is less rigorous than the 'excusable neglect' standard for setting aside a default judgment by Motion pursuant to [Fed. R. Civ. P.] 60(b)." Id. at 276. Further, "the test of such a [meritorious] defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 98 (2d Cir. 1993). In fact, "meritorious defense" component of the **test for setting aside default judgment pursuant to Rule 55(c) does not go so far as to require that movant demonstrate likelihood of success on merits, but rather, party's averments need only plausibly suggest existence of facts which, if proven at trial, would constitute cognizable defense**. Coon v. Grenier, 867 F.2d 73 (1st Cir. 1989)(emphasis added).

Here, the Defendants provided more than sufficient evidence that plausibly suggests the existence of facts which, if proven at trial, would constitute a cognizable defense.

### A. Defendants' Default Was Not Willful

Plaintiff's arguments impermissibly put on Defendants a burden to look out for every piece of information that could apprise them of any potential lawsuit filed against them in the world. Plaintiff fails to support its argument that Defendants were "elusive." In fact, Plaintiff did not even attempt to serve Defendants personally, which could have been accomplished

seamlessly as Plaintiff fails to show any evidence that they would hide from the service of process. Instead, Plaintiff relied upon numerous yet ineffective attempts to serve corporate entities, such as Valtron LLC and Investauto LLC, via "alternative means." Regardless of whether Plaintiff used the correct address, the address has nothing to do with these **individual Defendants**. The truth is that despite those attempts, the Defendants did not receive any of the purportedly served documents.

   As a result, Defendants' default is not even careless or negligent let alone willful. Plaintiff's argument to the contrary does not make any sense since there is no benefit whatsoever for Defendants to default and then, after a few weeks, decide to appear in this matter.  The only one plausible explanation for their apparently illogical behavior, and that is they defaulted because they did not know about this lawsuit. As such, it is clear that the Defendants did not engage in "deliberate or egregious conduct." Argus Research Group, Inc. v. Argus Securities, Inc., 204 F. Supp. 2d 529, 531 (E.D.N.Y. 2002).

### B. Defendants Sufficiently Present Multiple Meritorious and Complete Defenses

### i. Since Defendants Have No Contacts Whatsoever With the Forum State or the United States Generally Court Lacks Personal Jurisdiction Over Defendants

   In the case at bar, the Defendants have no contact whatsoever with either the forum state or the United States regarding allegations in the complaint. Plaintiff's argument that Defendants "waived" personal jurisdiction through their counsel has no merit. First, counsel never unconditionally "consented" to personal jurisdiction.  Instead, counsel, as a courtesy and in order to avoid unnecessary motion practice, offered to "admit to personal jurisdiction as long as [Google] vacate[s] the entry of default so we can move forward with litigation." Dkt. No. 52-13 at 5: 15-19. See also Dkt. No. 52-12 at 7 ("I am emailing to ask that once I file my NOA that you withdraw your Motion for default judgment and consent to defendants filing a late answer, which

I expect to file a few weeks after filing my NOA. The defendant will consent to personal

jurisdiction in this matter."). The same was discussed over the phone.

Second, counsel meant to admit a narrow subset of personal jurisdiction, i.e. to waive

improper service of process in exchange for Plaintiff's withdrawal of notice of default.  See Dkt.

52-13 at 4. ("I would like to add that there was never any service on the defendants. . .  I would

like to say, that there was an attempted service, but that service was not successful.")  As such,

counsel was only willing to admit improper service in exchange for Plaintiff's withdrawal of

notice of default and its consent to defendants filing a late answer.

Third, under Federal Rule of Evidence 408, evidence of compromise offers and

negotiations are not admissible. Here, the parties were negotiating a possibility to avoid

unnecessary motion practice, and Defendants counsel made an attempt to offer a compromise

admitting improper service in exchange for Plaintiff's withdrawal of notice of default and its

consent to Defendants filing a late answer, which is very common among litigators in this Court.

