# KING & SPALDING

Laura Harris
King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036
E: LHarris@kslaw.com
T: (212) 556-2100

August 11, 2022

The Honorable Denise L. Cote
United States District Court for the Southern District of New York
500 Pearl Street, Room 1910
New York, New York 10007

>   *Re: Google LLC v. Starovikov, et al.*, 1:21-cv-10260

Dear Judge Cote:

      I write in advance of the August 12 conference to update the Court on Defendants' and their counsel's responses to Google's questions concerning the availability of discoverable information (the Questions). ECF 100. Defendants and counsel did not respond to certain of the Questions, and their responses contradict representations Defendants made in earlier sworn declarations and pleadings. Defendants' conduct over the course of this litigation demonstrates that the facts to them are not the proverbial "stubborn things," but rather are malleable to fit the needs of the moment. Defendants' newest failures and misrepresentations compound Google's concern that Defendants are not litigating in good faith, and that Mr. Litvak has supported their efforts to spoliate critical evidence and fraudulently induce Google to produce its own devices and documents. Therefore, Google respectfully requests that the Court sanction Defendants' and Mr. Litvak's misconduct pursuant to Rule 26(g), Rule 37, and the Court's inherent powers, by entering judgment against Defendants and awarding Google attorneys' fees.

      **Defendants' and Mr. Litvak's Failure to Respond Fully.** Google posed nine questions to each Defendant concerning their discoverable material and employment. Ex. 1. Each submitted an identical declaration with three pieces of information: (1) Valtron "fired" the Defendant "at the end of December 2021" due to "lack of work"; (2) his Valtron laptop was a Macbook Pro; and (3) this "device was returned to Valtron the first half of January 2022." Exs. 2, 3, ¶¶ 3-6. Defendants refused to identify other devices they used in 2021 and 2022; the categories of documents and methods of communications they used while at Valtron; and any non-Valtron business activities in 2021 and 2022. Ex. 1, ¶¶ 3-8.

      Google posed three questions to Mr. Litvak concerning his evidence preservation efforts and knowledge of Defendants' employment and devices. Ex. 1. Mr. Litvak responded by letter, largely regarding the negotiation of the Rule 26(f) Report, and insisted that he first learned Defendants no longer worked at Valtron and had returned any relevant devices on May 20, 2022—over three months after he was engaged to represent them in this litigation—and that he previously failed to confirm these facts because he "mistakenly assumed" the answers. Ex. 4 at 5. He failed to respond fully to Google's Question requesting that he describe his document preservation efforts including any litigation holds. Ex. 1 at 3. Contrary to the Court's directive to "explain why" any of the information sought by Google "should not be discoverable," Ex. 5 at 18:1-4, Mr. Litvak declares simply that Google is "not entitled" to this information "at this stage." Ex. 4 at 5.

      **Misrepresentations Concerning the "Exchange."** At the July 29, 2022 conference, in

response to the Court's question whether Mr. Litvak proposed a mutual device exchange "knowing that the defendants had no devices to produce," he responded, "[a]bsolutely not." As "evidentiary" support, he claimed it was *Google* who insisted on preserving the language. Ex. 5 at 13:10-18 ("[M]y initial suggestion to the plaintiff's counsel was to completely take out that sentence. . . . And they insisted on keeping it in."). As Mr. Litvak's letter indicates, that statement was false. After Google initially proposed language for an inspection of Defendants' devices, it was Mr. Litvak who first proposed a mutual exchange. *See* Ex. 4 at 1. And Mr. Litvak continued to press for the inclusion of a mutual device exchange with various alterations to the language, even after Google proposed to remove all language regarding device inspection and production. *Id.* at 2-3.

**Misrepresentations Concerning the Devices.** After the initial discussion regarding the device exchange, the Court admonished Mr. Litvak that "if the correspondence or evidence shows that you discussed in May an exchange of devices, at a time that you knew that there were no devices in your clients' possession that could be exchanged, that is troubling." Ex. 5 at 19:9-13. Mr. Litvak did exactly that: by his own admission, he circulated language contemplating a device exchange on both May 20 and May 31—after learning of the laptop return. Ex. 4 at 2. He then attempts to evade that truth by further compounding the lie. He insists that Defendants informed him only "that the **LAPTOPS** they used while working for Valtron" were returned, but he believed Defendants might have "phones, flash drives, or any other type of ESI or devices." *Id.* at 2, 5. That is false. On May 31—eleven days after learning Defendants had no computers to produce and after Google circulated a draft removing the device exchange language Mr. Litvak proposed, Ex. 4—Mr. Litvak responded by asking "why we took out the paragraph about *exchanging computers*," explaining "I liked the initial version much better, can we keep it." Ex. 6 (emphasis added). Nor does Mr. Litvak's proposed language "over which the Defendants have actual and physical control and possession" exonerate him. Ex. 7. On the contrary, it confirms that his goal was to induce a "device exchange," while planning to claim the Defendants' possessed no devices to exchange.

**Misrepresentations Concerning Valtron.** Mr. Litvak's contention that he first learned on May 20 that Defendants left Valtron itself strains credulity. It means that Defendants' declarations in the default proceedings—on which the Court relied in setting aside the entry of default—falsely stated that they "work for Valtron." ECF 47-2, 47-3, ¶ 9. Mr. Litvak brushes this off as a harmless "misunderstanding." Ex. 4 at 5. But that explanation is belied by the fact that Defendants separately filed a counterclaim on May 11 (later withdrawn) that *repeated* the representation, alleging that Defendants were presently employed as "software engineers for Valtron LLC," with whom they had "present and prospective business relationships." ECF 66 ¶¶ 206, 208. Accepting the May 20 story as true, Mr. Litvak thereby admits he filed briefs, declarations, a pleading, and a counterclaim in violation of his obligations under Rule 11 to conduct a reasonable inquiry, and that he—an experienced cyber defense lawyer—failed to discuss his clients' devices for four months after his engagement. More plausibly—as with Defendants' passports and their depositions—Defendants and Mr. Litvak are saying whatever is expedient to circumvent a spoliation finding and avoid producing any documents or devices at all. In other words, Defendants apparently intend to heed Mr. Litvak's advice that their "work" laptops should remain in Russia. Ex. 8 at 11-12.

In light of Defendants' and Mr. Litvak's repeated misrepresentations, Google respectfully requests that the Court sanction Defendants' and Mr. Litvak's misconduct pursuant to Rule 26(g), Rule 37, and the Court's inherent powers, by entering judgment against Defendants and awarding Google attorneys' fees accrued in connection with the Rule 26(f) report, Defendants' initial disclosures, and the Questions.

Respectfully submitted,

*/s/ Laura Harris*

Laura Harris