**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GOOGLE LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>DMITRY STAROVIKOV;<br>ALEXANDER FILIPPOV;<br>Does 1-15,<br><br>*Defendants*. | Civil Action No. 1:21-cv-10260-DLC |

**GOOGLE LLC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION AGAINST DOES 1–15**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 2

I. Default Judgment Against the Does is Not Premature. ........ 2

A. *Frow* Does Not Bar Default Judgment Against the Does. ........ 2

B. Additional Discovery is Both Unnecessary and Unlikely to Assist the Resolution of This Case Against the Does. ........ 5

II. The Does Were Properly Served. ........ 6

III. Google Has Stated Claims Against the Does. ........ 7

IV. The Court Should Enter a Permanent Injunction Against the Does ........ 7

CONCLUSION ........ 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*17 PHE, Inc. v. Does 1-122*,
2014 WL 1856755 (N.D. Ill. May 7, 2014) .......... 6

*Bleecker v. Zetian Sys., Inc.*,
2013 WL 5951162 (S.D.N.Y. Nov. 1, 2013) (Cote, J.) .......... 2, 3

*Combs v. Doe*,
2010 WL 4065630 (N.D. Cal. Oct. 15, 2010) .......... 6

*Elsevier, Inc. v. Siew Yee Chew*,
287 F. Supp. 3d 374 (S.D.N.Y. 2018) .......... 7

*Friedman v. Lawrence*,
1991 WL 206308 (S.D.N.Y. Oct. 2, 1991) .......... 3, 5

*Frow v. De La Vega*,
82 U.S. 552 (1872) .......... 1, 2, 3

*Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*,
973 F.2d 155 (2d Cir. 1992) .......... 7

*Hermes Int'l v. John Doe 1*,
12-cv-01623-DLC (S.D.N.Y. Apr. 30, 2012) (Cote, J.) .......... 6

*Int'l Controls Corp. v. Vesco*,
535 F.2d 742 (2d Cir. 1976) .......... 2

*Lite-Up Corp. v. Sony Music Ent., Inc.*,
1999 WL 436563 (S.D.N.Y. June 24, 1999) .......... 3

*Microsoft Corp. v. Does 1-2*,
2021 WL 4260665 (E.D.N.Y. Sept. 20, 2021) .......... 6

*Microsoft Corp. v. Does 1-51*,
2018 WL 3471083 (N.D. Ga. June 18, 2018) .......... 6

*Microsoft Corp. v. Does*,
2012 WL 5497946 (E.D.N.Y. Nov. 13, 2012) .......... 7

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) .......... 6

*Rivera v. Limassol Grocery, Corp.*,
2019 WL 1320339 (E.D.N.Y. Jan. 4, 2019) ....................................................................3

*S.C. Pub. Serv. Auth. v. Westinghouse Elec. Co.*,
2020 WL 8922853 (D.S.C. Mar. 11, 2020) ....................................................................6

**Other Authorities**

Fed. R. Civ. P. 54 ...........................................................................................................2, 9

Plaintiff Google LLC ("Google") respectfully submits this reply in further support of its Motion for Default Judgment and Permanent Injunction against Does 1–15 (the "Does").

**PRELIMINARY STATEMENT**

Defendants Starovikov and Filippov ("Defendants") argue that default judgment and a permanent injunction against the Does will "substantially prejudice them in this litigation" and is "tantamount to a default judgment against" them. ECF 102 at 2–3. They also have insisted repeatedly and in various ways that they were not involved with any illegal activity, have no knowledge of it, and have left the corporate entity for which they previously worked. Defendants make no effort to reconcile these inconsistencies and fail to point to any example of the preliminary injunction's impact on their current business interests. Nothing precludes the Court from entering judgment against the members of the Glupteba Enterprise who have defaulted by failing to appear.

Defendants' other arguments are equally meritless. *Frow v. De La Vega*, 82 U.S. 552 (1872) has no application where, as here, default judgment can be entered *against the defaulting parties* without a risk of inconsistent judgments or prejudice to the remaining parties. In addition, further discovery is unnecessary and unlikely to be productive in light of Defendants' conduct to date and the nature of the parties involved. The Court found previously that the means of service on the Does were reasonably calculated to provide notice to the Does, and the named Defendants' opportunity to object to such means (to the extent they had standing to do so in the first place) has since passed. Finally, the court held previously that Google has stated each of its claims against all defendants.

Default judgment and a permanent injunction against the Does are warranted, and neither final judgment as to the unnamed defendants nor injunctive relief against ongoing illegal conduct

will prevent Defendants Starovikov and Filippov from putting forth whatever defenses they may have as to their individual responsibilities for the claims against them.

