# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GOOGLE LLC,<br><br>                    *Plaintiff*,<br><br>          v.<br><br>DMITRY STAROVIKOV;<br>ALEXANDER FILIPPOV;<br>Does 1-15,<br><br>                    *Defendants*. | Civil Action No. 1:21-cv-10260-DLC |

**GOOGLE LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SANCTIONS UNDER RULE 26, RULE 37, AND THE COURT'S INHERENT POWERS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .................................................................................................................... 3

    I.    Defendants Appear and Move to Vacate Entry of Default. ................................. 3

    II.    Defendants File Counterclaims Alleging Tortious Interference with Relationships with Their Employer and Its Clients. ................................................................................. 4

    III.    The Parties Discuss Devices During Negotiations Over a Rule 26(f) Discovery Plan and Case Schedule. ........................................................................................................... 4

    IV.    The June 1, 2022 Initial Pretrial Conference and the Resulting Proceedings Regarding Defendants' Depositions. ..................................................................................... 6

    V.    Defendants' Initial Disclosures and New Claim That They Left Valtron and Possess No Devices Subject to Discovery .......................................................................... 7

    VI.    Mr. Litvak is Evasive at the July 29, 2022 Conference and the Court Orders That He and Defendants Answer Questions Regarding Discovery. ....................................... 9

    VII.    Defendants Provide a New Timeline That Contradicts Prior Representations to the Court and Refuse to Answer Questions Concerning Discoverable Information. ..................... 10

        A.    Defendants' August 8, 2022 Declarations ................................................. 10

        B.    Mr. Litvak's August 8, 2022 Letter ......................................................... 11

    VIII.    Defendants Fail to Respond to Google's Discovery Requests ................................ 11

LEGAL STANDARD .......................................................................................................... 12

ARGUMENT ...................................................................................................................... 12

    I.    Terminating Sanctions Are Warranted Because Defendants and Mr. Litvak Have Thwarted This Litigation with Fabrications, Spoliation, and Disingenuous Denials. .............. 12

        A.    Defendants and Mr. Litvak Have Engaged in Pervasive Misconduct. ...................... 12

        B.    Terminating Sanctions Are Warranted Based on Defendants' and Mr. Litvak's Extensive Misconduct. ............................................................................... 16

        C.    Terminating Sanctions Are Warranted Under Rule 37(e) for Defendants' Spoliation of Key Evidence ...................................................................................... 21

    II.    The Court Should Award Google Its Reasonable Expenses, Including Attorney's Fees, Caused by Defendants' and Mr. Litvak's Misconduct. .......................................... 24

CONCLUSION .................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Empire Surplus Lines Ins. Co. v. JJSL Dev., Inc.*,
  2017 WL 9485713 (E.D.N.Y. Feb. 13, 2017)..........................................................................19

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991)...................................................................................................................21

*Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*,
  337 F.R.D. 47 (S.D.N.Y. 2020) ..............................................................................21, 22, 23, 25

*Chowdhury v. Hamza Exp. Food Corp.*,
  308 F.R.D. 74 (E.D.N.Y. 2015)...............................................................................................19

*DeCastro v. Kavadia*,
  309 F.R.D. 167 (S.D.N.Y. 2015) .......................................................................................18, 25

*Design Strategy, Inc. v. Davis*,
  469 F.3d 284 (2d Cir. 2006)....................................................................................................12

*Guggenheim Cap., LLC v. Birnbaum*,
  722 F.3d 444 (2d Cir. 2013)....................................................................................................20

*Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*,
  991 F.3d 361 (2d Cir. 2021)....................................................................................................25

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
  2017 WL 3671036 (S.D.N.Y. July 18, 2017) .........................................................................25

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
  2019 WL 4727537 (S.D.N.Y. Sept. 26, 2019).........................................................................17

*Liebowitz v. Bandshell Artist Mgmt.*,
  6 F.4th 267 (2d Cir. 2021) ......................................................................................................12

*Loc. Union No. 40 of the Int'l Ass'n of Bridge v. Car-Wi Const.*,
  88 F. Supp. 3d 250 (S.D.N.Y. 2015).......................................................................................17

*Martinez v. City of New York*,
  2018 WL 604019 (E.D.N.Y. Jan. 24, 2018) ...........................................................17, 18, 19, 20

*Metro. Opera Ass'n v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*,
  212 F.R.D. 178 (S.D.N.Y. 2003) .......................................................................................18, 19

*Miller v. Thompson-Walk*,
  2019 WL 2150660 (W.D. Pa. May 17, 2019)........................................................25

*Moody v. CSX Transportation, Inc.*,
  271 F. Supp. 3d 410 (W.D.N.Y. 2017)..............................................................23

*Penthouse Int'l, Ltd. v. Playboy Enters.*,
  663 F.2d 371 (2d Cir. 1981)............................................................................21

*Rice v. NBCUniversal Media, LLC*,
  2019 WL 3000808 (S.D.N.Y. July 10, 2019)......................................................25

*Rossbach v. Montefiore Med. Ctr.*,
  2021 WL 3421569 (S.D.N.Y. Aug. 5, 2021).........................................19, 21, 23

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
  624 F.3d 123 (2d Cir. 2010).............................................................................17

*S.E.C. v. Smith*,
  710 F.3d 87 (2d Cir. 2013)..............................................................................21

*Wiwa v. Royal Dutch Petroleum Co.*,
  2009 WL 529224 (S.D.N.Y. Feb. 17, 2009)....................................................24, 25

**Rules**

Fed. R. Civ. P. 26(a) .......................................................................... *passim*

Fed. R. Civ. P. 26(g) ..................................................................................24

Fed. R. Civ. P. 33(b)(2)...............................................................................11

Fed. R. Civ. P. 34(b)(2)(A)..........................................................................11

## PRELIMINARY STATEMENT

From their first appearance in this litigation, Defendants Dmitry Starovikov and Alexander Filippov ("Defendants") and their counsel, Igor Litvak, have repeatedly contorted the facts and changed their litigation positions to fit the needs of the moment. Mr. Litvak claimed that Defendants were "willing to participate in discovery" and "100 percent" willing "to produce documents" and "be deposed." Ex. 1 at 10:17-23 (6/1/22 Tr.).

Yet the conduct of Defendants and their counsel has revealed that to be false. As things currently stand, Defendants' position is that they are unable to sit for depositions (other than in Russia or friendly neighboring countries), and they have no electronic devices—not one—subject to discovery, although they are admitted software engineers who worked on the projects underlying Google's Complaint (and one of whom was the administrator of the Voltronworks.com Google Workspace account). It appears their goal in this litigation has been to obtain information about Google's investigation in order to circumvent Google's efforts to neutralize the malware they help control. They do not intend to comply with their discovery obligations.

