# Exhibit 12

M7T8GOOC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   GOOGLE LLC,

 4                 Plaintiff,

 5           v.                          21 Cv. 10260 (DLC)

 6   DMITRY STAROVIKOV and
     ALEXANDER FILIPPOV,
 7
                  Defendants.           Remote Conference
 8
     ------------------------------x
 9
                                        July 29, 2022
10                                      2:00 p.m.

11   Before:

12                     HON. DENISE L. COTE,

13                                      District Judge

14                          APPEARANCES

15   KING & SPALDING LLP
          Attorneys for Plaintiff
16   BY:  LAURA E. HARRIS

17   IGOR B. LITVAK
          Attorney for Defendants
18

19

20

21

22

23

24

25
```

M7T8GOOC

```
 1              (The Court and parties appearing via teleconference)

 2              (Case called)

 3              THE DEPUTY CLERK:  Is counsel for the plaintiff ready

 4    to proceed?

 5              MS. HARRIS:  Yes, your Honor.  This is Laura Harris

 6    from King & Spalding for plaintiff.

 7              THE COURT:  Thank you, Ms. Harris.

 8              For the defendants, is counsel ready to proceed?

 9              MR. LITVAK:  Yes, your Honor.  Good afternoon.  This

10    is attorney Igor Litvak on behalf of the defendants, and I am

11    ready to proceed.

12              THE COURT:  So, Mr. Litvak, it is difficult for me to

13    hear you.  Are you using a landline?

