UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
GOOGLE LLC,

                          Plaintiff,                          Civil Action No.: 1:21-cv-10260-DLC

- against -

DMITRY STAROVIKOV;
ALEXANDER FILIPPOV;
and Does 1-15,

                          Defendants.
-------------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS AND DEFENDANTS' MOTION FOR SANCTIONS UNDER THE COURT'S INHERENT POWERS**

/s/ Igor Litvak

_____

Igor Litvak, Esq.
Attorneys for Defendants
The Litvak Law Firm
1733 Sheepshead Bay Rd., Suite 22
Brooklyn, NY 11235
Tel/Fax: 718-989-2908
Email: Igor@LitvakLawNY.com

# TABLE OF CONTENTS

Contents

PRELIMINARY STATEMENT ................................................................. 1

PROCEDURAL AND FACTUAL BACKGROUND ................................... 3

   Defendants Counterclaims Alleging Tortious Interference ...................... 4

   Negotiations Over the Location of the Defendants' Deposition ............... 5

   Initial Disclosures and Disclosure Regarding Devices to Plaintiff's Counsel on June 27 ......... 8

   Defendant's Counsel was not Evasive During the July 29th Conference and Defendant's Counsel Never Induced a Devices Exchange While Knowing Defendants Had None to Provide ....................................................................................................... 10

   Defendants Are Not Seeking Discovery from the Plaintiff for the Sole Purpose of Circumventing Plaintiff's Efforts to Neutralize the "Malware" ............... 11

   Defendants Will Respond to Plaintiff's Discovery Demands by September 5, 2022 .............. 12

   Plaintiff's Counsel Is Knowingly Proffering Irrelevant and Prejudicial Evidence ................. 12

   Defendants and Their Counsel Did Not Cause Spoliation of Evidence .................... 13

   Defendants Provided All the Information Known to Them in the Initial Disclosures ............. 15

ARGUMENT ..................................................................................... 16

   1. LEGAL STANDARDS ................................................................. 16

     a. Standards for Discovery Violations ............................................ 16

      i. Rule 37(b)(2) Sanctions .......................................................... 16

      ii. Spoliation ............................................................................ 18

      iii. Inherent Power of the District Court ...................................... 21

   2. ANY SANCTION AGAINST DEFENDANTS OR THEIR ............... 22

   COUNSEL IS NOT WARRANTED UNDER CIRCUMSTANCES ........ 22

   3. THE COURT SHOULD AWARD DEFENDANTS AND ITS COUNSEL SANCTIONS FOR PLAINTIFF'S PATTERN OF MATERIAL MISREPRESENTATIONS AND ATTORNEY'S FEES INCURRED IN CONNECTION WITH RESPONDING TO PLAINTIFF BASELESS MOTION FOR SANCTION ................................ 24

CONCLUSION .................................................................................. 25

CERTIFICATE OF SERVICE ............................................................... 26

# TABLE OF AUTHORITIES

**Cases**

Alabama Aircraft Indus., Inc. v. Boeing Co., 319 F.R.D. 730 (N.D. Ala. 2017) ......................... 20

Ashkinazi v. Sapir, 02 Civ. 2, 2005 U.S. Dist. LEXIS 3543 (S.D.N.Y. March 8, 2005) ............. 18

Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759 (2d Cir. 1990) ............................................ 17

Burns v. Bank of Am., No. 03 Civ. 1685, 2007 U.S. Dist. LEXIS 40037 (S.D.N.Y. June 4, 2007) .................................................................................................................................................. 17

Byrnie v. Town of Cromwell, 243 F.3d 93 (2d Cir. 2001) ........................................................... 19

Chambers v. NASCO, Inc., 501 U.S. 32 (1991) ........................................................................... 21

Enmon v. Prospect Capital Corp., 675 F.3d 138 (2d Cir. 2012) .................................................. 21

Friends of Animals Inc. v. United States Surgical Corp., 131 F.3d 332 (2d Cir. 1997) ......... 17, 18

GenOn Mid-Atlantic, LLC v. Stone & Webster, Inc., 282 F.R.D. 346 (S.D.N.Y. 2012) ............. 20

Hall v. Cole, 412 U.S. 1, 15, 93 S. Ct. 1943, 36 L. Ed. 2d 702 (1973) ....................................... 21

Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130 (2d Cir. 2007) ................................... 17

Intl. Tech. Mktg. v. Verint Sys., 991 F.3d 361 (2d Cir. 2021) ..................................................... 22

Kullman v. New York, No. 8:07-cv-716, 2010 U.S. Dist. LEXIS 147517 (N.D.N.Y. January 7, 2010) ........................................................................................................................................... 23

Lokai Holdings LLC v. Twin Tiger USA LLC, No. 15cv9363, 2018 U.S. Dist. LEXIS 46578 (S.D.N.Y. March 12, 2018) ......................................................................................................... 21

Macolor v. Libiran, No. 14 Civ. 4555 (JMF), 2015 U.S. Dist. LEXIS 34010 (S.D.N.Y. March 18, 2015) ........................................................................................................................................... 22

Manchester Mgt. Co., LLC v. Echo Therapeutics, Inc., 297 F. Supp. 3d 451 (S.D.N.Y. 2018) .. 21

Marfia v. T.C. Ziraat Bankasi, New York Branch, 100 F.3d 243 (2d Cir. 1996) ........................ 17

Moody v. CSX Transportation, Inc., 271 F. Supp. 3d 410 (W.D.N.Y. 2017) .............................. 19

Photocircuits Corp. v Marathon Agents, 162 F.R.D. 449 (E.D.N.Y. 1995) ................................ 18

Rates Tech., Inc. v. Mediatrix Telecom, Inc., No. CV 05-2755 (JS) (AKT), 2007 U.S. Dist. LEXIS 52781 (E.D.N.Y. March 16, 2007) ................................................................................. 18

Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99 (2d Cir. 2002) ................. 19, 20

Rotblut v. Thaler, 1998 U.S. Dist. LEXIS 18872 (S.D.N.Y. December 3, 1998) ........................ 17

Securities Indus. Ass'n v. Clarke, 898 F.2d 318 (2d Cir. 1990) ................................................... 18

Stanbro v. Westchester County Health Care Corp., No. 19 Civ. 10857, 2021 U.S. Dist. LEXIS 163849 (S.D.N.Y. August 27, 2021) ................................................................................... 20, 21

