## Re: Google v. Starovikov et al. - Questions for Defendants and Counsel

Igor Litvak <Igor@LitvakLawNY.com>
Mon 8/8/2022 9:38 PM

To: Paul Weeks <PWeeks@KSLAW.com>

Cc: Laura Harris <lharris@kslaw.com>;Andrew Michaelson <amichaelson@kslaw.com>;Sumon Dantiki <sdantiki@kslaw.com>;Matthew Bush <mbush@kslaw.com>;Luke Roniger <LRoniger@KSLAW.com>

Paul, see attached, thanks. Igor.

Igor Litvak, Esq.
The Litvak Law Firm, PLLC
1733 Sheepshead Bay Road, Suite 22
Brooklyn, NY 11235
Tel/Fax: 718-989-2908
EMail: Igor@LitvakLawNY.com
Website: www.nyccrimelawyer.com

CONFIDENTIALITY NOTICE:
This E-mail and any attachments are confidential and may be protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of this E-mail or any attachment is prohibited. If you have received this E-mail in error, please notify us immediately by returning it to the sender, delete this copy from your system and destroy any hard copy that you may have made. Thank you.

---

**From:** Paul Weeks <PWeeks@KSLAW.com>
**Sent:** Monday, August 1, 2022 11:48 PM
**To:** Igor Litvak <Igor@LitvakLawNY.com>
**Cc:** Laura Harris <lharris@kslaw.com>; Andrew Michaelson <amichaelson@kslaw.com>; Sumon Dantiki <sdantiki@kslaw.com>; Matthew Bush <mbush@kslaw.com>; Luke Roniger <LRoniger@KSLAW.com>
**Subject:** Google v. Starovikov et al. - Questions for Defendants and Counsel

Igor:  Please see attached.

Thanks,
Paul

---

**Paul Weeks**
*Senior Associate*

T: +1 202 626 9256  |  E: PWeeks@KSLAW.com  |  Bio  |  vCard

King & Spalding LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, D.C. 20006



[kslaw.com](kslaw.com)l

King & Spalding Confidentiality Notice:

This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message. [Click here to view our Privacy Notice.](#)

# THE LITVAK LAW FIRM, PLLC

## IGOR B. LITVAK, ESQ.
### ATTORNEY AND COUNSELOR AT LAW
1733 SHEEPSHEAD BAY ROAD, SUITE 22,
BROOKLYN, NY 11235
718-989-2908
IGOR@LITVAKLAWNY.COM

King & Spalding LLP                                                                August 8th, 2022
1185 Avenue of the Americas
New York, NY 10036

     Re:    **Google LLC v. Dmitry Starovikov, et al. Docket No. 1:21-cv-10260-DLC**

Counsel:

The first version of the proposed joint status report was emailed by King and Spalding to me on May 17th, 2022. Parties also scheduled a conference to discuss the same the following day. Prior to that we never discussed anything related to ESI or devices. When I received the proposed joint report on May 17th, 2022 I was under the impression that the Defendants still worked for Valtron and had access to the ESI and Devices. King and Spalding's May 17th, 2022 proposed joint status report paragraph C, which concerned the ESI, stated the following:

> The parties anticipate that the scope of discovery will encompass Electronically Stored Information ("ESI"). The parties will request ESI in the form or forms that facilitate efficient review of ESI. Google also anticipates that it will request to inspect Defendants' computers and other devices used in their business practices described in the Complaint and Defendants' declarations, and requests that the Court order Defendants to preserve such computers and/or devices for production in this litigation.

Later that day, before having a chance to review the proposed joint status report with the Defendants, I emailed back edited paragraph C, which stated the following:

> The parties anticipate that the scope of discovery will encompass Electronically Stored Information ("ESI"). The parties will request ESI in the form or forms that facilitate efficient review of ESI. Google also anticipates that it will request to inspect Defendants' computers and other devices used in their business practices described in the Complaint and Defendants' declarations, and. Similarly, Defendants reserve their rights to inspect Plaintiff's computers and other devices used in its business practices relating to the allegations described in the Complaint and Plaintiff's declarations. Reciprocally, Defendants request that the Court order Plaintiff to preserve such computers and/or devices for production in this litigation.

At this point, all I wanted to do was to make paragraph C reciprocal and did not

anticipate that my clients would not be able to turn over any ESI or devices. On the following day, May 18th, 2022, parties held a conference during which I asked whether the language in paragraph C was necessary, King and Spalding insisted that it was. Nothing else related to specific devices or ESI was discussed on May 18th, 2022.

On May 20th, 2022, I held a conference with the Defendants and reviewed with them the proposed joint status report, including paragraph C. This is when for the first time Defendants informed me that the **LAPTOPS** they used while working for Valtron have since been returned to Valtron when they stopped working there at the end of 2021. I asked them do they have or could they get access to any other ESI or devices that may be somehow related to the case, Defendants told me that they would look for anything else they may have or get access to and let me know.

