# IGOR B. LITVAK, ESQ.
**1733 SHEEPSHEAD BAY ROAD, SUITE 22, BROOKLYN, NY 11235**
**718-989-2908-IGOR@LITVAKLAWNY.COM**

The Honorable Denise L. Cote  September 14th, 2022
500 Pearl Street
New York, NY 10007-1312

      Re:      **Google LLC v. Dmitry Starovikov, et al. Docket No. 1:21-cv-10260-DLC**

Dear Judge Cote:

      I represent Defendants Dmitry Starovikov and Alexander Filippov (hereinafter, "Defendants") in the above-referenced matter. I am submitting this letter in response to Plaintiff's letter, dated September 13, 2022, ECF No. 117, to address another set of Plaintiff's baseless accusations.

      At the end of August, I received Plaintiff's demands for discovery, in which Plaintiff identified 10 Bitcoin addresses to which it was seeking private keys from the Defendants. Defendants related to me that they did not know or have access to those Bitcoin addresses. However, to respond to the demands, the Defendants discussed these Bitcoin addresses with Valtron management and were informed that if they could reach a settlement with Google, Valtron would release these keys to the Defendants and Google. After the Defendants informed me of this, I scheduled a settlement conference with Plaintiff.

      On September 8 the parties held a settlement conference, during which I conveyed the Defendants' offer to K&S. The offer contained the following terms: Defendants will obtain the Private Keys from Valtron to be given to Google, and Defendants agree not to engage in similar activities in the future without admitting that they did anything wrong or illegal in the past. In return, the Defendants propose that Google will reimburse them for already paid attorney's fees, dismiss the case against the Doe Defendants, stop referring to Defendants as criminals or cybercriminals in public, refrain from reporting to law enforcement prior alleged conduct and pay $1 million to each Defendant to compensate them for the reputation harm caused by the publicity of this lawsuit against them. I also informed K&S that the Defendants would likely agree to a permanent injunction. Lastly, I told K&S that the Defendants "**believe**" private keys will help Google to shut down the software Google calls Glupteba but that they do not know anything about these keys themselves. The conveyed offer was labeled "FRE 408 settlement conference." After not hearing for a few days I emailed to follow up, and K&S responded, stating that the Defendants' offer was rejected. I responded stating, "[d]o you want to at least make a counteroffer that I can take to my clients???". K&S responded that their counteroffer was just for Defendants to agree to a permanent injunction, which was rejected.

      During the settlement conference of September 8, I made it very clear that the basis of the Defendants' proposal to be paid $1 million each was to compensate them for the harm this, what Defendants believe, baseless lawsuit has caused. Furthermore, never during any communications did I even hint or imply that if Google refused to settle on Defendants' terms, Defendants would undertake any action to cause Google any harm. In fact, it was Defendants' position from the beginning of this lawsuit that they do not control any botnet and did nothing illegal. Ms. Harris herself states that the basis for the $1 million demand for each Defendant was "the harm that this lawsuit has caused to Defendants' reputation and ability to work." Plus, this was an opening offer that contained various different terms; if Google had made a reasonable counteroffer, for

example, just covering the attorney fees, Defendants may have accepted it. Neither Defendants nor I framed the offer as take it or leave it; in fact, I even asked for a counteroffer to take to my clients after Google rejected the initial offer. There was never any threat to cause any harm to Google, as 18 U.S.C. § 875(d), cited by K&S prohibits, "with **intent to extort** from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication containing **any threat to injure the property or reputation of the addressee**." Nor did Defendants condition giving Google private keys on Defendants receiving $ 1 million each, as those were separate issues and proposals.

As such, K&S September 13 letter appears to be yet another blatant example of Plaintiff using scary tactics to win this litigation at any cost and mislead and confuse the Court by not providing all the relevant information. It has come to the point that Google is even trying to drag federal law enforcement into the mix, probably believing its weight gives it some advantage over foreign Defendants. In fact, the Defendants tried to help Google by doing all they could, including finding ways to provide Google with what Google claims it needs to stop the wrongful activity. Instead, K&S now uses the Defendants' goodwill against them.

