**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

GOOGLE LLC,

                              *Plaintiff*,

        v.

DMITRY STAROVIKOV; ALEXANDER
FILIPPOV; DOES 1-15,

                              *Defendants*.

Civil Action No. 1:21-cv-10260-DLC

**GOOGLE LLC'S MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF ITS MOTION FOR SANCTIONS**
**AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ..................................................................................................................... 3

    I.    Terminating Sanctions Are Warranted. ............................................................... 3

        A.   Defendants' Recent Conduct Confirms the Appropriateness of Sanctions.............. 3

            1.   Mr. Litvak Attempted to Induce Google into a Reciprocal Device Exchange While Knowing Defendants Claim to Have No Relevant Devices. .................... 3

            2.   Defendants Insist that They Have No Devices or ESI to Produce in this Case and Refuse to Produce Basic Discovery Information. .......................................... 4

            3.   Defendants Spoliated Key Evidence.................................................................... 6

            4.   Defendants Attempted to Extort Google............................................................. 8

        B.   Defendants Fail To Explain Why Terminating Sanctions Are Not Warranted Here. ....................................................................................................................... 10

        C.   Defendants Offer No Substantive Argument Against Google's Request for Expenses, Including Attorney's Fees. .................................................................. 15

    II.   Defendants' Retaliatory Motion for Sanctions Against Google Should be Denied. ...... 15

CONCLUSION................................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*,
  337 F.R.D. 47 (S.D.N.Y. 2020) ............................................................................14

*Chowdhury v. Hamza Exp. Food Corp.*,
  308 F.R.D. 74 (E.D.N.Y. 2015) ............................................................................11

*Doubleline Cap. LP v. Odebrecht Fin., Ltd.*,
  2021 WL 1191527 (S.D.N.Y. Mar. 30, 2021) .......................................................14

*Giganti v. Gen-X Strategies, Inc.*,
  222 F.R.D. 299 (E.D. Va. 2004) ...........................................................................9

*Goodyear Tire & Rubber Co. v. Haeger*,
  137 S. Ct. 1178 (2017) ..........................................................................................9

*Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*,
  991 F.3d 361 (2d Cir. 2021) ............................................................................13, 15

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
  341 F.R.D. 474 (S.D.N.Y. 2022) ................................................................11, 12, 14

*Kullman v. New York*,
  2010 WL 11469138 (N.D.N.Y. Jan. 7, 2010) .......................................................12

*Lawrence v. Wilder Richman Sec. Corp.*,
  467 F. Supp. 2d 228 (D. Conn. 2006) ...................................................................8

*Liebowitz v. Bandshell Artist Mgmt.*,
  6 F.4th 267 (2d Cir. 2021) ....................................................................................9

*Loc. Union No. 40 of the Int'l Ass'n of Bridge v. Car-Wi Const.*,
  88 F. Supp. 3d 250 (S.D.N.Y. 2015) .....................................................................13

*Martinez v. City of New York*,
  2018 WL 604019 (E.D.N.Y. Jan. 24, 2018) ..............................................11, 12, 13

*Metro. Opera Ass'n v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*,
  212 F.R.D. 178 (S.D.N.Y. 2003) ..........................................................................11

*Moody v. CSX Transportation, Inc.*,
  271 F. Supp. 3d 410 (W.D.N.Y. 2017) .................................................................14

*PaySys Int'l, Inc. v. Atos Se*,
    2019 WL 2051812 (S.D.N.Y. May 9, 2019) (Cote, J.)............................................................8

*Ramgoolie v. Ramgoolie*,
    333 F.R.D. 30 (S.D.N.Y. 2019) ...........................................................................................13

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
    624 F.3d 123 (2d Cir. 2010)...............................................................................................13

*Stanbro v. Westchester Cnty. Health Care Corp.*,
    2021 WL 3863396 (S.D.N.Y. Aug. 27, 2021).......................................................................13

*Ungar v. City of New York*,
    329 F.R.D. 8 (E.D.N.Y. 2018).............................................................................................13

*United States v. Avenatti*,
    2021 WL 2809919 (S.D.N.Y. July 6, 2021) ..........................................................................8

**Other Authorities**

Fed. R. Civ. P. Rule 37(e)(2) ..................................................................................................14

## PRELIMINARY STATEMENT

Defendants have engaged in recent conduct and made representations in their Opposition to Google's Motion for Sanctions that further support the imposition of sanctions against them. The relief that Google seeks—entry of default—is admittedly severe, but so too is the conduct at issue. The games must stop.

