UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GOOGLE LLC,<br><br>      *Plaintiff*,<br><br>v.<br><br>DMITRY STAROVIKOV;<br>ALEXANDER FILIPPOV;<br>Does 1–15,<br><br>      *Defendants*. | Civil Action No. 1:21-cv-10260-DLC |

**DECLARATION OF LAURA HARRIS IN FURTHER SUPPORT
OF GOOGLE LLC'S MOTION FOR SANCTIONS AND IN OPPOSITION TO
DEFENDANTS' MOTION FOR SANCTIONS**

I, Laura Harris, hereby declare and state as follows:

1. I am an attorney with the law firm of King & Spalding LLP and counsel of record for Plaintiff Google LLC ("Google"). I am a member of good standing of the bar of New York. I make this declaration in further support of Google's Motion for Sanctions and in opposition to Defendants' Motion for Sanctions. I make this declaration of my own personal knowledge and, if called as a witness, I could and would testify competently to the truth of the matters set forth herein.

**June 1, 2022 In-Person Meet-and-Confer with Defendants' Counsel, Igor Litvak, Regarding Potential Locations for Defendants' Depositions**

2. On June 1, 2022, the Court held the Initial Pretrial Conference in this case. The parties discussed potential locations for Defendants' depositions with the Court. The Court ordered the parties to file a letter by Noon on June 3, 2022, indicating that they had agreed on a location for Defendants' depositions or setting forth their respective positions if no agreement could be reached, and inviting counsel to use the Court's jury room to meet and confer. Immediately following the Initial Pretrial Conference, I, along with my King & Spalding colleagues, met with Mr. Litvak in the jury room to confer on this issue. My recollection of that June 1, 2022 conversation is that after my colleagues and I explained to Mr. Litvak that both virtual and in-person depositions are unlawful in Russia and asked him to propose an alternative location, Mr. Litvak stated that his clients would not agree to travel to any country from which the United States may be able to extradite them. Mr. Litvak did not inform my colleagues and me in our June 1, 2022 conversation that Defendants claim they do not have international passports. Mr. Litvak disclosed this claim for the first time in an email to my colleagues and me the next day, June 2, 2022.

**June 27, 2022 Meet-and-Confer Call with Defendants' Counsel, Igor Litvak, Regarding Defendants' Initial Disclosures**

3.     On June 27, 2022, I, along with my King & Spalding colleagues, held a meet-and-confer phone call with Mr. Litvak regarding Defendants' June 17, 2022 Initial Disclosures. My recollection of that June 27, 2022 call is that I asked Mr. Litvak if Defendants had ever met their Valtron colleagues whom they identified in their Initial Disclosures in-person, to which Mr. Litvak responded that he had not asked Defendants that specific question but that they work "very closely" with these individuals. My recollection of the June 27 call also is that Mr. Litvak indicated that Defendants still work for Valtron, but further asserted that Defendants do not have any devices to produce in this case because Valtron owns the devices. I do not recall Mr. Litvak expressing on our June 27 call in form or substance that Defendants had "finished working for Valtron," thereafter had "returned to Valtron" their devices, and had "no way . . . to get those devices back from Valtron." To my knowledge, Mr. Litvak disclosed these claims for the first time in a July 19, 2022 email to my colleagues and me.

**Defendants' Responses to Google's July 19, 2022 Discovery Requests**

4.     A true and correct copy of the August 29, 2022 email from King & Spalding to Defendants' counsel, Igor Litvak, which also incorporates earlier emails exchanged between counsel regarding Defendants' responses to Google's July 19, 2022 Interrogatories and Requests for Production and Inspection, is attached hereto as **Exhibit 1**.

5.     A true and correct copy of Defendants' Objections and Responses to Google's First Set of Interrogatories, dated September 6, 2022, is attached hereto as **Exhibit 2.**

6. A true and correct copy of Defendants' Objections and Responses to Google's First Set of Requests for Production and Inspection, dated September 6, 2022, is attached hereto as **Exhibit 3.**

7. A true and correct copy of Defendants' Amended Objections and Responses to Google's First Set of Interrogatories, dated September 15, 2022, is attached hereto as **Exhibit 4.**

8. A true and correct copy of Defendants' Amended Objections and Responses to Google's First Set of Requests for Production and Inspection, dated September 15, 2022, is attached hereto as **Exhibit 5.**

9. Defendants designated as "Confidential" their initial and amended Objections and Responses to Google's First Set of Interrogatories. *See* Exs. 2 & 4. Defendants did not include any confidentiality designations in their Objections and Responses to Google's Requests for Production and Inspection. While Google does not know the basis for Defendants' confidentiality designations and although there is no Protective Order in effect pursuant to which such designations could have been made, in an abundance of caution Google has sought to file all of Defendants' discovery responses under seal to allow Defendants the opportunity to make any further submissions or arguments as to why these documents should remain under seal, should they choose to do so.

10. In response to Google's Requests for Production, Defendants collectively have produced 15 documents, along with .php files that Defendants describe as "part of source code that" they developed to be "used to interact with" Bank Otkritie in connection with activities related to Extracard.net.

**Defendants' September 8, 2022 Settlement Offer**

11. On September 6, 2022, Mr. Litvak emailed my colleague and me, stating that his clients would like to discuss settlement and requesting a call to discuss. After exchanging some emails regarding scheduling, I, along with my King & Spalding colleagues, participated in the call with Mr. Litvak to discuss settlement on September 8, 2022. My recollection of that call is that Mr. Litvak began the call by stating that his clients have an offer to make. He then outlined the terms of the offer, stating that Defendants were offering to (1) provide to Google the private keys for all Bitcoin addresses that are in any way connected to command-and-control ("C2") servers of the software, and (2) promise not to do this again in the future (without admitting any wrongdoing), and in return, they wanted Google to: (1) also dismiss all of the Doe Defendants, (2) agree not to report Defendants or their activities to law enforcement, (3) reimburse Defendants for Mr. Litvak's accrued legal fees, which he stated were $110,000, and (4) pay each Defendant $1 million.

12. When I asked Mr. Litvak the basis for Defendants' request for a payment of $2 million, he responded that it was to compensate them for harm to their reputation, citing his recent filings that claim Defendants cannot get a job or apartment. Mr. Litvak also stated that Defendants believe what they are offering to give Google has significant value to Google and, in particular, more value than a permanent injunction.

13. When I expressed concern that one of the key elements of the offer consists of Bitcoin private keys that are responsive to Google's discovery requests but have not been produced, Mr. Litvak stated that Defendants do not have the Bitcoin private keys in their possession or know what they are, but that Valtron told Defendants that it would give Defendants the keys if (and only if) they could obtain a settlement from Google.

14. Mr. Litvak also relayed that Defendants had informed him that the Bitcoin private keys would allow Google "to do what it wants," which I understood to refer to permanently dismantling the botnet, but that a permanent injunction would not.

15. At the end of the call, I asked Mr. Litvak to transmit the offer in writing. After initially expressing hesitation, he agreed to send the offer in writing.

16. A true and correct copy of the September 8, 2022 email from Mr. Litvak to King & Spalding, which transmits the terms of Defendants' settlement offer that Mr. Litvak conveyed on the September 8, 2022 phone call, and incorporates earlier emails exchanged between counsel scheduling the September 8, 2022 call to discuss Defendants' settlement offer, is attached hereto as **Exhibit 6**.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on September 16, 2022 in New York, New York.

                  */s/ Laura Harris*
                  Laura Harris