UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
GOOGLE LLC,

                            Plaintiff,                Civil Action No.: 1:21-cv-10260-DLC

- against -

DMITRY STAROVIKOV;
ALEXANDER FILIPPOV;
and Does 1-15,

                            Defendants.
---------------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS TO THE EXTENT PLAINTIFF ALLEGED NEW ARGUMENTS IN ITS OPPOSITION AND IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS UNDER THE COURT'S INHERENT POWERS**

/s/ Igor Litvak
_____

Igor Litvak, Esq.
Attorneys for Defendants
The Litvak Law Firm
1733 Sheepshead Bay Rd., Suite 22
Brooklyn, NY 11235
Tel/Fax: 718-989-2908
Email: Igor@LitvakLawNY.com

**TABLE OF CONTENTS**

Contents

ARGUMENT ........................................................................................................1

   Propriety of New Arguments Submitted in Reply Memorandum of Plaintiff's Motion for Sanctions ......................................................................................1

   Defendants Made a Reasonable Settlement Offer to Plaintiff, but Plaintiff Refused the Offer and Unjustifiably Accused Defendants of Extortion ................2

   Defendants Produced Documents They Believe Will Adequately Support Their Defenses ...................................................................................................5

   The Court Should Award Defendants and Its Counsel Sanctions for Plaintiff's Counsel Pattern of Material Misrepresentations and Attorney's Fees Incurred in Connection with Responding To Plaintiff's Baseless Motion For Sanctions .........6

CONCLUSION ..................................................................................................10

CERTIFICATE OF SERVICE ............................................................................12

# TABLE OF AUTHORITIES

**Cases**

16 Casa Duse, LLC v. Merkin, 791 F.3d 247 (2d Cir. 2015) ................................... 5

Anghel v. NY State Dept. of Health, 947 F. Supp 2d 284 (E.D.N.Y. 2013) ............. 2

Catskill Dev., L.L.C. v. Park Place Entertainment Corp., 547 F3d 115 (2d Cir. 2008) ........................................................................................................................ 4

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ......................................................... 7

Cotona v. Fed. Bureau of Prisons, 2013 U.S. Dist. LEXIS 144988, 2013 WL 5226238 (S.D.N.Y. Oct. 7, 2013) .......................................................................... 1

Dareltech, LLC v. Xiaomi Inc., 2019 U.S. Dist. LEXIS 234323 (S.D.N.Y. Apr. 11, 2019) ........................................................................................................................ 5

EDP Med. Computer Sys., Inc. v. United States, 480 F.3d 621 (2d Cir. 2007) ........ 1

Ernst Haas Studio, Inc. v. Palm Press, Inc., 165 F.3d 110 (2d Cir. 1999) ............... 1

Guadagni v. New York City Transit Auth., 387 Fed.Appx. 124 (2d Cir. 2010). ...... 3

Knipe v. Skinner, 999 F.2d 708 (2d Cir. 1993) ........................................................ 2

Mayer v. Neurological Surgery, P.C., No. 15-CV-0864, 2016 U.S. Dist. LEXIS 10260 (E.D.N.Y. Jan. 28, 2016) ............................................................................ 1

Ramon v. Corporate City of NY, No. 17-CV-2307, 2019 U.S. Dist. LEXIS 47406 (E.D.N.Y. Mar. 21, 2019) ...................................................................................... 2

Seat Sack, Inc. v. Childcraft Educ. Corp., No. 07 Civ. 3344, 2010 U.S. Dist. LEXIS 142577 (S.D.N.Y. Jan. 22, 2010) .......................................................................... 7

Travelers Indem. Co. v. Excalibur Reins. Corp., No. 3:11 - CV- 1209, 2013 U.S. Dist. LEXIS 110396 (D. Conn. Aug. 5, 2013) ...................................................... 2

**Statutes**

Fed. R. Evid. 408 ..................................................................................................... 4

**Rules**

Rule 56(c) ................................................................................................................. 5

N.Y. Rules of Professional Conduct, Rule 3.4 ........................................................ 4

Rule 3.4 .................................................................................................................... 4

Defendants DMITRY STAROVIKOV AND ALEXANDER FILIPPOV (hereinafter, "Defendants"), respectfully submit the following reply memorandum of law addressing new arguments inappropriately submitted in Reply of Plaintiff's Motion for Sanctions and in further support of Motion for Sanctions against Plaintiff and their Counsel under the Court's inherent powers.

