UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
GOOGLE LLC,

                         Plaintiff,                        Civil Action No.: 1:21-cv-10260-DLC

- against -

DMITRY STAROVIKOV;
ALEXANDER FILIPPOV;
and Does 1-15,

                         Defendants.
-------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS AND THEIR COUNSEL MOTION TO RECONSIDER COURT'S OPINION AND ORDER DATED NOVEMBER 15, 2022**

/s/ Igor Litvak
_____
Igor Litvak, Esq.
Attorneys for Defendants
The Litvak Law Firm
1733 Sheepshead Bay Rd., Suite 22
Brooklyn, NY 11235
Tel/Fax: 718-989-2908
Email: Igor@LitvakLawNY.com

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

MULTIPLE MISREPRESENTATIONS TO COURT REGARDING DEFENDANTS'
EMPLOYMENT STATUS AT VALTRON ..................................................... 2

DISCOVERY COOPERATION ........................................................................8

THE LIKELIHOOD THAT THE DEFAULT WOULD HAVE BEEN VACATED IF THE COURT
HAD KNOWN ABOUT DEFENDANTS' EMPLOYMENT STATUS AT VALTRON..................... 9

FAILURE TO RESPOND TO GOOGLE'S REQUEST TO DESCRIBE PRESERVATION
EFFORTS ................................................................................ 10

RECIPROCAL EXCHANGE OF DEVICES ................................................... 11

THE DATE WHEN THE UNDERSIGNED DISCLOSED TO PLAINTIFF THAT DEFENDANT'S
LEFT VALTRON IS MATERIAL ............................................................. 12

OTHER FACTUAL INACCURACIES IN THE COURT'S OPINION RELEVANT TO
IMPOSING SANCTIONS AGAINST DEFENDANTS AND GRANTING DEFAULT JUDGMENT
................................................................................ 13

MONETARY SANCTION AGAINST LITVAK IS NOT WARRANTED ....................................... 16

CONCLUSION ................................................................................ 23

CERTIFICATE OF SERVICE................................................................................24

# TABLE OF AUTHORITIES

**Cases**

Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759 (2d Cir. 1990) .......................................... 16

Burns v. Bank of Am., No. 03 Civ. 1685, 2007 U.S. Dist. LEXIS 40037 (S.D.N.Y. June 4, 2007) .............................................................................................................................. 16

Charles A. Wright & Arthur A. Miller et al., Federal Practice and Procedure § 1336.1 (3d ed. 2013) ................................................................................................................................. 17

DLC Management Corp. v. Town of Hyde Park, 163 F.3d 124 (2d Cir. 1998) .......................... 17

First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Employees Union Local 338, 118 F.3d 892 (2d Cir. 1997) ................................................................................................ 17

Holt v. Nicholas, 2013 U.S. Dist. LEXIS 18821 (E.D. Cal. Feb. 11, 2013) ............................... 20

In re Plaza-Martínez, 747 F.3d 10 (1st Cir 2014) ....................................................................... 17

Little Hocking Water Ass'n v. E.I. du Pont de Nemours & Co., 94 F. Supp. 3d 893 (S.D. Ohio. 2015) ............................................................................................................................................. 20

Marfia v. T.C. Ziraat Bankasi, New York Branch, 100 F.3d 243 (2d Cir. 1996) ....................... 16

Milltex Indus. Corp. v. Jacquard Lace Co., 55 F.3d 34 (2d Cir. 1995) ...................................... 18

Ouellette v. Cardenas, (In re Sony Corp.), 448 F. App'x 85, 87-88 (2d Cir. 2011) .................... 18

Rock v. Enfants Riches Deprimes, LLC, No. 17-cv-2618 (ALC), 2020 U.S. Dist. LEXIS 15081, (S.D.N.Y. Jan. 29, 2020) .............................................................................................................. 21

Sakon v. Andreo, 119 F.3d 109 (2d Cir. 1997) ............................................................................ 17

Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130 (2d Cir. 2007). .................................. 16

United States v. Figueroa-Arenas, 292 F.3d 276 (1st Cir. 2002) ................................................. 17

United States v. Seltzer, 227 F.3d 36 (2d Cir. 2000) ......................................................... 17, 18, 21

Ward v. Wolfenbarger, 2020 U.S. Dist. LEXIS 3405 (E.D. Mich. Jan. 9, 2020) ........................ 20

Wilder v. GL Bus Lines, 258 F.3d 126 (2d Cir. 2001) ................................................................. 18

**Dictionary**

Random House Dictionary of the English Language 304 (2d ed. 1987) ...................................... 19

Defendants DMITRY STAROVIKOV AND ALEXANDER FILIPPOV (hereinafter, "<u>Defendants</u>") and attorney Igor Litvak ("Undersigned") respectfully submit this Memorandum of Law in support of their Motion for Reconsideration under Local Civil Rule 6.3 and Fed. R. Civ. P. 59(e), of this Court's Decision and Order dated November 15, 2022, in which it issued a default judgment against Defendants and imposed monetary sanction in the amount of Plaintiff's reasonable attorneys' fees, costs, and expenses associated with litigating the case against the Defendants since March 14, 2022, assessed jointly and severally against Defendants and their attorney Igor Litvak.

## PRELIMINARY STATEMENT

Defendant and their attorney Litvak respectfully request that this Court reconsider its grant of default judgment against the Defendants and monetary sanction on both Defendants and their attorney Litvak because the Court overlooked curtain factual record and misapplied the governing law regarding the imposition of sanctions against litigants and their counsel.

