M612GooC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  GOOGLE, LLC,

4                 Plaintiff,              New York, N.Y.

5          v.                             21 Civ. 10260 (DLC)

6  DMITRY STAROVIKOV, ALEXANDER
   FILIPPOV, and DOES 1-15,
7
                 Defendants.
8
   ------------------------------x        Conference
9
                                          June 1, 2022
10                                         2:30 p.m.

11 Before:

12                   HON. DENISE COTE,

13                                         District Judge

14

15                    APPEARANCES

16

17 KING & SPALDING, LLP
        Attorneys for Plaintiff
18 BY:  LAURA E. HARRIS
        ANDREW Z. MICHAELSON
19      CHRISTOPHER J.S. MEYER

20

21 THE LITVAK LAW FIRM, PLLC
        Attorneys for Defendants Starovikov and Filippov
22 BY:  IGOR B. LITVAK

23

24

25

                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

M612GooC

```
1              (Case called)

2              THE DEPUTY CLERK:  Is counsel for plaintiff ready to

3     proceed?

4              MS. HARRIS:  Yes, your Honor.

5              THE DEPUTY CLERK:  Please state your appearance for

6     the record.

7              MS. HARRIS:  Laura Harris, from King & Spalding, for

8     Google, and I am joined by Andrew Michaelson and Christopher

9     Meyer, also from King & Spalding.

10             THE DEPUTY CLERK:  For the defendant?

11             MR. LITVAK:  Igor Litvak, for Dmitry Starovikov and

12    Alexander Filippov.

13             THE COURT:  Good afternoon, everyone.

14             I want to let you know that under our COVID protocols

15    if you wish to address me without your mask you may do so from

16    the podium.  It is up to you whether to stay where you are or

17    to use the podium.

18             This is our initial conference in this case, and thank

19    you for the Rule 26(f) submission which I received yesterday

20    and I have had a chance to review.

21             This is a case in which Google seeks a permanent

22    injunction and, as I understand it from yesterday's report, the

23    defendants are not going to consent to that injunction.

24             I have a few questions, and then I will hear from the

25    parties.
```

M612GooC

1          Ms. Harris, I take it this is a nonjury case at this

2     point since all you are seeking is an injunction.  Am I right?

3          MS. HARRIS:  Yes, your Honor.

4          THE COURT:  And you agree with that, Mr. Litvak?

5     Mr. Litvak, you agree with that?

6          MR. LITVAK:  I'm sorry, your Honor.  I didn't hear

7     you.  Yes, I do agree with that, your Honor.

8          THE COURT:  Thank you so much.

9          Excuse me one second.

10          (Pause)

11          THE COURT:  And the report from the parties describes

12     two phases of discovery, and the plaintiff seeks a right to

13     amend or an opportunity to amend 30 days after that first phase

14     of discovery concludes.  That first phase of discovery, as I

15     understand it, is addressed principally to identifying the John

16     Does.

17          Do I understand correctly, Ms. Harris?

18          MS. HARRIS:  That's right, your Honor.

19          THE COURT:  The report also reflects that the parties

20     anticipate submitting to me a confidentiality agreement and an

21     ESI protocol.  At least I understand that you want me to sign

22     those after you negotiate them, am I right, Ms. Harris?

23          MS. HARRIS:  That's right, your Honor.

24          THE COURT:  Okay.  So we will set a schedule for those

25     two documents, as well.

M612GooC

1          But at this initial point why don't I give the parties

2     an opportunity to be heard?  Ms. Harris, is there anything that

3     you wanted to indicate to me?