Therefore, Plaintiff's waiver argument is unavailing based on laws and facts and borders on

being unethical.

Plaintiff's substantive argument challenging Defendants' personal jurisdiction defense

also fails.  Other than offering conclusory allegations, Plaintiff could not provide any factual

support to its claim that "[d]efendants have intentionally caused Glupteba malware to be

downloaded on victims' machines in this district, in New York, and throughout the United

States; have intentionally directed victims' machines in this district, in New York, and

throughout the United States to participate in intentional, wrongful, illegal, and/or tortious acts;

and have directed multiple forms of communication to co-conspirators in the United States for

the purpose of planning and carrying out their conspiracy and fraud."  Mem. at 11.

While it is plausible to assume that there were instances of downloading Glupteba

malware in the United States, Plaintiff made no showing that these <u>individual Defendants</u> intentionally caused that. Additionally, there is no evidence that the same individual Defendants "intentionally directed victims' machines . . . to participate in intentional, wrongful, illegal, and/or tortious acts," or "directed multiple forms of communication to co-conspirators in the United States for the purpose of planning and carrying out their conspiracy and fraud." Therefore, these conclusory allegations are insufficient to make *a prima facie* showing of jurisdiction.

### ii.  Defendants Were NOT Served in This Lawsuit

Contrary to its contention, Plaintiff failed to effect proper service of process upon Defendant. In fact, Plaintiff itself admits that several of its service attempts were unsuccessful. <u>See, e.g.</u>, Laura Harris Decl. at ¶¶19, 25, 27 (Dkt. No. 52)("On December 21, 2021, FedEx issued a notification that it was unable to deliver the shipment to the address. As of February 7, 2022, FedEx labeled the shipments "undeliverable"), ("King & Spalding received delivery failure notifications for each of its emails"), (King & Spalding received an "invalid number" error message in response to [service of process by text message to a phone number associated with Defendant Starovikov]").

Additionally, the alleged IP address of a Glupteba botnet proxy C2 Server was apparently shared among an unidentified number of internet users located at the Federation Tower, as Plaintiff concedes. <u>See</u> Bisbee Declr at ¶37 (Dkt. No. 52-7)("Chainalysis discovered that one of the physical addresses associated with Valtron12 is Federation Tower, Presneskaya emb., 12, Moscow, Russia, the same address used by at least one other known criminal entity, Suex, a Czech-registered over-the-counter (OTC) exchange.").

Moreover, Plaintiff, again, mischaracterized Defendants' testimony stating that "Defendants do not deny that they work at [Presnenskaya Embankment 12, Office 5,]" Mem. at

5.  In fact, nowhere does Defendants' testimony contain any language suggesting that.  In the same vein, Defendants never conceded that they, apparently from the media, "have actual notice of the lawsuit." Mem. at 13. Regardless, the media would only provide the most basic information about the lawsuit, which is not tantamount to the proper service with the papers filed with the Court. In any event, "defective service [cannot] be ignored on the mere assertion that a defendant had "actual notice." Russ Berrie & Co. v. T.L. Toys (HK) Ltd., No. 01 Civ. 4715 (LMM), 2002 U.S. Dist. LEXIS 21882, 2002 WL 31458232, at 2 (S.D.N.Y. Nov. 4, 2002) ("[A]ctual notice of the action will not, in itself, cure an otherwise defective service.")

Therefore, pursuant to Rule 12(b)(5), Fed. R. Civ. P., the complaint must be dismissed for insufficient service of process as "without proper service a court has no personal jurisdiction over a defendant." Hawthorne v. Citicorp Data Sys., Inc., 219 F.R.D. 47, 49 (E.D.N.Y. 2003).