**ARGUMENT**

**I. Default Judgment Against the Does is Not Premature.**

Defendants argue that default judgment against the Does is premature because there is a risk of inconsistent judgments as to the Does, on the one hand, and Defendants Filippov and Starovikov, on the other. ECF 102 at 4–7. Defendants make the related argument that default judgment against the Does would be premature because Google can identify the Does through upcoming discovery. *Id.* at 13. Those arguments are legally flawed and factually baseless.

**A. *Frow* Does Not Bar Default Judgment Against the Does.**

To contest default judgment against the Does, Defendants rely primarily on *Frow*—a 150-year-old case decided 84 years before the adoption of the modern Federal Rules of Civil Procedure. Defendants ignore the effect of Rule 54(b) and subsequent caselaw.

"Under Fed. R. Civ. P. 54(b), the decision of whether to enter judgment against one defendant before final judgment has been entered to all defendants is left to the discretion of the district court, so long as the court expressly determines that there is no just reason for delay." *Bleecker v. Zetian Sys., Inc.*, 2013 WL 5951162, at *2 (S.D.N.Y. Nov. 1, 2013) (Cote, J.) (cleaned up). As the Second Circuit has observed, Rule 54 has substantially narrowed the application of *Frow*. *See Int'l Controls Corp. v. Vesco*, 535 F.2d 742, 746 n.4 (2d Cir. 1976) ("We think it is most unlikely that Frow retains any force subsequent to the adoption of Rule 54(b) . . . At most, Frow controls in situations where the liability of one defendant necessarily depends upon the liability of the others.").

Accordingly, "[s]ubsequent interpretations have treated [*Frow's*] holding narrowly, agreeing that it prohibits entry of a default judgment against one of several defendants where

(1) the theory of recovery is one of true joint liability, such that, as a matter of law, no one defendant may be liable unless all defendants are liable, or (2) the nature of the relief demanded is such that, in order to be effective, it must be granted against each and every defendant." *Friedman v. Lawrence*, 1991 WL 206308, at *2 (S.D.N.Y. Oct. 2, 1991). Neither circumstance applies here.

Defendants are wrong to suggest the first avenue applies. Defendants argue that the "known Defendants and the Doe Defendants are similarly situated" because Google "grouped them all in the complaint . . . as the 'Glupteba Enterprise'" and because the "complaint assumes joint liability." ECF 102 at 7. But "*Frow* does not apply simply because there are multiple defendants and one has defaulted." *Rivera v. Limassol Grocery, Corp.*, 2019 WL 1320339, at *3 (E.D.N.Y. Jan. 4, 2019). This is not a case where all defendants must rise and fall together, particularly where Google seeks prospective injunctive relief. *See Bleecker*, 2013 WL 5951162, at *6–7 (declining to apply *Frow* to bar default judgment or inquest into damages where defendants alleged to be a "single enterprise" and jointly and severally liable for damage); *Lite-Up Corp. v. Sony Music Ent., Inc.*, 1999 WL 436563, at *3 (S.D.N.Y. June 24, 1999) (holding *Frow* inapplicable as "injunctive relief . . . could logically and practically be separately awarded against one of the two defendants without adversely affecting the other").

Defendants Filippov and Starovikov are free to litigate—and indeed have denied—the extent of their involvement in the Enterprise's schemes. In fact, Defendants have repeatedly represented that they are not connected to the Does' illegal activity and have expressly stated that their defense includes a denial of their involvement in the Enterprise's crimes. *See* Ex. 1 (6/1/2022 Tr. 8:15–17). Defendants claim further that they no longer work for Valtron LLC and that they have returned all of their devices. ECF 103-5 (7/29/2022 Tr. 8:17–22, 11:4–9). They have insisted

that they do not even know the last names of their former colleagues associated with Valtron or the Enterprise. *Id.* 8:25.

Furthermore, in their Answer, Defendants largely did not *deny* the allegations in the Complaint regarding the operations of the Enterprise and the Glupteba botnet. Rather, they stated repeatedly that they lacked knowledge sufficient to form a belief as to the truth of the allegations. Over the course of sixty paragraphs, Google's Complaint describes the Glupteba botnet (¶¶ 29–40), how it leverages blockchain technology (¶¶ 41–50), and the criminal schemes perpetrated by the Glupteba Enterprise (¶¶ 51–88). Defendants disclaim knowledge of fifty-four of those of those paragraphs and deny only one, and only on the grounds that it constitutes a legal conclusion. ECF 66, ¶¶ 29–88.[1] They disclaim knowledge of how the Glupteba malware is installed on individuals' devices (*id.* ¶ 35), how Glupteba's command-and-control servers operate (*id.* ¶ 36), the domain names used by the Glupteba enterprise (*id.*), the fact that "the Glupteba botnet leverages the blockchain technology" (*id.* ¶ 41), and how access to users' accounts are sold (*id.* ¶¶ 54-64).