To avoid those obligations, Defendants and Mr. Litvak have made representations that contradict their prior representations to the Court. In March, Defendants submitted declarations representing that they "work for Valtron LLC," ECF 58 ¶ 9, ECF 59 ¶ 9—one of the Russian entities behind the Glupteba botnet and its various storefronts—and claimed that the "month-and-a-half delay caused by the default did not result in the loss of evidence [or] create increased difficulties of discovery," ECF 57-1 at 6 (internal quotations omitted). Defendants asserted counterclaims in May premised on their ongoing employment at Valtron and represented to the Court in June that the preliminary injunction was still impairing their business activities. Only after Google made clear that it would seek Defendants' devices did Mr. Litvak claim—on July 19— that Defendants no longer work for Valtron and that they could not produce relevant devices.

1

The Court subsequently ordered Defendants and Mr. Litvak to each respond to questions regarding their knowledge of and access to discoverable information. The incomplete responses they provided only raise more questions. For example, Defendants now claim that they were fired by Valtron at the end of December 2021, yet they made multiple representations to the Court and even asserted counterclaims premised on ongoing employment. Defendants now claim that they returned their laptops to Valtron in January 2022, yet they previously argued to the Court that their delay in appearing in this case did not result in any loss of evidence. And Mr. Litvak now asserts that he only learned this from Defendants on May 20, yet both before and after that date he attempted to negotiate an exchange of devices that misled Google into believing that such devices existed and were being preserved. Now, Mr. Litvak implausibly claims that Defendants have no devices or electronically stored information ("ESI") to produce in this case at all.

If Defendants' and Mr. Litvak's latest representations are to be believed, then Defendants and Mr. Litvak have (among other misconduct): made false representations to the Court in seeking to set aside default; asserted counterclaims against Google based on false information; attempted to induce Google into a mutual exchange of devices while knowing they had none to produce; and falsely denied doing so when asked by the Court. They have failed to answer questions concerning their work outside of Valtron and the existence and location of devices. And, they appear to have spoliated all relevant devices and ESI they possessed.

The Court should enter default judgment to sanction Defendants' and Mr. Litvak's persistent litigation misconduct under Rule 37(b) and the Court's inherent powers, and for their intentional spoliation of key evidence under Rule 37(e). The Court should also award monetary sanctions for the attorney's fees that Google has incurred as a result of their misconduct under Rule 26(g), Rules 37(b), (c), (e), and (f), and the Court's inherent powers.

## BACKGROUND

On December 2, 2021, Google filed this action under seal, asserting claims against Defendants and Does for violations of the Racketeer Influenced and Corrupt Organizations Act, the Computer Fraud and Abuse Act, the Electronic Communications Privacy Act, and trademark and unfair competition law, and for tortious interference with a business relationship and unjust enrichment. ECF 5. With its Complaint, Google moved for a temporary restraining order ("TRO") to enjoin Defendants' unlawful activities and to authorize Google to request that entities providing services to the domains and IP addresses associated with the Glupteba botnet disable those services.[1] The Court granted the TRO, concluding that Google had demonstrated with its supporting evidence "that each Defendant is an active participant in the operation and management of the Glupteba botnet" and a likelihood that they were liable for violations of law for this conduct. ECF 8 ¶¶ 8-13. On December 16, 2021, the Court replaced the TRO with a preliminary injunction. ECF 17. On February 8, 2022, the clerk entered default against Defendants after they failed to respond to Google's Complaint despite being served on December 9, 2021. ECF 38.

### I.     Defendants Appear and Move to Vacate Entry of Default.

On February 15, 2022, Igor Litvak contacted Google's counsel and indicated that he would represent Defendants in this action. Ex. 2 (2/15/22 Litvak Email). Mr. Litvak entered his appearance, and Defendants moved to set aside entry of default on March 14, 2022. *See* ECF 47; ECF 57. Defendants each submitted virtually identical declarations in support of their motion representing that they "work for Valtron LLC as software engineers," and that they participated in

---

[1] The evidence submitted in connection with the TRO motion detailed Defendants' connections to the Glupteba botnet, including that they executed Google's terms of service from the same IP address as the Glupteba botnet command and control (C2) server, acted as administrator of the Voltronwork.com Google Workspace account, and had email accounts linked to Voltronwork.com, Trafspin.com, Dont.farm, and Undefined.team. *See, e.g.*, ECF 21 ¶¶ 86-89.

various of the schemes associated with the Glupteba botnet alleged in Google's Complaint, asserting that these projects were entirely legitimate. ECF 58 ¶¶ 9-18 (Starovikov 3/14/22 Decl.); ECF 59 ¶¶ 9-18 (Filippov 3/14/22 Decl.). Defendants further represented that they "found out about the case only at the end of January 2022, from some friends who heard about it." ECF 58 ¶ 7; ECF 59 ¶ 7.

On April 27, 2022, the Court granted Defendants' motion to set aside default. ECF 62. The Court held that Defendants' declarations were "sufficient to raise a question of fact" about their potential defenses because, although they "concede that they are employed by Valtron," they assert "that user participation in their services is entirely legitimate and voluntary." *Id.* at 11.

## II.    Defendants File Counterclaims Alleging Tortious Interference with Relationships with Their Employer and Its Clients.

On May 11, 2022, Defendants asserted counterclaims against Google. *See* ECF 66. Their first counterclaim sought $10 million in damages for "Tortious Interference With Present And Prospective Business Relationships."  To support that counterclaim, they alleged that "Defendants, in the course of their employment as software engineers for Valtron LLC, have established present and prospective business relationships with their employer and its clients throughout the world," and that Google "improperly interfered with Defendants' present and prospective relationships with their employer, its clients and customers." *Id.* ¶¶ 206, 208. On May 23, 2022, Google presented Defendants with authority establishing the legal deficiency of the counterclaims, after which Defendants agreed to voluntarily dismiss them. ECF 68.

## III.    The Parties Discuss Devices During Negotiations Over a Rule 26(f) Discovery Plan and Case Schedule.

Also in May 2022, the parties jointly developed a Rule 26(f) report with a discovery plan and proposed schedule. A focus of the parties' negotiations concerned discovery of relevant computers and other devices. On May 17, Google shared its initial proposal with Mr. Litvak. Ex.