14              MR. LITVAK:  How about now?  I am using my cell phone.

15    Is this better?

16              THE COURT:  It is better.  I can hear you better now.

17    Thank you very much.

18              I have letters from counsel of July 19th from Google

19    and from the defendants of July 25th.  There is a dispute about

20    the defendants' cooperation with discovery requests or the

21    initial disclosure requirements, and the defendants' letter of

22    July 25th responds to complaints that the plaintiff has.  We

23    have a request also by the defendants to cancel a settlement

24    conference, which is scheduled for August.  And in September, a

25    letter is due from the defendants regarding their efforts to
```

M7T8GOOC

1    date and success in obtaining international passports.

2            So that's an outline of what we have to address today.

3            Let me ask you, Ms. Harris, did you wish to add

4    anything having received the defendants' July 25 letter?

5            MS. HARRIS:  Yes, your Honor.

6            Our letter highlights deficiencies in defendants'

7    initial disclosures, but we think this dispute and Mr. Litvak's

8    letter from earlier in the week in particular has revealed what

9    we think is much more serious discovery misconduct on the part

10   of both defendants and, frankly, their counsel.

11           First, and I think just starting with the defendants,

12   what appears to be happening is that the defendants are

13   attempting to make key evidence -- the devices, whatever might

14   be on the devices -- unavailable by contending that they no

15   longer work for Valtron and no longer, quote unquote, possess

16   devices and other relevant materials.

17           As an initial matter, we don't believe them when they

18   say they no longer work Valtron, because they represented as

19   recently as March 14th in their declarations that they

20   continued to work for the company and Mr. Litvak never informed

21   us of any change in their employment status, including in their

22   Rule 26(f) submissions and conferences that we had in

23   connection with those submissions in late May.

24           But more to the point, even if their representations

25   regarding their employment are true, and we don't think they

M7T8GOOC

| | |
|---|---|
| 1 | are, those distinctions among various corporate entities simply |
| 2 | make no difference.  They are irrelevant for the purposes of |
| 3 | determining their discovery obligations.  They operate and |
| 4 | manage a cybercriminal enterprise, and we have alleged and |
| 5 | established that the enterprise comprised numerous entities, |
| 6 | each of which played a role in effecting their various schemes. |
| 7 | And even if they had established new paper companies in service |
| 8 | of what essentially seems to be an evident shell game, their |
| 9 | discovery obligations are no different.  If they have evidence |
| 10 | concerning Glupteba, they have to produce it regardless of |
| 11 | whether that evidence was obtained in connection with their |
| 12 | employment for Valtron or anywhere else.  That's why the |
| 13 | relevant tests for determining whether they have any obligation |
| 14 | to produce any particular piece of evidence has nothing to do |
| 15 | with possession, but whether they have the practical ability to |
| 16 | obtain it.  And here we think it's clear that they are still |
| 17 | connected to the enterprise. |
| 18 | Mr. Litvak indicated in his letter on Monday that they |
| 19 | still intend to oppose the motion for default judgment, and he |
| 20 | stated that the injunction in place harms their business |
| 21 | interests.  And those positions simply can't both be true.  In |
| 22 | either case they violated discovery obligations.  Either they |
| 23 | truly have left the game and they no longer control the |
| 24 | documents or devices, in which case they violated their |
| 25 | preservation obligations under the federal rules and don't have |

1   standing to contest our motion for default judgment, or they

2   remain a part of the enterprise and are obligated to produce

3   all relevant documents, and their failure to do so again puts

4   them in jeopardy under Rule 37.

5          In any event, we think Mr. Litvak should disclose the

6   date on which defendants purport to have left Valtron, the date

7   on which they contend they returned their devices, and should

8   provide a list of the devices themselves.  We have those in our

9   discovery requests, but we think, given the significance of

10  this evidence and the significance of the evidence to the case,

11  that it's worth escalating those particular requests and

12  obtaining that information earlier rather than later.  And

13  partly because they were required to disclose much of that

14  information in their initial disclosures.

15         The second issue we wanted to raise concerns Mr.

16  Litvak's own conduct in connection with this issue.  And just

17  to give a little bit of background.  As I mentioned, in late

18  May the parties had several meet-and-confers in connection with

19  our obligations under Rule 26(f) and as part of our efforts to

20  prepare the Rule 26(f) report that we submitted to the Court.

21  And as part of those conversations, Mr. Litvak sought to impose

22  essentially a reciprocal exchange of devices for inspection; in

23  other words, he wanted Google to turn over devices in exchange

24  for defendants' devices.  And, as is reflected in the 26(f)