Ungar v. City of New York, 329 F.R.D. 8 (E.D.N.Y. 2018) ........................................................ 20

United States v. Aldeco, 917 F.2d 689 (2d Cir. 1993) ................................................................. 18

United States v. Seltzer, 227 F.3d 36 (2d Cir. 2000) .................................................................... 21

Valentine v. Museum of Modern Art, 29 F.3d 47 (2d Cir. 1994) ........................................... 17, 18

West v. Goodyear Tire & Rubber Co., 167 F.3d 776 (2d Cir. 1999) ........................................... 19

**Statutes**

Fed. R. Civ. P. 37(b)(2) ................................................................................................................. 16

Fed. R. Civ. P. 37(b)(2)(A) ........................................................................................................... 17

Fed. R. Civ. P. 37(e) .............................................................................................................. 19, 20

Defendants DMITRY STAROVIKOV AND ALEXANDER FILIPPOV (hereinafter, "Defendants"), respectfully submit the following memorandum of law in opposition to Plaintiff's Motion for Sanctions and in support of Motion for Sanctions against the Plaintiff and their Counsel under the Court's inherent powers.

## PRELIMINARY STATEMENT

From day one Plaintiff's counsel has been misleading the Court and lobbying attacks first on the Defendants and now on their Counsel. Plaintiff and its Counsel pretend to appear as white knights fighting for justice, but in reality, they filed this lawsuit hoping for a quick and easy victory with no intention to ever provide any discovery to the Defendants. When faced with the Defendants' opposition, Plaintiff and its attorneys decided to use every single dirty trick in the book to achieve victory at any cost. Such litigation tactics had a significant detrimental effect on the course of litigation and substantially prejudiced the Defendants and their attorney.

From the get-go, Plaintiff's lead counsel Laura Harris misled the Court when she baselessly claimed in her motion papers that the Defendants waived jurisdiction when it was clear from the multiple conversations and emails that no such thing ever happened. Litvak Decl. at 8-10. In fact, counsel made it very clear to Ms. Harris that the Defendants would **only consent jurisdiction on the condition** that the Plaintiff vacates Notice of Default and allows Defendants to file an answer in the case. Id.

Then after the June 1, 2022 conference, Ms. Harris again lied to the Court when she stated that "Mr. Litvak stated that his clients would not agree to travel to any country from which the United States may be able to extradite them." Ex. 2, p. 1-2. In fact, counsel never stated that the "Defendants won't travel to a country with an extradition treaty with the U.S." - this is something that was added by Ms. Harris to serve her needs as the remark successfully misled the Court into suspending the agreed-upon discovery schedule while stating that Defendants' counsel

1

"has not been candid with the court." Ex. 3. Litvak Decl. at 3.

Ms. Harris' misrepresentations continued when she claimed in her July 19, 2022 letter that "Defendants' counsel acknowledged that Defendants work closely with the individuals they identified," Ex. 4. This is just not true, as counsel only stated that the Defendants worked with the individuals in question in the same location at some point in the past. Ex. 5, Litvak Decl. at 4.

Further, Ms. Harris used an old recording that was posted on YouTube to claim that counsel was advising Defendants to hide their laptops from disclosure. Ex. 3. However, even after being advised of the recording's circumstances and that it predated this case by many months, Ex. 6, the Plaintiff's counsel still egregiously continues to proffer that transcript as somehow relevant to this case, even using it in her motion for sanctions, where she literally argues that "Defendants apparently intend to heed Mr. Litvak's advice that their "work" laptops should remain in Russia."  See Dkt. 103-8, Dkt. 112-19, Dkt. 111 at 23.

Continuing this pattern of lies and intentional and self-serving mischaracterizations, Ms. Harris lied in her Motion for Sanctions when claiming that she learned that the Defendants left Valtron and returned their laptops only on July 19, 2022. Dkt. 111 at 1, 8. In fact, as corroborated by emails, Court filings, and the discussions held during July 29, 2022 Court telephone conference, counsel informed Ms. Harris about this on June 27, 2022, during the meet-and-confer regarding Defendant's Initial Disclosures. Litvak Decl. at 6. In light of Plaintiff's repeated intentional misrepresentations to the Court that substantially prejudiced Defendants and their Counsel, Defendants respectfully request that the Court sanctions Plaintiff and its Counsel pursuant to the Court's inherent powers, by awarding Defendants attorneys' fees incurred in connection with responding to Plaintiff's Motion for Sanctions.

Finally, all Plaintiff's accusations raised in its Motion for Sanctions are either flat-out lies or intentional mischaracterizations of facts and /or counsel statements. The *only* thing the

undersigned counsel is guilty of is having a misunderstanding with the Defendants as to their employment status at Valtron. From the day counsel was retained in mid-February until May 20, 2022, he was under the impression that the Defendants still worked at Valtron. As a consequence of that misunderstanding, some insignificant but wrongful information percolated into some of the pleadings, but it was not intentional. Litvak Decl. at 7.

Most importantly, once counsel learned from the Defendants about the correct status of their Valtron employment and that they had no devices or ESI to turn over to Plaintiff as part of discovery, he disclosed it to Ms. Harris 11 days later, on June 27, 2022. <u>Id</u>. Now, as with many things before, Plaintiff and its counsel are using this misunderstanding between counsel and Defendants, which did not prejudice Plaintiff in any way, to force another default while asking to be paid for their unwarranted Motion for Sanctions. For the reasons stated below, the Court should deny Plaintiff's Motion for Sanctions in its entirety.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Google LLC ("<u>Plaintiff</u>") commenced this action on December 2, 2021, by filing a Complaint ("Complaint"), seeking compensatory and injunctive relief against the Defendants. To wit, the Complaint alleging claims under (1) the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c)-(d) (Count I); (2) the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (Count II); (3) the Electronic Communications Privacy Act, 18 U.S.C. § 2701 (Count III); (4) the Lanham Act (Count IV); (5) and common law theories of unfair competition and unjust enrichment (Counts V-VI). Subsequently, Plaintiff filed an Order to Show Cause seeking, *inter alia*, "injunctive and other relief to stop Defendants Dmitry Starovikov and Alexander Filippov and Does 1 through 15- through their participation in, and operation of, the Glupteba Enterprise-from continuing to control and operate a botnet of over a million devices, continuing to distribute malware to infect new devices, and continuing to carry out criminal

schemes." Dkt. 8 at 1.