After speaking with the Defendants on May 20th, 2022 I still believed that they had, will find, or will gain access to some other devices/ESI related to this case, such as flash drives, CDs, and access to servers, etc. So on May 20th I again modified paragraph C and emailed it to King and Spalding, adding the following language to the previous version of Paragraph C proposed by me, "**OVER WHICH THE DEFENDANTS HAVE ACTUAL AND PHYSICAL CONTROL AND POSSESSION.**" After emailing this new proposed language no one from King and Spalding emailed or called me to ask what devices/ESI Defendants "actually" had in their "actual possession and control" and which they planned to turn over. Instead, parties held conferences on May 24th and on May 27th of 2022, during which many issues related to the case, such as withdrawing counterclaims and settlement, were discussed, but not what devices Defendants "actually" had or even whether Defendants had any devices which they planned to turn over.

On May 31st, 2022, the day the joint status report was to be filed in Court, I received from King and Spalding a new counterproposal for paragraph C, which contained the following:

> The parties anticipate that the scope of discovery will include Electronically Stored Information ("ESI"). The parties will request ESI in the form or forms that facilitate efficient review of ESI. While the parties reserve all rights in this regard, they agree to preserve ESI and any relevant computers and/or devices for the duration of this litigation.

Responding by email on that same day I tried to convince King and Spalding to go back to the previously proposed version for Paragraph C, which contained the language "over which the Defendants have actual and physical control and possession." Later in the day, the parties held a conference to finalize the joint status report. During the conference, Laura Harris made it clear that Plaintiff did not want to go back to the previous version of paragraph C proposed by me. Instead, she wanted to stick with Plaintiff's version proposed that morning. It was decided that I would try to modify Plaintiff's proposed paragraph C in order to make everyone happy, "[w]e'll keep an eye out for your crack at revisions to Section C (regarding ESI) based on our call." Most importantly, during the May 31st, 2022 conference the **PARTIES NEVER DISCUSSED** anything about specific devices or whether the Defendants "actually" had any devices in their possession that they planned to turn over.

Not long after the May 31st conference, I submitted yet another proposal for paragraph C to King and Spalding. The new paragraph C stated the following:

> The parties anticipate that the scope of discovery will include Electronically Stored Information ("ESI"). The parties will request ESI

> in the form or forms that facilitate efficient review of ESI. While the parties reserve all rights in this regard, they agree to preserve ESI and any relevant computers and/or devices for the duration of this litigation. Plaintiff to preserve such computers and/or devices for production in this litigation. Defendants preserve all their rights to discovery under the federal rules of civil procedure.

Importantly, I specifically included the language "**ANY RELEVANT DEVICES**," which mirrored the language in my previous proposal "over which the Defendants have actual and physical control and possession". Again, no one from King and Spalding emailed or called me to ask anything about devices or whether Defendants had "any relevant devices." Instead, later that day, I was emailed a counterproposal by Plaintiff that was adopted as the final version for paragraph C and contained the following language:

> The parties anticipate that the scope of discovery will include Electronically Stored Information ("ESI"). The parties will request ESI in the form or forms that facilitate efficient review of ESI. The parties reserve all rights in this regard, but affirm their obligations under the Federal Rules of Civil Procedure, including as to the preservation of relevant evidence.

See ECF # 69. While negotiating the joint status report, never during any emails or conferences did I inform anyone from King and Spalding nor was I asked by anyone from King and Spalding what types of devices Defendants actually had and what devices they planned to turn over. I was trying to negotiate the most favorable joint status report for my clients and come up with the best language to do so. I am not in a position to tell King and Spalding how to do its job, but if it had the wisdom to ask me during the multiple conversations and emails while negotiating the joint status report, what devices my clients had, of course, I would have stated what I knew at the time, including that on May 20th, 2022 I found out that Defendants returned their laptops to Valtron but will provide whatever other ESI/ devices they will find when discovery starts. But this issue never came up and was never discussed by attorneys. I am sure it was assumed that Defendants had some devices/ESI, just as I did at that moment, but by not confirming or discussing with me anything at all about it, you assumed at your peril.

While preparing initial disclosures starting in the middle of June, I again spoke to my clients and asked them what other devices or ESI they found that may be somehow related to Valtron or this case. To my surprise, they informed me that they could not find any and therefore did not have any other ESI or devices related to Valtron.