The cases used by Plaintiff in its letter have nothing to do with what happened in our case. In fact, applying Plaintiff's own definition of the alleged extortion, Defendants settlement offer to make a payment is NOT "a demand for payment," but instead "a claim of right" because they reasonably believe they should be compensated for the harm caused by this lawsuit. Moreover, the offer does not in any way convey "the promise to not cause harm to property or reputation" as Defendants have no right to obtain, let alone use said private keys without their former employer's permission, which it conditioned upon settling this case on the proposed terms, including dismissal of the case against all the Doe Defendants.

Further, Plaintiff's letter destroyed the confidentiality of the settlement negotiations. Courts recognize that this precept of confidentiality is a hallmark of the mediation process because it permits the parties to seek a mutually beneficial, interests-based outcome without fear of compromising a litigation position if the mediation is unsuccessful. As the Second Circuit observed in Savage & Assocs. P.C. v.K&L Gates LLP (In re Teligent), 640 F.3d 53, 57-58 (2d Cir. 2011), many alternative dispute resolution standards "recognize[] the importance of maintaining the confidentiality of mediation communications" because "[c]onfidentiality is an important feature of the mediation and other alternative dispute resolution processes. Promising participants confidentiality in these proceedings 'promotes the free flow of information that may result in the settlement of a dispute.'" See also In re Brizinova, 565 B.R. 488, 498 (Bankr. E.D.N.Y. 2017) (mediation communications "must be protected from disclosure in order to permit an open and candid process, in much the same way that Federal Rule of Evidence 408 generally excludes from evidence 'conduct or a statement made during compromise negotiations about [a] claim.'"). Here, Plaintiff blatantly ignored these rules by disclosing settlement terms.

What's more, Rule 3.4 precludes a lawyer from "present[ing], participat[ing] in presenting, or threaten[ing] to present criminal charges solely to obtain an advantage in a civil matter." Dareltech, LLC v. Xiaomi Inc., 2019 U.S. Dist. LEXIS 234323, at 8 (S.D.N.Y. Apr. 11, 2019) (citing N.Y. Rules of Professional Conduct, Rule 3.4). A violation of Rule 3.4(d)(3) requires at least three matters to be shown: first, an attorney must threaten to present criminal charges; second, the attorney must do so to gain an advantage in a civil matter; and third, the attorney must make the threat "solely" to gain that advantage. Geltzer v. Brizinova (In re Brizinova), 565 BR 488, 509 (Bankr. E.D.N.Y. 2017). See also Realuyo v. Diaz, 2006 U.S. Dist. LEXIS 11420, at 40 (S.D.N.Y. Mar. 17, 2006)(the Plaintiff's conduct violated the Disciplinary Rule 7-105 proscription against the use of threats of criminal prosecution to gain an advantage in a civil action where "plaintiff's legal strategy amounted to nothing more than pressuring . . . to

settle for millions of dollars by instilling in it the fear of criminal prosecution"), People v. Wickes, 112 A.D. 39 (N.Y. App. Div. 1906) (finding attorney guilty of blackmail for trying to obtain a settlement of a civil action by sending letters, which were friendly in nature, but nevertheless conveyed, by suggestion and innuendo, threats of criminal prosecution); Opinion of N.Y. St. Bar. Assn. Comm. Prof. Eth., Op. 772 (2003), 2003 WL 23099784, at 6 ("a letter containing an accusation of criminal wrongdoing likely constitutes a threat, especially when coupled with a demand that the accused wrongdoer remedy the civil wrong."); N.Y.C. Assn. B. Comm. Prof. Jud. Eth., Formal Op. 1995-13 (1995), 1995 WL 877125, at 1 (noting that Rule 7-105 has "been broadly interpreted to forbid even veiled allusions in settlement discussions to an adversary's potential criminal liability."). Here, Plaintiff's counsel threatens to present criminal charges to gain an advantage in a civil matter by forcing Defendants to settle the case, for which Plaintiff's counsel must be sanctioned.

Respectfully,

cc: Counsel of Record (via ECF)

s/ Igor Litvak
Igor Litvak, Esq.