*First*, Defendants' counsel has confirmed that he tried to negotiate for a mutual exchange of devices with Google at a time when he knew there were no relevant laptops in his clients' possession. He claims he learned that his clients (purportedly) possess no relevant devices on May 20, 2022, yet he proposed an exchange of devices later that day and also on May 31, 2022. *See* ECF 116 ¶¶ 26-31 (9/2/22 Litvak Decl.). Mr. Litvak seeks to excuse his misconduct by claiming that his clients had "told him they would try to get the laptops back, gain access to some server, and look for other devices and ESI." ECF 115 at 10. This is no excuse. At the time the parties discussed a mutual exchange in late May, Google reasonably believed that Defendants worked at Valtron *and* that they possessed relevant devices. Mr. Litvak knew otherwise, and tried to use this to gain an unfair advantage.

*Second*, Defendants reassert in their Opposition that they have no devices or ESI "related to Valtron or this case," and therefore have none to produce in this litigation. *E.g.*, *id.* at 8. Defendants are software engineers. Google has broadly alleged that they participated in a range of conduct relevant to its claims, including not only the dissemination and control of malware but also the maintenance of a number of storefront websites. Although Defendants have disputed Google's characterization of the underlying conduct, they have admitted to participating in it. The notion that they have no devices with discoverable information, and no relevant ESI, is a farce.

*Third*, the Opposition further establishes that Defendants intentionally spoliated relevant ESI. Defendants had Valtron devices in their possession when this litigation commenced in

1

December 2021, but claim that they returned those devices to Valtron in January 2022, just before learning about this case.  The Court previously indicated that it was "improbable" that Defendants did not learn about the litigation until late January 2022, ECF 62 at 9-10, and their subsequent representations confirm that they *must have known*.  In the Opposition, Defendants represent that they have become "pariah[s]," that one Defendant "could not even rent an apartment as every time someone searched their name on the Internet this case would come up," and that Defendants have been "ruined . . . by Google's lawsuit and the accompanying publicity."  ECF 115 at 4.  The accompanying publicity arose immediately after the Court unsealed the case on December 7.  *See* ECF 52 ¶ 33.  It is inconceivable that random landlords knew about the case, but Defendants did not learn about it until late January.  It also is inconceivable that Valtron fired Defendants in December 2021 for lack of work—undoubtedly because of Google's efforts to disrupt its operations pursuant to this Court's Order—without Defendants learning about the litigation.  Rather, Defendants entered an appearance only after they first dispossessed themselves of relevant evidence (or worse, dispossessed themselves of that evidence *after* appearing).[1]  Either way, that is intentional spoliation.

     ***Fourth***, and finally, Defendants just last week extorted Google.  In Rule 408 communications, Defendants' counsel offered that if Google pays each Defendant $1 million and covers their legal expenses (among other conditions), Defendants will provide Google with private keys for all Bitcoin addresses connected to Glupteba—which Mr. Litvak suggested would enable Google to permanently destroy the Glupteba botnet.  In essence, Defendants are asking to be paid

---

[1] Notably, at the time Defendants appeared and sought to set aside entry of default, Mr. Litvak falsely represented to the Court (and again in Defendants' March motion papers) that Defendants' belated appearance in the case would not affect the discoverability of evidence. *See, e.g.*, ECF 41 at 3; ECF 57-1 at 6.

in exchange for giving up their ability to cause further harm to Google and its users.  That is extortion.  And what is more, to effectuate the settlement, Mr. Litvak indicated that Defendants could obtain the private keys for all Bitcoin addresses *from Valtron*, the very entity from which they purportedly cannot get back their laptops.

Defendants did not appear in this case in good faith.  For seven months now, Defendants have been wasting the Court's time and resources and causing prejudice to Google, extending this litigation in hopes of getting some discovery into Google's cybercrime investigations.  It is time for this to end.  The Court should impose terminating sanctions for Defendants' and Mr. Litvak's willful misconduct and intentional spoliation of critical ESI evidence, and for the reasons stated herein, deny Defendants' frivolous, retaliatory motion for sanctions against Google.

## ARGUMENT

### I.    Terminating Sanctions Are Warranted.

#### A.    Defendants' Recent Conduct Confirms the Appropriateness of Sanctions.

Defendants' Opposition and other recent conduct only confirm that terminating sanctions are warranted.

##### 1.    *Mr. Litvak Attempted to Induce Google into a Reciprocal Device Exchange While Knowing Defendants Claim to Have No Relevant Devices.*

On May 20, 2022, Defendants purportedly told Mr. Litvak that they left Valtron at the end of 2021 and returned their laptops to Valtron in January 2022.  That same day, Mr. Litvak modified the relevant section of the draft Rule 26(f) report to reiterate his proposed reciprocal exchange of devices.  *See, e.g.*, ECF 116 ¶ 27 (9/2/22 Litvak Decl.).  Then on May 31, Mr. Litvak emailed Google in response to its proposed edits to the draft Rule 26(f) report, asking, "why we took out the paragraph about exchanging computers, I liked the initial version much better, can we keep it"?  *Id.* ¶¶ 29-31.  Since he knew that his clients had returned their laptops to Valtron and would

claim they are undiscoverable due to lack of control and possession, Mr. Litvak's conduct was deceptive.