## ARGUMENT

### Propriety of New Arguments Submitted in Reply Memorandum of Plaintiff's Motion for Sanctions

Plaintiff, in its Reply brief, inappropriately raised the first-time new evidence and related arguments regarding the alleged Defendants' attempt to extort Google. Pl. Br. at 8-10. The law in this Circuit is clear that arguments raised for the first time in reply briefs need not be considered. See, e.g., EDP Med. Computer Sys., Inc. v. United States, 480 F.3d 621, 625 n.1 (2d Cir. 2007); Cotona v. Fed. Bureau of Prisons, 2013 U.S. Dist. LEXIS 144988, 2013 WL 5226238, at 2 (S.D.N.Y. Oct. 7, 2013) ("[A]rguments raised for the first time in a reply memorandum are waived and need not be considered."); Mayer v. Neurological Surgery, P.C., No. 15-CV-0864, 2016 U.S. Dist. LEXIS 10260, at 11 (E.D.N.Y. Jan. 28, 2016)(same); Ernst Haas Studio, Inc. v. Palm Press, Inc., 165 F.3d 110, 112 (2d Cir. 1999)(to prevent unfairness to litigants, courts apply a general rule that new arguments may not be made in a reply brief); Knipe v. Skinner, 999 F.2d 708, 711 (2d Cir. 1993). As such, Defendants respectfully request that the Court decline to consider said new evidence and arguments and strike them.

Alternatively, Defendants respectfully request that the Court review Defendants' arguments submitted in this brief addressing said "extortion" argument. See, e.g. Ramon v. Corporate City of NY, No. 17-CV-2307, 2019 U.S. Dist. LEXIS 47406, at 18 (E.D.N.Y. Mar. 21, 2019) (A sur-reply may be appropriate where the party against whom the sur-reply will be

filed raises new arguments, and the proposed sur-reply provides rebuttal information relevant to the disposition of the case); Anghel v. NY State Dept. of Health, 947 F. Supp 2d 284, 293 (E.D.N.Y. 2013) (where Defendants raise at least one new argument in its reply, Plaintiff is entitled to a response to this argument in its proposed sur-reply memoranda); Travelers Indem. Co. v. Excalibur Reins. Corp., No. 3:11 - CV- 1209, 2013 U.S. Dist. LEXIS 110396, at 9-10 (D. Conn. Aug. 5, 2013)("When new evidence appears in opposition papers, the non-moving party should seek leave, or may receive the Court's *sua sponte* permission, to file a sur-reply to address those new issues") (citing Guadagni v. New York City Transit Auth., 387 Fed.Appx. 124, 126 (2d Cir. 2010). Therefore, Defendants respectfully seek leave to file a sur-reply portion contained in this brief or *sua sponte* permission to include here Defendants' rebuttal information relevant to address the "extortion" argument.

### Defendants Made a Reasonable Settlement Offer to Plaintiff, but Plaintiff Refused the Offer and Unjustifiably Accused Defendants of Extortion

On September 8, 2022, the parties held a settlement conference, during which the undersigned conveyed the Defendants' settlement offer to Google. The offer contained the following terms: Defendants will obtain the Private Keys from Valtron to be given to Google, and Defendants agree not to engage in similar activities in the future without admitting that they did anything wrong or illegal in the past. In return, the Defendants propose that Google will reimburse them for already paid attorney's fees, dismiss the case against the Doe Defendants, stop referring to Defendants as criminals or cybercriminals in public, refrain from reporting to law enforcement prior alleged conduct and pay $1 million to each Defendant to compensate them for the reputation harm caused by the publicity of this lawsuit against them. The undersigned specifically told Plaintiff counsel that the Defendants "**believe**" private keys will help Google to shut down the software Google calls Glupteba but that they do not know anything about these

keys themselves. The conveyed offer was labeled "FRE 408 settlement conference."

Now, Plaintiff argues that "Defendants' settlement offer—demanding over $2 million in payment in exchange for giving up the means to harm Google and its users with the Glupteba malware in the future—is extortion." Pl. Br. at 8. This is another baseless claim to get an advantage in this litigation by improper means. Moreover, for the reasons stated below, the cases cited by Plaintiff are inapposite here as the proposed offer is neither extortion nor an attempt to "use litigation as a profit center." Pl. Br. at 8-9.

First, the Defendants' offer did not convey any threat to cause any harm to Google; instead, the Defendants tried to help Google by doing all they could, including finding ways to provide Google with what it claims it needs to stop the wrongful activity.

Second, Plaintiff's extortion theory relies on the assumption that Defendants have possession and/or control over the keys; in fact, they do not. They simply disclosed to Google that there is a mere possibility they could obtain those keys from the owner of Valtron as a condition of settling this lawsuit against them and the Doe Defendants.