The Court apparently fully adopted Plaintiff's argument that the alleged misrepresentations/omissions and other conduct are a "coordinated effort of counsel and party" to defraud the Court and Google. Dkt. No. 111 at 25. However, this notion defies logic – if counsel and parties were to conspire to deceive the Court and to abuse the litigation process, they would certainly create a more consistent and inquiry-proof "story" in order to achieve those goals. For example, Mr. Litvak would have stated from the beginning that Defendants stopped working for Valtron to support their subsequent claims that they no longer possess any electronic device to produce in discovery.

Instead, Mr. Litvak, contrary to the potential benefits to the Defendants, submitted Defendants affidavits which stated that Defendants were still working there at the time of the filing of the motion to vacate the entry of default judgment in March of 2022, which later caused

1

all the turmoil that resulted in the motion for sanctions. This obvious inconsistency clearly undermines Court's position that counsel and parties made a "coordinated effort" to deceive the Court and Google, and buttresses Mr. Litvak's position that he was simply mistaken about the status of Defendant's employment in February and March of 2022, when he drafted Defendants' declarations. Similar inconsistency undermines the other alleged "misconducts." In other words, should the Defendants and counsel truly want to deceive the Court, they would have fabricated seamless factual support and coordinated critical dates to explain their lack of discoverable information. Instead, they truly disclosed what they had, but the Court did not believe them and sanctioned them.

As such, Defendants and their attorney Litvak respectfully disagree with the Court's findings and believe the Court based its rulings on grossly incorrect interpretations of the facts and summarily dismissed their credible explanations.

Similarly, the Court misapplied the applicable law and placed monetary sanction on Litvak without any showing of bad faith or wrongdoing on his part or any show that he committed a "violation of a court order or other misconduct that is not undertaken for the client's benefit." All Litvak did was just apprising the Court and the opposing party of information received from his clients to protect their interests in this litigation. In any event, the monetary sanctions imposed by the Court against Defendants and Litvak are grossly disproportionate to their alleged misconduct during this litigation.

## MULTIPLE MISREPRESENTATIONS TO COURT REGARDING DEFENDANTS' EMPLOYMENT STATUS AT VALTRON

The undersigned has **never stated or misrepresented** in any conferences, briefs, pleadings or letters to the Court or in any discussions with Plaintiff's counsel that Defendants still worked at Valtron. Instead, the only place where it was stated **one time** was in the Defendants'

2

signed and submitted declarations in March of 2022, which stated, "I work for Valtron as Software Engineer." The undersigned never relied on that information for any legal arguments in the Defendants' motion to vacate the entry of default or in any other pleadings or proceedings. Notably, in that motion, the undersigned drafted that "Defendants **worked** for Valtrorn LLC as software engineers and the company's products branded Voltonwork and Undefined.team did not target the United States users/market; instead, the software targeted customers in the former U.S.S.R. Republics, India, Indonesia." Dkt. No. 47-1 at 10. This information was provided to explain that Valtron did not target the United States, not for any other proposition. The issue of whether the Defendants still worked for Valtron was not even relevant or material to any legal arguments used in that motion to vacate the default against Defendants.

Moreover, when serving amended initial disclosures on Plaintiff's counsel on June 27, 2022, Defendant's role at Valtron was described as "OOO Valtron Software Engineer." Ex. 1 at 2. However, this did not mean that it was their role presently, instead it was their role during the time covered by the Complaint, from 2019 until December 7th, 2021. See generally, Dkt. No. 5. On the morning of June 27, 2022, during the attorney conference, the undersigned informed Plaintiff's counsel that Defendants no longer worked at Valtron. The amended initial disclosures, which were filed later that day and described the Defendants' role at Valtron as "OOO Valtron Software Engineer," were clearly meant to describe the Defendants' roles, as well as for all other individuals disclosed in the initial disclosures, as those roles existed during the time Defendants were at Valtron and during the time covered by the complaint, and not as of June 27, 2022. In fact, as was described in the July 25 letter to the Court, Dkt. No. 98 at 1-2, Defendants have not even been to Valtron offices since March 2020 and **had no interaction** with any individuals whose last names Plaintiff was demanding. Therefore, the Defendants nor the undersigned could have even known those individuals' roles as of June 27, 2022, the date amended initial

3

disclosures were filed. This clearly shows that any roles described for any Defendant or their co-workers in the initial and amended initial disclosures covered the period described in the Complaint and not as of June 27, 2022.

From mid-February to early March of 2022, the undersigned had multiple detailed discussions with Defendants as to their role at Valtron, including what projects they worked on, including projects related to Extracard and Awmproxy, issues related to stolen account scheme, card fraud scheme, proxy scheme cryptojacking scheme and other schemes alleged in Google's complaint as well as their potential defenses, and not once was the undersigned told that it was in the past and that the Defendants no longer worked at Valtron. Dkt. No. 47-2 at 3-5; Dkt. No. 47-3 at 3-5; see also Dkt. No 47-1 at 7-22. While it is true that when preparing their affidavits, the undersigned never specifically asked Defendants whether they were still employed by Valtron, based on their multiple conversations before March 14, the undersigned was under the reasonable impression based on communications with Defendants that they still worked at Valtron. Moreover, the undersigned prepared Defendants' affidavits that stated, "I work for Valtron" which both Defendants signed while never asking the undersigned to correct that phrase, which only further confirmed to the undersigned that they still worked at Valtron. Undersigned has a right to rely on affidavits signed and submitted to him for filing by his clients.