4          MS. HARRIS:  Yes, your Honor.  Thank you.

5          If I could just bring your Honor up to speed on the

6     conversations that the parties have had pursuant to your notice

7     setting today's conference.  We asked defendants whether there

8     was affirmative injunction that they would consent to,

9     particularly in light of their representations that all of

10    their business activities were legal and that they had no

11    knowledge of illegal activity that we have detailed in our

12    complaint and TRO, and they have repeatedly indicated that they

13    are willing to cooperate.  Defendants have demurred,

14    essentially, including in the immediate aftermath of your

15    Honor's order, indicated that they wanted to file their answer,

16    that they -- notwithstanding their interest in settling.  And

17    we have asked them what it is in particular that they object to

18    or wish to alter in the preliminary injunction that's currently

19    entered and whether they would object to an entry of a

20    permanent junction just as to the Does.  And again, your Honor,

21    I think our confusion and our frustration comes from the fact

22    that, notwithstanding their insistence that their business

23    activities are legal, notwithstanding -- although they have

24    represented that they don't know whether others in their

25    business may be up to illegal activity, we don't have a sense

M612GooC

1   of what is objectionable or what they seek to gain.  And I

2   think it is difficult for us to determine whether there is any

3   non-litigation resolution that's possible given the difficulty

4   that we have had in figuring out whether there is an

5   alternative to the preliminary injunction that's been entered

6   or what they would seek to change about that injunction.

7           I think also, your Honor, they have -- we are confused

8   by the repeated offers for cooperation and the representations

9   that they have the ability to take the malware off the

10  Internet, and I think that's a paraphrase of what we have heard

11  from defendants' counsel.

12          THE COURT:  To take the matter?

13          MS. HARRIS:  The malware.

14          THE COURT:  Oh, the malware.

15          MS. HARRIS:  Exactly, off the Internet.  They have

16  said that Google does not have the ability to eliminate

17  Glupteba without their assistance.

18          THE COURT:  Yes, I think you are going to have to

19  spell that term for the court reporter.

20          MS. HARRIS:  I'm happy to that.  It is M-A-L --

21          (Court reporter confers)

22          MS. HARRIS:  G-L-U-P-T-E-B-A, off the Internet without

23  defendants' assistance.  And we are obviously happy to litigate

24  and try to get -- to get the permanent injunction through

25  litigation, but I think the inherent conflict in defendants'

M612GooC

| | |
|---|---|
| 1 | representations that, on the one hand, their activities are |
| 2 | entirely legal and, on the other, that their cooperation is |
| 3 | required to remove the botnet or the malware that creates the |
| 4 | botnet, rather, leaves us in a little bit of a Catch-22. |
| 5 | THE COURT:  Thank you. |
| 6 | Mr. Litvak, have you looked at the terms of the |
| 7 | preliminary injunction? |
| 8 | MR. LITVAK:  Yes, your Honor.  I did look at the terms |
| 9 | of preliminary injunction, and in term when it comes to |
| 10 | permanent injunctions, my client not willing to consent to that |
| 11 | for various reasons. |
| 12 | I also want to clarify some -- |
| 13 | THE COURT:  I'm sorry.  Is there a particular passage |
| 14 | in the preliminary injunction that your client is not willing |
| 15 | to consent to? |
| 16 | MR. LITVAK:  Yes, your Honor.  Because what the Google |
| 17 | calls a malware my clients believe is a legal software.  We |
| 18 | don't even know if we are talking about the same thing.  So |
| 19 | there is so much disagreement.  What Google calls a malware, my |
| 20 | clients don't know if that's what they are working with. |
| 21 | Now when the plaintiff, when Ms. Harris just talked |
| 22 | about my clients' ability to stop it, what I told plaintiff's |
| 23 | counsel was that they believe they can do that.  And, yes, they |
| 24 | do want to resolve this case and settle with Google, but right |
| 25 | now we are not ready to do that because we have to -- we need |

M612GooC

1    to do some discovery first.  So this way when we do settlement,

2    we know what we are settling, and my clients are not ready to

3    do it right now, your Honor.  There is no confusion.  I think

4    this case will settle eventually, but I think we need to engage

5    in discovery to get there.