### iii. Several Causes of Actions Should be Dismissed Under Rule 12(b)(6) as Defendants Provided Complete Defenses

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." In re Nasdaq Mkt.–Makers Antitrust Litig., 894 F. Supp. 703, 709 (S.D.N.Y. 1995) (internal quotation marks omitted). To be legally viable, claims must provide more than just labels, conclusions, or formulaic recitations of the elements of a cause of action. Iqbal, 556 U.S. at 678. A district court is not required to accept as true legal conclusions that are couched as factual allegations. Berman v. Sugo LLC, 580 F. Supp. 2d 191, 199–200 (S.D.N.Y. 2008). When a party has "not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed."

<u>Twombly</u>, 550 U.S. at 570.  Here, several causes of action should be dismissed under Rule 12(b)(6) since Plaintiff's claims are  "just labels, conclusions, or formulaic recitations of the elements of a cause of action."

Contrary to Plaintiff's contention, Defendants do present complete, meritorious defenses to challenge Plaintiff's failure to state a claim under 12(b)(6).

**CFAA**. Specifically, with respect to the alleged violations of the Computer Fraud and Abuse Act of 1986 ("CFAA"), Defendants showed that several elements of the cause of action are missing; to wit, Defendant **<u>did not</u>** 1) intentionally access[] (2) without authorization (3) and thereby obtained information (4) from a "protected computer," as required by  18 U.S.C. § 1030(a)(2)(C), as their Declarations indicate that Google accounts owners **voluntarily** sold access to their Google accounts by disclosing to Rent.dont.farm their own logins and passwords for the access authorization to their accounts. Defs. Decls. at 12.  As such, at least two key statutory elements are missing.

Moreover, Plaintiff could not maintain a civil action against Defendants under CFAA. 18 U.S.C. § 1030 is primarily a criminal statute. It does, however, recognize a private right of action by "any person who suffers damages or loss" to recover for five violations listed in 18 U.S.C. § 1030(c)(4)(A)(i)(I)-(V).  <u>See</u> 18 USC § 1030(g).  However, none of those violations (requiring proof of damages in excess of $5,000.00[1]) are even marginally relevant to this case. As such, Plaintiff could not establish CFAA violations, which also serve as RICO predicate acts, against Defendants.

**RICO.** As this Court held in <u>Katzman v. Victoria's Secret Catalogue</u>, 167 F.R.D. 649, 655 (S.D.N.Y. 1996), "[b]ecause the 'mere assertion of a RICO claim . . . has an almost

---

[1] Here, damages are not at issue since Google voluntarily withdrew its request for monetary damages in connection with its motion for Default Judgment and a Permanent Injunction. Mem. at 25.

inevitable stigmatizing effect on those named as defendants, . . . **courts should strive to flush out frivolous RICO allegations at an early stage of the litigation**." As such, the Court should heed this advice.

First, contrary to Plaintiff's contention, it did not "amass[] a wealth of evidence establishing the Glupteba Enterprise," Mem. at 15, which purportedly specifies Defendants' involvement in "chain of command or functional integration."  Indeed, "simple taking of directions and performance of tasks that are 'necessary and helpful' to the enterprise, without more, is insufficient to bring a defendant within the scope of § 1962(c)." United States v. Viola, 35 F.3d 37, 41 (2d Cir. 1994).  Here, even assuming Plaintiff's allegations as true, there is no evidence alleging that Defendants did more than just provide "goods or services that ultimately benefit the enterprise."  LaSalle, 951 F. Supp. at 1090.