In short, a key component of their defense is the argument that they were not involved in the illegal activity at issue. In fact, the Court vacated the Entry of Default in part because "[D]efendants claim to lack knowledge of the criminal schemes that Google alleges they control." ECF 62 at 11. By contrast, the Does are, by definition, members of the Glupteba Enterprise "responsible in some manner for the conduct" and illegal schemes detailed in Google's Complaint. ECF 5, ¶ 18. This case therefore does not present a situation where "no one defendant may be liable unless all defendants are liable." *Friedman*, 1991 WL 206308, at *2. Accordingly, default

---

[1] Defendants admit allegations regarding how blockchain technology operates in the abstract and one paragraph concerning the date of Valtron LLC's incorporation and a related job posting. *Id.* ¶¶ 42–45, 73. They also deny as a legal conclusion the allegation: "while it is illegal to sell stolen usernames and passwords, it is likewise illegal to sell unauthorized access to a stolen account." *Id.* ¶ 63.

judgment against the Does is appropriate, particularly considering that the remedy sought is prospective injunctive relief, the Defendants claim they no longer work at Valtron LLC, and the Court can grant the requested relief without risk of inconsistent judgments or prejudice to the named Defendants.

### B. Additional Discovery is Both Unnecessary and Unlikely to Assist the Resolution of This Case Against the Does.

Defendants next argue that default judgment against the Does is premature because discovery "could" identify the Does. ECF 102 at 13. That assertion is belied by their own conduct to date. Defendants have refused to provide even the last names of the Valtron colleagues they have identified as having information relevant to their defenses. ECF 98; ECF 103-5 (7/29/2022 Tr. 20:25–21:2) ("THE COURT: I don't have any further measures to take at this point. You have the defendants' position; they do not know those names.").

Most recently, Defendants' counsel represented in response to Google's questions regarding discoverable information that Defendants have no devices or ESI whatsoever to produce in this litigation. *See* ECF 103. Yet Defendants insist their forthcoming "deposition and/or discovery production . . . may . . . identif[y] some individuals who could have . . . pertinent information regarding . . . the identity of the" Does. ECF 102 at 14. Defendants' coyness regarding their possession of discoverable information is no basis to delay entry of judgment against the Doe Defendants. And Defendants fail to cite any authority suggesting that it is.

To the contrary, "'extraordinary efforts to discover the identity and whereabouts' of a defendant are not required." *Combs v. Doe*, 2010 WL 4065630, at *1 (N.D. Cal. Oct. 15, 2010) (citing *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 798 n. 4 (1983)). Courts frequently have entered default judgment and permanent injunctions against doe defendants where, as here, the plaintiff has exercised reasonable diligence in attempting to identify the doe defendants. *See,*

*e.g.*, *Microsoft Corp. v. Does 1-2*, 2021 WL 4260665, at *3 (E.D.N.Y. Sept. 20, 2021); *S.C. Pub. Serv. Auth. v. Westinghouse Elec. Co.*, 2020 WL 8922853, at *2 (D.S.C. Mar. 11, 2020); *Microsoft Corp. v. Does 1-51*, 2018 WL 3471083, at *2 (N.D. Ga. June 18, 2018); 17 *PHE, Inc. v. Does 1-122*, 2014 WL 1856755, at *3 (N.D. Ill. May 7, 2014); *Hermes Int'l v. John Doe 1*, 12-cv-01623-DLC (S.D.N.Y. Apr. 30, 2012) (ECF 14) (Cote, J.). Here, it cannot reasonably be disputed that the Does have long been aware of this litigation given the disruption of the botnet, Defendants' participation in this litigation, widespread media coverage of the suit, and Google's extensive efforts to serve the Does through all email addresses and phone numbers that might reasonably be connected to a Doe (among other means). None has appeared to join in the defense of this case. There is therefore no reason to delay entry of judgment.

**II. The Does Were Properly Served.**

Defendants' objections to Google's service of process on the Does are untimely and, in any event, meritless. The Court granted Google's request to serve the Does by alternative means and therefore found that the proposed means of service were "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950). Defendants did not object to Google's request to serve the Does by alternative means, ECF 64, the Court's endorsement of those means, ECF 65, or Google's Certificate of Service for the Does, ECF 81, all of which have been on the docket for over two months. And even if Defendants have valid standing to challenge the adequacy of service of another party, a proposition for which Defendants offer no legal support, their arguments are baseless. *See e.g.*, *Elsevier, Inc. v. Siew Yee Chew*, 287 F. Supp. 3d 374, 379 (S.D.N.Y. 2018) ("It is well-settled that service by email on foreign defendants meets this standard in an appropriate case."); *Microsoft Corp. v. Does*, 2012 WL 5497946, at *2 (E.D.N.Y. Nov. 13, 2012) (finding service was properly effectuated by email and

entering default judgment against John Doe defendants who operated a botnet and "used sophisticated means to conceal their identities and locations").