3 (5/17/22 K&S Email with Attachment). This initial proposal stated that Google "anticipates that it will request to inspect Defendants' computers and other devices used in their business practices described in the Complaint and Defendants' declarations" and requested a Court order to preserve those devices. *Id.* Mr. Litvak responded the same day with proposed edits seeking Google's "computers and other devices used in its business practices relating to the allegations described in the Complaint and Plaintiff's declarations" and requesting an order to preserve such devices. Ex. 4 (5/17/22 Litvak Email with Attachment).

On May 18, the parties conferred regarding the draft report; Google declined Mr. Litvak's proposed edits regarding Google's computers and other devices but agreed to consider any revised language Mr. Litvak would like to propose. On May 20, Mr. Litvak proposed revised language seeking to inspect Google's "computers and other devices utilized or used in the investigation of allegations described in the Complaint and Plaintiff's declarations," and limiting Google's inspection of Defendants' computers and other devices to those "over which the Defendants have actual and physical control and possession." Ex. 5 (5/20/22 Litvak Email with Attachment).

Google did not accept Defendants' proposed language, which broadly contemplated inspection of Google's devices used to investigate cybercrimes. Accordingly, Google proposed new language on May 31 that removed explicit discussion of either party producing devices for inspection. Ex. 6 (5/31/22 K&S Email with Attachment). Mr. Litvak responded by asking, "why we took out the paragraph about exchanging computers, I liked the initial version much better, can we keep it"? Ex. 7 (5/31/22 Litvak Email with Attachment).

After further negotiations on May 31, Mr. Litvak agreed to a Rule 26(f) report that did not include explicit language about a device exchange. *See* ECF 69.

**IV.     The June 1, 2022 Initial Pretrial Conference and the Resulting Proceedings Regarding Defendants' Depositions.**

On June 1, the Court held an Initial Pretrial Conference. At the conference, Mr. Litvak represented that the preliminary injunction was "preventing my clients from engaging in normal business activity," and that he would seek discovery concerning "information that Google has related to the investigation." Ex. 1 at 10:1-16, 12:7-8. When questioned by the Court, Mr. Litvak reiterated Defendants' commitment to participate in the discovery process:

| | |
|---|---|
| THE COURT: | So let me ask, are your clients willing to participate in discovery in this litigation? |
| MR. LITVAK: | My clients? Of course, yes. |
| THE COURT: | So they are willing to produce documents? |
| MR. LITVAK: | 100 percent. |
| THE COURT: | They are willing to be deposed? |
| MR. LITVAK: | 100 percent. |

*Id.* at 10:17-23.

Mr. Litvak also represented that Defendants were willing to come to the United States for trial. *Id.* at 11:16-20. He informed the Court that the only barrier to his clients' appearance in New York was their difficulty in obtaining visas and flights following Russia's invasion of Ukraine: "They just have to have a way to get here. They need to have a visa, obviously." *Id.* at 11:20-25.

Mr. Litvak informed the Court that these limitations also prevented Defendants from coming to the United States for their depositions. *Id.* at 12:24-13:7. The Court ordered the parties to file a letter by June 3 informing the Court of their agreement on a location for Defendants' depositions (or their respective positions if an agreement could not be reached) and invited the parties to confer in the jury room following the conference. *Id.* at 17:6-13.

During the meet-and-confer, Mr. Litvak stated that his clients would not agree to travel to any country from which the United States may be able to extradite them. *See* ECF 74 at 1-2. The next day, Mr. Litvak represented to Google for the first time that Defendants did not have

international passports and could therefore be deposed only in Russia, Belarus, or Kazakhstan—
an issue not raised at the Initial Pretrial Conference. Ex. 8 (6/2/22 Litvak Email). The parties could
not find a mutually agreeable location for the Defendants' depositions and submitted letters to the
Court with their respective positions. *See* ECF 73; ECF 74; ECF 75. In his letters to the Court, Mr.
Litvak claimed that he "did express to Laura Harris during a meeting that my clients are concerned
about going to a country with an extradition treaty with the U.S., but . . . never categorically stated
that they would not travel to such a country," ECF 75 at 2, and informed the Court for the first
time that Defendants purportedly do not have international passports, which he represented would
take "3-4 months to obtain," ECF 73 at 1.

The Court issued an order vacating its prior scheduling order, staying all discovery of
Google, and ordering that Defendants "shall comply with their Rule 26(a)(1), Fed. R. Civ. P.,
initial disclosure obligations by June 17, 2022." ECF 80 at 4. The Court explained: "Based on the
proceedings to date there is reason to believe that the defendants appeared before this Court and
moved to vacate their default to obtain discovery of Google's investigation of their activities and
to learn whether they could circumvent the steps Google has taken to block the malware described
in its complaint." *Id.* at 3. The Court went on: "There is also reason to believe that the defendants
will not participate in good faith in the discovery process and that their counsel has not been candid
with the Court." *Id.* at 3-4.

The Court thereafter ordered that Defendants "shall diligently pursue all reasonable means
to obtain an international passport" and "submit a status letter by September 16, 2022 regarding
their progress obtaining an international passport." ECF 88 at 1.

**V.     Defendants' Initial Disclosures and New Claim That They Left Valtron and Possess
         No Devices Subject to Discovery**

Pursuant to the Court's June 9 Order, Defendants served their initial disclosures on June

17. Ex. 9 (Defs.' Initial Disclosures). They identified seven individuals with discoverable information, six of whom apparently work at Valtron. For each individual, Defendants stated only that they have information about "[a]ll projects of OOO Valtron." *Id.* at 2. Defendants identified the seventh individual as an "[e]mployee of OAO Tochka (Bank Otkritie)" who has information about "Extracard.net." *Id.* Defendants did not provide an address for any of the seven individuals and provided only first names for six. *Id.* Defendants likewise identified only three catch-all categories of documents in their possession, custody, or control: "[c]ommunications between Defendants," "[c]ommunications between Defendants and third parties concerning the subject matter of this litigation," and "[o]ther documents concerning information set forth in the Complaint and Counterclaims." *Id.* They did not identify the location of these documents. *Id.*

Defendants served amended initial disclosures on June 27. Ex. 10 (Defs.' Am. Initial Disclosures). Defendants added themselves to their list of potential witnesses (where Filippov is identified as a "Valtron Software Engineer"), added Valtron's office as the address for each of their colleagues, and identified the schemes about which each witness might possess relevant information (*e.g.*, the "Stolen Account Scheme"). *Id.* at 2-3. Defendants still did not provide last names for six of the seven individuals identified. *Id.* With respect to documents, Defendants relisted two of their catch-all categories—"[c]ommunications between Defendants" and "[c]ommunications between Defendants and third parties concerning the subject matter of this litigation"—and added eight contracts (the relevance of which is unclear). *Id.* at 3. Defendants again did not identify the location of the documents in their possession, custody, or control. *Id.*

On July 19, Google identified continuing deficiencies in Defendants' initial disclosures. Mr. Litvak responded that they "have nothing else to add," and he represented for the first time that Defendants "finished working for Valtron," "all the devices were returned to Valtron," and

Defendants "do not have any devices in their possession that would be subject to discovery and there is no way for them to get those devices back from Valtron." Ex. 11 (7/19/22 Litvak Email). Google requested a discovery conference with the Court the same day. ECF 91.