25  report, each side recognized that there is obviously a duty to

M7T8GOOC

1    preserve that evidence.

2            We didn't think that a reciprocal exchange was

3    appropriate so we declined that offer, but the obligation to

4    preserve relevant evidence is obviously still in place.  And at

5    no point in those conversations did Mr. Litvak express any

6    concerns about evidence preservation.  He didn't indicate the

7    defendants' employment was coming to an end, or indicate that

8    that might have any effect on their ability to actually produce

9    relevant devices or evidence.  That's an extraordinary

10   omission.  And given Mr. Litvak's earlier efforts to

11   essentially induce us to produce our own devices, we have two

12   concerns.

13           The first is that defendants' defense is simply an

14   effort -- defense in this case more broadly -- is just an

15   effort to obtain information from Google regarding its

16   cybersecurity operations, and that Mr. Litvak is somehow

17   knowingly participating in that effort; and second, that Mr.

18   Litvak is assisting his clients in attempting to make this

19   evidence unavailable.  And again, as a legal matter, we don't

20   think that effort is going to be successful given the relevant

21   standard.

22           So, we would ask that the Court require Mr. Litvak to

23   submit a declaration detailing his efforts to preserve relevant

24   evidence in this case, including the date on which he became

25   aware his clients were no longer Valtron employees and the date

1    on which he purports to have learned that they returned those

2    devices to Valtron.

3            Your Honor, I can stop there, but I am happy to answer

4    any questions that the Court might have.

5            THE COURT:  Let me turn this over to Mr. Litvak.

6            Mr. Litvak, did you hear what Ms. Harris just said?

7            MR. LITVAK:  Yes, of course.  Plaintiff's counsel has

8    been doing nothing but from the beginning of this case of

9    accusing my clients of being cybercriminals and somehow their

10   counsel of being involved in that with them or doing something

11   that's illegal or unethical.  I have done nothing like that.

12   The only thing I have done is to defend my clients who Google

13   decided to sue.

14           First of all, I want to address a few things.  To

15   begin, when Ms. Harris was talking about the communication when

16   we were negotiating our joint report, those paragraphs about

17   providing devices, those paragraphs were proposed by Google.

18   Initially, when I saw them, I asked them to take it out.  I

19   told them, listen -- first of all, I never told them that my

20   clients have any devices at all.  In the beginning, I told

21   them, let's take it out, I don't want this in there, because I

22   don't think it's going to be possible.  At least I implied

23   that.  Google initially told me, no, we want to keep it in

24   there because we want to get the devices.  So I told them fine.

25   You want to keep it in there, at least make it reciprocal so

M7T8GOOC

1   this way it's fair to both sides.  If you guys are proposing

2   it, something my clients have to do, do the same thing that

3   Google have to do.  That's when Google said, you know what, we

4   are not going to do it, and it never made it into the report;

5   it never made it into the final joint report.

6          Again, I have never told Google or their counsel that

7   they have any devices at all.  We have never discussed that.

8   And I never -- again, I am thinking back right now.  Ms. Harris

9   mentioned that in the declarations they indicated they still

10  work for Valtron.  I don't have the declarations in front of

11  me.  I don't remember that was in there.  I will have to go

12  back and check, but I don't think -- I think they did mention

13  that they used to work for Valtron, but I don't remember them

14  saying that they still work for Valtron.

15         Now, in terms of the devices, the first time we had a

16  chance to discuss the devices, that's when I told them.  By the

17  way, I have been telling them from the beginning that Valtron

18  is the employer for whom they work.  That was their position

19  from day one.  And I even told Google, why don't you sue

20  Valtron?  They have all the devices.  They have all the

21  evidence.  Bring them in.  For some unknown reason, your Honor,

22  Google decides it's not doing that.  I have no idea why.

23         So, in terms of initial disclosures, my clients

24  completely complied with everything it's supposed to comply

25  with.  They don't know the last names.  I explained in my

M7T8GOOC

1   letter why they don't know the last names.  They don't have the

2   devices because those devices were returned to the employer.

3   At least that's what they tell me.  I have no reason not to

4   believe that, at least right now.

5        You know, Google talks about the fact that my clients

6   somehow are doing something improper to get the discovery.

7   They sued them.  Google sued them.  Getting discovery is a

8   normal part of the process.  Are they accusing my clients of

9   doing something that they are allowed to do under the law?  And

10  this is coming from the plaintiff who hasn't served any

11  discovery whatsoever in this case.  And now it's demanding

12  something way beyond what is required by the statute.  And now

13  they want me to submit some statement based on -- some

14  affidavit based on their suspicions?  That's what they have.