Shortly after that, Plaintiff initiated a default proceeding against Defendants and the Doe Defendants, and the clerk filed the certificate of default on February 8, 2022. Dkt. 38. Defendant Dmitry Starovikov appeared on February 16, 2022, and Defendant Alexander Filippov appeared on February 22, 2022. Dkt. Nos. 39, 40. On March 14, 2022, the Defendants filed their motion to Set Aside Entry of Default. Dkt. 47. The Court granted the Defendants' motion to Set Aside the entry of default on April 27, 2022. Dkt. 62.

### Defendants Counterclaims Alleging Tortious Interference

After the Court issued its decision on Defendant's motion to set aside, and counsel was gearing up to draft an answer, Defendants informed him that they were suffering negative consequences of Google's lawsuit. Litvak Decl. at 15. It took them years to build a reputation and make a name for themselves in the Russian IT scene. Id. Besides working for Valtron they had many other projects planned with Valtron CEO, some of Valtron clients, and other members of the Russian IT industry. Id. But now, all the opportunities were drying up as they became a pariah in the Russian IT industry and were being shunned by everyone. Id. One of the Defendants could not even rent an apartment as every time someone searched their name on the Internet, this case would come up. Id. They believed and still believe they were ruined professionally and financially by Google's lawsuit and the accompanying publicity. This is why during the June 1, 2022 conference, counsel told the Court:

> It's preventing my clients from engaging in **normal business activity**. They tried -- they closed the emails. They are closing everything. And they are using this as a weapon to basically go after my clients. **So even if they agreed to permanent injunction, the Google will still continue to go after them**.

Ex. 11 at 12. Considering those allegations, counsel proposed a language for the counterclaims

that he believed described their situation, describing present and prospective **business relationships**, which were ruined as a result of Google's lawsuit. Ex. 13. Nowhere does it say in the counterclaims that the Defendants were "presently employed" as was claimed in Ms. Harris's letter of August 11, 2022. Ex. 14.

The counterclaims were filed on May 11, 2022, and on May 20, the Defendants informed counsel for the first time that they left Valtron at the end of 2021. Litvak Decl. at 16. After he heard that, he advised the Defendants that the counterclaims should be amended or withdrawn. They decided to consider their options over the weekend and discuss the same the following week. Then on Monday, May 23, 2022, counsel received an email from Ms. Harris stating that the "counterclaims are plainly deficient and fail to state a claim." Ex. 15. In the email, Ms. Harris asked counsel to withdraw the counterclaims or be faced with a motion to dismiss. Id. Counsel discussed the same with the Defendants the following day, and since the Defendants did not have the financial recourses to engage in additional litigation regarding the counterclaims, they decided to voluntarily dismiss the counterclaims. Counsel emailed Ms. Harris that same day stating "Laura, I discussed the counterclaims with my clients, they agreed to withdraw them." Id. Subsequently, he filed a notice of voluntary withdrawal that same day, meaning the counterclaims only existed for 13 days and they did not cause any prejudice or harm to Plaintiff. Ex. 16.

### Negotiations Over the Location of the Defendants' Deposition

Defendants are willing to participate in the discovery and provide documents, and they have done nothing to suggest otherwise. Defendants are willing to be deposed in Kazakhstan inside a U.S. Embassy any day since now this is the only place where they can legally travel as Kazakhstan does not require a Russian international passport. In fact, the Defendants applied for such passports and are awaiting their approval. See Ex. 17, Litvak Decl. at 17.

The war in Ukraine had a very negative effect on the ability of Russian citizens to travel internationally. Even assuming that the Defendants can obtain Russian international passports, the U.S. Embassy in Russia is virtually closed and has stopped issuing nonimmigrant U.S. visas since April of 2021. See https://www.ustraveldocs.com/ru/ru-gen-faq.asp, see also https://ru.usembassy.gov/visas/. To get to any country for deposition suggested by Plaintiff will require a Schengen or a U.K. visa issued to the Defendants. As a result of the war in Ukraine, many European countries stopped issuing visas to Russian nationals, and there are serious discussions within the E.U. to either significantly limit such visas or completely ban all E.U. visas for Russian nationals. See https://www.bloomberg.com/news/articles/2022-08-25/russians-face-european-travel-hurdles-as-eu-mulls-restrictions.

In fact, it is already almost impossible to get a Schengen or a U.K. visa for a Russian citizen, regardless of the circumstances. See https://www.fragomen.com/insights/united-kingdom-surcharge-and-visa-refusals-for-russians-possible-per-new-law.html, see also https://www.wsj.com/articles/eu-to-suspend-visa-agreement-with-russia-11661953747. Plaintiff and its counsel, both of whom used to have a major presence in Russia, know all of this but still insist that Defendants to be deposed in countries to which they cannot travel. Google recently had to move hundreds of its employees out of Russia to Dubai, which does not require Visas for Russian citizens. See  https://www.wsj.com/articles/google-subsidiary-in-russia-to-file-for-bankruptcy-11652876597 . It is not clear why Plaintiff's counsel would not propose Dubai as an option but it appears that Dubai is a good enough place for Google's Russian employees but not good enough place to conduct Defendants deposition.

There is no doubt that Plaintiff insists on the depositions taking place in the U.K., Irland or Spain, or the U.S. for the sole purpose of triggering a default since it knows that it would be almost impossible for Mr. Starovikov and Mr. Filippov to travel to those countries any time

soon. For the Plaintiff and its counsel, there is no difference where the deposition takes place, but they keep insisting on Western Europe countries as the only option to gain litigation advantage, trigger a default and finally win this case at any cost.

The undersigned counsel never guaranteed or promised that Defendants would appear for depositions in any particular country or that they would even be able to leave Russia. In fact, during the June 1, 2022 conference, he specifically requested that the depositions take place virtually because there was no way for Defendants to leave Russia or travel to any country. See Ex. 12, p. 11. Counsel also informed the Court that it would be very difficult for the Defendants to come to the U.S. for trial. Id. Then in his June 14, 2022 letter, counsel wrote that "in the worst-case scenario, if their U.S. visa applications are denied, or if they are not able to leave Russia for other reasons beyond their control, they are willing to appear at trial virtually." Ex. 18, p. 2, Litvak Decl. at 21.