The very **FIRST TIME** anyone from King and Spalding asked me what ESI/devices Defendants had in their possession and planned to turn over was on June 27th, 2022, during our meet and confer to discuss initial disclosures. And this is when I informed Laura Harris that the Defendants returned all the devices to Valtron after finishing working there. Interestingly, having just heard that Laura Harris never responded by trying to claim that I ever told her something the opposite. Instead, on July 18, 2022, almost a month later, Ms. Harris sent me an email casting doubt on whether the Defendants were truthful, claiming that I "represented several weeks ago" that my clients "preserved and intended to produce relevant devices" and threatening appropriate court action. This untruth is remarkable since the last time we discussed anything related to paragraph C was on May 31st, 2022, when finalizing the joint report, not several weeks ago. And I never represented during the May 31st conference that my clients preserved, were in possession, or will be turning over any specific devices. If anything, it was Plaintiff whose final proposed language for paragraph C removed any mention of devices exchange, language which both parties adopted, signed, and which was submitted to the Court.

After some back and force that same day, I finally responded on July 19th, 2022, stating the following:

> Laura, I never said that my clients preserved, had in their possession or intended to produce any devices subject to discovery, I am not sure where you got that from. The last time we discussed this issue I told you all the devices were returned to Valtron when they finished working for Valtron, and therefore, they do not have any devices in their possession that are discoverable, there is no contradiction. Perhaps maybe you misunderstood me or I misspoke, I am not sure, but to clarify, right now my clients do not have any devices in their possession that would be subject to discovery and there is no way for them to get those devices back from Valtron. There is nothing else my clients can provide in the initial disclosures. Igor.

Ms. Harris did not respond to this email stating that it was not true, or that I ever said otherwise, or by giving examples of when I said what type of devices Defendants actually had. Instead, later that day Google filed a letter in Court accusing the Defendants of not taking the case seriously and failing to provide "the most basic information required by Rule 26 and the Court's Local Rules" ECF # 91 at p. 1. Significantly, this filing mainly concerned Google's demand for the individuals' last names disclosed in the initial disclosures and made only passing mention of devices. What's more, the ECF #91 filing never alleged that before the June 27th meet and confer, I ever told anyone from King and Spalding what devices Defendants actually had in their possession or whether they, in fact, planned to turn any over.

From the beginning of this case King and Spalding has been misleading the Court and lobbing attacks first on the Defendants, and now on their Counsel, hoping to pressure both into submission. Likely having promised the world's biggest client (Google) a quick and easy victory in the Courts against the Defendants, faced with unexpected opposition, it appears King and Spalding is now using every dirty trick in the book to save its face and perhaps prevent providing Google's own discovery. It began when Laura Harris tried to mislead the Court by asserting that Defendants somehow waived jurisdiction when it was clear that no such thing ever happened. It continued when an off-cuff remark after the June 1st Court conference about extradition was turned into an assertion that the Defendants had no intention to appear for the depositions. Then, King and Spalding dug up a YouTube video which was recorded over two and a half years ago for a Russian documentary where I answered questions posed by the producer, to suggest that I was somehow now advising Defendants not to cooperate with discovery. In King and Spalding's latest filing of July 19th, 2022, ECF #91, Laura Harris again misleads the Court when writing that I stated that Defendants worked "**CLOSELY**" with individuals identified in the initial disclosures. In fact, I never used the word closely or implied such a thing, only stating that at some point, they worked in the same location/office. Now it appears King and Spalding is trying to manufacture some wild accusations about devices supposedly being hidden from Google when, in fact, it was Laura Harris who, after the June 1st court conference, made it clear that Google did not want to turn over discovery to the Defendants, believing they will use it for some illicit purpose. This means that King and Spalding and Google filed this lawsuit, never intending to comply with its discovery obligations or provide any discovery to the Defendants.

When I was retained in mid-February 2022, I told my clients that from that moment on, they had to preserve ALL ESI and devices in their possession, which they did. When I was working on the motion to vacate the notice of default as to Defendants in March of 2022, I was under the assumption that the Defendants still worked at Valtron and had access to the devices/ESI utilized during their employment there. I prepared the Defendant's declarations and

sent them to the Defendants for review together with the rest of the motion, memo of law, etc. Unintentionally and interchangeably, I used both words when describing Defendant's employment status at Valtron, in the memo of law used the word "worked," while in Defendant's declarations I used the word "work" in addition to "developed", etc. Defendants, who are not native English speakers, read the memo of law and the declarations and did not notice the distinctions and signed the declarations on the day they were due. At worst, it was a misunderstanding between my clients and me as to their employment status at Valtron. Until May 20th, 2022, they never told me whether they were still employed at Valtron, but during our conversations I mistakenly assumed that they still were. On May 20th, 2022 they told me they left Valtron at the end of the year. After the July 29th, 2022 Court conference I clarified with them and was informed that they were actually let go at the end of December 2021 and went last time to Valtron's offices to return the laptops approximately in the first half of January 2022.