Mr. Litvak claims his conduct was proper because he added qualifying language, "over which the defendants have actual and physical control and possession." *Id.* ¶ 31. This only makes his conduct more deceptive: by adding an additional limitation of "actual and physical control and possession" immediately after learning that Defendants had relinquished physical possession, Mr. Litvak attempted to ensure that the "exchange" would be one-sided.

Mr. Litvak also contends that his clients "told him they would try to get the laptops back, gain access to some server, and look for other devices and ESI." ECF 115 at 10. This only confirms that Mr. Litvak knew that they presently had no devices to exchange. It is also unclear how Defendants would achieve these purported goals if their claims are true that they were actually fired from Valtron and are being treated like pariahs in the entire Russian tech industry.

When negotiating the "exchange" of devices, Mr. Litvak knew that Google reasonably believed that Defendants worked at Valtron (based on their previous representations in Court filings), and he knew Google "assumed that Defendants had some devices/ESI." *Id.* ¶ 36. But Mr. Litvak knew—and failed to tell Google for over two months—that Defendants claimed that they were no longer were in possession of relevant devices and that they did not work at Valtron.[2] Instead, he kept the information to himself in an attempt to deceive Google.

### 2. Defendants Insist that They Have No Devices or ESI to Produce in this Case and Refuse to Produce Basic Discovery Information.

Since early August, Defendants have maintained that they have no devices or ESI whatsoever "related to Valtron or this case," and therefore have none to produce in this litigation.

---

[2] As discussed below, *see infra* § II, Mr. Litvak did not reveal that Defendants had stopped working at Valtron until July 19, 2022.

*See, e.g.*, ECF 112-16 at 3, 5.  In their most recent filings, they reaffirm this.  *See, e.g.*, ECF 115 at 8.  Defendants also have continued to refuse to provide basic discovery.

On July 29, the Court ordered Defendants and Mr. Litvak to respond to discovery questions from Google regarding their knowledge of and access to discoverable information by August 8. *See* ECF 100.  But aside from the work laptops Defendants claim they returned to Valtron, Defendants refused to identify any device they used in 2021 and 2022—not a single mobile phone, laptop, desktop, tablet, or server.  Defendants also refused to answer Google's discovery questions regarding the categories of documents and methods of communications they used while at Valtron, and their non-Valtron business activities in 2021 and 2022.  *See* ECF 111 at 11.

Google served Interrogatories and Requests for Production of Documents ("RFPs") and Inspection of Devices ("RFIs") on July 19, 2022.[3]  Defendants' responses to Google's discovery requests further confirm that they do not intend to participate in discovery in good faith—or provide any meaningful discovery in this case at all.  In their September 6, 2022 responses, Defendants indicated that neither has owned or used any device since January 2022.  *See* 9/16/22 Harris Decl. Ex. 2 at 7-10 (9/6/22 Defs.' Verified Resps. to Interrogs.); *see also id.* Ex. 3 (9/6/22 Defs.' Verified Resps. to RFPs and RFIs).  On September 15, 2022, Defendants served amended responses changing course, disclosing for the first time that they each in fact have a personal laptop currently.  *See id.* Ex. 4 at 8-10 (9/15/22 Defs.' Verified Am. Resps. to Interrogs.).  But, they still

---

[3] Defendants did not provide any responses or objections by the due date of August 18.  On August 25, Google emailed Mr. Litvak to ask whether Defendants would be responding to Google's discovery requests.  9/16/22 Harris Decl. Ex. 1 (8/25/22 K&S Email).  Mr. Litvak claimed that he never received the email serving those requests (notwithstanding that the parties agreed to serve requests via email, *see* ECF 69 ¶ G.4) and that he believed such discovery of Defendants was stayed (notwithstanding that he previously moved to stay further discovery into Defendants, which the Court denied the next day, *see* ECF 90).  9/16/22 Harris Decl. Ex. 1 (8/25/22 Litvak Email). Google ultimately agreed to a 10-day extension in an effort to cooperate.  *Id.* (8/29/22 K&S Email).

maintain that these laptops have no relevant information.

Indeed, even in their amended responses, Defendants still "refuse to respond" to RFI No. 1, which requests for inspection of each device Defendants have owned or used since 2011. *Id.* Ex. 5 at 16-17 (Defs.' 9/15/22 Verified Am. Resps. to RFPs and RFIs). They also continue to refuse to identify email accounts they have used. *See id.* at 13.