Third, Defendants' monetary proposal is not in any shape or form conditioned on providing those keys to Plaintiff. Contrary, the Defendants believe they should be entitled to be compensated for the harm caused by this lawsuit. While Plaintiff claims that "Defendants have no viable claim against Google for reputational harm or tortious interference with business relations" because "they abandoned their counterclaims against Google after Google explained that they were legally frivolous," Pl. Br. at 9, Defendants agreed to dismiss the counterclaims because they did not have the financial resources to fight another motion to dismiss. Still, Defendants believe that tortious interference with business relations claim is not frivolous. See, e.g., Catskill Dev., L.L.C. v. Park Place Entertainment Corp., 547 F3d 115, 132 (2d Cir. 2008) ("To state a claim for this tort under New York law, four conditions must be met: (1) the plaintiff

3

had business relations with a third party; (2) the Defendant interfered with those business relations; (3) the Defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the Defendant's acts injured the relationship."). While the wrongful means element "sets a high bar," a claim for tortious interference with business relations requires a plaintiff to show, "as a general rule," that "the defendant's conduct . . . amount[ed] to a crime or an independent tort." 16 Casa Duse, LLC v. Merkin, 791 F.3d 247, 262 (2d Cir. 2015). The Second Circuit noted that "New York courts have recognized an exception to this rule where a defendant engages in conduct for the sole purpose of inflicting intentional harm on plaintiffs." Id.

While the Court explained that his "exception is narrow: When a defendant has acted with a permissible purpose, such as "normal economic self-interest," wrongful means have not been shown," id., here, unjustifiably calling Defendants criminals and spreading this label all over the world is not "normal economic self-interest." Thus, Defendants could plausibly allege the claim against Plaintiff. In any event, the Defendants' willingness to settle this litigation by forfeiting their defenses is an independent basis for the proposed payments, which undermines Plaintiff's argument that they have "no viable claim against Google" to propose monetary payment as a condition for settlement.

Fourth, Plaintiff's claim for "extortion" is improper litigation conduct targeting to destroy the confidentiality of the settlement negotiations. See Fed. R. Evid. 408. Finally, Rule 3.4 precludes a lawyer from "present[ing], participat[ing] in presenting, or threaten[ing] to present criminal charges solely to obtain an advantage in a civil matter." Dareltech, LLC v. Xiaomi Inc., 2019 U.S. Dist. LEXIS 234323, at 8 (S.D.N.Y. Apr. 11, 2019) (citing N.Y. Rules of Professional Conduct, Rule 3.4). Therefore, Plaintiff's argument that Defendants attempted to extort money is baseless and sanctionable itself, adding to the list of other misconduct committed by Plaintiff.

**Defendants Produced Documents They Believe Will Adequately Support Their Defenses**

On September 5, 2022, Defendants produced substantial discovery, which included 11 PDF files, 7 jpeg files, and 46 files containing source code for working with OAO Tochka (Bank Otkritie). While Plaintiff claims in its Reply that "if these are the only documents Defendants will be relying on in their defense, then they have no defense," Pl. Br. at 6, 23, said documents are relevant to support Defendants' defenses in the following ways – 1) employment contracts shows that they were merely employees of Valtron, had limited information about its activity and had a specific job related to software development; 2) various screenshots and source code for working with the bank shows that they legitimately worked with the bank using bank's API. API was used as the method for opening, blocking, and changing cards' currency amount limits, and other typical bank card operations. Defendants will use this to establish at trial that they offered a legal platform to various webmasters, and then those webmasters themselves conducted further activity using the Extracard website to communicate with the bank; 3) rent.dont.farm shows that Valtron had a website on which anyone could sell access to their Google accounts. Defendants will use this evidence to establish that Valtron did not violate Google's terms and conditions; 4) EULA to establish Defendants' assertion that Valtron has done nothing illegal when working in mining or with proxy.

In any event, if Plaintiff believes that the document production is inadequate to support the defenses, the proper relief would be to move for summary judgment instead of seeking sanctions. Indeed, "[t]he plain language of [Rule] 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Seat Sack, Inc. v. Childcraft Educ. Corp.,

5

No. 07 Civ. 3344, 2010 U.S. Dist. LEXIS 142577, at 20 (S.D.N.Y. Jan. 22, 2010) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)

**The Court Should Award Defendants and Its Counsel Sanctions for Plaintiff's Counsel Pattern of Material Misrepresentations and Attorney's Fees Incurred in Connection with Responding to Plaintiff's Baseless Motion for Sanctions**

**Jurisdictional waiver**. Plaintiff argues that simply because it "provided the Court with the full record" this fact "eliminates the notion that it misled the Court with intent to deceive." Pl. Br. at 15. In fact, Plaintiff failed to provide the Court with "the full record" as the emails omitted the critical verbal communications between the parties during which the undersigned made it very clear that the waiver was conditioned on Google vacating the notice of default. By hiding the truth and affirmatively arguing to the Court that the waiver occurred, Plaintiff's counsel misled the Court with the intent to deceive to get an improper advantage in this case.