From March until May 20, 2022, parties were waiting for the Court's decision on the motion to vacate the default, drafting an answer and then negotiating a joint status report, and the issue of the Defendants' employment status never came up and that is why the undersigned never made any further inquiries as to their employment status. After this became an issue in July, the undersigned asked the Defendants why they did not ask the undersigned to correct that phrase in their affidavits. The undersigned was told that Defendants spent most of their time reviewing the legal brief, and they did not notice that error in their March 14 affidavits. In any

event, the Court decided not to conduct a hearing to determine what transpired between Defendants and their counsel and summarily, but erroneously, concluded that they misled the Court.

Contrary to the Court's finding, the undersigned never, by his "**own admission**" conceded that he misrepresented to the Court Defendants' employment status at Valtron. The very first time the undersigned was told by Defendants that they no longer worked at Valtron was on May 20, 2022, and the undersigned informed Plaintiff's counsel about it on June 27, 2022, when they discussed Defendants' employment status for the first time. In fact, the Defendants' statement in the March 14 affidavits, "I work for Valtron as Software Engineer" was so insignificant and never relied on by the undersigned that he did not even remember it was there, which is why he stated during the July 29 court conference

> I don't have the declarations in front of me. I don't remember that was in there. I will have to go back and check, but I don't think -- I think they did mention that they used to work for Valtron, but I don't remember them saying that they still work for Valtron.

Ex. 2 at 4.

While it may have been an error of judgment not to specifically ask the Defendants about their employment status before March 14, the undersigned should not be sanctioned for this error as it was not intentional, and he never made any misleading affirmative statements to the Court or to the opposing counsel which were contrary to his reasonable belief. Furthermore, the issue was not even material since discovery did not even start yet, as there already was a default against the Defendants, and the parties were waiting for a decision on the motion to vacate the entry of default and then drafting an answer.

With respect to the alleged inconsistencies between Litvak's belief that "Defendants worked at Valtron" and the fact that "Defendants alleged in their counterclaim that

Google's actions harmed their 'prospective relationship with their employer," Dkt. No. 132 at 22, when the undersigned was preparing the Defendants' answer, they told him they were suffering negative consequences of being labeled worldwide by Google as cyber criminals. Being an IT professional and being labeled a cybercriminal by the world's largest and most prominent IT company had negative consequences. Defendants had multiple projects in development with Valtron CEO and others that were not related to Valtron, and they wanted to continue those relationships, which they believed were ruined as a result of being named in this lawsuit. Dkt. No. 115 at 4, see also Dkt. No. 126 at 7. This is why the counterclaims referred to "**current and prospective business relationships**." And this is why on June 1, during the Court conference, the undersigned stated that the preliminary injunction would prevent Defendants "**from engaging in normal business activity**" since, by implication, they would be admitting to Google allegations if they agreed to such an injunction, which they did not want to do. This argument was even used in the Defendants' motion opposing default judgment against the Doe Defendants. Dkt. No. 102 at 14. The undersigned counsel believed them and still believes in their explanation. Still, even if the Court does not find this explanation reasonable, it should not be a reason to sanction counsel who was acting on the information provided to him by his clients.

With respect to the location of the Defendants' depositions, contrary to the Court's findings, see Dkt. No 132 at 29, Defendants never resisted depositions, and they never used their concerns about extradition for that purpose. Instead, after being ordered by the Court to obtain their international passports and update the Court on September 16 on those efforts, the Defendants did exactly that. On September 16, 2022, Defendants updated the Court on those efforts, explaining that their application for international passports was denied due to the war in Ukraine and the resulting chip shortage. See Dkt. 121 at 1-2. The issue of being concerned about extradition was alleged by the Plaintiff's counsel, and was denied by the undersigned stating

> I never said such a thing, I was responding to Ms. Harris' questions when I believe I said something to the effect of "of course no one wants to be extradited to the U.S., and my clients are no different," later adding "but it doesn't mean they won't attend depositions or comply with their discovery obligations." I definitely never stated that the "Defendants won't travel to a country with an extradition treaty with the U.S."

Dkt. 116 at 2. Nonetheless, this is a disputed fact that should not be used to sanction anyone, let alone the Defendants' counsel.

With respect to Defendants' offering private keys to Plaintiff, the Court erroneously found that if the Defendants "can access these private keys and produce them to Google, they must do so." Dkt. No. 132 at 31. In fact, it was not stated anywhere that the Defendants can do that at will. Instead, as was explained in the undersigned's declaration and in the Defendants' brief, Dkt. No 125 at 13-16; Dkt. No. 126 at 2-4, Valtron management offered to provide them to Defendants only if the Defendants reached a settlement with Plaintiff. Moreover, the undersigned is at a loss to understand the Court's conclusion that there is some kind of inconsistency "made only a sentence later in … [Defendants] brief – that the Defendants' request for money as part of the settlement offer was not a condition for providing Google with these private keys." Dkt. No 132 at 31. As explained in multiple correspondences with the Court, see Dkt. No 118 at 1-3, Defendants do not have and never did have those private keys and would only be able to get them if Valtron management decided to release them to the Defendants, which they said they would if Defendants settled with Plaintiff. The statement that private keys were not conditioned on the request for money was used to show that there was no extortion, as those were two separate issues, not for anything else, and as such, there is no inconsistency. Regardless, even if the Court does not find Defendant's explanation credible, it is not a reason to sanction them, let alone their attorney, who was acting on the information provided to him by his clients.