6        THE COURT:  So what specific discovery do you need in

7    order to resolve this case?

8        MR. LITVAK:  Your Honor, it's a complex case.  I am

9    going to need to see exactly the software that they are talking

10   about.  Other issues, I mean, we will see.  Right now in the

11   stage where we are submitting initial disclosures, so I'm still

12   working on making a discovery demand once we get to the second

13   phase.  But we will need discovery, your Honor, in this very

14   complex case to resolve it.

15       THE COURT:  So it is unclear to me, Mr. Litvak, what

16   precise discovery you need.  If your clients and you are

17   representing on behalf of your clients that they do not want to

18   engage in any illegal activity and would consent to an

19   agreement not to engage in illegal activity, it sounds like you

20   just need a description of what that illegal activity is.

21       Do I understand your position correctly?

22       MR. LITVAK:  No, your Honor.  Because what Google

23   calls illegal activity my clients believe is legal.  So that's

24   why we have the disagreement.  And I talked about it in my

25   motion to vacate the motion for default judgment.  I mean to --

M612GooC

1   yeah, vacate the notice for default judgment.  I talked about

2   it.  All those things that Google claims in its complaint that

3   my clients' engaged in all this illegal activity, wire fraud,

4   ad fraud, this type of fraud.  My clients don't know -- don't

5   know nothing about that.

6           THE COURT:  So, Mr. Litvak, that is a different kind

7   of statement.  A statement that we did not engage in wire

8   fraud, to take one example, is a statement of we have not

9   committed any violation of law.  A statement that we dispute

10  that wire fraud was occurring is a different kind of statement.

11          Do you understand what I am saying?

12          MR. LITVAK:  Yes, your Honor.  When I was referring to

13  the things that are stated in the complaint, the ID fraud

14  scheme, the ad fraud scheme, there is all those things that

15  Google is talking about.  It's just, according to my clients,

16  not true, those factual things that Google is alleging are just

17  not true.

18          THE COURT:  What is not true?

19          MR. LITVAK:  That they engaged in this activity.

20          THE COURT:  So I want to make a distinction between a

21  defendant saying "I was not involved in the crime" and a

22  defendant saying "I was very involved in the activity and the

23  activity I was involved in does not constitute a crime."

24          MR. LITVAK:  Your Honor, they say both.  That's what

25  they say.

M612GooC

1          THE COURT:  So you need discovery from Google to

2     convince you that a crime occurred.

3          MR. LITVAK:  Yes.  I mean, Google is making these

4     allegations in its complaint that my client engaged in all this

5     types of various different activities.  Okay.  Show it to us.

6     What are you talking about?  Show us.  Show us what activities.

7     Show us the evidence.  That's why we are requesting, your

8     Honor, discovery in this case.

9          THE COURT:  And once Google shows you evidence that a

10    crime was committed, then your client's position will be what?

11         MR. LITVAK:  I have no idea what they are going to

12    show to us.  Let them first show it to us.  I don't want to

13    prejudge my client's position.  Based on what we see in the

14    complaint, just looking at the complaint, my clients are

15    stating to me that they have never engaged in any illegal

16    activity and the activity that they did engage in was not

17    illegal.

18         THE COURT:  That may be, and I understand that it is

19    their position, but that is still not necessarily a reason not

20    to consent to a permanent injunction.  Right now there is a

21    preliminary injunction in place that says you may not commit a

22    crime.  Your clients believe they aren't committing a crime.

23    So the preliminary injunction has no impact on their activity

24    according to your defendants, am I right?

25         MR. LITVAK:  Correct.

M612GooC

1          THE COURT:  So if a permanent injunction was issued,

2    again saying as a permanent matter you may not commit a crime,

3    your clients again would take the position that kind of order

4    is fine because we haven't engaged in a crime and we don't want

5    to engage in a crime in the future.  Am I right?