Second, the RICO claim is not actionable because Plaintiff, as discussed above, could not establish CFAA violations (or the federal fraud statutes as discussed below), which serve as RICO predicate acts.  In fact, since Plaintiff chose to withdraw its request for monetary damages, it is clear that it could not prove them. However, a plaintiff alleging a violation of civil RICO must establish loss causation, meaning that the defendant's racketeering activity caused the plaintiff "to suffer economic loss." McLaughlin v. Am. Tobacco Co., 522 F.3d 215, 226 (2d Cir. 2008); Makowski v. United Bhd. & Joiners of Am., 2010 U.S. Dist. LEXIS 77775, at 26 (S.D.N.Y. Aug. 2, 2010)("a RICO plaintiff 'may not recover for speculative losses or where the amount of damages is unprovable.'"). Courts have regularly "held that a plaintiff who alleges injuries that are 'indefinite and unprovable' does not have standing under, and cannot recover damages pursuant to, RICO." World Wrestling Entm't. Inc. v. Jakks Pac, Inc., 530 F. Supp. 2d 486, 521 (S.D.N.Y. 2007); Allen v. Berenson Pari-Mutuel of N.Y., Inc., No. 09 Civ. 10289(KMW), 1998 U.S. Dist. LEXIS 2020, 1998 WL 80168, at 3 (S.D.N.Y. Feb. 25, 1998);

Evans v. City of Chicago, 434 F.3d 916, 932 (7th Cir. 2006) ("every court that has addressed this issue has held that injuries proffered by plaintiffs in order to confer RICO standing must be 'concrete and actual,' as opposed to speculative and amorphous.").

The Second Circuit established a two-part test for proximate causation. First, the plaintiff's injury must have been "proximately caused by a pattern of racketeering activity violating [18 U.S.C. §] 1962 or by individual RICO predicate acts." Lerner v. Fleet Bank, N.A., 318 F.3d 113, 122-23 (2d Cir. 2003).  Second, Plaintiff must have suffered a direct injury that was foreseeable. Id. at 123. "Central to the notion of proximate cause [under RICO] is the idea that a person is not liable to all those who may have been injured by his conduct, but only to those with respect to whom his acts were a substantial factor in the sequence of responsible causation,' and whose injury was 'reasonably foreseeable or anticipated as a natural consequence.'" Id.  As an elaboration of this second prong relating to the directness of the injury, Lerner noted that "the reasonably foreseeable victims of a RICO violation are the targets, competitors and intended victims of the racketeering enterprise." Id. at 124. As the Supreme Court explained in its opening discussion of proximate cause and direct injury, "a **plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover**." Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268-69 (1992)(emphasis added).

Here, because Plaintiff could not show that the alleged racketeering activity or predicate acts caused it "to suffer "concrete and actual" economic loss, the RICO claim lacks proximate causation; i.e., that the alleged violations led directly to Plaintiff's injuries. As a result, the RICO claim is not viable.

In the same vein, Plaintiff does not have standing to pursue the RICO claim.   The Supreme Court has noted that, "[a] defendant who violates section 1962 is not liable for treble

damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured." Sedima. S.P.R.L. v. Imrex Co., 473 U.S. 479, 496-97 (1985). A plaintiff does not have standing if he suffered an injury that was indirectly (and hence not proximately) caused by the racketeering activity or RICO predicate acts, even though the injury was proximately caused by some non-RICO violations committed by the defendants. Baisch v Gallina, 346 F.3d 366, 373 (2d Cir. 2003).  Here, the complaint alleges in connection with the predicate acts violations of the CFAA and federal access device, wire, and identity fraud statutes that Defendants "intentionally accessed" and "obtained information from protected computer without authorization," and "infected devices located in New York and throughout the United States with malware, stole identifying information from or otherwise hijacked the use of those devices." Mem. at 14, 16.

However, even assuming for the sake of the argument that these allegations are true, Defendants' actions allegedly targeted and caused injury to the **third-parties computers or accounts, i.e., account holders, not to Google**. As such, Plaintiff's injury, if any, was indirectly (and hence not proximately) caused by the alleged racketeering activity or RICO predicate acts, and thus, Plaintiff does not have standing to pursue its RICO claim.