## III. Google Has Stated Claims Against the Does.

Defendants repeat the arguments from their original motion to vacate the Entry of Default, arguing that Google has not established liability on each of its causes of action. ECF 102 at 12–13. As a threshold matter, "a party's default is deemed to constitute a concession of all well pleaded allegations," and thus the Does have conceded their own liability. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp*., 973 F.2d 155, 158 (2d Cir. 1992). Further, the Court has previously heard and rejected Defendants' arguments as to whether Google has adequately pleaded each of its causes of action, finding that "Google's complaint contains detailed allegations of the defendants' criminal schemes to use the Glupteba botnet to steal victims' personal information and sell access to their computers," ECF 62 at 26, and that Google has adequately stated a claim for RICO, ECPA, and Lanham Act violations, as well as state law claims for tortious interference and unjust enrichment, *id.* at 24. Contrary to Defendants' assertion, the Court's previous findings evaluated the allegations in Google's Complaint against ***all*** defendants and were in no way limited to only the named Defendants.

## IV. The Court Should Enter a Permanent Injunction Against the Does

Google's proposed permanent injunction against the Does will not prejudice the named Defendants. As discussed, Defendants claim that they have not engaged—and do not currently participate—in any of the illegal conduct detailed in Google's Complaint. Thus, the permanent injunction Google seeks will not reach their purportedly legitimate activities. Defendants have previously suggested that Google's proposed injunction could be used to "prevent[] [Defendants] from engaging in normal business activity," *e.g.*, by "clos[ing] [Defendants'] emails" or "clos[ing] out different domain names." Ex. 1 (6/1/2022 Tr. 10:6–16). But Defendants have not identified

any specific provision of the proposed injunction that would pose a risk to Defendants' conduct. The activity enjoined by Google's proposed permanent injunction include intentionally accessing computers or networks without authorization, distributing malware, deploying or operating a botnet, stealing account credentials and information, corrupting computer applications and networks, creating false websites using Google's trademarks, and a variety of other narrowly defined and obviously criminal activities in support of the unlawful schemes detailed in Google's Complaint.  *See* ECF 93 at 9–11.  If, as Defendants and their counsel suggest, Defendants "have never engaged in any illegal activity," Ex. 1 (6/1/2022 Tr. 9:15–16), the relief Google seeks should not and will not infringe on Defendants' purportedly legitimate activities.

Furthermore, Google's proposed injunction operates only against the Doe Defendants and "their officers, agents, servants, employees, attorneys, and all others in active concert or participation with them[.]" ECF 93 at 9.  Defendants have repeatedly asserted that they have no connection to the Enterprise's criminal conspiracy, and they have previously represented that the currently operative *preliminary* injunction "has no impact on [their] activity" because they "aren't committing a crime."  Ex. 1 (6/1/2022 Tr. 9:18–25).  As the Doe Defendants are the current perpetrators of the botnet, members of the Glupteba Enterprise, and participants in the Enterprise's ongoing criminal activities, the proposed injunction should not implicate the Defendants.

Finally, under Fed. R. Civ. P. 54(b), "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  If the permanent injunction inadvertently reaches Defendants' purportedly "normal business activity," Defendants can articulate their objection, identify the specific harm, and seek leave from the Court for a modified order.  Defendants' inability to identify or substantiate even

one concrete example of the injunction's impact on their purportedly legitimate endeavors—particularly coupled with their objection to an injunction aimed solely at illegal activity—casts significant doubt on their claims.

## CONCLUSION

For the foregoing reasons, this Court should enter default judgment for Google and issue a permanent injunction against the Doe Defendants.

DATED: August 12, 2022

Respectfully submitted,

*/s/ Laura Harris*

Laura Harris
Andrew Michaelson
Kathleen E. McCarthy
Matthew Bush
KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036
Telephone: (212) 790-5356
Fax: (212) 556-2222
lharris@kslaw.com
amichaelson@kslaw.com
kmccarthy@kslaw.com
mbush@kslaw.com

Sumon Dantiki (*pro hac vice*)
KING & SPALDING LLP
1700 Pennsylvania Ave., NW, 2nd Floor
Washington, DC 20006
Telephone: (202) 626-5591
Fax: (202) 626-3737
sdantiki@kslaw.com

*Counsel for Plaintiff Google LLC*