**VI.    Mr. Litvak is Evasive at the July 29, 2022 Conference and the Court Orders That He and Defendants Answer Questions Regarding Discovery.**

At the July 29 discovery conference, Mr. Litvak refused to state when exactly Defendants left Valtron:

| | |
|---|---|
| THE COURT: | Mr. Litvak, let me ask you a few questions. When did your clients leave Valtron? |
| MR. LITVAK: | The only thing I can say is in 2021. I don't think I should provide any more information beyond that, and they don't want to provide any more information beyond that. But it was in 2021. Any information more than that would be provided during further discovery proceedings, your Honor. |
| THE COURT: | I am asking you to tell me now. When did your clients leave Valtron? |
| MR. LITVAK: | I just told you, your Honor. It was in 2021. |
| THE COURT: | When in 2021? |
| MR. LITVAK: | I don't have an exact date, your Honor. |
| THE COURT: | Do you have a month? |
| MR. LITVAK: | I'm sorry? |
| THE COURT: | Do you know the month they left Valtron? |
| MR. LITVAK: | My clients have not disclosed that to me right now. |

Ex. 12 at 10:10-25 (7/29/22 Tr.). He also stated that he did not know the exact date when Defendants told him that they had left Valtron. *Id.* at 11:10-12:7.

The Court asked Mr. Litvak whether "in May, [he] suggested that if the defendants were going to have to produce their devices, that the plaintiff produce devices in a reciprocal exchange . . . knowing that the defendants had no devices to produce or were at least taking the position that they had no devices to produce?" *Id.* at 13:5-13. Mr. Litvak responded, "Absolutely not. . . . [M]y initial suggestion to the plaintiff's counsel was to completely take out that sentence" about discovery of devices, but Google "insisted on keeping it in." *Id.* at 13:15-18. Mr. Litvak added that he "never told [Google] my clients had devices" and "never implied" it either. *Id.* at 14:7-8.

9

The Court stated to Mr. Litvak that "if the correspondence or evidence shows that you discussed in May an exchange of devices, at a time that you knew that there were no devices in your clients' possession that could be exchanged, that is troubling." *Id.* at 19:9-13. The Court then issued an order providing that Google would "serve the defendants and the defendants' counsel with any questions regarding their knowledge of or access to discoverable information" by August 1, with Defendants' and Mr. Litvak's response due on August 8. ECF 100.

## VII.   Defendants Provide a New Timeline That Contradicts Prior Representations to the Court and Refuse to Answer Questions Concerning Discoverable Information.

Pursuant to the Court's order, Google posed nine questions to each Defendant concerning discoverable material and employment, and three questions to Mr. Litvak concerning evidence preservation efforts and knowledge of Defendants' employment and devices. Ex. 13 (8/1/22 Google's Questions for Defs. and Igor Litvak). Google asked questions concerning Defendants' departure from Valtron. Google also asked questions about Defendants' *other* business and work in 2021 and 2022 (since the Complaint is not limited to activity of Valton), and about *other* (non-Valtron) devices that they used during that time. *See id.* Google also asked questions about Defendants' passports and international travel.  *See id.*

### A.   Defendants' August 8, 2022 Declarations

Defendants submitted identical declarations in response to Google's discovery questions, representing that: (1) Valtron "fired" the Defendant "at the end of December 2021" due to "lack of work"; (2) his Valtron laptop was a Macbook Pro; and (3) this "device was returned to Valtron the first half of January 2022." Ex. 14 ¶¶ 3-6 (8/8/22 Starovikov Decl.); Ex. 15 ¶¶ 3-6 (8/8/22 Filippov Decl.).  Defendants refused to identify any other device they used in 2021 and 2022—not a single mobile phone, laptop, desktop, tablet, or server. Nor did Defendants identify the categories of documents and methods of communications they used while at Valtron, or their non-Valtron

business activities in 2021 and 2022.

### B.     Mr. Litvak's August 8, 2022 Letter

Mr. Litvak asserted by letter that he first learned on May 20—in the midst of his negotiations with Google concerning the Rule 26(f) Report—that Defendants no longer worked at Valtron and had returned their laptops to the company. Ex. 16 at 2, 4-5 (8/8/22 Litvak Ltr.). He represented that he had previously failed to confirm these facts because he "mistakenly assumed" until then that Defendants still worked at Valtron and possessed relevant devices. *Id.* at 5.

He asserted that at that time, he "still believed Defendants had something else they will find and produce," such as "phones, flash drives, or any other type of ESI or devices, just not their laptops." *Id.* at 2, 5. Mr. Litvak's letter also disclosed for the first time that Defendants purportedly told him "in the middle of June" that they have no devices or ESI whatsoever "related to Valtron or this case," and therefore have none to produce in this litigation. *Id.* at 3, 5.

Mr. Litvak did not respond fully to Google's question requesting that he describe his document preservation efforts, including any litigation holds. *See id.* Instead, he asserted that Google is "not entitled" to the information sought in the unanswered questions to him and Defendants "at this stage." *Id.* at 5.

## VIII.   Defendants Fail to Respond to Google's Discovery Requests

Google served interrogatories and requests for production of documents and inspection of devices on July 19, 2022. Ex. 17 (Google's First Requests for Production and Inspection); Ex. 18 (Google's First Set of Interrogatories). Pursuant to Rules 33(b)(2) and 34(b)(2)(A), Defendants' responses and objections to those discovery requests were due 30 days later, on August 18, 2022. As of the filing of this motion, Defendants have not served their responses and objections or otherwise responded to these discovery requests at all.