15  Nothing else.

16       I know they filed a very fancy complaint with a lot of

17  allegations in federal court.  But those are allegations.  They

18  haven't been tested.  There has been no discovery in this case.

19  And plaintiff's counsel goes around constantly saying by

20  implication.  They take every single word and turn it upside

21  down.  This is unbelievable.

22       So, therefore, your Honor, we are doing everything we

23  are supposed to do under the statute.  We provided all the

24  information.  They have the phone numbers of those people, the

25  last names that they demand.  They can call them.  They can

M7T8GOOC

1    talk to them.  Anything more for me to provide to them right

2    now would be beyond what the statute requires, beyond what the

3    initial disclosures require.  And this is just an attempt by

4    them to get as much discovery as they can now before providing

5    any of their own.

6               THE COURT:  Mr. Litvak, let me ask you a few

7    questions.

8               When did your clients leave Valtron?

9               MR. LITVAK:  The only thing I can say is in 2021.  I

10   don't think I should provide any more information beyond that,

11   and they don't want to provide any more information beyond

12   that.  But it was in 2021.  Any information more than that

13   would be provided during further discovery proceedings, your

14   Honor.

15              THE COURT:  I am asking you to tell me now.  When did

16   your clients leave Valtron?

17              MR. LITVAK:  I just told you, your Honor.  It was in

18   2021.

19              THE COURT:  When in 2021?

20              MR. LITVAK:  I don't have an exact date, your Honor.

21              THE COURT:  Do you have a month?

22              MR. LITVAK:  I'm sorry?

23              THE COURT:  Do you know the month they left Valtron?

24              MR. LITVAK:  My clients have not disclosed that to me

25   right now.

M7T8GOOC

1              THE COURT:  So you do not know the month they left
2    Valtron?
3              MR. LITVAK:  Not an exact month, no.
4              THE COURT:  What do you understand with respect to
5    when they left Valtron?
6              MR. LITVAK:  What do I understand?  It was in 2021.
7              THE COURT:  You don't know what part of the year?
8              MR. LITVAK:  No.  I believe it was second part of the
9    year, after summer, but I don't have the exact date.
10             THE COURT:  How did you learn they had left Valtron?
11             MR. LITVAK:  They told me.
12             THE COURT:  When did they tell you?
13             MR. LITVAK:  I have to go back and look at my notes.
14   It was a few months ago.  I will have to look exactly in my
15   notes.  I don't have the exact date in front of me right now,
16   but they did tell me that a few months ago.
17             THE COURT:  So, when you say a few months ago, are you
18   saying you knew that at the time of your meet-and-confer
19   conferences with the plaintiff's counsel in May?
20             MR. LITVAK:  Do you mean after the court, after we had
21   the court?  Is that what you're talking about?
22             THE COURT:  You can use that as a point in time.  Did
23   you know it as of -- I am looking for the date of our court
24   conferences.  We had a March 1st telephone conference and we
25   had, let me see here, a June 1st conference.  Did you know it

M7T8GOOC

as of the June 1st conference date?

          MR. LITVAK:  I definitely did not know it at the March
conference date.  I may have known by the June conference date.
I cannot recall right now.  I would have to check my notes.
But again, even if I knew, I don't remember right now, but even
if I knew, that's not something that was discussed during our
meet-and-confer after the court appearance.

          THE COURT:  So let me turn to the month of May.  I
understand that in anticipation of the June conference with the
Court, you had conversations with plaintiff's counsel to
prepare a proposed schedule for this litigation that you would
submit to me in advance of the June conference.  At the time of
those May conversations with plaintiff's counsel, did you know
that your clients no longer worked at Valtron?

          MR. LITVAK:  I don't remember.  Maybe.  Again, even if
I knew or didn't know, those issues were never raised or
discussed between the counsel for the plaintiff.  If I knew at
that time and plaintiff's counsel would have asked me, of
course I would have told them if I knew.  The first opportunity
when this was discussed, directly discussed, when this was
raised as an issue, this was at our last meet-and-confer, and
that's when I informed the plaintiff's counsel.

          THE COURT:  What are you referring to?  What
conference date are you referring to?

          MR. LITVAK:  That was a meet-and-confer that just me

1   and plaintiff's counsel had over the phone.  I think it was

2   June 27.  Hold on.  Let me see.  It was June 27, a

3   meet-and-confer.  It was a telephone conference with

4   plaintiff's counsel.

5        THE COURT:  One of the accusations that I understand

6   plaintiff's counsel is making here is that at the time that you

7   had meetings and conversations with plaintiff's counsel in May,

8   you suggested that if the defendants were going to have to

9   produce their devices, that the plaintiff produce devices in a

10  reciprocal exchange.  And the question is whether you made that

11  suggestion knowing that the defendants had no devices to