Therefore, considering the war in Ukraine, the biggest European land war since World War Two, and the accompanying restrictions on Russian citizens' ability to travel internationally, especially to Europe, something Plaintiff is fully aware of, Mr. Starovikov and Mr. Filippov are doing all they can to obtain their international passport so they can appear in some neutral country for depositions. But even if they can obtain those passports, considering the visa and flight restrictions between Russia, Europe, and the U.S., Mr. Starovikov and Mr. Filippov cannot guarantee that they would be able to appear in the countries proposed by Plaintiff for their depositions. Therefore, Kazakhstan remains the most realistic option, and the Defendants are willing to appear there for depositions inside a US embassy on short notice. Please note that on September 16, 2022, the undersigned counsel will update the Court on the status of the Defendants' efforts to obtain international Russian passports.

Plaintiff's suggestions that Defendants are not making genuine efforts to obtain

International passports, or having no real intention to participate in depositions or discovery is remarkable considering that it was Ms. Harris who, after June 1, 2022, Court conference, during the meet and confer, told counsel that Google did not want to provide any discovery to the Defendants, believing they would use it for some illicit purpose. This means that Google and its counsel filed this lawsuit but never had any intention to comply with its discovery obligations.

**Initial Disclosures and Disclosure Regarding Devices to Plaintiff's Counsel on June 27**

Upon the grant, the parties commenced the discovery phase as Defendants provided Plaintiff with the Initial Disclosures on June 17, 2022. While preparing the Initial Disclosures on June 16, 2022, again counsel spoke with Defendants and asked them what other devices or ESI they got that may be related to Valtron or this case. To his surprise, they informed him that they could not find or get any and therefore did not have any other ESI or devices related to Valtron. Later that day, counsel finalized the Initial Disclosures and emailed them to King & Spalding. Ex. 33. The emailed initial disclosures **did not list any devices or ESI**. Id. On June 23, 2022, counsel received an email from King and Spalding arguing that the Initial Disclosures were deficient for various reasons. Litvak Decl. at 37. On Monday morning, June 27, 2022, the parties held a Microsoft teams conference to discuss the Initial Disclosures. Ex. 36. This is when the undersigned counsel disclosed to Ms. Harris that the Defendants recently informed him that they left Valtron and returned their devices to Valtron after leaving, and they had no other ESI or devices in their possession. Litvak Decl. at 39. Later that day, counsel amended the Initial Disclosures and emailed them to King & Spalding; again, **he did not list any devices or ESI**. Ex. 37, Litvak Decl. at 40. After emailing the amended Initial Disclosures, counsel did not hear from King and Spalding until July 18, 2022, when Ms. Harris emailed regarding them. Ms. Harris started her email by writing, "I'm writing to follow up on **our June 27 call** and your clients' amended initial disclosures." Ex. 38 at p. 2, and she continues by writing in part,

8

> [w]e are troubled by your representations on our call **that (i) your clients do not "have" any relevant devices, and**, in apparent contradiction to that representation, that (ii) any devices they do "have" are owned by Valtron and therefore are not discoverable . . . [r]egardless, the question whether any particular device is owned by Valtron is irrelevant.

Id. Ms. Harris concludes the email by stating, "[p]lease let us know immediately if you intend to continue to object to the production for inspection of any electronic devices, or if your clients contend they no longer possess any devices. Id. at p. 3. After some back and forth that same day, counsel responded the following day, writing

> Laura, I never said that my clients preserved, had in their possession or intended to produce any devices subject to discovery, I am not sure where you got that from. **The last time we discussed this issue I told you all the devices were returned to Valtron when they finished working for Valtron, and therefore, they do not have any devices in their possession that are discoverable, there is no contradiction.** Perhaps maybe you misunderstood me or I misspoke, I am not sure, but to clarify, right now my clients do not have any devices in their possession that would be subject to discovery and there is no way for them to get those devices back from Valtron. There is nothing else my clients can provide in the initial disclosures. Igor.

Id. at p. 1. Later that day King & Spalding filed a letter on ECF arguing that the Defendants' Initial Disclosures were deficient, which triggered the July 29 Court telephone conference and the present discovery dispute before the Court. Ex. 39.

July 18 Ms. Harris' email clearly stated that counsel spoke on June 27, 2022, and during that conversation, undersigned counsel told Ms. Harris about Defendants leaving Valtron and returning their devices. But in her memo of law in the Motion for Sanctions, Ms. Harris now claims that counsel told her about it on July 19.

It is evident that Ms. Harris is lying to the Court, as she has done repeatedly throughout this litigation. The only difference in this instance is that this time her lie is confirmed by her own email. She even sent counsel an email on July 18 stating, "thank you, Igor. Please also

9

confirm whether your clients intend **to continue to object to the production of electronic devices, or if your clients contend they no longer possess any devices.**" Ex. 38, p. 1. Litvak Decl. at 46.

### Defendants' Counsel was not Evasive During the July 29 Conference and He Never Induced a Devices Exchange While Knowing Defendants Had None to Provide

At the July 29, 2022 conference, counsel could not say when the Defendants left Valtron because, at the time, all he vaguely remembered was that they told him on May 20, 2022, that they left Valtron at the end of 2021. That is why when the Court inquired as to a specific date, counsel stated, "I believe it was second part of the year, after summer, but I don't have the exact date." Ex. 40 at 11. At the time, counsel also did not remember the exact date when they told him this, but he did tell the Court, "I have to go back and look at my notes. It was a few months ago," later adding,

> I definitely did not know it at the March conference date. I may have known by the June conference date. I cannot recall right now. I would have to check my notes. But again, even if I knew, I don't remember right now, but even if I knew, that's not something that was discussed during our meet-and-confer after the court appearance.

Id. at 11-12, Litvak Decl. at 47.

Moreover, counsel never knowingly suggested, implied, or stated that Plaintiff should exchange its devices in a reciprocal exchange while knowing that the Defendants had no devices to provide. As explained prior, on May 20, 2022, counsel learned that the Defendants left Valtron at the end of 2021 and, not long after, returned their laptops. But they also told him they would try to get the laptops back, gain access to some server, and look for other devices and ESI. Litvak Decl. at 48. This is why he proposed the language about "**actual control and possession**." When he learned on June 16, 2022, that Defendants could not get anything else, he did not disclose any devices or ESI in the Initial Disclosures served on June 17, 2022. This

triggered a discussion about the same during the June 27 Microsoft Teams conference. And this is when, as they were speaking for the first time since May 31/June 1, counsel informed Ms. Harris that the Defendants left Valtron at the end of 2021, returned their devices after leaving, and they had no other devices or ESI to provide. Counsel informed Ms. Harris merely 11 days after finding out himself during the very first conversation involving anything specific about devices/ESI and **MONTHS BEFORE PLAINTIFF WOULD HAVE TO PROVIDE ITS OWN DEVICES OR ESI** to the Defendants. Litvak Decl. at 49.