Between May 17 and May 31 I was negotiating the most favorable joint status report for my clients, just like King and Spalding was doing for Google. Plus, after May 20th, 2022 I still believed Defendants had something else they will find and produce; maybe there were phones, flash drives, or any other type of ESI or devices, just not their laptops. And that is why I added the language "over which the Defendants have actual and physical control and possession," and "any relevant devices." I only later learned while working on the initial disclosures that it was not the case, as the Defendants could not find any other ESI/devices related to Valtron. I immediately informed Laura Harris at the first opportunity when we spoke on June 27th, 2022, when for the first time parties discussed anything specific about devices/ESI.

At the July 29th conference, Laura Harris again mislead the Court by stating "Mr. Litvak is simply wrong that we did not discuss the exchange of devices, and we are happy to submit to the Court e-mail exchanges on the various drafts that the parties exchanged in which it is clear that we were discussing devices and that Mr. Litvak is, in fact, pressing us to reinstate language that he has inserted about exchanging devices into the draft." The email Ms. Harris referred to asked to reinstate a version of paragraph C which contained the language I proposed "**OVER WHICH THE DEFENDANTS HAVE ACTUAL AND PHYSICAL CONTROL AND POSSESSION",** something King and Spalding declined to do while never confirming or discussing whether any devices or ESI were available for production. There are no emails from before or after May 20th, 2022, where I state what type of devices/ESI Defendants actually have or plan to turn over. Instead, there are emails, and various drafts of paragraph C exchanged between Counsel, none of which stated that Defendants **IN FACT** planned to turn over any ESI/devices to Plaintiff or what ESI/Devices Defendants had. Lastly, I have never discussed with anyone from King and Spalding anything specific related to devices or ESI during the May 18th, May 24th, May 27th, or May 31st conferences. There was no discussion of what ESI or devices Defendants had, whether it was theirs or Valtron's, or what they planned to turn over. The first-time anything specifics about devices the parties discussed was on June 27th, 2022, and **ABSOLUTELY NEVER** before June 27th, 2022 did I tell Laura Harris or anyone else from King and Spalding what devices Defendants actually had and whether **IN FACT** they would turn over any devices or ESI to the Plaintiff.

Together with this correspondence, I am including Defendant's declarations that answer some of the questions posed by Plaintiff on August 1st, 2022. Considering the above, I request that King and Spalding withdraw the remaining questions as Plaintiff is not entitled to them at this stage of the proceedings.

Respectfully,

s/ Igor Litvak
Igor Litvak, Esq.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
GOOGLE LLC,

                Plaintiff,                Civil Action No.: 1:21-cv-10260-DLC

- against -

DMITRY STAROVIKOV;
ALEXANDER FILIPPOV;
and Does 1-15,

                Defendants.
-----------------------------------------------------------------X

### DECLARATION OF DMITRY STAROVIKOV

I, DMITRY STAROVIKOV, declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S. Code § 1746 that the following is true and correct:

1. I am Defendant in this matter, and I am over 18 years of age and make this declaration based upon personal knowledge of the facts set forth below. If called upon to testify, I could and would testify competently as to the matters set forth herein.

2. I make this declaration in response to Plaintiff's demands.

3. I started working at Valtron in September 2019, my employment ended there at the end of December 2021.

4. I was fired by CEO of Valtron Chingiz Keklenov, he fired me because supposedly there was no longer enough work for me.

5. During my employment at Valtron I utilized 16-inch Macbook Pro.

6. The device was returned to Valtron the first half of January 2022.

                                              _____
                                              DMITRY STAROVIKOV

Executed on August _8_, 2022, in Moscow, Russian Federation

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
GOOGLE LLC,

                Plaintiff,        Civil Action No.: 1:21-cv-10260-DLC

- against -

DMITRY STAROVIKOV;
ALEXANDER FILIPPOV;
and Does 1-15,
                Defendants.
---------------------------------------------------------------X

### DECLARATION OF ALEXANDER FILIPPOV

I, ALEXANDER FILIPPOV, declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S. Code § 1746 that the following is true and correct:

1. I am Defendant in this matter, and I am over 18 years of age and make this declaration based upon personal knowledge of the facts set forth below. If called upon to testify, I could and would testify competently as to the matters set forth herein.

2. I make this declaration in response to Plaintiff's demands.

3. I started working at Valtron in September 2019, my employment ended there at the end of December 2021.

4. I was fired by CEO of Valtron Chingiz Keklenov, he fired me because supposedly there was no longer enough work for me.

5. During my employment at Valtron I utilized 16-inch Macbook Pro.

6. The device was returned to Valtron the first half of January 2022.


_____
ALEXANDER FILIPPOV

Executed on August __8__, 2022, in Moscow, Russian Federation