In response to Google's RFPs, Defendants together produced 15 documents,[4] which are the only documents Defendants identify in response to Interrogatory No. 2 requesting the identity of the relevant documents that Defendants intend to use to support their defenses in this case (regardless of whose possession, custody, or control they are in). *See id.* Ex. 4 at 4-5 (9/15/22 Defs.' Am. Verified Resps. to Interrogs.). If these are the only documents Defendants will be relying on in their defense, then they have no defense. Their refusal to produce discovery that is probative of the issues in this cybercrime action makes further litigation a waste of the Court's time and resources and prejudicial to Google. Moreover, the notion that these computer programmers have not a single device, or any ESI, relevant to Google's allegations is absurd.

### 3. Defendants Spoliated Key Evidence.

Defendants' story rests on the notion that they returned their laptops and any other relevant

---

[4] These documents consist of (a) purported employment agreements and non-disclosure agreements between Valtron and Defendants (which they claim are the only documents in response to RFP No. 22, requesting "[a]ll documents identified, referenced, or relied on to prepare" their March 14 declarations), *see* 9/16/22 Harris Decl. Ex. 5 at 15 (Defs.' 9/15/22 Verified Am. Resps. to RFPs and RFIs); (b) purported "Terms and Conditions" for the users of Dont.farm and for the users of rent.dont.farm, *see id.* at 6; (c) three screenshots of unidentified webpages that Defendants appear to contend are related to rent.dont.farm, *see id.* at 9; (d) an apparent draft "End User License Agreement" for an unidentified "App," *see id.* at 11; (e) two webpage printouts in Russian with information on other civil litigation against Defendant Starovikov, *see id.* at 15; and (f) two publicly available documents from Bank Otkritie and four screenshots with information apparently relating to Extracard.net, *see id.* at 6-7. Defendants also produced .php files purporting to be "part of source code that" Defendants developed to be "used to interact with" Bank Otkritie in connection with the Extracard.net scheme. *See id.* at 7.

ESI to Valtron in the first half of January, just before they supposedly "found out about the case only at the end of January 2022, from some friends who heard about it." ECF 58 ¶ 7 (3/14/22 Starovikov Decl.); ECF 59 ¶ 7 (3/14/22 Filippov Decl.). Yet in Defendants' recent verified responses to Interrogatory No. 15 asking them to identify "all persons with whom" they have communicated about this case—including specifically the "friends" referenced in their March 14 declarations—they only identified two individuals: (1) Starovikov's mother, Tamara Starovikov, and (2) Valtron's CEO, Chingiz Keklenov. *See* 9/16/22 Harris Decl. Ex. 4 at 14 (9/15/22 Defs.' Verified Am. Resps. to Interrogs.). But even assuming these were the "friends" from whom Defendants found out about the case, it could not have been in late January.

Defendants' August 8 declarations assert that Valtron "fired" them "at the end of December 2021" due to "lack of work." ECF 112-14 ¶¶ 3-6 (8/8/22 Starovikov Decl.); ECF 112-15 ¶¶ 3-6 (8/8/22 Filippov Decl.). And Mr. Litvak's recent declaration asserts that Defendants lost both their work "for Valtron," as well as "other projects planned with Valtron CEO, some of Valtron clients, and other members of the Russian IT industry," "as a result of Plaintiff's lawsuit." ECF 116 ¶ 15. In fact, Mr. Litvak's declaration states that Defendants "believe they were ruined professionally and financially by Google's lawsuit and the accompanying publicity," as each Defendant purportedly "became a pariah in the Russian IT industry," and one "could not even rent an apartment as every time someone searched their name on the Internet this case would come up." *Id.* Given that widespread reporting of this lawsuit and Defendants' names occurred in early December 2021, *see, e.g.*, ECF 52 ¶ 33, and Valtron purportedly fired them at the end of December 2021 due to lack of work, it is not plausible that Defendants did not know about the lawsuit until late January. The Court previously indicated that it was "improbable" that Defendants did not have knowledge of the case before late January, and set aside entry of default based in part on

Defendants' representation that their belated appearance would not affect discoverability of information.  *See* ECF 62 at 9-10, 32.  It now appears, however, that Defendants returned laptops to Valtron before entering an appearance in this case for the purpose of frustrating Google's ability to obtain the laptops in discovery; or, perhaps, Defendants returned the laptops to Valtron *after* appearing in the case.  Either way, Defendants intentionally spoliated key evidence.