**Extradition**. Plaintiff argues that it never misrepresented to Court the undersigned statement about Defendants' concerns about extradition. As proof, it presented his statement that the Defendants were concerned about extradition. However, the statement does not explain the circumstances of that conversation or disclose the fact that the undersigned, on June 3, 2002, filed a letter with the Court stating that he "did express to Laura Harris during a meeting that my clients are concerned about going to a country with an extradition treaty with the U.S., but I never categorically stated that they would not travel to such a country. Furthermore, there is no evidence that Defendants were indicted or wanted by U.S. authorities." Ex. 14 at p. 2.

The undersigned emphasized that "Ms. Harris was asking me some questions about the Defendants being extradited, in response I told her something to the effect that of cause my clients, just like anyone, don't want to be extradited, but it doesn't mean they will not cooperate with discovery and depositions." Litvak Decl. at 46. As a result, Ms. Harris turned that statement upside down to mislead the Court and get a one-sided discovery, which was successful.

6

**Location of Defendants**. Plaintiff claims that working "closely" and working in the "same location" has the same meaning and, therefore, is not misleading. In fact, the terms are different, especially in light of the context. This issue arose in the context of whether Defendants should have been expected to know the last names of other Valtron's employees, who were disclosed in the initial disclosures. See Ex. 15. Plaintiff was arguing that since they worked closely with those individuals, they should be expected to know those individuals' identities. See Ex. 5. However, the undersigned stated that Defendants were working "in the same location" with those individuals, not "closely," which explains why they did not know the last names. Plaintiff's counsel twisted his words, implying that Defendant's plausible explanation of their lack of knowledge is incredible. As such, Plaintiff's counsel misled the Court with the intent to deceive the Court and to damage the Defendants' credibility.

**YouTube Interview.** Plaintiff conveniently misinterpreted Defendants' argument stating that "Defendants assert that Google's counsel misrepresented to the Court what Mr. Litvak said during a YouTube interview." Pl. Br. at 16. This is totally inaccurate. In fact, Defendants argued that after being advised numerous times that the YouTube interview predated our case and had nothing to do with it, Plaintiff continued to proffer it as somehow relevant to the issue of sanctions, for the sole purpose of ruining the undersigned credibility with the Court. See ECF # 115 at p. 13. This completely irrelevant evidence was repeatedly introduced to show a sort of "modus operandi" of the undersigned as he purportedly advised his clients, such as Defendants, to hide incriminating evidence. This attempt is a textbook example of bad faith sanctionable misconduct motivated by improper purposes such as harassment. Enmon v. Prospect Capital Corp., 675 F.3d 138, 143 (2d Cir. 2012).

**Timing of Returning Laptops**. Contrary to its contention, the evidence shows that Plaintiff's counsel did misrepresent to the Court as to when the undersigned informed Google

7

that Defendants left Valtron and returned their laptops. As corroborated by emails, conversations held in Court, Court filings, as well as by Ms. Harris' own statements, the undersigned informed Plaintiff about it on June 27, 2022, 11 days after finding out about it himself. For the very first time, Ms. Harris now asserts that on June 27, the undersigned only informed her that Defendants returned their laptops to Valtron, and then later, on July 19, he informed her that Defendants also left Valtron. See ECF # 120 at p. 17. However, this new excuse does not withstand any scrutiny for several reasons and is contradicted by Ms. Harris' own statements and court record.

After the June 27 conversation, the undersigned did not hear again from Ms. Harris until July 18, when she wrote, "I'm writing to follow up on **our June 27 call** and your clients' amended initial disclosures." Ex. 4 at p. 2. She continues by writing:

> [w]e are troubled by your representations **on our call that (i) your clients do not "have" any relevant devices, and**, in apparent contradiction to that representation, that (ii) any devices they do "have" are owned by Valtron and therefore are not discoverable . . . [r]egardless, the question whether any particular device is owned by Valtron is irrelevant. If your clients have the practical ability to obtain documents or devices that might be relevant to the case, they are obligated to produce those materials.

Id.

Ms. Harris concludes the email by stating, "[p]lease let us know immediately if you intend to continue to object to the production for inspection of any electronic devices, or if your clients contend they no longer possess any devices. Id. at p. 3. When Ms. Harris wrote "practical ability to obtain documents or devices that might be relevant to the case," the undersigned believed she was implying that since Defendants were somehow connected to Valtron in the past, they could still get those devices back and produce them in discovery. This is what Ms. Harris also told the undersigned during the June 27 conference.