As such, the Court's finding with respect to the alleged multiple "misrepresentations" is clearly erroneous and should not be used to sanction the Defendants nor their counsel.

## DISCOVERY COOPERATION

When the undersigned was hired by the Defendants in mid-February, he specifically advised the Defendants about their discovery obligations, including the preservation duty. Defendants assured the undersigned that everything in their possession related to this litigation would be preserved and disclosed to Plaintiff in due course. Any statements or assertions made by the undersigned regarding Defendants' willingness to cooperate with discovery were made based on those assurances. In the early Spring of 2022, the undersigned and Defendants never discussed what exactly they had and what they would turn over to Google because, at this point, they were already in default, and it was unknown if the default would be vacated. This is why this conversation about specific discovery production was left for later, after, and if the default was vacated.

Once the default was vacated, and after the filing of the answer, while preparing a joint status report, the undersigned discovered that Defendants no longer had their laptops because they returned them to Valtron after leaving the company at the end of 2021. But they still assured the undersigned that whatever else was still in their possession and control would be turned over to Google in discovery. Prior to May 20, the undersigned never told Plaintiff's counsel or represented to the Court that Defendants still worked at Valtron or what specific discovery they would be turning over to Google. Any statements by the undersigned regarding Defendants' willingness to cooperate with discovery were made based on Defendants' assurances regarding the same and based on information available to the undersigned at the time. Defendants claimed that they would provide Google with all the discovery available to them and

the undersigned reasonably relied on those representations. As such, Litvak should not be sanctioned for the subsequent issues with discovery as he submitted to the opposing counsel all his clients had provided to him.

**THE LIKELIHOOD THAT THE DEFAULT WOULD HAVE BEEN VACATED IF THE COURT HAD KNOWN ABOUT DEFENDANTS' EMPLOYMENT STATUS AT VALTRON**

In its opinion, the Court states that it is unlikely that the entry of default would have been vacated had the Court known that the Defendants left Valtron at the end of December 2021. Dkt. No. 132 at 19. However, in the Court's decision to vacate the entry of default, there is no mention of the fact that the Defendants continued employment at Valtron was somehow central to Court's decision to vacate the default. Dkt. No. 62. In addition, the undersigned has never told anyone or made any claims ever that Defendants continued to work for Valtron (or what devices, if any, will be turned over to Plaintiff); it was a misunderstanding between the undersigned and his clients which was discovered by the undersigned on May 20. Therefore, since it was not a material or outstanding issue at that time, the undersigned did not believe he was obligated to immediately rush to the Court or Plaintiff's Counsel after learning of it himself.

On May 20, 2022, the undersigned learned for the first time that the Defendants left Valtron at the end of 2021. On June 27, 2022, when speaking with Plaintiff's counsel for the very first time about what discovery Defendants possessed, the undersigned informed Plaintiff's counsel that Defendants recently informed him that they had left Valtron and returned their laptops to Valtron after leaving. The undersigned informed Plaintiff's counsel about it a little over a month after learning of it himself when they discussed anything at all related to specific discovery for the very first time.

Furthermore, when the undersigned was informed on May 20 that Defendants left Valtron, he was told only that the Defendants returned their laptops when their employment

9

ended, but the undersigned was also told that Defendants would provide a list of everything else they had, including any other devices or other ESI. Defendants never told the undersigned on May 20 that they had nothing at all to provide to Plaintiff; they only said that their laptops were returned to Valtron. Otherwise, the undersigned would have notified Plaintiff much sooner, but and that time, he did not see any reason for that. When on June 16 Defendants told the undersigned that they had no other devices or ESI at all, the undersigned did not list any devices or ESI in the initial or amended initial disclosures and informed Plaintiff about it on June 27, 2022, 11 days later, when both counsel discussed it among themselves for the very first time.

Furthermore, the Court's conclusion that Google somehow relied on those misrepresentations when negotiating the discovery plan, Dkt. No. 132 at 23, is not supported by the facts and was not even claimed by Google itself. In fact, and as explained in more detail below, the filed discovery plan does not obligate any party to provide any specific devices, this was a one-sided discovery, and parties never discussed anything about specific devices or whether Defendants will turn over any devices at all or whether Defendants still worked at Valtron.

As such, the Court's finding that Litvak should be responsible for the Defendants' alleged discovery violations is erroneous.

## FAILURE TO RESPOND TO GOOGLE'S REQUEST TO DESCRIBE PRESERVATION EFFORTS

The Court seems to fault the undersigned for failing to respond to Google's request detailing the undersigned preservation efforts. Dkt. No. 132 at 21. However, during the July 29 conference, the Court specifically stated that "if you feel that a response is inappropriate to any particular question or inquiry, you will have a chance to tell me that." Ex. 2 at 19.

This is exactly what the undersigned did by filing a letter with the Court on

August 12, 2022, explaining what happened and stating in the attached exhibit (which was a

letter sent to Plaintiff Counsel on August 8) that "considering the above, I request that King and

Spalding withdraw the remaining questions as Plaintiff is not entitled to them at this stage of the

proceedings." Dkt. No. 132 at 8.

        After the August 12 filing, if the Court felt the undersigned and/or Defendants

still needed to describe his preservation efforts, the Court should have ordered it and they would

have happily complied. But faulting the undersigned for doing exactly what the Court said he

could do, without giving him a chance to comply after explaining his position to Plaintiff and the

Court, is not fair and should not be used to sanction counsel or Defendants.