6          MR. LITVAK:  Well, just -- your Honor, not exactly,

7    because the Google will use the permanent injunction to go

8    after them, go -- you know, they using this injunction to, you

9    know, close out different domain names.  They are sending this

10   preliminary injunction to various technology companies.  It's

11   preventing my clients from engaging in normal business

12   activity.  They tried -- they closed the e-mails.  They are

13   closing everything.  And they are using this as a weapon to

14   basically go after my clients.  So even if they agreed to

15   permanent injunction, the Google will still continue to go

16   after them.

17         THE COURT:  So let me ask, are your clients willing to

18   participate in discovery in this litigation?

19         MR. LITVAK:  My clients?  Of course, yes.

20         THE COURT:  So they are willing to produce documents?

21         MR. LITVAK:  100 percent.

22         THE COURT:  They are willing to be deposed?

23         MR. LITVAK:  100 percent.  It's --

24         THE COURT:  They are willing to come to this country

25   and stand trial?

M612GooC

```
1          MR. LITVAK:  Well, in terms -- the issue in terms of
2    the deposition, the Google, this is something that came up in
3    the last few days, they want them -- they want to depose them
4    in person.  The issue is, my clients, there is no way for them
5    to come physically to the United States, at least right now.
6    Because, first of all, because of the war in Ukraine, there is
7    no flights, sanctions, there is no way for them to get a visa.
8    The U.S. Embassy in Moscow is closed.  So in terms of
9    depositions, yes, they are willing to sit down for deposition
10   first phase and for the second phase.  But what we would hope
11   is for that to take place virtually because I think that would
12   be the only way to do it, at this stage at least.
13         THE COURT:  Well, counsel can talk about locations for
14   depositions.  They don't necessarily have to be either in
15   Russia or in America.  There can be neutral territory for the
16   depositions.  But the trial will be in America.  Are your
17   clients willing to travel to America for the trial?
18         MR. LITVAK:  Yes, if they can -- if there is a way for
19   them to get here, why not?  Yes.  They just have to have a way
20   to get here.  They need to have a visa, obviously.  Without a
21   visa, they cannot come.  There is no way to get a visa.  And
22   also because of the war in Ukraine, there is nothing flying,
23   like, directly at least as far as I know.  It's very
24   complicated.  Hopefully this situation will improve in the near
25   future.
```

M612GooC

1          THE COURT:  So I notice from the 26(f) report that you

2     seek discovery of Google's investigation, at least I believe

3     that is how it was described.

4          MR. LITVAK:  Well, your Honor, yes.  I did not want to

5     limit myself right now at this stage to what discovery we are

6     going to be seeking.  It's a very complex case.  It involves a

7     lot of technical data.  So, yes, that information that Google

8     has related to the investigation might be helpful to tell us --

9     might be helpful for our defenses, correct.

10          THE COURT:  Well, I don't think you will have a right

11     to discovery of Google's investigatory files, if that's what

12     you intend to seek.  But of course you have a right to

13     discovery under various rules, under the Federal Rules of Civil

14     Procedure, and you have a right to understand Google's theories

15     and the evidence that it is going to rely on at any trial.  You

16     have extensive discovery rights.  But I would want to make sure

17     that your clients are also willing to participate fully and

18     completely in discovery here.

19          MR. LITVAK:  Yes.  I confirmed it with them many

20     times.  They are ready to participate.  They are ready to come

21     for the deposition.  That is not an issue.  The only issue,

22     your Honor, as I said before, with the deposition, how we are

23     doing it, what country.  Otherwise, they are ready to go.

24          THE COURT:  Okay.  And the issue about undergoing a

25     deposition in America is you don't know how they could get a

M612GooC

1    visa or travel here.

2            MR. LITVAK:  Yes.  I don't know how they can get a

3    visa here.  I don't even know if they can leave Russia right

4    now, given that there is a war in Ukraine and they are that

5    military age.  I don't know.  I mean, Google, I will discuss

6    all of those issues with Google's counsel and hopefully we can

7    find a compromise.