Third, the complaint does not sufficiently allege the RICO Conspiracy; it merely alleges that Defendants "operate[] the Glupteba botnet and help[] lead the criminal schemes of the Glupteba Enterprise." Compl. at 94, 95. This is not enough, as the members of "the group as a whole must have a common link other than the racketeering activity." McDonough v. National Home Ins. Co., 108 F.3d 174, 177 (8th Cir. 1997).   Moreover, as here, there can be no RICO conspiracy without a substantive RICO violation. Discon, Inc. v. Nynex Corp., 93 F.3d 1055, 1064 (2d Cir. 1996), cert. denied, 139 L. Ed. 2d 14, 118 S. Ct. 49 (1997), and cert. granted, 118 S. Ct. 1298 (1998)(if "the prior claims do not state a cause of action for substantive violations of

RICO," then a RICO conspiracy claim necessarily "does not set forth a conspiracy to commit such violations.")

Finally, Plaintiff did not adequately address Defendants' argument that the Second Circuit's precedent bars extraterritorial application of civil RICO claims.  See Norex Petroleum Ltd. v. Access Industries, Inc., 631 F.3d 29, 33 (2d Cir. 2010). While the Supreme Court in RJR Nabisco, Inc. v. Eur. Cmty., 579 U.S. 325, 340 (2016), states that "RICO applies to some foreign racketeering activity," and "[a] violation of §1962 may be based on a pattern of racketeering that includes predicate offenses committed abroad, provided that each of those offenses violates a predicate statute that is itself extraterritorial," here, for the reasons stated above, Plaintiff could not establish violations of CFAA or fraud statutes, which would have served as RICO predicate acts.  Moreover, Plaintiff does not have standing to pursue the RICO claim as it did not suffer direct and proximate injury as a result of the alleged racketeering activity or RICO predicate acts. Therefore, the RICO claim does not have an extraterritorial application because the alleged offenses do not violate the predicate statutes.

Additionally, the complaint does not provide any specific evidence that Defendants violated 18 U.S.C. § 1029 (a)(2) and (3)(access device fraud), which requires the they "knowingly and with intent to defraud, committed and continue to commit access device fraud in violation of 18 U.S.C. § 1029(a)(2) and (3) by trafficking in or using unauthorized access devices in the form of stolen passwords, credentials, and other account information in order to obtain anything of value aggregating $1,000 or more during a one-year period, and/or possessing fifteen or more unauthorized access devices, and affecting interstate or foreign commerce."[2] It is quintessential to understand that the Second Circuit has interpreted Rule 9(b) as "plac[ing] two

---

[2] Wire fraud and identity fraud statutes Plaintiff relied upon as RICO predicated acts have similar elements requiring specific intent to defraud and lack of lawful authority to transmit or possess means of Identification.

further burdens on fraud plaintiffs." <u>Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.</u>, LLC, 797 F.3d 160, 171 (2d Cir. 2015). First, a fraud plaintiff must plead factual allegations about the "circumstances of the fraud" with "particularity." <u>Id</u>.  Second, "though mental states may be pleaded 'generally," a fraud plaintiff must plead factual allegations "'that give rise to a strong inference of fraudulent intent." <u>Id</u>. <u>See also</u> <u>Deluca v. GPB Auto. Portfolio, LP</u>, No. 19-cv-10498 (LAK), 2020 U.S. Dist. LEXIS 234443, at 32 (S.D.N.Y. Dec. 13, 2020) .

Here, since the complaint fails to provide factual allegations about the circumstances of the fraud with particularity, the fraud statutes are not actionable.  As such, since Plaintiff could not establish the fraud statutes violations by Defendants, which would have served as RICO predicate acts, there is no extraterritorial application of the civil RICO claims.  Moreover, alleging that "**some** domestic conduct" occurred cannot support a claim of RICO domestic application. <u>See</u> <u>Morrison v. National Australian Bank</u>, 561 U.S. 247 (2010). As such, the Court should grant dismissal of the RICO claim pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

**Electronic Communications Privacy Act ("ECPA").** Plaintiff misrepresented Defendants' statements arguing that "Defendants do not deny that they also **infected** devices with **malware, stole** user account information, and provided access to the **stolen** accounts via Dont.farm, in violation of the ECPA."  Mem. At 16. (emphasis added)  However, Defendants' respective declarations state that through Rent.dont.farm, "any Internet user could sell access to **<u>his</u>** Google account by giving the service a login and password for access authorization to <u>his</u> account. Defs. Decls. at 12. As such, since there is no privacy violation, Defendants asserted a complete defense as to the ECPA claim.