## LEGAL STANDARD

"A district court has wide discretion to impose sanctions, including severe sanctions," for discovery abuses and other litigation misconduct. *See, e.g.*, *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006). The Second Circuit has recently "emphasize[d] that the sanctioning authority of district courts both accords with and is a necessary aspect of their responsibility to manage their dockets so as to achieve the orderly and expeditious disposition of cases." *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 280 (2d Cir. 2021) (citation omitted). In fact, "district judges have an obligation to act to protect the public, adversaries, and judicial resources from litigants and lawyers who show themselves to" repeatedly abuse the judicial process, and thus "have inherent, statutory, and rule-based powers to sanction lawyers [and litigants] for conduct that impedes the efficient administration of justice." *Id.*

## ARGUMENT

### I.     Terminating Sanctions Are Warranted Because Defendants and Mr. Litvak Have Thwarted This Litigation with Fabrications, Spoliation, and Disingenuous Denials.

The Court should exercise its discretion to impose terminating sanctions under Rules 37(b) and (e) and the Court's inherent powers.

### A.     Defendants and Mr. Litvak Have Engaged in Pervasive Misconduct.

Defendants' and Mr. Litvak's misconduct in this litigation started immediately following their appearance and has continued unabated through their most recent filing. It includes:

***Misrepresentations concerning their employment and existence of evidence.*** Defendants began this litigation by making two important representations: First, in their March 2022 sworn declarations supporting their motion to set aside the entry of default, Defendants stated that they "work for Valtron LLC." ECF 58 ¶ 9; ECF 59 ¶ 9. Second, Defendants also argued that the "month-and-a-half delay caused by the default did not result in the loss of evidence [or] create increased

difficulties of discovery." ECF 57-1 at 6 (internal quotations omitted). Their current representations contradict both those facts. They *now* say they were fired from Valtron in December 2021. Ex. 14 ¶¶ 3-4; Ex. 15 ¶¶ 3-4. And they *now* say they returned all potentially relevant ESI and devices to Valtron a few weeks before appearing in this case, in the precise period of time in which they previously claimed no evidence had been lost. Ex. 16 at 2-5.

Defendants even asserted counterclaims based on facts that they now disclaim.  On May 11, 2022, Defendants alleged that "Defendants, in the course of their employment as software engineers for Valtron LLC, have established present and prospective business relationships with their employer and its clients," with which Google interfered. ECF 66 ¶¶ 206, 208. These claims were premised on ongoing employment; now, however, to evade discovery obligations, Defendants have changed their story.

Mr. Litvak attempts to make sense of this by claiming he only learned of Defendants' departure from Valtron on May 20, 2022. Ex. 16 at 2, 4-5. Given Valtron's centrality to Defendants' initial claims in this litigation, it is hard to believe that Defendants and Mr. Litvak had not discussed their employment status prior to that date. But even assuming Mr. Litvak did not know until May 20, at the June 1 Initial Pretrial Conference Mr. Litvak did not inform the Court or Google that Defendants left Valtron in December and returned their laptops. Rather than correct his and Defendants' prior misrepresentations to the Court, he stated that the Court's preliminary injunction was "preventing my clients from engaging in normal business activity." Ex. 1 at 10:1-16. This statement is misleading and false if Defendants had not worked at Valtron for nearly six months, as Mr. Litvak now claims he knew at the time.

***Misrepresentations concerning the mutual exchange of devices.*** At the July 29, 2022 discovery conference, the Court asked whether Mr. Litvak suggested a mutual device exchange

"knowing that the defendants had no devices to produce." Ex. 12 at 13:5-13. He responded, "[a]bsolutely not." *Id.* at 13:15-18. He claimed that Google insisted on preserving the language. *Id.* ("[M]y initial suggestion to the plaintiff's counsel was to completely take out that sentence. . . . And they insisted on keeping it in."). The parties' email exchange makes clear that after Google initially proposed language for an inspection of Defendants' devices, it was Mr. Litvak who first proposed a mutual exchange in his initial response the same day. *See* Ex. 4 (5/17/22 Litvak Email with Attachment).

At the discovery conference, the Court admonished Mr. Litvak that "if the correspondence or evidence shows that you discussed in May an exchange of devices, at a time that you knew that there were no devices in your clients' possession that could be exchanged, that is troubling." Ex. 12 at 19:9-13 (7/29/22 Tr.). *Mr. Litvak did exactly that*:  Mr. Litvak has now represented that he learned on May 20 that Defendants had returned their laptops to Valtron.  Ex. 16 at 3-5 (8/8/22 Litvak Ltr.). Yet he proposed a draft with a device exchange later that day. *See* Ex. 5 (5/20/22 Litvak Email with Attachment). And then again eleven days later, on May 31, after Google circulated a draft removing the device exchange language Mr. Litvak proposed, Ex. 6 (5/31/22 K&S Email with Attachment), Mr. Litvak responded by asking "why we took out the paragraph about exchanging computers," explaining "I liked the initial version much better, can we keep it." Ex. 7 (5/31/22 Litvak Email with Attachment).

***Avoiding depositions with shifting explanations.*** Just as Defendants are attempting to evade document discovery, so, too, have they attempted to evade depositions. Mr. Litvak told the Court at the June 1 Initial Pretrial Conference that Defendants could not sit for depositions in the United States due to difficulties securing travel or visas given Russia's war in Ukraine. Ex. 1 at 11:1-12. After the Court ordered the parties to confer about the location, Mr. Litvak told Google's

counsel that Defendants would not travel to a country with an extradition treaty with the United States, only to claim for the first time the next day that Defendants lack international passports and had not even applied for them. *See* ECF 74 at 1-2. Google thereafter asked Defendants questions concerning their passports and international travel, and Defendants did not answer them.

     ***Incomplete and inaccurate initial disclosures.*** In their amended initial disclosures, Defendants refused to provide the last names of six of their seven potential witnesses, and failed to adequately describe or identify the location of the categories of documents in their possession, custody, or control that they may rely on in their defense. Ex. 10 (6/27/22 Defs.' Am. Initial Disclosures). While Defendants' amended initial disclosures claim there are broad categories of communications in their possession, custody, or control, *see id.* at 3, they now insist they have no discoverable ESI whatsoever, *see* Ex. 16 at 3,5 (8/8/22 Litvak Ltr.).

     ***Spoliation of critical evidence.*** Mr. Litvak told Google for the first time on July 19 that "all [Defendants'] devices were returned to Valtron" and "there is no way for them to get those devices back from Valtron." Ex. 11 (7/19/22 Litvak Email). If true, this means that Defendants deliberately spoliated essential evidence. Google already has made an evidentiary showing in connection with the TRO and preliminary injunction that Defendants were key players in Valtron and the Glupteba Enterprise. Defendants' failure to retain copies of their devices therefore constitutes spoliation.