12  produce or were at least taking the position that they had no

13  devices to produce?

14        Do you understand what I am saying, Mr. Litvak?

15        MR. LITVAK:  No, your Honor.  Absolutely not.  Because

16  my initial suggestion to the plaintiff's counsel was to

17  completely take out that sentence.  I told them, let's take it

18  out.  And they insisted on keeping it in.  That's what they

19  did.  They said, Oh, no, no, no, we want to keep it in.  So I

20  told them, OK, if you want to keep it in, just make it the same

21  so it works the same in both ways.  And I believe the language

22  was, I don't have it in front of me, but if you have

23  possession, control, something like that.

24        I never told during all of those conversations, I

25  never told, Oh, by the way, Ms. Harris, my clients have

M7T8GOOC

1    devices.  I never told her that.  There's no e-mail.  There is

2    nothing to that effect.  All we discussed in the beginning to

3    take out that sentence.  That was my initial request.  They

4    denied it.  And after they denied it, I said, OK, fine, just

5    make it the same for both ways, so when I show it my clients,

6    at least it's fair to everybody, it's the same requirement to

7    everybody.  I never told them, I never told them my clients had

8    devices.  Absolutely not.  And I never implied.

9         THE COURT:  Mr. Litvak, the plaintiff's counsel is

10   making the point that in those May conversations you did not

11   disclose to Google that your clients had no devices.

12        MR. LITVAK:  Your Honor, we never discussed it.  We

13   never discussed in May anything about devices.  The first time

14   we discussed -- there was only two times we discussed something

15   about devices.  The first time when we were negotiating the

16   language for the joint report, and I already explained to you

17   in the joint report Google first proposed -- it was then, they

18   proposed it, to put that language about the devices.  I told

19   them not to do it.  And when they said no, I told them, OK,

20   fine, if you want to do it, let's do the same language for

21   everybody.  And they said, you know what, we are going to take

22   it out.

23        Then the next time we discussed anything about devices

24   was during the June 27th conference, and that's when I told

25   them, that's when I told them they don't have any devices

1    because they return it to their employer.  There was no other

2    time where the issue of devices was ever raised, as far as I

3    remember.

4              THE COURT:  OK.  So, Mr. Litvak, what we have here,

5    stepping back, is a situation in which the defendants have very

6    little information to share, no control over documents, no

7    access to digital information.  They are taking the position

8    that they left the only relevant entity, Valtron, in 2021, and

9    have no access or control over any information that would be

10   relevant in this action.  Is that right, Mr. Litvak?

11             MR. LITVAK:  No, no, of course not.

12             First of all, we provided the list of documents in the

13   initial disclosures.  Second of all, my clients are more than

14   willing to be deposed by the plaintiff.  They want to defend

15   themselves.  But they can't get something they do not have.

16             THE COURT:  Thank you, Mr. Litvak.

17             Ms. Harris.

18             MS. HARRIS:  Your Honor, as an initial matter, we have

19   declarations from both defendants that they worked for Valtron

20   as software engineers, and that's in paragraph 9 of their

21   declarations at docket entry 47-2 and 47-3.

22             And with respect to our conferences at the end of May,

23   Mr. Litvak is simply wrong that we did not discuss the exchange

24   of devices, and we are happy to submit to the Court e-mail

25   exchanges on the various drafts that the parties exchanged in

1    which it is clear that we were discussing devices and that Mr.

2    Litvak is, in fact, pressing us to reinstate language that he

3    has inserted about exchanging devices into the draft.

4            I think that it's clear that defendants have been

5    operating under false pretenses here, and that at some date

6    that became clear to Mr. Litvak and he neither corrected his

7    clients' declarations or informed us at the earliest date at

8    which he became aware of the change in circumstance, and

9    certainly the effect that it would have on discovery, declined

10   to provide that information.  And I think the questions that I

11   raised at the outset of the hearing remain.

12           THE COURT:  So what is your application, Ms. Harris?

13           MS. HARRIS:  Your Honor, we would propose that we get

14   the story straight as to when defendants left Valtron and the

15   devices that they had in connection with their employment.  And

16   we think that they are required to produce those devices.  We

17   would like to have those devices at the earliest date possible.

18   We have included all of those requests in our discovery

19   requests, but we don't think that there is any point in

20   belaboring this, if they are going to be unable to produce

21   them, because it's clear to us that they had an obligation to

22   produce that evidence and that their failure to do so means

23   that they are in breach of those obligations.

24           Secondly, we think that Mr. Litvak should submit a

25   declaration establishing the date certain for each of your

M7T8GOOC