### Defendants Are Not Seeking Discovery from the Plaintiff for the Sole Purpose of Circumventing Plaintiff's Efforts to Neutralize the "Malware"

Ms. Harris claims that Plaintiff has some secret discovery which Defendants cannot see because if they do, it will help them "circumvent Plaintiff's efforts to neutralize the malware." However, members of Google's Threat Analysis Group are posting online and running around giving conferences where they disclose in public everything Defendants would need to know to accomplish just that. For example, on December 7, 2021, Google's Threat Analysis Group posted online an article called "Disrupting the Glupteba Operation" which disclosed a great deal of information about Google's investigation. Ex.44.

In another more egregious example, on September 28, 2022, Luca Nagy, a prominent member of Google's Threat Analysis Group, will be conducting a presentation titled "uncovering a broad criminal ecosystem powered by one of the largest botnets, Glupteba." Ex. 45. During the presentation, Ms. Nagy will take a "walk through [Google's] **in-depth investigation** starting with the botnet's distributions techniques, its capabilities, and how each capability was monetized in this broad criminal enterprise." Id. at 1. Perhaps Google's representatives should attend Ms. Nagy's September 28 presentation, and they will get all the information to neutralize the malware.

Therefore, Plaintiff's willingness to openly discuss in in-depth public details concerning its **<u>investigation</u>** of the alleged malware and Defendants, clearly shows that Plaintiff's claim that Defendants only want discovery to circumvent Plaintiff's efforts to neutralize the malware has zero merits.

**Defendants Will Respond to Plaintiff's Discovery Demands by September 5, 2022**

On August 25, 2022, King and Spalding emailed counsel asking whether he intended to provide any responses to Plaintiff's discovery demands. Apparently, on July 19, 2022, King and Spalding served discovery demands by email. However, for some reason, counsel either never got that email, or it got mistakenly deleted, or it went to spam and got deleted there. Litvak Decl. at 57. However, the parties never discussed those demands orally or in other emails. <u>Id</u>. Also, Plaintiff's counsel did not send discovery demands by regular mail nor verified via a confirmation email that counsel received those requests. As such, counsel informed King and Spalding that he never got the July 19 email. The following day, on August 26, 2022, counsel discussed the same with the Defendants, and they agreed to respond to Plaintiff's discovery demands. Later that day, counsel informed King and Spalding of the same, writing by email that responses to discovery demands would be provided within 10 days.

 On Monday, August 29, 2022, Plaintiff agreed to a ten-day extension to respond to the discovery demands and interrogatories, which Defendants will do on September 5, 2022. <u>Id</u>. at 59. Again, Plaintiff suffered no prejudice by this slight delay in responding to the demands.

**Plaintiff's Counsel Is Knowingly Proffering Irrelevant and Prejudicial Evidence**

On multiple occasions Plaintiff's counsel knowingly proffered irrelevant and highly prejudicial evidence, specifically a transcript of a video posted on YouTube on April 16, 2022. Even after being advised that the video is old, <u>see</u> Dkt. # 75, Plaintiff's counsel continues to use it, even in its motion for sanctions. <u>See</u> Pl. Ex. 19.

The interview was done for a movie Mr. Loshak was filming, called Russian Hackers, and was being produced for Russian TV. See https://www.imdb.com/title/tt18573320/plotsummary?ref_=tt_ov_pl. The documentary consisted of three parts and was officially released on Russian TV in February of 2022, although it was available on some resources as early as December 2021. Counsel interview with Mr. Loshak was filmed approximately in January of 2021. Litvak Decl. at 61.

During the interview, counsel discussed with Mr. Loshak his experience with various cybercrime and other criminal cases. At some point, Mr. Loshak asked him, "[w]hat mistakes do hackers usually make that turn them into your clients?" Mr. Litvak answered,

> [m]any mistakes. I think the biggest mistake is having a work laptop that is also your personal laptop. There must be two. If a person has already decided to do hacking and cybercrime, their work and personal laptops must not intertwine. They can never, like, intersect. Plus, I don't know why, but a lot of the time guys who leave take these laptops with them. I don't know why.

See Pl. Ex. 19, at 11-12.

Mr. Loshak responded jokingly "I think they want to work further." Id. at 12. And then, clearly joking back, Mr. Litvak said, "[g]uys, always leave a work laptop at home if you leave." Id. The YouTube recording is close to two years old, and it has no relevance to this case whatsoever. In the recording, Mr. Litvak certainly did not tell **these Defendants or any specific individual(s)** to hide any potentially inculpatory evidence, which Laura Harris claims. As such, this misleading statement is just another attempt to confuse this Court and to ruin the counsel's credibility. Ms. Harris must be sanctioned for this intentional misconduct.

### Defendants and Their Counsel Did Not Cause Spoliation of Evidence

Plaintiff argues that Defendants and their Counsel somehow caused spoliation of

evidence without providing any evidence whatsoever to support this outrageous claim. Defendants found out about this case at the end of January 2022, but at that time, their laptops were already returned to Valtron, a few weeks before that. After retaining counsel services and being advised of the discovery obligations, the Defendants did not cause any evidence to be lost or destroyed.

In the course of discovery, Defendants will provide all the evidence in their possession and control. For example, as part of responding to Plaintiff's discovery demands, Defendants will respond to interrogatories and provide a number of documents, including but not limited to partnership agreements between Voltron and 3rd parties, terms of service, agreement with Tochka Bank, agreement regarding the use of API, Don't.Farm User Agreement, agreement with the buyer of Don't.Farm, employment agreement between Voltron and Defendants, and NDAs between Voltron and Defendants. Litvak Decl. at 68. Defendants are also willing to be deposed and participate in the trial. Id.

As such, King and Spalding did not present any evidence that the Defendants or their counsel did anything to destroy or spoil any evidence. As it was explained by Mr. Starovikov and Mr. Filippov on May 20, 2022, they left Valtron at the end of 2021 and returned their laptops about 12 days or so later. Id. at 70. They also assured their counsel that since speaking with him about the discovery obligations on February 17, 2022, they did not destroy or lose any relevant evidence in the case.