### 4.    *Defendants Attempted to Extort Google.*

Despite recently requesting adjournment of the settlement conference scheduled for August 10 before Magistrate Judge Figueredo, *see* ECF 98 at 2, on September 6, 2022, Mr. Litvak emailed Google's counsel that his clients would like to discuss settlement, *see* 9/16/22 Harris Decl. Ex. 6 (9/6/22 Litvak Email).  When the parties held the call to discuss settlement two days later, Mr. Litvak relayed Defendants' settlement offer:  Defendants would (1) provide to Google the private keys for all Bitcoin addresses that are in any way connected to command-and-control ("C2") servers of the Glupteba botnet, and (2) promise not to do this again in the future (without admitting any wrongdoing).  9/16/22 Harris Decl. ¶ 11.  In exchange, Defendants demanded that Google (1) dismiss the case against all Doe Defendants, (2) agree not to report Defendants or their activities to law enforcement, (3) reimburse Defendants for their attorneys' fees, which currently amount to $110,000, and (4) pay each Defendant $1 million.  *Id.*

Defendants' settlement offer—demanding over $2 million in payment in exchange for giving up the means to harm Google and its users with the Glupteba malware in the future—is extortion.  *See United States v. Avenatti*, 2021 WL 2809919, at *7 (S.D.N.Y. July 6, 2021) (attorney indicted and convicted for engaging in extortion in the context of Rule 408 settlement discussions).  This warrants imposing serious sanctions on Defendants.[5]  *See, e.g.*, *PaySys Int'l,*

---

[5] Improper conduct in settlement communications can be considered in deciding the imposition of sanctions.  *See, e.g.*, *Lawrence v. Wilder Richman Sec. Corp.*, 467 F. Supp. 2d 228, 233 (D. Conn.

*Inc. v. Atos Se*, 2019 WL 2051812, at \*10 (S.D.N.Y. May 9, 2019) (Cote, J.) (imposing sanctions where a party's course of conduct was undertaken "not because [it] believed it had viable claims for relief, but rather to gain a competitive advantage and to *use litigation as a profit center*") (emphasis added); *see also Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (noting that federal courts may "fashion an appropriate sanction for conduct which abuses the judicial process"); *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 283 (2d Cir. 2021) (sanctions appropriate where there is a "finding of bad faith, and a finding that conduct is without color or for an improper purpose").

Notably, on the settlement call, Mr. Litvak claimed that Defendants do not have the Bitcoin private keys in their possession or know what they are, but he stated that Valtron told Defendants that it would give Defendants the keys if they could obtain a settlement from Google.  9/16/22 Harris Decl. ¶ 13.  When Google's counsel asked Mr. Litvak the basis for Defendants' demand for Google to pay each of them $1 million, he stated that the basis sounds in the harm that this lawsuit has caused to Defendants' reputation and ability to conduct business.  *Id.* ¶ 12.  But Defendants have no viable claim against Google for reputational harm or tortious interference with business relations—indeed, they abandoned their counterclaims against Google after Google explained that they were legally frivolous.  *See* ECF 67.  Google's counsel requested that Mr. Litvak transmit the settlement demand in writing, which he did.  *See* 9/16/22 Harris Decl. Ex. 6 (9/8/22 Litvak Email).

---

2006) (holding that "evidence of settlement of an action, or of settlement negotiations, can be considered, if relevant, to determine the objective reasonableness of a party's position" when assessing the  "objective unreasonableness" standard for Rule 11 sanctions); *Giganti v. Gen-X Strategies, Inc*., 222 F.R.D. 299, 313 & n.38 (E.D. Va. 2004) ("While [Rule 408] itself does not expressly indicate that a motion for sanctions qualifies as 'another purpose' such that the rule of exclusion does not apply here, courts in this and other circuits have considered settlement documents when reviewing a motion for sanctions.") (citing cases).

Mr. Litvak now claims that his conduct was not extortionate because he did not "hint or imply" that Defendants would harm Google if Google did not agree to pay them the millions of dollars they demanded.  *See* ECF 118 at 1.  The threatened harm was clear: Mr. Litvak conveyed to Google's counsel that "Defendants 'believe' [the Bitcoin] private keys will help Google to shut down the software Google calls Glupteba."  *Id.*  In other words, without the private keys, the software that Google calls Glupteba botnet will continue to be operational, presenting an ongoing threat to Google and its users.[6]

### B. Defendants Fail To Explain Why Terminating Sanctions Are Not Warranted Here.

Defendants assert that terminating sanctions should not be imposed against them under Rule 37(b), the Court's inherent authority, and Rule 37(e) because (1) they have not engaged in willful or bad faith conduct; (2) Google's request for sanctions is "premature"; (3) Google has not shown that Defendants' misconduct imposes "irremediable prejudice"; and (4) Google has not provided any evidence that Defendants spoliated the relevant devices and ESI they possessed "with the intent to deprive" Google from obtaining the information, or that the "destroyed evidence would have been in Goggle's [sic] favor."  ECF 115 at 22-23.  Defendants' arguments both misstate the law and conflict with the facts.

*Willfulness/Bad Faith.*  Google has established Defendants' bad faith.  First, while Mr. Litvak argues that Google has offered only conclusory allegations, Google's Motion details Defendants' and Mr. Litvak's misconduct and supports it with evidence of their own inconsistent statements.  *See generally* ECF 111.