After some back and forth that same day, the undersigned responded the following day,

writing on July 19, 2022:

> Laura, I never said that my clients preserved, had in their possession or intended to produce any devices subject to discovery, I am not sure where you got that from. **The last time we discussed this issue I told you all the devices were returned to Valtron when they finished working for Valtron, and therefore, they do not have any devices in their possession that are discoverable, there is no contradiction.**

Id. at p. 1. After this email, Ms. Harris filed a letter in Court that contradicts her newly made claims. In Plaintiff's July 19 letter to the Court, Ms. Harris describes what happened as follows:

> After Google identified the deficiencies their amendments failed to fix, Defendants' counsel responded that they "have nothing else to add." Counsel also represented (for the first time) that Defendants have "finished working for Valtron," and do not have any devices with discoverable information because they "returned to Valtron" such devices and are now unable to "get those devices back from Valtron."

Ex. 5, at p. 1-2. So, in Ms. Harris' July 19 letter to Court, Ms. Harris claims that on July 19, the undersigned told her for the first time that the Defendants left Valtron and returned their devices to Valtron, even though now she claims that those two things happened on different dates.

Furthermore, on July 25, the undersigned filed a response to the July 19 letter, where he writes:

> During the same June 27 meet and confer, I also explained to Google's counsel, that the Defendants at some point worked in the same location with some of the individuals identified in the initial disclosures, but it was some time ago, and that the Defendants hadn't had any communication or interaction with them in some time. What's more, I further advised Plaintiff's counsel that any electronic or digital devices Defendants used during their employment at Vatron, have since been returned to Valtron and are no longer in Defendants' possession.

Ex. 6. at p. 1. After this filing and in further proceedings and filings, the undersigned always made it very clear that on June 27, 2022, he informed Plaintiff of **both facts** - that Defendants

9

left Valtron and returned their devices. <u>See</u> Ex. 7, 8. He even repeated it three times during the Court's conference on July 29. Ex. 9 p. 13, 14, 19. During the July 29 Court conference, Ms. Harris did not correct him to say that, in fact, the undersigned told her about the Defendants returning devices on June 27 and the Defendants leaving Valtron on July 19. Instead, Ms. Harris filed a motion for sanctions, boldly claiming that the undersigned informed her of both on July 19. <u>See</u> P's Memo of Law, Dkt. # 111, pp. 1, 8, and 15.

After being confronted with her own email in Defendants' opposition to sanctions, an email which showed that Ms. Harris misled the Court when claiming that the undersigned only told her on July 19 that Defendants left Valtron and returned devices to Valtron, Ms. Harris **<u>changed her position</u>** and **<u>now in Reply brief, she claims something completely different</u>**, to wit, that on June 27, the undersigned told her that the Defendants returned their devices to Valtron, and then on July 19, he also told her that they left Valtron. Such a drastic shift in position can only be explained one way, Ms. Harris gets caught lying, and instead of acknowledging the lie or perhaps a mistake, Ms. Harris doubles down to come up with some new explanation. This is precisely what constitutes sanctionable bad faith litigation conduct.

Therefore, in light of Plaintiff's repeated and intentional misrepresentations and bad faith misconduct in the course of this litigation that substantially prejudiced Defendants and their counsel, Defendants respectfully request that the Court sanctions Plaintiff and its counsel pursuant to the Court's inherent powers, by awarding monetary sanctions to deter any further misconduct and awarding Defendants' attorneys' fees incurred in connection with responding to Plaintiff's Motion for Sanctions.

## CONCLUSION

For the foregoing reasons, this Court should deny in its entirety Plaintiff's Motion for Sanctions against Defendants and their counsel, and grant Defendants' Motion for Sanctions

10

against Plaintiff and its Counsel.

Dated: September 23, 2022
Brooklyn, New York

                                                                  Respectfully Submitted,

                                                                  /s/ Igor Litvak
                                                                  _____
                                                                  Igor Litvak, Esq.
                                                                  Attorneys for Defendants
                                                                  The Litvak Law Firm
                                                                  1733 Sheepshead Bay Rd., Suite 22
                                                                  Brooklyn, NY 11235
                                                                  Tel/Fax: 718-989-2908
                                                                  Email: Igor@LitvakLawNY.com

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the above document to be served on counsel of record for Plaintiff by filing it via the Court's CM/ECF system on this day, September 23, 2022.

/s/ Igor Litvak
Igor Litvak, Esq.