## RECIPROCAL EXCHANGE OF DEVICES

        The Court states that by not disclosing to Plaintiff on May 31 that Defendants had

already left Valtron, the undersigned counsel assured that the exchange of devices would not be

reciprocal. Dkt. No. 132 at 23. However, the undersigned is unsure how the Court arrived at this

conclusion.

        First, the filed joint status report does not obligate any party to provide any devise

or ESI; the only thing that the filed joint Rule 26(f) report states regarding devices or ESI is that

> the parties anticipate that the scope of discovery will include
> Electronically Stored Information ("ESI"). The parties will request
> ESI in the form or forms that facilitate efficient review of ESI. The
> parties reserve all rights in this regard but affirm their obligations
> under the Federal Rules of Civil Procedure, including as to the
> preservation of relevant evidence.

Dkt. No. 69 at 3. This paragraph does not obligate any party to provide any <u>specific</u> devices or

ESI. In fact, this language was proposed by Plaintiff and readily agreed to by the undersigned.

        Second, on May 20, the undersigned was only told that the Defendants returned

their laptops to Valtron, but also that they will provide the undersigned a list of everything else

they had later on, including any other devices or ESI. So the undersigned still believed that other relevant devices or ESI would or could be turned over, just not the laptops.

Third, as per this Court's Order, this was a one-sided discovery, with Google not having to provide **any discovery at all** to Defendants at this stage of litigation. The undersigned did not disclose or list any devices or ESI in the initial disclosures and then informed Plaintiff counsel on June 27 that Defendants had no other Devices or ESI, 11 days after the undersigned learned of it himself and when parties were discussing this issue for the very first time. After being informed about it, Plaintiff had every opportunity to raise this issue before the Court, which it did.

Therefore, contrary to the Court's finding, the undersigned never tried to "weaponized" discovery rules to "undermine Google's efforts to neutralize the Glupteba Enterprise." Dkt. No. 132 at 23. Instead, the undersigned was operating based on information available to him at the time and appropriately disclosed what he knew to Plaintiff soon after learning of it himself.

## THE DATE WHEN THE UNDERSIGNED DISCLOSED TO PLAINTIFF THAT DEFENDANT'S LEFT VALTRON IS MATERIAL

Contrary to the Court's finding, the undersigned believes that the date when he disclosed to Plaintiff that Defendants left Valtron is relevant and material for the issue regarding sanctions. Dkt. No. 132 at 24. As was confirmed by the undersigned's and Plaintiff's own emails, see Ex. 3 at 2-1, the undersigned informed Plaintiff's counsel about it on June 27, just 11 days after he learned that Defendants had no other devices or ESI and when attorneys discussed this issue for the very first time.

Furthermore, Defendants never alleged "**more than once**" that they worked for Valtron, Defendants only stated it one time in their declarations months earlier, which was an

error they never asked the undersigned to correct, but the undersigned himself never relied on those assertions for anything at all. Prior to June 27, the undersigned, just like the Plaintiff's counsel herself, never disclosed what devices or ESI would be turned over in discovery; this was simply never discussed. Therefore, the negotiation of the joint report could not have been premised on so-called "misrepresentations," since the first time the parties discussed anything related to specific devices was on June 27, 2022, after the filing of the Rule 26(f) report on May 31, 2022.

Finally, as discussed above, the joint report does not obligate any party to disclose any specific devices. Instead, it states general ESI obligations, and the parties "**anticipate**" that discovery will include ESI. On May 31, based on what the undersigned knew at the time, this was an accurate statement, which is why he agreed to it.

Considering the above, the undersigned should not be sanctioned for acting on information that was available to him at the time, and because the undersigned informed the Plaintiff 11 days after learning himself that Defendants had no devices or ESI to provide.

## OTHER FACTUAL INACCURACIES IN THE COURT'S OPINION RELEVANT TO IMPOSING SANCTIONS AGAINST DEFENDANTS AND GRANTING DEFAULT JUDGMENT

Defendants never intentionally misrepresented anything to the Court that would justify sanctions against them. It appears that the Court erroneously relied on multiple factual inaccuracies in reaching its decision to sanction them.

First, the Defendants made a mistake in their affidavits by not asking the undersigned to correct the word "work" to "worked." However, given the circumstances, including their counsel's reasonable, albeit mistaken, belief that Defendants still worked at Valtron, their limited English, and the fact that they reviewed much more closely only the legal brief, which stated "worked at Vatron," this mistake was reasonable and excusable.

Second, as explained above, the counterclaims and the phrase "normal business activity" had nothing to do with them continuing to work at Valtron, as the undersigned was referring to Defendants' general inability to continue work in the IT industry as a result of being called cybercriminals by Google all over the world.

Third, their problems in the Russian IT industry only began to surface after they found out about this lawsuit, specifically in March of 2022. Nowhere on the record was it stated otherwise.

Fourth, the Court relies on the fact that one of the Defendants could not rent an apartment to somehow show that they knew about this case before the end of January since even the landlord had "**general knowledge**" about it. Dkt. No. 132 at 27. However, this is an inaccurate reading of what the undersigned stated. In the undersigned's declaration, he stated, "one of the Defendants could not even rent an apartment as every time someone searched their name on the Internet this case would come up." Dkt. No. 116 at 6. What the undersigned clearly meant is that every time a potential landlord would run a background check when deciding whether to rent an apartment, Google's case would come up. Prior to running a background check, no landlord knew about the Defendants' involvement in the case, and no other landlord had general knowledge about the case prior to running such background checks.