8            THE COURT:  Excuse me one second.

9            (Pause)

10           THE COURT:  So I may be wrong, but I think there may

11   be a disconnect between the wording of the preliminary

12   injunction and what the consequence to your clients would be

13   and your reasons for not consenting, but I think those

14   discussions are best conducted before a neutral party, someone

15   other than me, since this is a nonjury proceeding.  I will

16   manage discovery, I will manage the schedule, but to facilitate

17   conversations that may involve a settlement of this litigation,

18   we are going to have to find a neutral party.  I can refer you

19   to a magistrate judge, which is Magistrate Judge Figueredo, or

20   a mediator who can supervise those discussions at the right

21   point.

22           So let's just flesh out a schedule here and then

23   figure out when it is helpful for the parties to have those

24   settlement discussions.  I am looking at your Exhibit A, the

25   proposed schedule that you attached to your Rule 26 report, and

M612GooC

1    it reflects initial disclosures being served June 10, and

2    that's just fine.  And one week later, Google is serving its

3    discovery requests for the first phase of fact discovery.

4    That's just fine.  I am not quite sure, Ms. Harris, what you

5    anticipate the length of that first phase of fact discovery

6    being.

7            MS. HARRIS:  Your Honor, we wanted -- I think that's

8    because we have not given an end date, but we wanted to give a

9    little bit of flexibility in recognition of the fact that we

10   are going to be pursuing a number -- or a decent amount of

11   third-party discovery in addition to discovery *vis-à-vis*

12   defendants who want to also provide for a little bit of

13   flexibility to allow this deposition question to sort itself

14   out.  I think our hope is that we can proceed as quickly as

15   possible.  We would like for that phase to be no more than a

16   couple of months.  And we are happy to set a provisional date

17   with the recognition that some of this may be fluid depending

18   upon how that initial phase proceeds.

19           THE COURT:  Well, I think what you are suggesting

20   won't work.  Your proposal is for the close of fact discovery

21   to be October 3.  So if the first phase takes several months,

22   that leaves no time for the second phase, as you have defined

23   it, if that phase is to close October 3.

24           MS. HARRIS:  We were hoping that we could complete

25   that initial phase in, you know, two months, your Honor, and

M612GooC

1   then have a separate -- or the second phase to be no more than

2   two or three months, as well.  But if your Honor would like to

3   extend the discovery schedule, we have no objection.

4           THE COURT:  No, I don't want to extend the discovery

5   schedule.  I am saying that the second phase has to start

6   sooner rather than later.  You need to see the defendants'

7   requests.  He needs to see -- both defendants need to see your

8   requests.  They need time to produce documents.  You need time

9   to produce documents.  I'm not quite sure what the phasing of

10  discovery accomplishes here.

11          MS. HARRIS:  Our intent, your Honor, is that, to the

12  extent there are additional defendants who should be party to

13  this case, we wanted to avoid any duplication of effort with

14  that second merits phase that would hypothetically be relevant

15  to any additional defendants that we would name.

16          THE COURT:  Well, that I think is easily dealt with.

17  We won't have depositions until that first phase is completed,

18  and to the extent someone tries to make duplicative requests, I

19  can deal with that.

20          MS. HARRIS:  And I think if your Honor is comfortable

21  with that, then we are happy to proceed along those lines.  The

22  only issue with respect to depositions is that we would like to

23  proceed with the defendants' depositions earlier rather than

24  later to the extent that they have knowledge of parties -- or,

25  you know, Doe defendants who might be relevant as well.

M612GooC

1          THE COURT:  And as I understand it, the defendants are

2     consenting to two sets of depositions—one for the first phase

3     and one for the second phase.  Am I right?

4          MS. HARRIS:  That's my understanding, your Honor.

5          THE COURT:  So have the parties explored a neutral

6     country for the depositions to occur in?