**Lanham Act, Trademark And Unfair Competition Violations, Infringement of Federally Registered Trademark 15 U.S.C. § 1114(1), Federal Unfair Competition and**

**False Designation of Origin 15 U.S.C. § 1125(a).**  Defendants testified that they did not participate in the Disruptive Ad Scheme or related activity that allegedly violated Google Trademark(s) and related claims.  Defs. Decls. at 15.   As such, this complete factual defense should be reserved for the trier of fact, and the Court should not decide this factual issue at this stage of setting aside the notice of default.

**Tortious Interference with Business Relationships.**   Even if malice is not required to establish a tortious interference with business relationships claim, Plaintiff could not establish that Defendants used "dishonest, unfair, or improper means."  Defendants testified that Google accounts owners voluntarily sold access to their Google accounts by disclosing to Rent.dont.farm their own logins and passwords for the access authorization to their accounts. Defs. Decls. at 12. As such, Defendants did not interfere with business relationships by "dishonest, unfair, or improper means."

**Unjust Enrichment.**  Plaintiff incorrectly argues that Defendants "does not Dispute that Defendants provided access to numerous accounts without the true user's consent." Mem. at 17.  However, as discussed above, Google accounts owners voluntarily sold access to their Google accounts by disclosing to Rent.dont.farm their own logins and passwords for the access authorization to their accounts. Defs. Decls. at 12. Therefore, since Defendants did not "access[], without authorization, Google's Gmail system," they did not "profit[] unjustly from their unauthorized use of Google's systems and networks."

**iv. Defendants present a complete, meritorious defense on *Forum Non-Conveniens***

Contrary to Plaintiff's contention that "Defendants do not even attempt to address [alternative forum] prong," Mem. at 18-19, Defendants argued that "all the parties are amenable to suit in the Russian Federation and Google even has an office there." Mem. at 23. In 2012, Russia became a Member of the World Trade Organization. As a condition to join the WTO,

Russia has adopted new legislation matching international standards for the protection of intellectual property rights. The intellectual property law protection in Russia is incorporated in the Civil Code of the Russian Federation. It includes copyright protection, trademark, and patent protection, company's intellectual assets protection, and computer programs and database protection. Russia has become a signatory of several intellectual property treaties, such as Hague Agreement related to the International Registration of Industrial Designs, the Patent Treaty Act; the WIPO Copyright Law; the Patent Cooperation Treaty; the Nice Agreement related to the Classification of Goods and Trademarks; the Paris Convention for the Protection of Industrial Property,  the Agreement on Trade-Related Aspects of Intellectual Property Rights (TRIPS), Singapore Treaty on the Law of Trademarks. To accommodate intellectual property litigation, Russia has established the Court for Intellectual Property Rights which tries cases related to intellectual property infringement and related lawsuits. See The Intellectual Property Review: Russia Anton Bankovskiy and Ksenia Danshina, May 4, 2021, available at https://thelawreviews.co.uk/title/the-intellectual-property-review/russia

Moreover, Plaintiff did not even dispute that most of the evidence and witnesses relevant for this proceeding are located outside of the United States, most of the documents are in the Russian language, and the witnesses are beyond the subpoena power of this Court and cannot be compelled to appear at a proceeding in the United States.  In addition, Plaintiff did not address Defendants' argument that there is no evidence that Defendants have any assets in the United States from which Plaintiff could recover. Similarly, there is no evidence that the judgment would be easier to enforce against Defendants in the United States rather than in the Russian Federation. Finally, other practical matters, such as Defendants' inability to travel to the United States due to the recent sanctions against the Russian Federation and the judicial economy would be well served by having this case litigated there. To that extent, Plaintiff's excuse that the State