     ***Failure to preserve a single electronic document.*** Mr. Litvak now claims that Defendants informed him "in the middle of June" that they have no devices or ESI whatsoever to produce in this case. Ex. 16 at 3, 5. Given Defendants' sworn declarations admitting that they worked on the various Glupteba schemes in Google's Complaint, it is inconceivable that they have no ESI "related to Valtron or this case." *See id.* at 3. Moreover, Defendants said the opposite in their initial

disclosures—and in their amended initial disclosures—only weeks earlier. *See* Exs. 9-10.

      ***Failure to respond to discovery questions as ordered by the Court.*** On July 29, the Court ordered that Defendants and Mr. Litvak respond to questions from Google concerning their knowledge of and access to discoverable evidence. Defendants and Mr. Litvak left many of the questions unanswered. Defendants refused to identify the devices they used in 2021 and 2022, the categories of documents and methods of communications they used in connection with their employment at Valtron, or their business activities in 2021 and 2022 outside of their employment with Valtron. Disregarding the Court's instruction, they also offered no explanation or legal basis for their refusal to answer these straightforward questions other than stating that Google is "not entitled" to this information "at this stage of the proceedings." Ex. 16 at 5 (8/8/22 Litvak Ltr.).

      ***Disingenuous denials of any misconduct.*** In the face of undeniable evidence of his misrepresentations to the Court, Mr. Litvak continues to deny misconduct. For example, he recently claimed that he "mistakenly assumed" that "Defendants still worked at Valtron and had access to the devices/ESI," *id.* at 4-5, and that this "was nothing more than a misunderstanding between counsel and clients, which is understandable" because "all [their] communication is by phone," ECF 104 at 2 (8/12/22 Litvak Ltr.). He does not explain why he supposedly failed to ask his clients fundamental questions about this case for months or why he never bothered to correct the prior misrepresentations to the Court after learning they were false.

### B.    Terminating Sanctions Are Warranted Based on Defendants' and Mr. Litvak's Extensive Misconduct.

      Under Rule 37(b), a court may sanction a party who "fails to obey an order to provide or permit discovery" through a range of sanctions, up to "striking pleadings" and "rendering a default judgment." Fed. R. Civ. P. 37(b)(2)(A). Rule 37(b)'s reach is broad. It is not necessary for the discovery order violated to "have been issued under a particular rule, so long as its effect was to

require a party 'to provide or permit discovery.'" *Martinez v. City of New York*, 2018 WL 604019, at *21 (E.D.N.Y. Jan. 24, 2018) (citing, *e.g.*, *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2017 WL 3671036, at *18 (S.D.N.Y. July 18, 2017)). And the court "need not ignore" the disobedient party's other misconduct, even if it "arose well before" the relevant discovery order. *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2019 WL 4727537, at *21 (S.D.N.Y. Sept. 26, 2019). A "district court is free to consider 'the full record in the case in order to select the appropriate sanction'" under Rule 37(b). *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) (citation omitted).

Several non-exclusive factors guide a court's wide discretion in selecting an appropriate sanction under Rule 37(b): "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *Id.* While severe, default judgment is appropriate where the misconduct "was due to willfulness, bad faith, or any fault of the party sanctioned." *Id.* (citations omitted). In addition, "real prejudice to a litigant may serve as a compelling consideration in support of dispositive relief." *Loc. Union No. 40 of the Int'l Ass'n of Bridge v. Car-Wi Const.*, 88 F. Supp. 3d 250, 263 (S.D.N.Y. 2015).

Defendants and Mr. Litvak have failed to comply with multiple discovery orders in this case, including the Court's June 9 Order that Defendants comply with their initial disclosure obligations under Rule 26(a)(1) by June 17, 2022, *see* ECF 80 at 4, and the Court's July 29 Order that Defendants and Mr. Litvak answer questions regarding their knowledge of and access to discoverable information, ECF 100. These failures are part of a persistent pattern of misconduct in this litigation and confirm what the Court and Google have long suspected: Defendants are not

participating in discovery in good faith. The full record of their misconduct demonstrates that a terminating sanction is appropriate here under the factors that guide the Court's discretion.

**_Defendants' and Mr. Litvak's Willfulness and Bad Faith._** "It is particularly important to consider a party's course of conduct throughout the litigation when evaluating willfulness." _Martinez_, 2018 WL 604019, at *23. As detailed above (at Argument § I.A), Defendants' and Mr. Litvak's misconduct has been extensive and persistent, including: (1) submitting declarations they now claim are false; (2) filing a baseless and legally frivolous counterclaim; (3) making _numerous_ misrepresentations to the Court that are demonstrably false or contradict other statements; (4) trying to dupe Google into an exchange of computers knowing they would take the position Defendants had none to produce (which Mr. Litvak then lied to the Court about); (5) failing to comply with the Court's orders; and (6) spoliation of evidence.

The "falsehoods uttered by individual defendants and by [their] counsel as to simple but material factual matters also constitute willfulness and bad faith requiring severe sanctions." _Metro. Opera Ass'n v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union_, 212 F.R.D. 178, 225 (S.D.N.Y. 2003); _see also, e.g._, _DeCastro v. Kavadia_, 309 F.R.D. 167, 184-85 (S.D.N.Y. 2015) (finding bad faith where attorney "made multiple incomplete or misleading submissions" about his client's discovery compliance and failed to correct them even when alerted to their "inconsistencies and apparent errors").

Defendants' and Mr. Litvak's willfulness and bad faith is further evidenced by their insistence that they have done nothing wrong. Among other disingenuous claims, Mr. Litvak insists there has just been a harmless "misunderstanding between my clients and me." Ex. 16 at 4 (8/8/22 Litvak Ltr.). "Contrary to [these] attempts to minimize [the many] falsehoods and machinations," "under the circumstances, counsel's conduct was not" an understandable mistake

"but rather a breach of [his] responsibility to opposing counsel and the Court, *inter alia*, to engage in discovery in good faith, comply with court orders and, more fundamentally, to tell the truth." *See Metro. Opera Ass'n*, 212 F.R.D. at 227. Such "disingenuous claim[s] indicate[] willfulness and weigh[] in favor of severe sanctions." *Martinez*, 2018 WL 604019, at *25; *Chowdhury v. Hamza Exp. Food Corp.*, 308 F.R.D. 74, 84 (E.D.N.Y. 2015) (holding terminating sanctions are appropriate where a party makes a "disingenuous claim" in an attempt to deny "a continuing saga of dilatory conduct").