```
 1   Honor's questions.  Because I think sitting here today, we
 2   still don't have a clear impression of the dates on which he
 3   became aware of the change in circumstance and the effect that
 4   that would have on discovery and the devices that are at issue.
 5   And we would like to know what efforts were made to preserve
 6   that evidence.  And once we have that information in front of
 7   us, I think we are considering, frankly, all relief that could
 8   be on the table there, including terminating sanctions under
 9   Rule 37; not to mention sanctions that might be appropriate in
10   light of what Mr. Litvak submits to the Court, and, frankly,
11   the statements that he has made to the Court today about what
12   was and was not discussed in connection with our Rule 26(f)
13   reports.
14           THE COURT:  So, the limited series of questions that
15   you want Mr. Litvak to promptly answer, are they identified in
16   written submissions you have already served on him?
17           MS. HARRIS:  We have not served discovery on Mr.
18   Litvak personally.  We are happy to do that.  But we have
19   served discovery on defendants that includes a number of the
20   requests that I have just made, although not in that same
21   specificity.  But we are happy to re-serve and clarify, if that
22   would be useful.
23           THE COURT:  I think it would be helpful to Mr. Litvak
24   to know with some precision what questions you want answered,
25   first by his clients and secondly by him.  And I will let
```

M7T8GOOC

1    counsel talk about a schedule for Mr. Litvak's response; and,

2    of course, if he feels that any of that information should not

3    be discoverable, in the circumstances we are dealing with here,

4    I will give him a chance to explain why that is true as well.

5          When can you get the specific questions you want

6    answered by his clients and separately by Mr. Litvak to Mr.

7    Litvak?

8          MS. HARRIS:  I think we are prepared to do that over

9    the weekend or on Monday, your Honor.

10         MR. LITVAK:  Your Honor, can I just respond?

11         What Google is asking is an extraordinary thing.  It's

12    unbelievable.  It's almost getting involved in my relationship

13    between clients and counsel.  This is, like, unbelievable.  If

14    they want to know when my clients left Valtron, that's why we

15    have discovery process.  This is a plaintiff, who hasn't

16    provided any discovery of its own, now is going to get an

17    affidavit from attorney.

18         Your Honor, the issues here I would really ask the

19    Court to reconsider.  I think we already made it clear that my

20    clients don't have any devices.  There is no e-mail that Google

21    counsel is able to show telling them that they do.  Yes, we

22    exchanged e-mails, but everything I said before is true.  They

23    proposed it.  I asked for them to take it out.  They didn't.

24    So then I proposed let's do it equally so it's the same

25    language for both sides.  Then they said, OK, we are going to

M7T8GOOC

1    take it out.  That's it.  And then the next time we talked

2    about the devices was on June 27.  What they are asking, your

3    Honor, is unbelievable, and I would ask the Court to deny that

4    request.  They have no evidence to show that my clients or I

5    have done anything wrong in this case, nothing.

6          THE COURT:  Mr. Litvak, I am giving you a chance to

7    respond.  We are just setting a schedule.  And if you feel that

8    a response is inappropriate to any particular question or

9    inquiry, you will have a chance to tell me that.  But I must

10   say, Mr. Litvak, if the correspondence or evidence shows that

11   you discussed in May an exchange of devices, at a time that you

12   knew that there were no devices in your clients' possession

13   that could be exchanged, that is troubling.  I am not deciding

14   now what was said.  I don't have the record before me.

15         So, you're going to get an identified series of

16   questions for your clients and for you on Monday, which is

17   August 1.  Shall we say that you will respond by August 8, give

18   you a week, Mr. Litvak, does that work for you?

19         MR. LITVAK:  Yes.  Hold on.  Let me look at my

20   schedule.

21         Yes, that's fine.

22         THE COURT:  Great.

23         So, I will send out a scheduling order for another

24   conference for the 11th or 12th when I have a chance to look at

25   my schedule.  And my chambers will be in touch with counsel to

M7T8GOOC

1    try to choose a time that's good for you as well, if we need a

2    conference.  Otherwise, it may just be that, depending on what

3    the response is, that this will move forward without the need

4    for a conference.

5            Let's turn to another topic here.  Mr. Litvak has

6    asked for the August 10th settlement conference to be canceled.

7    Is there any objection to that, Ms. Harris?

8            MS. HARRIS:  We don't take a position on it.  I think

9    we are always happy to sit down, but if Mr. Litvak does not

10   think that those conversations will be productive, we don't

11   object to taking it off the calendar.

12           THE COURT:  OK.  So I will grant that application, Mr.

13   Litvak.  The settlement conference is canceled.

14           Ms. Harris, is there any open issue to address right

15   now?

16           MS. HARRIS:  Your Honor, I think the only open issue

17   pertains to the last names that were not disclosed in

18   connection with the initial disclosures.  We understand Mr.

19   Litvak's position that his clients have no last names to

20   provide, but we certainly don't credit that statement given the

21   long history that his clients have had in working with those

22   individuals.  But again, unless your Honor has any further

23   measures to take in that regard, we think that we are at an

24   impasse there.

25           THE COURT:  Yes.  And I don't have any further

M7T8GOOC

1    measures to take at this point.  You have the defendants'

2    position; they do not know those names.

3              MS. HARRIS:  Thank you, your Honor.

4              THE COURT:  Mr. Litvak, is there any open issue that

5    you believe we should discuss today?

6              MR. LITVAK:  No, your Honor.  There's none.

7              THE COURT:  Thank you.

8              Good luck, counsel.  Thank you very much.

9              MS. HARRIS:  Thank you, your Honor.

10             MR. LITVAK:  Thank you.

11             (Adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25