Further, as soon as counsel learned that the Defendants would not be providing **any devices or ESI on June 16**, he informed Ms. Harris about it 11 days later, when they spoke for the first time. As such, neither Defendants nor their counsel have done anything to prejudice Plaintiff or cause any spoliation of evidence. Upon learning that Defendants left Valtron at the end of 2021 and returned their laptops to Valtron in mid-January 2022, and they had no other

ESI or devices to turn over, counsel informed Plaintiff's counsel about it. Defendants tried to get some ESI and devices to no avail. They should not be blamed for this unsuccessful attempt to locate the ESI. Defendants will disclose what they have in their possession and control and respond to discovery demands in due course of time.

### Defendants Provided All the Information Known to Them in the Initial Disclosures

Defendants provided all the information known to them in the Initial Disclosures, including known names, addresses, and telephone numbers of individuals likely to have discoverable information. Defendants also provided a list of documents that they will produce as part of discovery. Defendants are willing to provide whatever else they have in their possession and control that is subject to discovery, but they cannot provide something they simply do not know or do not have.

In its motion for sanction, Plaintiff complains that some of the individuals' last names were not provided in the Initial Disclosures. See Ex. 46. However, this issue was already raised by Ms. Harris in her July 19 letter to the Court, Ex. 47, where almost exclusively, she talked about her need to get the last names. Counsel responded six days later, explaining that

> Valtron was established on August 23, 2019, and the Defendants started working for Valtron in September 2019. From September 2019 until March 2020, Defendants worked at the Vatron office location. However, Defendants worked in the software development department and had little interaction or communication with other members of Valtron's team. Then, in March of 2020 Covid 19 pandemic hit the globe, and Moscow, like many other cities worldwide, went on lockdown. Valtron closed its offices, and all the employees switched to working from home. Defendants continued working from home, like employees of many other IT firms, even after the lockdown was lifted in July 2020, and until they left Valtron. This means that since March 2020, Defendants had no interaction with the individuals whose last names Plaintiff now demands. This explains why they do not know those individuals' last names.

Ex. 48.

On July 29, 2022, the parties held a telephone conference and at the very end of the

conference, Ms. Harris stated

> We understand Mr. Litvak's position that his clients have
> no last names to provide, but we certainly don't credit that
> statement given the long history that his clients have had in
> working with those individuals. But again, unless your
> Honor has any further measures to take in that regard, we
> think that we are at an impasse there.

Ex. 40, at 20. The Court responded, "[y]es. [a]nd I don't have any further measures to take at this

point. You have the defendants' position; they do not know those names." Id. at 21.

Considering that the issue of last names was explained and resolved by the Court, it is

completely unethical for Plaintiff's counsel to keep raising this issue in her Motion for Sanctions.

Again, this is nothing less than yet another blatant attempt to mislead the Court and win this

litigation at any cost.

## ARGUMENT

## 1. LEGAL STANDARDS

### a. Standards for Discovery Violations

#### i. Rule 37(b)(2) Sanctions

Federal Rule of Civil Procedure 37(b)(2) provides that a court may make "such orders . . .

as are just," when a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P.

37(b)(2). The Court's response may include any of the following sanctions:

> (i) directing that the matters embraced in the order or other
> designated facts be taken as established for purposes of the action,
> as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing
> designated claims or defenses, or from introducing designated
> matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of Court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A). Rule 37 sanctions must be "just" — the severity of the sanction must be commensurate with the non-compliance. Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 140 (2d Cir. 2007). Dispositive sanctions are generally disfavored, but are certainly within the Court's arsenal, if needed, to remedy otherwise irremediable prejudice or to address persistent bad-faith pretrial conduct by a litigant. See, e.g., Friends of Animals, Inc. v. United States Surgical Corp., 131 F.3d 332, 334 (2d Cir. 1997); Valentine v. Museum of Modern Art, 29 F.3d 47, 49 (2d Cir. 1994); Rotblut v. Thaler, 1998 U.S. Dist. LEXIS 18872, 1998 WL 846124, 6 (S.D.N.Y. December 3, 1998). The sanction of dismissal may be imposed only if the Court (a) finds willfulness, bad faith, or fault on the part of the party refusing discovery, and (b) gives notice that violation of the Court's order will result in a dismissal of the case with prejudice. See Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759, 764 (2d Cir. 1990) (dismissal with prejudice as sanction for abuse of discovery held improper without prior notice) , cert. denied, 499 U.S. 943 (1991). In addition, dismissal is appropriate only "after consideration of alternative, less drastic sanctions." Marfia v. T.C. Ziraat Bankasi, New York Branch, 100 F.3d 243, 253 (2d Cir. 1996).

As a result, precluding a defendant from contesting liability as a discovery sanction under Rule 37 is "generally disfavored and only to be employed in "extreme circumstances." Burns v. Bank of Am., No. 03 Civ. 1685, 2007 U.S. Dist. LEXIS 40037, at 34 (S.D.N.Y. June 4, 2007);

Valentine v. Museum of Modern Art, 29 F.3d 47, 49 (2d Cir. 1994)(noting that "[d]ismissal with prejudice is a harsh remedy to be used only in extreme situations"); Friends of Animals Inc. v. United States Surgical Corp., 131 F.3d 332, 334 (2d Cir. 1997) (noting that "dismissal is [] a severe sanction that should not be lightly imposed"); Ashkinazi v. Sapir, 02 Civ. 2, 2005 U.S. Dist. LEXIS 3543, 2005 WL 545205, at 4 (S.D.N.Y. March 8, 2005).

With respect to the imposition of sanctions, this Court in Ashkinazi explained that

> [i]n determining the scope of appropriate relief, we first make a practical assessment of the extent of the misconduct by plaintiff, what prejudice defendant has suffered, and what remedies are available to cure the prejudice. We also bear in mind the appropriate role of sanctions in deterring similar misconduct both by the erring party and by other litigants.