---

[6] Mr. Litvak's assertion that Google acted unethically by reporting the extortion to the Court and law enforcement is without basis.  To be clear, Google never threatened to make a criminal referral of the extortion to gain an advantage in this case.  All Google did was report the conduct to the Court and to law enforcement, which is entirely appropriate and merited under the facts.

Second, Defendants' bad faith is further established through their continuing denials of misconduct and disingenuous explanations for shifting positions.  *See, e.g.*, *Metro. Opera Ass'n v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*, 212 F.R.D. 178, 227 (S.D.N.Y. 2003); *Martinez v. City of New York*, 2018 WL 604019, at *25 (E.D.N.Y. Jan. 24, 2018); *Chowdhury v. Hamza Exp. Food Corp.*, 308 F.R.D. 74, 83 (E.D.N.Y. 2015).

Third, the sole concession that Mr. Litvak offers—that he did not know his clients' employment status and the location of key evidence until May 20, 2022—establishes bad faith and willful misconduct.  To begin, the prospect that Mr. Litvak "mistakenly assumed" Defendants' employment status and possession of relevant devices for months itself demonstrates serious misconduct.  *See, e.g.*, ECF 112-16 at 2, 4-5; ECF 116 ¶¶ 12, 26.  If credited, it demonstrates that, for months, Mr. Litvak did not conduct a basic investigation or act to ensure that Defendants were preserving responsive documents as required under Rule 37(e).   Counsel's preservation "obligations extend further than simply advising her clients as to what documents might be necessary in the litigation"; counsel must "become fully familiar" with his client's retention of data and "must also 'take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched.'"  *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 495 (S.D.N.Y. 2022) (citations omitted).  If Mr. Litvak had done so, he surely would have learned that the laptops had been returned to Valtron.  Instead, when seeking to set aside default, he submitted false declarations from Defendants stating that they "work for Valtron LLC," ECF 58 ¶ 9; ECF 59 ¶ 9, and falsely represented to the Court that Defendants' delay in appearing would not affect the discoverability of evidence, ECF 57-1 at 6.

Furthermore, Mr. Litvak's contention that "he voluntarily corrected [himself] soon after he learned about the misunderstanding by providing the correct information to Ms. Harris" is false.

*See* ECF 115 at 22-23.  The record shows there was no voluntary correction.  Mr. Litvak did not inform Google's counsel of his "misunderstanding" about Defendants' employment status with Valtron for months.  *See* ECF 112-11.  He only did so in response to Google's pursuit of Defendants' deficient Initial Disclosures.  *See id.*

If there were any doubt as to Defendants' bad faith and willful misconduct, it is removed by their recent attempt to extort a settlement of over $2 million from Google in exchange for the private keys to the Bitcoin wallets associated with the C2 servers of the Glupteba botnet—which they claim they can obtain from Valtron if Google is willing to pay their ransom, but not to comply with their discovery obligations.  *See* 9/16/22 Harris Decl. Ex. 6 (9/8/22 Litvak Email).

**Ripeness.**  Defendants claim that Google's sanctions request is "premature" because "the bulk of discoverable evidence is still in the Defendants' possession and control, and they anticipate disclosing it in due course of discovery."  ECF 115 at 23 (citing *Kullman v. New York*, 2010 WL 11469138, at *6 (N.D.N.Y. Jan. 7, 2010)).  For starters, *Kullman* offers no support, since the court in *Kullman* "decline[d] to rule on" the spoliation issue "at this time" in a one-sentence, perfunctory ruling without any reasoning.  *See* 2010 WL 11469138, at *6.  Such a ruling offers no guidance here.  Rather, "[i]t is up to the trial court to determine on a case-by-case basis whether a dispositive sanction is appropriate" given "the full record in the case."  *Martinez*, 2018 WL 604019, at *23.

Here, Defendants have affirmed time and again that they will produce no devices or ESI whatsoever in this litigation.  *See, e.g.*, ECF 115 at 8; ECF 112-16 at 3, 5.  Defendants produced only a handful of marginally relevant documents, did not indicate any other responsive documents or devices that would be forthcoming in their responses to Google's RFPs and RFIs, and identified no other documents that they intend to rely on in their responses to Google's Interrogatories.  *See* 9/6/22 Harris Decl. Ex. 5 (Defs.' 9/15/22 Verified Am. Resps. to RFPs and RFIs); *id.* Ex. 4 at 4-5

(9/15/22 Defs.' Am. Verified Resps. to Interrogs.).  Accordingly, their claim that they still possess and anticipate producing the "bulk of discoverable evidence" rings hollow.  *See* ECF 115 at 22. Defendants have offered no reason why Google and the Court should have to expend continued resources when Defendants refuse to participate in discovery in good faith and consistently contradict themselves.