Fifth, the Court states that Defendants should have been put on notice about this lawsuit in December of 2021 because Google was shutting down their servers. Dkt. No. 116 at 27. However, it was never proven that Defendants had access to or controlled any servers. In fact, Defendants always maintained that they were just software engineers at Valtron, who, as a result of the pandemic, worked from home for almost two years before being fired from Valtron at the end of 2021. They completed specific tasks given to them by Vatron CEO and always maintained that they knew nothing about any servers.

Sixth, neither Defendants nor the undersigned ever categorically stated that they can somehow stop the botnet or remove it from the internet. Instead, the undersigned told Plaintiff's counsel that the Defendants "**might be**" able to help Google, but the parties never discussed what that help would entail or how Defendants would be able to do it. In fact, during the June 1 conference, the undersigned specifically stated, "when Ms. Harris just talked about my clients' ability to stop it, what I told the plaintiff's counsel was that they **believe** they can do that. Ex. 4 at 6.

Seventh, Defendants never refused to provide discovery; instead, Defendants produced all the discovery they had in their possession relevant to his lawsuit. If Plaintiff wanted to get something more, it should have filed a motion to compel. If ordered by the Court, Defendants would have complied and provided additional discovery, including their smartphones.

Eight, Defendants have a continued relationship with Valtron's CEO; they never denied that. It was a relationship they wanted to keep, but it did not mean they could just go to Valtron's offices and take and do whatever they wanted without Valtron's permission. Defendants never had any practical ability to get private keys to Bitcoin addresses without permission or cooperation from Valtron, and their September settlement offer had nothing to do with private keys. Instead, Defendants just wanted to be compensated for being labeled cybercriminals by Google, and the resulting reputational harm caused by that label, even Plaintiff's counsel states that in her letter to the court. Dkt. No. 117 at 1.

Lastly, neither Defendants nor the undersigned ever asked Plaintiff to pay the undersigned; instead, Defendants wanted to be reimbursed for the attorney fees they had already paid their attorney.

Considering all the above, the default judgment and sanctions against Defendants

are not warranted here. Rule 37 sanctions must be "just" — the severity of the sanction must be commensurate with the non-compliance. Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 140 (2d Cir. 2007). The sanction of dismissal may be imposed only if the Court (a) finds willfulness, bad faith, or fault on the part of the party refusing discovery, and (b) gives notice that violation of the Court's order will result in a dismissal of the case with prejudice. See Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759, 764 (2d Cir. 1990) (dismissal with prejudice as sanction for abuse of discovery held improper without prior notice), cert. denied, 499 U.S. 943 (1991). In addition, dismissal is appropriate only "after consideration of alternative, less drastic sanctions." Marfia v. T.C. Ziraat Bankasi, New York Branch, 100 F.3d 243, 253 (2d Cir. 1996). As a result, precluding a defendant from contesting liability as a discovery sanction under Rule 37 is "generally disfavored and only to be employed in "extreme circumstances." Burns v. Bank of Am., No. 03 Civ. 1685, 2007 U.S. Dist. LEXIS 40037, at 34 (S.D.N.Y. June 4, 2007).

Here, the record before the Court does not support "willfulness, bad faith, or fault" on the part of Defendants as they produced to Plaintiff all they have. Even assuming, for the sake of argument, that Defendants abused discovery to some extent, which they did not, the Court should have considered an alternative, less drastic sanction, such as preclusion, adverse inference, or even dismissal on summary judgment. Finally, since the Defendants had no familiarity whatsoever with the discovery concept, as it does not exist in the Russian jurisprudence, they might have misunderstood certain discovery obligations even after their counsel's advice; however, the Court should not punish them with draconian sanctions of default and payment of Google's attorney's fees for their honest confusion.

## MONETARY SANCTION AGAINST LITVAK IS NOT WARRANTED

Critically, in this day and age, "sanctions are a badge of reprobation that can haunt an attorney throughout his or her career. They can have ramifications that go far beyond

the particular case." In re Plaza-Martínez, 747 F.3d 10, 14 (1st Cir 2014)(citing Charles A.

Wright & Arthur A. Miller et al., Federal Practice and Procedure § 1336.1 (3d ed. 2013)

(suggesting that courts "may wish to consider the extrajudicial impact of sanctions and sanction

proceedings on the reputation of attorneys and firms")).

      Monetary sanctions against attorneys are appropriate only where the attorney has

acted in bad faith in the actions that led to the lawsuit or in the conduct of the litigation, or where

the attorney has negligently or recklessly failed to perform his responsibilities as an officer of the

Court. See United States v. Seltzer, 227 F.3d 36, 40-42 (2d Cir. 2000); First Nat'l Supermarkets,

Inc. v. Retail, Wholesale & Chain Store Food Employees Union Local 338, 118 F.3d 892, 898

(2d Cir. 1997) (reversed the district court's grant of attorneys' fee to defendant because plaintiff's

substantive arguments were not meritless). Still, "a judge's power to sanction an attorney is not

unbridled." United States v. Figueroa-Arenas, 292 F.3d 276, 279 (1st Cir. 2002).

      Normally, courts in this Circuit have required "a finding of bad faith for the

imposition of sanctions under the inherent power doctrine." See, e.g., DLC Management Corp. v.