7          MS. HARRIS:  We have -- we have requested that

8     defendants make themselves available in New York and to the

9     extent that they contend that they are unable to come to

10    New York that they, of course, provide evidence of that and

11    suggest a neutral country, as your Honor suggested.  Mr. Litvak

12    hasn't provided us with the names of those countries.  We have

13    supplied a few alternatives ourselves, but we are hopeful

14    that -- we are hopeful that we will get there.

15         THE COURT:  Well, can the defendants, who are citizens

16    and residents of Russia, obtain a visa to come to New York?

17         MS. HARRIS:  My understanding is that that is still

18    feasible.  Mr. Litvak contends that it is not.  And to the

19    extent that it isn't and he is able to produce evidence of

20    that, of course, you know, that is a considerable barrier.  But

21    as your Honor knows, this is not unusual.  There are third --

22    depositions take place all over the world, and there are still

23    countries who are -- where Russian nationals are able to travel

24    currently who also provide 404 American depositions.

25         THE COURT:  So you gave Mr. Litvak a list of countries

M612GooC

1   other than the United States in which the defendants'

2   depositions could occur?

3         MS. HARRIS:  We have provided at least -- at least two

4   to my recollection, yes.

5         MR. LITVAK:  No.

6         THE COURT:  Okay.  So today is Wednesday, June 1.  I

7   am happy for you to use my jury room after this conference, but

8   I would like a letter from the parties by noon on June 3, this

9   Friday, indicating what you have agreed to as the location for

10   the defendants' depositions or, if you are unable to reach an

11   agreement, your positions, each of your positions on where

12   those should occur.  So let's just get this worked out this

13   week.

14         MS. HARRIS:  That's very helpful, your Honor.  Thank

15   you.

16         THE COURT:  And if there are any discovery disputes as

17   we go along here, feel free to write me a letter no longer than

18   two pages.  I will get you on the phone and hear you out and

19   give you a ruling.

20         I am going to use this structure of the first phase of

21   discovery to indicate when the time to amend as of right will

22   conclude, and that will conclude July 9 -- I'm sorry, July 29.

23   That is the time to amend or join additional parties; and after

24   that date, the Rule 16 standard will apply of good cause and

25   diligence.  So that will give you roughly two months for this

M612GooC

first phase of discovery for amendment of pleadings.

But meanwhile, you should begin your discovery full
bore ahead with respect to the merits of the case, making your
document demands and initial interrogatory requests of each
other.  It is important to actually see that the defendants are
going to cooperate here in discovery, and of course the
defendants have a right to take discovery of Google and Google
has a right to take discovery of the defendants.

And then we will use your suggested date of October 3.
I am going to move that to a Friday schedule, so that will be
September 30 for the close of fact discovery.

Then expert reports by the party bearing the burden of
proof will be due November 4, rebuttal reports December 9,
reply reports January 6, a Friday.

There will be no summary judgment motion.  This is a
nonjury proceeding, and so we will move directly to the
pretrial order.  The pretrial order in this nonjury case will
be due February 17 of 2023, and we will choose a trial date in
March.  So this trial will proceed on March 14 of 2023.

I would expect that this case may be ripe for
settlement discussions after the defendants are deposed on the
first occasion and after the defendants have formulated their
initial interrogatories and document demands and any disputes
about those may be resolved.  So looking at your schedule, I
expect the defendants' first deposition will occur later this

M612GooC

1    month or in early July, so I am going to suggest that

2    settlement discussions occur in July or August of this year.

3           But let me get a sense from counsel if that schedule

4    sounds about right.  Ms. Harris?

5           MS. HARRIS:  That works for plaintiffs, your Honor.

6           THE COURT:  Mr. Litvak?

7           MR. LITVAK:  That work for the defense.

8           THE COURT:  Would you consult with each other,

9    Ms. Harris and Mr. Litvak, and tell me if you prefer a

10   reference to a mediator or to Magistrate Judge Figueredo for

11   those settlement discussions?