Department travel warning would prevent Google from pursuing its claim there is dubious since Google has an office in Russia, see Exhibit 1, and it has unlimited (compared to scarce funds available to Defendants) resources to retain a myriad of competent American and local attorneys located in Moscow. According to this report, the Russian branch of Google has litigated a lot in Russia as it was a defendant in 47 cases and a plaintiff in one case.  Id. at 2. What is more, Google's current counsel King & Spalding LLP also has a registered branch law office in Moscow. See Exhibits 2, 3. As such, neither Goggle nor its counsel are strangers to the Russian judicial system. Thus, the balance of private interest factors weighs heavily in favor of dismissal of this action.

Last but not least, Plaintiff's attempt to sue Defendants in the United States appears to be an impermissible forum shopping. As such, "if it appears that the forum was selected for forum-shopping reasons, then the plaintiffs' choice is entitled less deference."  See Klonis v. Natl. Bank of Greece, S.A., 487 F. Supp 2d 351, 357 (S.D.N.Y. 2006). Factors probative of forum-shopping include: "[1] attempts to win tactical advantage resulting from local laws that favor the plaintiff's case, [2] the habitual generosity of juries in the United States or in the forum district, [3] the plaintiff's popularity or the defendant's unpopularity in the region, or [4] the inconvenience and expense to the defendant resulting from litigation in that forum." Iragorri v. United Tech. Corp., 274 F.3d 65, 72 (2d Cir. 2001).

In this case, Plaintiff clearly wants to win a tactical advantage resulting from local laws that favor its case, as Plaintiff – a multi-national, monopolistic internet and media behemoth incorporated in the United States has far more legal protection than two individual Defendants working for a small company in Russia. Further, Plaintiff has far superior popularity here compared to that of Defendants, especially in light of the fact that they are Russian nationals, whose country is extremely unpopular in the United States as a result of its involvement in a war

in Ukraine.  It is a known fact that the media, including Plaintiff, has indiscriminately demonized Russian businesses for just being Russian regardless of whether they support the war or not. For example, on March 11, 2022, Google's YouTube suspended all monetization programs for creators in Russia — after previously halting ads in the country — given the ongoing war in Ukraine. See https://twitter.com/YouTubeInsider/status/1502335030168 899595. As a result, Defendants are unlikely to receive an unbiased jury and a fair trial in the United States. Finally, as discussed above, Defendants clearly show "the inconvenience and expense" resulting from litigation in this forum.  Therefore, Plaintiff's attempt to select this forum is nothing more than impermissible forum shopping.

Accordingly, this Court should conclude that private and public interest concerns weigh heavily in favor of dismissal of the case on *forum non-conveniens* grounds.  Therefore, since this Court lacks personal jurisdiction over Defendants, based on the doctrine of *forum non-conveniens*, and for failure to state a claim under Fed. R. Civ. P. 12(b)(6), upon vacating the notice of default, the Court should dismiss the complaint.

### C. Defendants' Default Did Not Prejudice Plaintiff

Plaintiff has failed to establish that denial of a motion for default judgment or vacating the notice of default would prejudice it. First, contrary to Plaintiff's argument, Defendants did not willfully default; rather, they established meritorious and complete defenses, making prejudice analysis mandatory. Second, Plaintiff fails to show how Defendants themselves "acted to reconstitute the Glupteba botnet" by "establishing new C2 servers and directing infected devices to these servers through the blockchain."  Mem at 22.  Third, since the Harris Declaration did not specify the time frame, it is reasonable to assume that any alleged "acts to reconstitute the Glupteba botnet" occurred before Defendants' time to answer had expired given the fact that, according to Plaintiff, – "[o]n or around December 13, 2021, Defendants ceased