***No Sanctions Less than Default Would Be Effective Here.*** Given this "deliberate and persistent" misconduct and noncompliance with basic obligations—with "no reason to believe that [this] will [change] in the future"—a lesser sanction than default "would be insufficient to remedy the prejudice to [Google] or to deter future non-compliance." *Am. Empire Surplus Lines Ins. Co. v. JJSL Dev., Inc.*, 2017 WL 9485713, at *3 (E.D.N.Y. Feb. 13, 2017). Indeed, Defendants and Mr. Litvak have attempted to mislead the court "through a willful and persistent campaign of fabrication [and] spoliation." *Rossbach v. Montefiore Med. Ctr.*, 2021 WL 3421569, at *6 n.5 (S.D.N.Y. Aug. 5, 2021) (Cote, J.). And "if this case were to proceed to trial, the result is highly likely to be the same." *See id.* Based on Defendants' disclosures and recent discovery positions, they have no evidence to defend this case against the extensive evidence Google has already presented. A lesser sanction, such as a preclusion order, adverse inference, or evidentiary consideration of Defendants' failure to produce data to support their defenses, would only further ensure the same outcome. *See id.* "A trial in this case would therefore be a pointless waste of judicial resources and impose an expensive and undue burden . . . ." *See id.*

***Duration of Noncompliance.*** For the reasons already detailed, "this factor also weighs in favor of dispositive sanctions because, even if Defendants eventually comply with their

obligations, they nonetheless have dragged plaintiff and this court through a pattern of prolonged and vexatious obstructions of discovery." *See Martinez*, 2018 WL 604019, at *28 (cleaned up).

      ***The Court Has Warned Defendants and Mr. Litvak Multiple Times.*** The Court also has warned Defendants and Mr. Litvak multiple times about their misconduct in this litigation. In its June 9 Order, the Court concluded that:

> Based on the proceedings to date there is reason to believe that the defendants appeared before this Court and moved to vacate their default to obtain discovery of Google's investigation of their activities and to learn whether they could circumvent the steps Google has taken to block the malware described in its complaint. There is also reason to believe that the defendants will not participate in good faith in the discovery process and that their counsel has not been candid with the Court.

ECF at 3-4. Defendants and Mr. Litvak did not heed this warning. Following the June 9 Order, as the parties' focus shifted from depositions to document discovery, Defendants' and Mr. Litvak's conduct has only become more egregious. After Mr. Litvak insisted repeatedly at the July 29 discovery conference that he never attempted to induce Google into a device exchange on false pretenses during the parties' May negotiations over the draft Rule 26(f) report, the Court cautioned him: "if the correspondence or evidence shows that you discussed in May an exchange of devices, at a time that you knew that there were no devices in your clients' possession that could be exchanged, that is troubling." Ex. 12 at 19:10-13. As Google has demonstrated with Mr. Litvak's own words, that is exactly what happened. Rather than take responsibility or even correct his false statements to Court, Mr. Litvak insists that he has been nothing but truthful. Defendants continued to dig their hole deeper while fully aware of the potential consequences. They "cannot credibly argue that [they were] not sufficiently warned that serious sanctions were imminent." *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 453 (2d Cir. 2013).

The Court should enter default judgment against Defendants.[2]

### C.    Terminating Sanctions Are Warranted Under Rule 37(e) for Defendants' Spoliation of Key Evidence.

Rule 37(e) provides sanctions for the spoliation of ESI that "should have been preserved in the anticipation or conduct of litigation" but was "lost because a party failed to take reasonable steps to preserve it" and "cannot be restored or replaced through additional discovery." Specifically, default judgment is warranted where "the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2).

A party intentionally deprives the opposing party of ESI when he "disposed of [a device] while th[e] litigation was pending" without "maintain[ing] a copy of its data" and knowing that it contained potentially relevant information. *Rossbach*, 2021 WL 3421569, at *6 n.10 (issuing terminating sanction). Courts have also held that an intent to deprive is shown where: (1) "evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case"; (2) "the spoliating party engaged in an affirmative act causing the evidence to be lost"; (3) "the spoliating party did so while it knew or should have known of its duty to preserve the evidence"; and (4) "the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator." *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 67 (S.D.N.Y. 2020) (quoting *Moody v. CSX Transportation, Inc.*, 271 F. Supp. 3d 410, 431 (W.D.N.Y. 2017)).

---

[2] For the same reasons, a default judgment sanction is also warranted under the Court's inherent powers. *See, e.g.*, *Penthouse Int'l, Ltd. v. Playboy Enters.*, 663 F.2d 371, 386 (2d Cir. 1981). Under "the inherent power of the court, sanctions are appropriate where an individual has made a false statement to the court and has done so in bad faith." *S.E.C. v. Smith*, 710 F.3d 87, 97 (2d Cir. 2013). Courts may "sanction bad-faith conduct by means of the inherent power" even where certain of the "conduct could also be sanctioned under the statute or the Rules." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991).

All of the requisite elements are met here. Defendants have asserted that their devices and all ESI are now unavailable—irrevocably—notwithstanding that they possessed both after Google filed its Complaint. The evidentiary significance of Defendants' devices and other electronic evidence—including their code and other programming materials—cannot be disputed. Indeed, it is unclear how Defendants intend to defend the claims against them without that evidence.

It is likewise clear that Defendants' actions are responsible for the unavailability of their devices, and that those actions "cannot credibly be explained as not involving bad faith." *See Charlestown Cap. Advisors*, 337 F.R.D. at 67. Simply put, Defendants have engineered the unavailability of all of their devices and electronic evidence in an effort to avoid producing them. What is more, their bad faith is evident by their fabrication of a story intended to conceal their spoliation. Although Defendants represented for months before the Court that they still worked at Valtron and intended to fully participate in discovery, Defendants now contend that they returned their laptops to Valtron in January 2022, that there is no way to get them back, and that they have no relevant devices or ESI to produce in this case at all. Little of this story makes sense. It defies credulity that Mr. Litvak filed declarations, briefs, and counterclaims that relied on foundational details about Defendants' ongoing employment and available evidence without any confirmation. It is still more implausible that Mr. Litvak "mistakenly" did not address the availability of Defendants' devices and electronic evidence—evidence essential to their case—until May 20.

More plausibly—as with Defendants' passports and their depositions—Defendants and Mr. Litvak have manufactured these narratives in an effort to avoid producing any documents or devices at all while attempting to avoid a spoliation finding. In other words, Defendants apparently

intend to heed Mr. Litvak's advice that their "work" laptops should remain in Russia.[3] That Defendants have fabricated a story contrary to their own sworn declarations and pleadings is one thing; that the misrepresentations are in service of their efforts to spoliate key evidence only compounds the gravity of their misconduct. *See Moody*, 271 F. Supp. 3d at 431 (finding an intentional deprivation where the defendant offered an "implausible" explanation for the loss of the "most important objective evidence" in the case); *Rossbach*, 2021 WL 3421569, at *6 n.10.