Id. at 12-13. If there has been an isolated instance of non-compliance, such as a failure on one occasion to provide interrogatories on a timely basis, preclusive sanctions are generally viewed as excessive, especially where the circumstances suggest that the failure may not have been willful. See, e.g., United States v. Aldeco, 917 F.2d 689, 691 (2d Cir. 1993). Additionally, "a district court should not impose sanctions so as to **chill creativity or stifle enthusiasm or advocacy**." Photocircuits Corp. v Marathon Agents, 162 F.R.D. 449, 451 (E.D.N.Y. 1995)( citing Securities Indus. Ass'n v. Clarke, 898 F.2d 318, 322 (2d Cir. 1990)(emphasis added); Rates Tech., Inc. v. Mediatrix Telecom, Inc., No. CV 05-2755 (JS) (AKT), 2007 U.S. Dist. LEXIS 52781, at 24 (E.D.N.Y. March 16, 2007)(denying both parties' request for sanction noting that "[b]oth Attorneys have been zealously and aggressively pursuing the interests of their clients -- sometimes approaching a line that it behooves both not to cross over. This zeal sometimes appears to take on an element of acrimony which needs to end.")

### ii. Spoliation

Spoliation is "'the destruction or significant alteration of evidence, or the failure to

preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'"

Byrnie v. Town of Cromwell, 243 F.3d 93, 107 (2d Cir. 2001). Sanctions for spoliation of

evidence are intended to: (1) deter parties from spoliation evidence; (2) "place the risk of an

erroneous judgment on the party who wrongfully created the risk;" and (3) restore "the

prejudiced party to the same position he would have been in absent the wrongful destruction of

evidence. West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999).

      Historically, a party seeking sanctions for the destruction of evidence must establish: (1)

that the party having control over the evidence had an obligation to preserve it at the time it was

destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the

destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of

fact could find that it would support that claim or defense. Residential Funding Corp. v.

DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002).

      However, on December 1, 2015, Federal Rule of Civil Procedure 37(e) "was amended to

provide a different standard" for sanctions arising from the "destruction of electronically stored

information" ("ESI"). Moody v. CSX Transportation, Inc., 271 F. Supp. 3d 410, 425 (W.D.N.Y.

2017). Federal Rule of Civil Procedure 37(e), as amended, currently provides as follows:

> (e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the Court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party; or

(C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). Rule 37(e)(2) provides that the harshest spoliation sanctions — including an adverse-inference instruction — are **only available upon a finding that the spoliating party "acted with the intent to deprive another party of the information's use**." Fed. R. Civ. P. 37(e)(2)(emphasis added). Thus, the amendment expressly "rejects cases such as <u>Residential Funding Corp. v. DeGeorge Fin. Corp.</u>, 306 F.3d 99 (2d Cir. 2002), that authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence," where the spoliated evidence is ESI. <u>Stanbro v. Westchester County Health Care Corp.</u>, No. 19 Civ. 10857, 2021 U.S. Dist. LEXIS 163849, at 11-15 (S.D.N.Y. August 27, 2021). Furthermore, the movant must be prejudiced by the absence of the spoliated evidence to be entitled to sanctions under Rule 37(e)(1) or (2). <u>See</u> <u>Ungar v. City of New York</u>, 329 F.R.D. 8, 13 (E.D.N.Y. 2018) (citing <u>Alabama Aircraft Indus., Inc. v. Boeing Co.</u>, 319 F.R.D. 730, 749 (N.D. Ala. 2017) (explaining that the prejudice element is implicitly incorporated into Rule 37(e)(2)); <u>GenOn Mid-Atlantic, LLC v. Stone & Webster, Inc</u>., 282 F.R.D. 346, 353 (S.D.N.Y. 2012) ("[A] court should never impose spoliation sanctions of any sort unless there has been a showing — inferential or otherwise — that the movant has suffered prejudice."). It should be noted that "many courts contemplating prejudice under Rule 37(e) have **required the movant to show that the destroyed evidence would have been in their favor."** <u>Stanbro</u>, 2021 U.S. Dist. LEXIS 163849, at 40 (emphasis added); <u>Ungar</u>, 329 F.R.D. at 15("Courts in this Circuit generally require some proof of prejudice in the latter sense before sanctions will issue.")

This Court in <u>Stanbro</u> explained that "[t]he intent contemplated by Rule 37 is not merely the intent to perform an act that destroys ESI but rather the intent to actually deprive another

party of evidence." Id. at 43. See also Lokai Holdings LLC v. Twin Tiger USA LLC, No. 15cv9363, 2018 U.S. Dist. LEXIS 46578, at 56-57 (S.D.N.Y. March 12, 2018)(declining to find an intent to deprive "on the basis of suspicion alone," where a spoliating party intentionally deleted relevant emails, but the record did not indicate that the spoliating party deleted such emails to intentionally deprive its adversary of their use in litigation).

### iii. Inherent Power of the District Court

A court's inherent power allows it to impose monetary sanctions against a litigant (or its counsel) for misconduct. Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991). As a result, a court may assess attorney's fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Id. "In order to impose sanctions pursuant to its inherent power, a district court must find that: [i] the challenged claim was without a colorable basis and [ii] the claim was brought in bad faith, i.e., motivated by improper purposes such as harassment or delay." Enmon v. Prospect Capital Corp., 675 F.3d 138, 143 (2d Cir. 2012) (internal quotation marks omitted). "When a district court invokes its inherent power to impose attorney's fees or to punish behavior by an attorney in 'the actions that led to the lawsuit ... [or] conduct of the litigation,' which actions are taken on behalf of a client, the district court must make an explicit finding of bad faith." United States v. Seltzer, 227 F.3d 36, 41-42 (2d Cir. 2000) (quoting Hall v. Cole, 412 U.S. 1, 15, 93 S. Ct. 1943, 36 L. Ed. 2d 702 (1973)); Manchester Mgt. Co., LLC v. Echo Therapeutics, Inc., 297 F. Supp. 3d 451, 471 (S.D.N.Y. 2018).

The inherent power of the district court also includes "the power to police the conduct of attorneys as officers of the court, and to sanction attorneys for conduct not inherent to client representation, such as, violations of court orders or other conduct which interferes with the court's power to manage its calendar and the courtroom without a finding of bad faith." United States v. Seltzer, 227 F.3d 36, 42 (2d Cir. 2000).

Moreover, it is well-settled that a litigant attorney's misrepresentation is sanctionable. "[M]aking a false statement with intent to mislead [a c]ourt" certainly evinces subjective bad faith. Macolor v. Libiran, No. 14 Civ. 4555 (JMF), 2015 U.S. Dist. LEXIS 34010, 2015 WL 1267337, at 4 (S.D.N.Y. March 18, 2015). "The effect of and number of misrepresentations that a party makes are perfectly acceptable data points for a court to consider in determining whether — and, perhaps more importantly, what - sanctions are warranted." Intl. Tech. Mktg. v. Verint Sys., 991 F.3d 361, 369 (2d Cir. 2021). Notably, a court "need not wait until a party commits multiple misrepresentations before it may put a stop to the party's chicanery. Id. at 368-369.