  ***Prejudice****.*  Without citing any authority, Defendants incorrectly argue that "one of the most critical elements to be established by the moving party seeking sanctions is 'irremediable' prejudice" and that Google has "failed to meet its burden" in this regard.  ECF 115 at 23.  As a matter of law, however, prejudice is not required to impose sanctions pursuant to Rule 37(b) or the Court's inherent authority: "Although prejudice may 'serve as a compelling consideration in support of dispositive relief [as a sanction],' a lack of prejudice 'should not be given significant weight in the overall analysis.'"  *E.g.*, *Ramgoolie v. Ramgoolie*, 333 F.R.D. 30, 34 (S.D.N.Y. 2019) (quoting *Loc. Union No. 40 of the Int'l Ass'n of Bridge v. Car-Wi Const.*, 88 F. Supp. 3d 250, 263 (S.D.N.Y. 2015)); *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 368 (2d Cir. 2021); *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 148–49 (2d Cir. 2010); *Martinez*, 2018 WL 604019, at *22.  Regardless, Defendants' misconduct has substantially prejudiced Google here.  *See, e.g.*, ECF 111 at 23.  For seven months, Google has expended resources trying to keep up with Defendants' changing stories, the only explanation for which is that Defendants will say anything to avoid engaging in good faith discovery.

  ***Intent to Spoliate.***  Defendants contend that Rule 37(e) requires movants to show that they are "prejudiced by the absence of the spoliated evidence" and that the "destroyed evidence would have been in their favor."  ECF 115 at 20 (citing *Ungar v. City of New York*, 329 F.R.D. 8, 13 (E.D.N.Y. 2018), and *Stanbro v. Westchester Cnty. Health Care Corp.*, 2021 WL 3863396, at *14

(S.D.N.Y. Aug. 27, 2021)).  In fact, while Rule 37(e)(1) sanctions require a showing of prejudice, "[i]f an intent to deprive is found" under Rule 37(e)(2), "no separate showing of prejudice is required, because the finding of intent to deprive supports an inference that the opposing party was prejudiced by the loss of information."  *E.g.*, *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. at 496 (cleaned up) (quoting *Doubleline Cap. LP v. Odebrecht Fin., Ltd.*, 2021 WL 1191527, at *5 (S.D.N.Y. Mar. 30, 2021)); *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 60 (S.D.N.Y. 2020).  Defendants' unsupported claim that "the 'lost evidence' actually prejudices Defendants" is speculative and irrelevant.  *See* ECF 115 at 23.

Notably, Defendants do not dispute that they had an obligation to preserve the devices and other ESI they spoliated, that they "failed to take reasonable steps to preserve" them, and that this evidence "cannot be restored or replaced through additional discovery."  *See* ECF 111 at 21 (citing Fed. R. Civ. P. 37(e)(2)).  Nor could they.  The duty to preserve attaches when a party knew or "should have known" the evidence may be relevant to pending or future litigation, *see, e.g.*, *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. at 494 (citation omitted), and Defendants claim they irrevocably dispossessed themselves of their laptops after they had failed to timely respond to the Complaint.  *See* ECF 62 at 5 (holding that Google served Defendants on December 8, which made their responsive pleadings due December 29).  Defendants' assertion that Google did not provide any evidence showing that they acted with intent also is refuted by the extensive record demonstrating that their explanation for the loss of the devices and ESI is implausible and lacks credibility.  *See, e.g.*, *Moody v. CSX Transportation, Inc.*, 271 F. Supp. 3d 410, 431 (W.D.N.Y. 2017).  Because Defendants have acted to ensure that key evidence never sees the light of day in this litigation, case-ending sanctions are warranted under Rule 37(e)(2).

### C. Defendants Offer No Substantive Argument Against Google's Request for Expenses, Including Attorney's Fees.

Defendants briefly assert that Google is not entitled to attorney's fees because Google has "failed to prove any sanctionable misconduct." ECF 115 at 23. Google has done just that. "A 'single misrepresentation' is sufficient' 'to justify an award of [monetary] sanctions.'" ECF 111 at 25 (quoting *Int'l Techs. Mktg., Inc.*, 991 F.3d at 368). Defendants have made many, refused to take responsibility for any, and caused Google to incur significant expenses as a result. At a minimum, Google is entitled to an award of its attorney's fees caused by Defendants' misrepresentations and related misconduct.

## II. Defendants' Retaliatory Motion for Sanctions Against Google Should be Denied.

Defendants' retaliatory motion for sanctions is frivolous. They allege that Google's counsel made five misrepresentations to the Court "with intent" to deceive. ECF 115 at 24. None of the alleged misrepresentations withstands scrutiny, and there is no evidence of deceptive intent.