Town of Hyde Park, 163 F.3d 124, 136 (2d Cir. 1998) (finding of bad faith required when an

attorney has acted on behalf of his or her client in such a way that evidences a "**conscious**

disregard of . . . discovery obligations")(emphasis added), Sakon v. Andreo, 119 F.3d 109, 114

(2d Cir. 1997) (holding that award of attorney's fees was not justified because Court found only

that sanctioned party acted with "excusable neglect"), Milltex Indus. Corp. v. Jacquard Lace Co.,

55 F.3d 34, 41 (2d Cir. 1995)( reversing sanction imposed on attorney because there was

insufficient evidence of bad faith). In other words, the Second Circuit explained that "we found

bad faith to be a prerequisite for imposition of sanctions where the court sanctioned an attorney

by reason of excesses in conduct of the sort that is normally part of the attorney's legitimate

efforts at zealous advocacy for the client." Seltzer, 227 F.3d. at 40. The Second Circuit has

cautioned that "if we  . . . to permit costs against counsel 'as of course,' sanctions could be placed on attorneys without any showing of bad faith or wrongdoing on their part. Such an interpretation would, in our opinion, unduly deter attorneys from representing clients who possess non-frivolous claims." Wilder v. GL Bus Lines, 258 F.3d 126, 130 (2d Cir. 2001); Ouellette v. Cardenas, (In re Sony Corp.), 448 F. App'x 85, 87-88 (2d Cir. 2011)(while noting that "[w]e agree with the district court that we expect counsel to do better," vacating sanctions against attorney because, *inter alia*,  district court found that counsel did not act in bad faith).

In Seltzer, noting "a split among the circuits and even within some circuits evidencing confusion about a district court's power to impose sanctions under the inherent powers doctrine," the Court carved out the only exception to this rule, stating that "when the district court invokes its inherent power to sanction misconduct by an attorney that involves that attorney's violation of a court order or other misconduct that is not undertaken for the client's benefit, the district court need not find bad faith before imposing a sanction under its inherent power." Seltzer, 227 F.3d at 41-42.

Here, the Court found that Mr. Litvak breached "a duty of candor to the Court" when he "rather than promptly alerting Google or the Court when he alleges he learned that the Defendants no longer worked at Valtron . . . [he] continued to exploit that misrepresentation in his discovery negotiations with Google, seeking to induce an exchange of electronic devices that he knew would not be reciprocal." Dkt. No. 132 at 38-39. Moreover, according to the Court,

> Litvak has continued to insist that the Defendants have no access to information at Valtron, even while he used their access as leverage in settlement discussions," and "Litvak does not explain how he could have discussed entering the case and informed his clients about the duty to preserve and produce relevant information without learning about the Defendants' relationship to Valtron and the location of their work laptops.

Id. at 39. The term "not candid" implies a misrepresentation (or, at least, a withholding) of

pertinent information. See Random House Dictionary of the English Language 304 (2d ed. 1987) (defining candid as "frank; outspoken; open and sincere"). During this litigation, Mr. Litvak, has done neither – he neither misrepresented material facts nor withheld important information simply because he was under reasonable impression based upon communications with Defendants that they were working at Valtron at the time when he drafted the motion to vacate the entry of default motion in March of 2022. This is why he made a draft of affidavits for the Defendants' review which stated that the Defendants "work at Valtron." He submitted the draft to them, and they did not catch that "work" statement and signed the affidavits, which were attached to the motion to vacate the entry of default. It is important to note that the issue of whether they were still working at Valtron was not relevant for the purposes of that motion.

From March until May of 2022, this issue never came up in this matter, and Litvak did not make any further inquiries as to their work status, continuing to believe that they still worked there. Moreover, during that period, Litvak never made any affirmative representation to the Court or Plaintiff regarding the Defendants' work status. The first time Defendants informed Litvak they left Valtron was on May 20, 2022, when Litvak was preparing Defendants' initial disclosures, and Litvak informed Plaintiff about this fact on June 27, when counsel were discussing deficient initial disclosures and spoke about specific devices for the first time. While it could have been an error of judgment not to make a specific inquiry about Defendants' work status before May 20, Litvak should not be sanctioned for this error as it was not intentional, he never made any misleading affirmative statement that was contrary to his reasonable belief, and the issue was not material since parties were awaiting a decision in the motion to vacate the default against the Defendants and it was unknow at this if discovery would ever start.

In other words, Litvak's inadvertent error, which he acknowledged to the Court,

19

does not warrant monetary sanction against him. See, e.g., Holt v. Nicholas, 2013 U.S. Dist. LEXIS 18821, at 9 (E.D. Cal. Feb. 11, 2013) ("Defendants' inadvertent error is not the type of misrepresentation that would justify sanctions"); Ward v. Wolfenbarger, 2020 U.S. Dist. LEXIS 3405, at 12 (E.D. Mich. Jan. 9, 2020) ("alleged misrepresentations of fact do not warrant imposition of sanctions under Fed. R. Civ. P. 11, where the misrepresentations might have resulted from mistake or inadvertence, and the movant does not prove that the alleged misrepresentations were intentional");  Little Hocking Water Ass'n v. E.I. du Pont de Nemours & Co., 94 F. Supp. 3d 893, 913 (S.D. Ohio. 2015) ("An inadvertent error does not amount to an intentional misrepresentation that warrants sanctions.")