12          MS. HARRIS:  We are happy to confer and let your Honor

13   know.  Right now?

14          (Counsel confer)

15          MS. HARRIS:  We are happy to proceed before the

16   magistrate judge, your Honor.

17          THE COURT:  Thank you.  So I am going to ask you to

18   contact Magistrate Judge Figueredo's chambers by this Friday,

19   within the next two days, to arrange for a date for settlement

20   discussions in either July or August.  Get on her calendar at a

21   time that is convenient for her and for counsel.  And of course

22   if you resolve this case in advance, that's just fine.

23          So let me give counsel an additional opportunity to

24   bring to my attention anything they would like to discuss at

25   this point.  So let me return to you, Ms. Harris.  Anything

M612GooC

1    further that we should discuss this afternoon?

2              MS. HARRIS:  May I have just a moment, your Honor?

3              THE COURT:  Sure.

4              (Counsel confer)

5              MS. HARRIS:  Your Honor, we appreciate that we have a

6    July 29 deadline to amend as of right as to any additional

7    defendants.  If we don't identify defendants on that timeline,

8    would your Honor entertain a motion for a permanent junction as

9    to the Doe defendants?

10             THE COURT:  You can bring a motion at any time.  You

11   don't have to wait until July.

12             MS. HARRIS:  Great.

13             THE COURT:  At any time that either side wants to

14   bring a motion permitted by the federal rules, you may bring

15   that motion.

16             MS. HARRIS:  Okay.  Thank you, your Honor.

17             THE COURT:  Yes.

18             Mr. Litvak, is there anything that you wanted to raise

19   with me?

20             MR. LITVAK:  Nothing else, your Honor.

21             THE COURT:  Thank you.

22             So let's talk a little bit about the nonjury

23   procedure.  I think normally you are going to read that direct

24   is by affidavit in my nonjury procedures.  I am not going to

25   allow the defendants to submit an affidavit and then not appear

1    at trial for cross-examination.  So let me step back and

2    explain why there isn't summary judgment practice in my nonjury

3    proceedings.

4            Because the goal of a summary judgment motion is to

5    decide from a judge's vantage point whether there is a disputed

6    issue of fact that requires a trial, in nonjury proceedings I

7    skip that step, saving the parties I think a lot of time and

8    expense, and we go straight to the trial.

9            Direct is taken by affidavit and at the trial the

10   witness takes the stand, swears to the truth of the affidavit,

11   is tendered for cross, and at the conclusion of the trial the

12   lawyers sum up.  But with your pretrial order, which will be

13   due in this case in mid February, you submit the direct

14   testimony of your witnesses—both fact and expert witnesses—the

15   documents on which you are planning to rely at trial, your

16   findings of fact, your conclusions of law, any memorandum of

17   law.

18           I will draft an opinion based on that submission.  At

19   the March 14 trial, I will come to the trial armed with a draft

20   opinion, which I will mark up and revise during the course of

21   the trial based on cross and redirect examination of the

22   witnesses and based on the parties' arguments in summation.  So

23   normally there is no post-trial briefing.  You should make your

24   submission on February 17 as complete as you would like it to

25   be.

M612GooC

1              This is a case in which there will be expert

2      witnesses, no doubt.  You should assume relative naiveté on my

3      part with respect to the operation of the Internet and the

4      kinds of functions that were performed on the Internet to

5      achieve what the plaintiff alleges was achieved here.

6              Good.  Good luck and, again, I will manage discovery,

7      so if you want discovery, you have to be diligent.  If you

8      aren't diligent, you have lost the right to take discovery.

9              Thank you.

10             MR. LITVAK:  Thank you.

11             MS. HARRIS:  Thank you, your Honor.

12                                 oOo

13

14

15

16

17

18

19

20

21

22

23

24

25