operating one of their most prominent storefronts, dont.farm." 2/7/22 Harris Decl. ¶ 21 (Dkt. No. 36). As such, the delay caused by the default did not attribute to the "loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion," as Plaintiff claims. Mem. at 22. Fourth, contrary to Plaintiff's contention that "denying default judgment would sanction Defendants' abuse of the Court's prior orders," id., any sanction is not warranted here as it is well-documented that Defendants were not aware of this Court's TRO and Preliminary Injunction.  See Panix Promotions v. Lewis, No. 01 Civ. 2709, 2004 U.S. Dist. LEXIS 3504, at 7 (S.D.N.Y. Mar. 4, 2004)("A party may overcome a finding of [civil sanction] by proving that (1) the Order is vague and indefinite as to whether a particular action is required or prohibited, (2) the party lacked knowledge of the terms of the Order, or (3) the proof of the violation is not clear and convincing."). As such, Plaintiff could not establish prejudice in the context of the default.

### III. DEFAULT JUDGMENT AND PERMANENT INJUNCTION ARE NOT WARRANTED AGAINST THE DOE DEFENDANTS SINCE THE DOE DEFENDANTS WERE NEVER IDENTIFIED OR SERVED

The requested default judgment and a permanent injunction are not warranted as to the Doe Defendants because those Defendants were never identified or served in this case; thus, they cannot have defaulted.  See, e.g., Asfaw v. BBQ Chicken Don Alex No. 1 Corp., No. 14-CV-5665, 2016 U.S. Dist. LEXIS 42298, at 8 (E.D.N.Y. Mar. 29, 2016)("The John Doe defendants were never identified or served in this case, so they cannot have defaulted.")  Moreover, they are also omitted from the Clerk of Court's entry of default. (Dkt. No. 37)  Id. at 8-9 (denying Motion for default judgment as to John Doe defendants since they are omitted from the Clerk of Court's entry of default and therefore they were deprived of the opportunity to seek to have the default set aside pursuant to Rule 55(c)).

In any event, it is the Defendants' position that the claims against the Doe Defendants

suffer the same fallacies as the claims against Defendants, such as lack of jurisdiction, failure to state a claim, and *forum non-conveniens*.  As such, the complaint should be dismissed against the Doe Defendants as well.

### IV. PLAINTIFF IS NOT ENTITLED TO A PERMANENT INJUNCTION

"A court may not grant a final, or even an interlocutory, injunction over a party over whom it does not have personal jurisdiction." In re Rationis Enters., Inc. of Panama, 261 F.3d 264, 270 (2d Cir. 2001), Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp., 619 F.3d 207, 213 (2d Cir. 2010)(same); Weitzman v. Stein, 897 F.2d 653, 659 (2d Cir. 1990)("The district court has no power to grant an . . . . injunction against a party over whom it has not acquired valid jurisdiction.")(citation omitted).

Here, since the Court lacks personal jurisdiction over the Defendants, it has no power to grant the requested permanent injunction. Consequently, the Court should also vacate the prior injunctive relief Order granted *ex parte* to Plaintiff.  (Dkt. No. 17).

### V. CONCLUSION

For the foregoing reasons, this Court should grant Defendants' Motion under Fed. R. Civ. P. Rule 55(c), vacating the notice of default and dismissing the case against Defendants, for lack of personal jurisdiction, for failure to state a claim, and on forum *non-conveniens* grounds. Accordingly, the Court should deny in its entirety Plaintiff's Motion for default judgment.

**Dated**: April 8, 2022
            Brooklyn, New York

                                        Respectfully Submitted,


                                        /s/ Igor Litvak, Esq.
                                        _____

                                        Igor B Litvak
                                        Attorneys for Defendants

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I caused the above document to be served on counsel of record for

Plaintiff by filing it via the Court's CM/ECF system on this 8th day of April 2022.


<u>/s/ Igor Litvak, Esq.</u>
Igor B Litvak