Defendants' bad faith—and willingness to say whatever is expedient in the moment—is clear from their initial efforts to set aside default. In support of their motion, they stated that they "work for Valtron LLC as software engineers," ECF 58 ¶ 9; ECF 59 ¶ 9, and argued "[i]t is clear based on the circumstance that a brief, month-and-a-half delay caused by the default did not 'result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion,'" ECF 57-1 at 6. Thus, in service of their attempt to reopen the case, Defendants assured the Court that their delay would not prejudice Google and that no evidence had been lost. After learning that they would not be receiving discovery of Google's investigative data and with the time for them to produce their devices and ESI fast approaching, Defendants abruptly reversed course to ensure their devices and electronic evidence would stay out of Google's reach.

Even crediting Defendants' latest assertions establishes that they intentionally spoliated their devices and ESI at a time when they "knew or should have known of [their] duty to preserve the evidence." *See Charlestown Cap. Advisors*, 337 F.R.D. at 67. On top of Google's efforts to

---

[3] *See* Ex. 19 (Translation of Litvak Interview) ("If a person has already decided to do hacking and cybercrime, their work and personal laptops must not intertwine. They can never, like, intersect. Plus, I don't know why, but a lot of the time guys who leave [Russia] take these laptops with them. I don't know why. . . . Guys, always leave a work laptop at home if you leave [the country].").

serve Defendants, this lawsuit was widely reported in the news (including in Russian media) in December 2021. *See* ECF 52 ¶ 33. It was discussed in online forums used by the Glupteba storefronts, and throughout December, Google worked to disrupt the Glupteba botnet's operations pursuant to the Court's TRO and preliminary injunction order. *See id.* ¶ 34. Defendants now contend that their employer fired them for a lack of work at the end of December 2021. *See* Ex. 14 ¶¶ 3-4; Ex. 15 ¶¶ 3-4. Thus, Defendants ask that we believe that they lost possession of their devices and all relevant ESI well after they should have known about this lawsuit. Their willfulness and bad faith are further confirmed by the fact that they appear not to have attempted to retrieve their computers from Valtron or otherwise ensure that any ESI was preserved for potential production in this litigation since they appeared. *See, e.g.*, *Wiwa v. Royal Dutch Petroleum Co.*, 2009 WL 529224, at *3 (S.D.N.Y. Feb. 17, 2009) (noting a party "cannot evade her obligation" simply "by resigning her office" with a third-party) (citing *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 181-82 (S.D.N.Y. 2006)). Defendants' efforts to ensure their devices and ESI remain undiscoverable—and their lies in service of those efforts—are precisely the circumstances in which terminating sanctions are warranted.

## II. The Court Should Award Google Its Reasonable Expenses, Including Attorney's Fees, Caused by Defendants' and Mr. Litvak's Misconduct.

In addition to terminating sanctions, the record also warrants awarding Google its attorney's fees caused by Defendants' and Mr. Litvak's willful and persistent misconduct. Rules 26(g), 37(b), 37(c), 37(e), and 37(f), and the Court's inherent powers, all warrant sanctions here. *See, e.g.*, Fed. R. Civ. P. 26(g) (attorney's fees awardable for improper certification of disclosures and responses and objections to discovery requests); *id.* 37(b)(2)(C) (a court "must order" attorney's fees for a failure to comply with a discovery order unless the failure was "substantially justified" or an award would be "unjust"); *id.* 37(c) (attorney's fees awardable for failure to provide

information as required by Rule 26(a) or (e)); *id.* 37(f) (attorney's fees awardable for failure to participate in good faith in developing and submitting a proposed discovery plan). A "single misrepresentation" is sufficient "to justify an award of [monetary] sanctions under the court's inherent power." *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 368 (2d Cir. 2021).

Defendants' and Mr. Litvak's persistent misrepresentations and obfuscation have "forced [Google] and the court to waste time and resources" on needless discovery efforts. *See Miller v. Thompson-Walk*, 2019 WL 2150660, at *10 (W.D. Pa. May 17, 2019) (awarding attorney's fees under Rule 37(f) where defendants "did not act in good faith in developing a discovery plan"). Three months after the parties began negotiating a proposed discovery plan—after their shifting and conflicting positions caused multiple rounds of submissions on their depositions, initial disclosures, and access to discoverable information—Defendants have provided virtually no discovery and now claim that they have none to produce. *See, e.g.*, *Charlestown Cap. Advisors*, 337 F.R.D. at 68 (awarding attorney's fees incurred after spoliation in pursuit of the lost evidence, information about the lost evidence, and the sanctions motion itself).

The Court also should impose these monetary sanctions jointly and severally on Defendants and Mr. Litvak, which is "clearly appropriate where 'the sanctionable conduct is a coordinated effort of counsel and party,'" as it is here. *Joint Stock Co.*, 2017 WL 3671036, at *20 (quoting *Metro. Opera Ass'n*, 2004 WL 1943099, at *25); *DeCastro*, 309 F.R.D. at 185. The Court also should order them to pay the monetary sanction within 30 days of the amount being finalized. *See Rice v. NBCUniversal Media, LLC*, 2019 WL 3000808, at *7 (S.D.N.Y. July 10, 2019).

## CONCLUSION

For these reasons, Google respectfully requests that the Court issue an order sanctioning Defendants and their counsel by entering default judgment and awarding attorney's fees.

DATED: August 22, 2022                    Respectfully submitted,

                                          */s/ Laura Harris*
                                          Laura Harris
                                          Andrew Michaelson
                                          Kathleen E. McCarthy
                                          Matthew Bush
                                          KING & SPALDING LLP
                                          1185 Avenue of the Americas, 34th Floor
                                          New York, NY 10036
                                          Telephone: (212) 790-5356
                                          Fax: (212) 556-2222
                                          lharris@kslaw.com
                                          amichaelson@kslaw.com
                                          kmccarthy@kslaw.com
                                          mbush@kslaw.com

                                          Sumon Dantiki (*pro hac vice*)
                                          KING & SPALDING LLP
                                          1700 Pennsylvania Ave., NW, 2nd Floor
                                          Washington, DC 20006
                                          Telephone: (202) 626-5591
                                          Fax: (202) 626-3737
                                          sdantiki@kslaw.com

                                          *Counsel for Plaintiff Google LLC*