## 2. ANY SANCTION AGAINST DEFENDANTS OR THEIR COUNSEL IS NOT WARRANTED UNDER CIRCUMSTANCES

Any sanction requested by Plaintiff against Defendants or their counsel is not warranted because Plaintiff did not establish the requisite elements of sanctionable conduct allegedly committed by them.

First, Plaintiff did not provide any evidence other than conclusory accusations to prove Defendants' or its counsel's alleged "misrepresentations" concerning Defendants' employment, the existence of evidence, the mutual exchange of devices, "incomplete and inaccurate initial disclosures," spoliation of critical evidence," "failure to preserve ESI," and "avoiding depositions." Not could Plaintiff establish that the alleged misconduct was willful or in bad faith. Mr. Litvak, in detail and with factual support, in his sworn declaration and this Memorandum refutes all the allegations. The only thing the undersigned counsel could be responsible for is having a misunderstanding with Defendants as to their employment status at Valtron as from the day counsel was retained in mid-February until May 20, 2022, he was under the impression that Defendants still worked at Valtron. However, this misunderstanding was honest and reasonable under the circumstances, and he voluntarily corrected it soon after he learned about the

misunderstanding by providing the correct information to Ms. Harris.

Second, Plaintiff's request for sanctions for discovery violations is premature since the actual discovery has not even started as Defendants only provided Plaintiff with the Initial Disclosures. As such, the bulk of discoverable evidence is still in the Defendants possession and control, and they anticipate disclosing it in due course of discovery. See, e.g., Kullman v. New York, No. 8:07-cv-716, 2010 U.S. Dist. LEXIS 147517, at 15-16 (N.D.N.Y. January 7, 2010) (Plaintiffs motion for discovery sanctions in the form of an adverse inference instruction, alleging the willful spoliation of evidence was denied as premature with leave to renew at a later stage of the litigation).

Third, one of the most critical elements to be established by the moving party seeking sanctions is "irremediable" prejudice. Here, Plaintiff completely failed to meet its burden. In fact, the "lost evidence" actually prejudices Defendants in their defense regarding their alleged involvement in the "Glupteba scheme." What is more, Plaintiff's willingness to openly discuss in-depth public details concerning its investigation of the alleged malware and the Defendants is inconsistent with its claim that Defendants "spoliated" evidence to circumvent Plaintiff's efforts to neutralize the malware.

Fourth, with respect to the spoliation sanctions Plaintiff did not provide any required evidence demonstrating that Defendants "acted **with the intent to deprive"** Google of the information's use," and that destroyed evidence **would have been in Goggle's favor**.

Finally, since Plaintiff is not entitled to sanctions against Defendants and their counsel, it is not entitled to the attorney's fees it seeks in connection with its efforts to win this baseless motion.

Therefore, since Plaintiff failed to prove any sanctionable misconduct on the part of Defendants or their counsel, its Motion for Sanction should be denied in its entirety.

**3. THE COURT SHOULD AWARD DEFENDANTS AND ITS COUNSEL SANCTIONS FOR PLAINTIFF'S COUNSEL PATTERN OF MATERIAL MISREPRESENTATIONS AND ATTORNEY'S FEES INCURRED IN CONNECTION WITH RESPONDING TO PLAINTIFF BASELESS MOTION FOR SANCTIONS**

In light of Plaintiff's repeated intentional misrepresentations to the Court that substantially prejudiced Defendant and their counsel, Defendants respectfully request that the Court sanctions Plaintiff and its Counsel pursuant to the Court's inherent powers, by awarding monetary sanctions to deter any further misconduct and awarding Defendants' attorneys' fees incurred in connection with responding to Plaintiff's Motion for Sanctions.

As discussed above, Plaintiff's counsel has made with the intent to deceit the Court several material misrepresentations aiming at Defendants and their counsel, maliciously trying to diminish Defendants' ability to defend themselves and to damage their counsel's professional reputation and integrity. Specifically, Ms. Harris has misled the Court by stating - 1) "Defendants waived jurisdiction," 2) Defendants "would not agree to travel to any country from which the United States may be able to extradite," 3) Defendants' counsel acknowledged that Defendants worked closely with the individuals they identified in their Initial Disclosures, 4) "Defendants apparently intend to heed Mr. Litvak's advice that their "work" laptops should remain in Russia," based on completely irrelevant YouTube interview filmed months before this case even started, and that 5) M. Harris learned that the Defendants left Valtron and returned their laptops after leaving only on July 19, 2022 (instead of June 27, 2022) as is disproved by her own emails.

This pattern of material misrepresentations actually prejudiced Defendants to the extent that Plaintiff counsel's manipulative and misleading tactics resulted in one-sided discovery as the Court stayed Plaintiff's discovery based on Plaintiff's allegations that Defendants are "avoiding" depositions. Moreover, said misrepresentations and accusations regarding Mr. Litvak's

encouragement of Defendants to commit spoliation and fraud on the Court were aimed to destroy his credibility before the Court and to ruin his professional reputation and integrity. Said misconduct should not be tolerated and it requires the imposition of sanctions.

Therefore, Defendants respectfully request that the Court sanctions Plaintiff and its counsel pursuant to the Court's inherent powers, by awarding Defendants' attorneys' fees incurred in connection with responding to Plaintiff's Motion for Sanctions, and for such other and further relief that this Court may deem just and proper.

## CONCLUSION

For the foregoing reasons, this Court should deny in its entirety Plaintiff's Motion for Sanctions against Defendants and their counsel, and grant Defendants' Motion for Sanctions.

Dated: September 2, 2022
Brooklyn, New York

Respectfully Submitted,

/s/ Igor Litvak

_____
Igor Litvak, Esq.
Attorneys for Defendants
The Litvak Law Firm
1733 Sheepshead Bay Rd., Suite 22
Brooklyn, NY 11235
Tel/Fax: 718-989-2908
Email: Igor@LitvakLawNY.com

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the above document to be served on counsel of record for

Plaintiff by filing it via the Court's CM/ECF system on this day, September 2, 2022.


/s/ Igor Litvak
Igor Litvak, Esq.