*First*, Defendants assert that Google's counsel misrepresented to the Court that Defendants waived any objection to jurisdiction when, according to Mr. Litvak, Defendants' waiver was conditioned on Google's agreement to set aside default. Google did not mislead the Court on these discussions: to the contrary, in support of its argument that Defendants had waived, Google presented the Court with its full email correspondence with Mr. Litvak. *See* ECF 51 at 9-10; ECF 52-12. While the Court declined to find waiver, *see* ECF 62 at 12, the fact that Google provided the Court with the full record eliminates the notion that it misled the Court with intent to deceive.

*Second,* Defendants assert that Google's counsel misrepresented to the Court that Mr. Litvak stated, during a June 1 meet-and-confer, that Defendants would not agree to travel to any country from which the United States might seek extradition. But Mr. Litvak admitted just two days later that, "[t]o the best of my memory, I did express to Laura Harris during a meeting that

my clients are concerned about going to a country with an extradition treaty with the U.S."  ECF 75 at 2.  While Plaintiff's counsel stands by its recollection of what Mr. Litvak said on June 1, *see* 9/16/22 Harris Decl. ¶ 2, Mr. Litvak's admission of what he said—that Defendants are "concerned" about extradition—is fatal to Defendants' motion for sanctions.  Indeed, at the time of that discussion, what was striking was that Mr. Litvak had just participated in a court conference about Defendants' participation in depositions without mentioning *either* their concern about extradition *or* their (purported) lack of international passports.  If anything, it is Mr. Litvak, not Google's counsel, who deceived the Court about Defendants' ability to participate in depositions.

**Third,** Defendants assert that Google's counsel misrepresented to the Court that Mr. Litvak stated on the parties' June 27, 2022 meet-and-confer call that "Defendants worked closely with the individuals they identified in their Initial Disclosures."  ECF 115 at 24.  Mr. Litvak insists that he "only stated that the Defendants worked with the individuals in question in the same location at some point in the past."  *Id.* at 2.  This is no basis on which to move for sanctions because there is no meaningful difference between working "closely" or working "in the same location."  In any event, Google stands by its account that Mr. Litvak used the word "closely" in the June 27 meet-and-confer call.  *See* 9/16/22 Harris Decl. ¶ 3.

**Fourth**, Defendants assert that Google's counsel misrepresented to the Court what Mr. Litvak said during a YouTube interview.  Google's counsel, however, has provided the Court with the transcript of that interview, and the accuracy of that transcript is not in dispute.  *See* ECF 112-19.  Mr. Litvak was interviewed for a documentary called "Russian Hackers" during which he stated that hackers should leave their "work" laptops in Russia when they leave the country.  *See* ECF 116 ¶¶ 61-64 (9/2/22 Litvak Decl.).  Notably, his clients in this case (purportedly) no longer have their "work" laptops to produce to Google.

16

***Fifth***, and finally, Defendants dispute when Mr. Litvak informed Google's counsel that Defendants no longer worked at Valtron.  Defendants assert that they informed Google's counsel of this fact on the June 27 meet-and-confer call, but Mr. Litvak cites no evidence establishing this. *See* ECF 115 at 24.  The email record, in fact, confirms that Mr. Litvak did not reveal this fact on June 27: on July 18, 2022, Google's counsel sent Mr. Litvak an email indicating that, on June 27, Mr. Litvak told Google only that Defendants' laptops were owned by Valtron.  Google's counsel continued to believe that Defendants worked at Valtron and that they therefore had control and possession of the laptops regardless of whether Valtron owned them.  *See* ECF 112-11 (7/18/22 Harris Email) ("The question whether any particular device is owned by Valtron is irrelevant.  If your clients have the practical ability to obtain documents or devices that might be relevant to the case, they are obligated to produce those materials. . . . This is particularly true where, as here, employees of a company use or have access to the materials in question as part of their employment.").  Mr. Litvak did not inform Google that Defendants had stopped working at Valtron until he responded to Google's counsel, on July 19, and so indicated for the first time.  *See id.*

Accordingly, Defendants' retaliatory sanctions motion is frivolous and should be denied.

## CONCLUSION

For these reasons and those in Google's opening papers, Google respectfully requests that the Court issue an order sanctioning Defendants and their counsel by entering default judgment and awarding attorney's fees, and denying Defendants' motion for sanctions.

DATED: September 16, 2022                    Respectfully submitted,

*/s/Laura Harris*_____
Laura Harris
Andrew Michaelson
Kathleen E. McCarthy
Matthew Bush

KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036
Telephone: (212) 790-5356
Fax: (212) 556-2222
lharris@kslaw.com
amichaelson@kslaw.com
kmccarthy@kslaw.com
mbush@kslaw.com

Sumon Dantiki (*pro hac vice*)
KING & SPALDING LLP
1700 Pennsylvania Ave., NW, 2nd Floor
Washington, DC 20006
Telephone: (202) 626-5591
Fax: (202) 626-3737
sdantiki@kslaw.com

*Counsel for Plaintiff Google LLC*