With respect to the alleged "exploitation" of "misrepresentation" that Defendants no longer worked at Valtron in his "discovery negotiations with Google to induce an exchange of electronic devices that he knew would not be reciprocal," since Litvak reasonably believed, although mistakenly at the time of those discovery negotiations, that Defendants will provide other devices and ESI, just not their laptops, he could not "exploit" that alleged misrepresentation. Moreover, as discussed in detail above, the discovery was not "reciprocal."

Finally, Litvak did instruct Defendants about their duty to preserve and produce relevant information through the cause of discovery shortly after entering his appearance in this case. If the Court felt the undersigned still needed to describe his preservation efforts, the Court should have asked for clarification or ordered a hearing. In any event, without any further inquiry from the Court, that alleged failure to instruct should not be sanctionable.

As such, the Court misapplied the applicable law and placed monetary sanction on Litvak without any showing of bad faith or wrongdoing on his part. Similarly, the Court misapplied the applicable law by imposing costs against Litvak because he "negligently or recklessly failed to perform his responsibilities as an officer of the court," Dkt. 132 at 38, since

the records before the Court do not support the fact that Litvak committed a "violation of a court order or other misconduct that **is not undertaken for the client's benefit**." Seltzer, 227 F.3d at 41-42.  All Litvak did was just apprising the Court and the opposing party of information received from his clients to protect their interests in this litigation. Thus, Litvak did not commit a "violation of a court order or other misconduct that is not undertaken for the client's benefit."

      In any event, the monetary sanctions imposed by the Court against Litvak are grossly disproportionate to his alleged misconduct during this litigation. See, e.g., Rock v. Enfants Riches Deprimes, LLC, No. 17-cv-2618 (ALC), 2020 U.S. Dist. LEXIS 15081, at 10 (S.D.N.Y. Jan. 29, 2020)("sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person . . . ."). Undersigned is practically a solo practitioner who represents foreign individuals with prohibitively limited resources, living in a country engaged in a war against the West, where Google has no ability to enforce its judgment. Realistically, Litvak will be fully responsible for the full amount of Goggle's colossal attorney's fees. This judgment exposure would certainly ruin Litvak financially and mentally, as the fruits of many years of hard work will be destroyed overnight.

      Moreover, the Court's decision to impose "Plaintiff's reasonable attorneys' fees, costs, and expenses associated with litigating the case against the Defendants [and Litvak] since March 14, 2022," is unjustified and fundamentally unfair as Plaintiff is its motion for sanctions only sought reasonable expenses to compensate Google for "**needless discovery efforts**," Dkt. No. 111 at 25 (emphasis added), which started **many months later**, and not for the cost of **the whole litigation**, including the briefing on the default judgment and opposing the default judgment against the Doe Defendants in the Winter, Spring, and Summer of 2022.  Said costs and fees have nothing to do with "needless discovery efforts."

      Last but not least, shortly after being retained by Defendants, the war in Ukraine

started, which significantly affected the security and well-being of Litvak's family in Ukraine. The undersigned specifically mentioned it during the March 1 conference stating, "[o]n top of that, I'm not sure if it's relevant for the Court or not, I'm from Ukraine. Obviously, there is a war there, so I'm dealing with that situation with my family, trying to make sure they are safe. Ex. 5 at 7.

Then on May 2, 2022, the undersigned welcomed the birth of his first child, a daughter. Dealing with getting his family out of Ukraine while also getting ready to start a family may partially explain why the undersigned had a lapse in judgment and did not specifically clarify with Defendants in February and in early March about their employment status at Valtron.

Considering the above and the fact that the undersigned reasonably believed that Defendants still worked at Valtron when preparing their affidavits, which Defendants never asked him to correct, monetary sanction of hundreds of thousands of dollars against the undersigned, if such were to be ordered by the Court, would be unfair and draconian as it would leave him bankrupt and destroy his legal practice.

Given the circumstances of this case, the undersigned's honest mistake he admitted in his Court's filings, and the complicated nature of dealing with clients from one of the most hated countries in the world, Litvak simply does not deserve being sanctioned as he zealously represented humble individuals against one of the most powerful companies in the world, which was represented by an army of top-notch legal professionals. While he did his best, his performance, experience, litigation skills, and due diligence in handling the case could not be comparable with those of Goggle's counsel. These monetary sanctions against him would give the wrong message to the legal community of solo practitioners and small law firms to avoid even trying to litigate with such financial and legal behemoths. If the Court truly believes that

Mr. Litvak's performance is deficient, it should have considered imposing a less severe sanction, such as an admonishment and/or a warning.

It should be noted that the Court already imposed the ultimate sanction of entry of a default judgment against Defendants; thus, any additional monetary sanction would be a duplicate punishment. Therefore, pure fairness warrants that the Court reconsiders its grant of monetary sanction against the defendants and the undersigned.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court reconsider its grant of default judgment against Defendants and monetary sanction on both Defendant and their attorney Litvak.

Dated: November 28th, 2022
        Brooklyn, New York

Respectfully Submitted,

/s/ Igor Litvak
_____
Igor Litvak, Esq.
Attorneys for Defendants
The Litvak Law Firm
1733 Sheepshead Bay Rd., Suite 22
Brooklyn, NY 11235
Tel/Fax: 718-989-2908
Email: Igor@LitvakLawNY.com

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the above document to be served on counsel of record for

Plaintiff by filing it via the Court's CM/ECF system on this day, November 28th, 2022.

/s/ Igor Litvak____
Igor Litvak, Esq.

24