UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

GOOGLE LLC,

                *Plaintiff*,

   v.

DMITRY STAROVIKOV;
ALEXANDER FILIPPOV;
Does 1-15,

                *Defendants*.

Civil Action No. 1:21-cv-10260-DLC

**GOOGLE LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR ATTORNEYS' FEES**

**TABLE OF CONTENTS**

ARGUMENT ........................................................................................................................... 2

    I.    The Court Has Already Found that Google is Entitled to an Award of Attorneys' Fees. ............................................................................................................ 2

    II.    The Hours Expended in Connection With this Action Were Reasonably Necessary to Obtain a Successful Outcome. ............................................................. 3

        A.    Google Seeks $228,956.18 for Attorneys' Fees Associated with Opposing Defendants' Motion to Vacate Default Judgment. ...................... 6

        B.    Google Seeks $231,820.74 for Attorneys' Fees Associated with the Parties' Discovery and Related Items. .......................................................... 7

        C.    Google Seeks $51,394.90 for Attorneys' Fees Associated with the Parties' Settlement Discussions. ................................................................. 9

        D.    Google Seeks $192,132.53 for Attorneys' Fees Associated with the Parties' Sanctions Motions. ........................................................................ 9

        E.    Google Seeks $71,369.46 for Attorneys' Fees Associated with Responding to Defendants' Answer and Counterclaims and Miscellaneous Other Costs Directly Related to Defendants' and Their Counsel's Appearance. ...................................................................... 10

    III.    The Hourly Rates Claimed by Google's Counsel are Reasonable Relative to the Market and Considering the Nature of the Work. ........................................ 11

CONCLUSION ................................................................................................................... 13

i

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*,
 522 F.3d 182 (2d Cir. 2008)..................................................................................................3, 11

*Ebbert v. Nassau Cty.*,
 2011 WL 6826121 (E.D.N.Y. Dec. 22, 2011) ...........................................................................11

*Gucci Am., Inc. v. Rebecca Gold Enters., Inc.*,
 1993 WL 88270 (S.D.N.Y. Mar. 23, 1993) .................................................................................4

*Int'l Techs. Marketing, Inc. v. Verint Sys. Ltd.*,
 991 F.3d 361 (2d Cir. 2021).........................................................................................................3

*Lenihan v. City of New York*,
 640 F. Supp. 822 (S.D.N.Y. 1986)..............................................................................................4

*Liebowitz v. Bandshell Artist Mgmt.*,
 6 F.4th 267 (2d Cir. 2021) ..........................................................................................................3

*Lilly v. Cty. of Orange*,
 910 F. Supp. 945 (S.D.N.Y. 1996)............................................................................................11

*Luciano v. Olsten Corp.*,
 109 F.3d 111 (2d Cir. 1997).........................................................................................................3

*Marisol A. v. Giuliani*,
 111 F. Supp. 2d 381 (S.D.N.Y. 2000).......................................................................................10

*Miroglio S.P.A. v. Conway Stores, Inc.*,
 629 F. Supp. 2d 307 (S.D.N.Y. 2009).........................................................................................4

*Mt. Airy Ins. Co. v. Town of Orangetown*,
 22 F. Supp. 2d 57 (S.D.N.Y. 1998).............................................................................................4

*N.Y. State Assoc. for Retarded Children, Inc. v. Carey*,
 711 F.2d 1136 (2d Cir. 1983).......................................................................................................4

*Niles v. Palmer*,
 1999 WL 1419042 (S.D.N.Y. 1999).........................................................................................10

*Tran v. Tran*,
 166 F. Supp. 2d 793 (S.D.N.Y. 2001).......................................................................................10

*Wells Fargo Bank v. BrooksAmerica Mortg. Corp.*,
    2004 WL 2754855 (S.D.N.Y. Dec. 1, 2004) ...................................................................... 4

*Yukos Cap. S.A.R.L. v. Feldman*,
    977 F.3d 216 (2d Cir. 2020) ............................................................................................. 3

## Other Authorities

Fed. R. Civ. P. 16(f)(1)(B) ......................................................................................................... 3

Fed. R. Civ. P. 26(g) .................................................................................................................. 3

Fed. R. Civ. P. 37(b)(2)(C) ........................................................................................................ 3

Fed. R. Civ. P. 37(c)(1)(A) ........................................................................................................ 3

**INTRODUCTION**

On November 15, 2022, the Court issued its Opinion and Order granting default judgment against Defendants Starovikov and Filippov ("Defendants") and awarding Google monetary sanctions for "reasonable attorneys' fees, costs, and expenses associated with litigating the case against Defendants since March 14, 2022[.]" ECF 132 at 47. Google respectfully submits this memorandum in response to the Court's request for "a calculation of the amount of monetary sanctions."

As the Court has noted, but for Defendants' and their counsel's misconduct, Google could have obtained its requested relief as early as February 2022 and thereby avoided the costs associated with litigating this case over the better part of this year. *Id.* at 18–19; ECF 135 at 16. In March 2022, however, Defendants sought and obtained vacatur of the Clerk's Entry of Default, and for the eight months of litigation that followed, Defendants' conduct has comprised of little more than misrepresentations, gamesmanship, and bad faith amounting to a "willful attempt to defraud the Court." ECF 132 at 17, 37–38. Among other things, the Court has found that Defendants "misrepresented the[ir] employment status to Google and to the Court," *id.* at 16, attempted to induce a reciprocal exchange of devices despite knowing they had no devices in their possession, *id.*, and at every turn proffered "new reasons for resisting Google's discovery efforts, even when those reasons contradict[ed] previous representations," *id.* at 33, all in service of Defendants' ultimate goal—*i.e.*, to "use the litigation as a means of extorting Google, or at least seeking discovery against Google that could help them evade its efforts to shut down the botnet," *id.* at 30.

The time and resources Google expended to contend with this misconduct were significant. Pursuant to the Court's November 15 Order, Google seeks reasonable

1

attorneys' fees from March 14, 2022 forward, incurred due to Defendants' appearance in this action. This includes (a) briefing in connection with Defendants' Motion to Vacate the Entry of Default and Google's cross-motion for Default Judgment and Permanent Injunction; (b) discovery concerning the named Defendants, including drafting and negotiating the Parties' 26(f) plan, Defendants' deficient initial disclosures, Defendants' responses to Google's discovery requests, and repeated letters to the Court to report Defendants' and their counsel's misconduct; (c) settlement discussions and related tasks; and (d) briefing for the Parties' respective sanctions motions. Even for these activities closely related to Defendants' and their counsel's misconduct, Google only seeks a portion of the total fees incurred. Further, Google has excluded from its request fees relating to its claims against the Doe Defendants and other aspects of this litigation, including, for example, drafting Requests for Admission that Google would have served on Defendants had the litigation proceeded.

Google seeks an award of $775,673.81 for attorneys' fees incurred in these activities, reflecting over 916.1 hours billed by Google's outside counsel at King & Spalding LLP. This amount is based on reasonable hourly rates—commensurate with those charged by peer firms in the Southern District of New York—and an appropriate number of hours worked in light of Defendants' and their counsel's misconduct and resulting motion practice.

## ARGUMENT

I. **The Court Has Already Found that Google is Entitled to an Award of Attorneys' Fees.**

The Court's November 15 Opinion and Order on the Parties' respective sanctions motions held that Google is entitled to its reasonable attorneys' fees based on, among other things,

Defendants' "willful attempt to defraud the Court and resist discovery," and the Court's conclusion that "Defendants appeared in this Court not to proceed in good faith to defend against Google's claims but with the intent to abuse the court system and discovery rules to reap a profit from Google." ECF 132 at 17.

In light of the Court's findings, its award of monetary sanctions was well within Second Circuit precedent. "Indeed . . . district judges have an obligation to act to protect the public, adversaries, and judicial resources from litigants and lawyers who show themselves to be serial abusers of the judicial system." *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 280 (2d Cir. 2021). Courts within this Circuit regularly award attorneys' fees pursuant to their inherent powers and under the Federal Rules of Civil Procedure where, as here, there has been a finding of bad faith and an attempted fraud on the Court. *See, e.g.*, *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020) (noting a district court's inherent power to "sanction a party . . . to deter abuse of the judicial process and prevent a party from perpetrating a fraud on the court"); *Int'l Techs. Mktg., Inc. v. Verint Sys. Ltd.*, 991 F.3d 361, 368 (2d Cir. 2021) (noting courts' "inherent power" to award monetary sanctions against a party for "bad faith, vexatious, or wanton" misconduct) (citation omitted); *see also* Fed. R. Civ. P. 16(f)(1)(B); Fed. R. Civ. P. 26(g); Fed. R. Civ. P. 37(b)(2)(C); Fed. R. Civ. P. 37(c)(1)(A).

## II. The Hours Expended in Connection With this Action Were Reasonably Necessary to Obtain a Successful Outcome.

In determining the reasonableness of attorneys' fees, the Second Circuit has held that the lodestar method—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a "presumptively reasonable fee." *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008). "In reviewing a fee application, the district court examines the particular hours expended by counsel with a view to

3

the value of the work product of the specific expenditures to the client's case." *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997). "The critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F. Supp. 2d 307, 312 (S.D.N.Y. 2009) (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)).

In support of a request for attorneys' fees, the party seeking fees "must document the application with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Assoc. for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). "[W]here the record is substantial, it is permissible to file an application in the form of an affidavit, appending in computer printout form a copy of the relevant portions of the contemporaneous time records." *Gucci Am., Inc. v. Rebecca Gold Enters., Inc.*, No. 89 Civ. 4736, 1993 WL 88270, at *3 (S.D.N.Y. Mar. 23, 1993).[1] "A determination of reasonable attorneys' fees in this district should look to the rates charged by comparable firms in the New York area in each of the years of the litigation." *Wells Fargo Bank v. BrooksAmerica Mortg. Corp.*, No. 02 Civ. 4467, 2004 WL 2754855, at *1 (S.D.N.Y. Dec. 1, 2004) (cleaned up). The ultimate purpose of any submission is to permit the district court to evaluate whether the hours were "usefully and reasonably expended." *Mt. Airy Ins. Co. v. Town of Orangetown*, 22 F. Supp. 2d 57, 59 (S.D.N.Y. 1998).

Google seeks fees incurred for the legal work relating to (a) briefing in connection with Defendants' Motion to Vacate the Entry of Default and Google's cross-motion for Default Judgment and Permanent Injunction; (b) discovery with the named Defendants, including drafting

---

[1] A party seeking fees may transfer information from "contemporaneous records [to] a form convenient for the Court"—submission of the actual physical records is not required. *Lenihan v. City of New York*, 640 F. Supp. 822, 824 (S.D.N.Y. 1986).

4

and negotiating the Parties' 26(f) plan, Defendants' deficient initial disclosures, and Defendants' responses to Google's discovery requests; (c) settlement discussions and related tasks; (d) briefing for the Parties' respective sanctions motions; and (e) responding to Defendants' Answer and Counterclaims, and miscellaneous costs directly related to Defendants' and their counsel's appearance. Google has supported its work by submitting with this fee application records of the attorney time for which Google seeks reimbursement. *See* Harris Decl. Ex. 1.

Notwithstanding Defendants' and their counsel's "willful campaign to resist discovery and mislead the Court," Google's effort culminated in a forty-eight page opinion from this Court that set forth Defendants' and their counsel's multiple misrepresentations, extortionate settlement demand, and discovery evasion in extensive detail. *See* ECF 132 at 40. The Court's opinion was thorough and well-supported by the record that Google developed. The hours Google expended to achieve this result were both necessary and reasonable.

Google's fee request is only a portion of the full cost of its fees and expenses in connection with the litigation that followed Defendants' appearance. For example, although it would be within its rights to do so, Google does not seek costs for litigation concerning the Doe Defendants, although Defendants opposed Google's Motions for Default Judgment Against the Does. Nor has Google included time billed related to certain internal team meetings and related correspondence; research and other work related to motions that were prepared but never filed; and miscellaneous other tasks, including written discovery that ultimately was not served. Finally, Google has also not included time billed by its in-house attorneys.

As explained more fully below, Google seeks reasonable costs totaling $775,673.81 in attorneys' fees worth a total of over 916.1 hours of time billed by Google's outside counsel.

### A. Google Seeks $228,956.18 for Attorneys' Fees Associated with Opposing Defendants' Motion to Vacate Default Judgment.

Google seeks $228,956.18 in attorneys' fees associated with Defendants' Motion to Vacate Default Judgment and Google's Motion for Default Judgment and a Permanent Injunction. *See* Harris Decl. Ex. 1.

Defendants' Motion to Vacate Default Judgment and Google's Motion for Default Judgment and a Permanent Injunction were briefed simultaneously after Defendants, having failed to timely appear, sought leave to set aside the Entry of Default. *See* ECF 43 (Defendants' request); ECF 46 (Order directing the Parties' briefing schedule). Defendants filed their opening brief in support of their Motion to Vacate the Entry of Default on March 14, 2022, ECF 47, and Google filed its Opposition, along with its opening brief in support of its Motion for Default Judgment and a Permanent Injunction, on March 25, 2022, ECF 48; ECF 49. Defendants filed a Reply in support of their motion and their Opposition to Google's motion on April 8, 2022, ECF 55, and Google filed its Reply on April 15, 2022, ECF 56.

Google incurred substantial fees responding to a variety of legally meritless arguments and misrepresentations in Defendants' briefs, including the representation that Defendants were employed by Valtron, LLC at the time the motion was filed, which Defendants' counsel later stated was untrue. *See* ECF 132 at 17–25. Defendants raised several legal arguments, claiming that the requirements for default judgment had not been met and that Google's Complaint should be dismissed for lack of personal jurisdiction over Defendants, *forum non conveniens*, and because Google failed to state a claim for each of its causes of action. ECF 47 at 5–22. Google's fee request includes costs incurred for reviewing and analyzing Defendants' briefs, meeting to discuss Google's response strategy, conducting factual and legal research, outlining, drafting, and revising Google's briefs, and preparing the supporting declarations and exhibits.

6

In support of this application, Google has identified time entries from six attorneys, each of whom was involved in reviewing, responding to, and finalizing Google's briefs in opposition to Defendants' Motion to Vacate and in support of Google's Motion for Default Judgment and a Permanent Injunction. *See* Harris Decl. Ex. 1.

### B. Google Seeks $231,820.74 for Attorneys' Fees Associated with the Parties' Discovery and Related Items.

Google seeks $231,820.74 in attorneys' fees associated with discovery and related activities. *See* Harris Decl., Ex. 1. Google incurred these fees in connection with the Parties' multiple meet-and-confer discussions for the Rule 26(f) Discovery Plan, time spent reviewing and revising the Discovery Plan, the review of Defendants' initial disclosures, drafting and serving Google's Requests for Production ("RFPs") and Interrogatories, review of Defendants' discovery responses, discussions with opposing counsel regarding deficiencies in Defendants' initial disclosures and their responses to Google's discovery requests, and correspondence with Defendants and the Court regarding the same, including related to Defendants' and Mr. Litvak's discovery misconduct.

*First*, Google expended substantial fees in what ultimately proved to be a sham exercise in connection with the Parties' Discovery Plan under Fed. R. Civ. P. 26(f). Defendants' misconduct during the Parties' negotiations of the Discovery Plan is well-documented in Google's prior filings and the Court's opinions. *See* ECF 103; ECF 111; ECF 132; ECF 135. Indeed, as the Court found in its November 15 Opinion, among other things, that "the Defendants attempted to negotiate a discovery plan in bad faith, requesting an exchange of electronic devices that they knew would not be reciprocal." ECF 132 at 37. Nonetheless, Google incurred fees for outside attorney time preparing the initial draft of the Discovery Plan, meeting and conferring with Defendants' counsel, and revising and finalizing the Discovery Plan as required by the Federal Rules.

7

*Second*, Google incurred substantial fees associated with fact discovery. Defendants' initial disclosures, submitted on June 18, 2022, were deficient for several reasons. They contained only first names for six of the seven individuals disclosed and did not include complete contact information. Defendants' disclosures also contained meaningless descriptions of the discoverable information that each of the disclosed individuals were purported to possess. *See* ECF 91; ECF 91-1; ECF 91-2. Google's counsel reviewed these disclosures and compared them against the voluminous factual record collected in connection with the pre-Complaint investigation. They researched, drafted, and revised correspondence to opposing counsel regarding Defendants' failure to comply with basic discovery obligations, and prepared for and attended multiple meet-and-confer discussions with the goal of obtaining compliant disclosures. Later that month, Defendants provided an amended draft of their initial disclosures, equally as deficient as the first, and Google ultimately sought relief from the Court, which required further legal research and drafting.

This pattern continued—from Defendants' elusive positions regarding their ability to appear for depositions, ECF 74, to their deficient RFP and Interrogatory responses, ECF 120 at 5–6, to their sham responses to Google's questions regarding Defendants' access to discoverable information, ECF 103. At each turn, Google incurred costs associated with analyzing Defendants' responses, reconciling those responses with Defendants' previous (and often inconsistent) positions, meeting and corresponding with Defendants' counsel, and—where necessary—seeking relief from the Court for Defendants' deficiency or misrepresentation of the day. The Court has acknowledged that Google "had to engage in additional conferences and motion practice regarding the Defendants' misrepresentations and resistance to discovery." ECF 132 at 38. The discovery-related costs included in Google's request are both reasonable and directly attributable to Defendants' misconduct.

### C. Google Seeks $51,394.90 for Attorneys' Fees Associated with the Parties' Settlement Discussions.

Google seeks $51,394.90 in attorneys' fees associated with the Parties' settlement discussions. The Court first directed the Parties to confer regarding settlement in advance of the Rule 16 conference, *see* ECF 63, and at that time and in several instances thereafter the Parties met to discuss the possibility of settlement, including—at the Court's urging—whether Defendants could agree to any form of a permanent injunction that would allow Google to pursue disruption efforts of the criminal botnet.

As with discovery, Defendants' and their counsel's misconduct caused Google to incur significant additional legal expense. *See* ECF 132 (finding that Defendants "exploit[ed] these misrepresentations in discovery and settlement negotiations"). Google was forced to incur additional costs associated with preparing for and attending meet-and-confer discussions and reviewing and responding to Defendants' settlement proposals. Although Defendants repeatedly expressed an interest in settlement, Defendants ultimately used the discussions to extort Google. *See* ECF 117; ECF 132 at 47 ("Google has a good-faith basis to believe that the Defendants have committed the crime of extortion by demanding payment in exchange for halting criminal activity."). As a result, Google's settlement-related costs are recoverable pursuant to the Court's Order.

### D. Google Seeks $192,132.53 for Attorneys' Fees Associated with the Parties' Sanctions Motions.

Google seeks $192,132.53 in attorneys' fees associated with the Parties' respective sanctions motions. Harris Decl. Ex. 1.

In August 2022, after a conference regarding Defendants' discovery deficiencies, Google indicated its intent to move for sanctions, and the Court ordered a briefing schedule for the Parties' sanctions motions. ECF 107. Google filed its Motion for Sanctions on August 22, with

Defendants' Opposition to Google's Motion for Sanctions and Defendants' Motion for Sanctions filed on September 2, and Google's Reply filed on September 16.

The time and effort required to assemble the record of Defendants' misconduct were substantial.  Google incurred costs associated with compiling the factual background to support Google's motion, including a historical account of Defendants' representations since they first appeared in the case; tracing the Parties' edits to the Rule 26(f) Discovery Plan; detailing Defendants' discovery deficiencies and counsel's related misconduct; and recounting Defendants' misrepresentations regarding their employment, access to discoverable information, and willingness and ability to participate in discovery.  Google also incurred fees associated with legal research for and drafting Google's opening and reply briefs, as well as preparing Google's supporting declarations and assembling over two dozen exhibits.  The total fees incurred for this effort were reasonable in light of Google's voluminous filings and of the time and effort required to chronicle and substantiate Defendants' and their counsel's misconduct.

   **E.**  **Google Seeks $71,369.46 for Attorneys' Fees Associated with Responding to Defendants' Answer and Counterclaims and Miscellaneous Other Costs Directly Related to Defendants' and Their Counsel's Appearance.**

Google seeks $71,369.46 in attorneys' fees associated with its response to Defendants' Answer and Counterclaims ($46,354.38) and certain other costs directly associated with Defendants' and their counsel's appearance and misconduct in this litigation ($25,015.08).  Harris Decl. Ex. 1.

On May 11, 2022, Defendants filed their Answer to Google's Complaint, along with counterclaims for tortious interference with present and prospective business relationships and declaratory judgment, premised on Google's litigation claims.  ECF 66 at 21–22.  Defendants voluntarily withdrew their counterclaims after Google explained to opposing counsel that it intended to move to dismiss on the grounds that Defendants' counterclaims were facially meritless

on several grounds.  *See* ECF 68.  In its November 15 Opinion, the Court found that Defendants' assertions in their Counterclaims—namely, Defendants' claim that Google's actions "harmed their 'prospective relationship with their employer'"—was "false or misleading" in light of Defendant's subsequent admission that they "had in fact left Valtron in December of 2021, months before they appeared in this action."  ECF 132 at 18.  Google incurred a total of $46,354.38 in additional fees associated with analyzing Defendants' counterclaims and researching and drafting its prospective motion to dismiss.  These fees were reasonably incurred and directly related to Defendants' and their counsel's appearance in this litigation.

Similarly, Google incurred $25,015.08 for a variety of other ancillary activities associated with this litigation, including, among other things, preparing for Court conferences, preparing and delivering courtesy copies pursuant to the Court's Rules, and conferring regarding litigation strategy in connection with Defendants' and their counsel's intransigence.  Google has only included in its request certain of these miscellaneous costs directly related to Defendants' and their counsel's appearance.

### III.  The Hourly Rates Claimed by Google's Counsel are Reasonable Relative to the Market and Considering the Nature of the Work.

"When fixing a reasonable rate for attorneys' fees, it is appropriate for a court to consider and to apply the prevailing market rates in the relevant community for similar legal work of lawyers of reasonably comparable skill, experience and reputation."  *Niles v. Palmer*, No. 97 Civ. 7573, 1999 WL 1419042, at *17 (S.D.N.Y. 1999); *see also Tran v. Tran*, 166 F. Supp. 2d 793, 803 (S.D.N.Y. 2001).  "The relevant community to which the court should look is the district in which the case was brought."  *Marisol A. v. Giuliani*, 111 F. Supp. 2d 381, 386 (S.D.N.Y. 2000).  The Court should also take into account, among other things, the time and labor required, the skill required to perform the legal service properly, the difficulty of the matter, and the results achieved.

11

*See Middleton v. Green Cycle Housing, Inc.*, No. 15 Civ. 0023, 2017 WL 715747, at *8 (S.D.N.Y. Feb. 23, 2017).

The hourly rates claimed by Google are comparable to prevailing market rates for similarly sized firms in New York. In the Southern District of New York, prevailing rates for legal services are higher than in many other jurisdictions. A 2016 National Law Journal survey—the most recent survey available—determined that the market for partner hourly rates in New York City for peer New York firms ranges from an average of $800 to $1,350 per hour. Harris Decl. ¶ 9, Ex. 2; *see also id.* ¶ 10, Ex. 3 (reflecting average partner rates at top firms ranging from $1,674 to $1,838); *id.* ¶ 11, Ex. 4 (reflecting median New York partner billing rates of $1,030). The average 2022 hourly rate paid by Google for partners included in this fee application was $1,071. These average rates are below the 2016 average partner rate at several of King & Spalding's peer firms. *See* Harris Decl. ¶ 9, Ex. 2. Moreover, the rates paid by Google are similar to those regularly charged to and paid by King & Spalding's clients—including Google. Harris Decl. ¶ 14; *Lilly v. Cty. of Orange*, 910 F. Supp. 945, 949 (S.D.N.Y. 1996) ("The actual rate that counsel can command in the marketplace is evidence of the prevailing market rate.").

The fees Google seeks are not simply theoretical, but were actually incurred by Google. Harris Decl. ¶ 6. Google is a sophisticated buyer of legal services and requires detailed invoices in support of bills for legal fees, and monitors outside counsel to ensure that its legal work is performed efficiently. Consequently, this Court need not "bear[] the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 184. The fees incurred by Google in this case represent what "a reasonable, paying client would be willing to pay[.]" *Id.*

Finally, the requested rates are reasonable in light of the experience and special expertise that Google's counsel at King & Spalding brought to this litigation. King & Spalding is a leading international law firm with more than 1,200 lawyers across twenty-three offices worldwide. *See* Harris Decl. ¶ 14. King & Spalding was ranked a top twenty-five firm in multiple categories by *The American Lawyer* 100 ranking in 2021, and the firm boasts multiple Band 1 Chambers rankings each year. *See* Harris Decl. ¶ 14. Moreover, the attorneys representing Google in this action have cross-border investigation and cybersecurity expertise relevant to the highly technical and complex subject matter at issue in this case. *See Ebbert v. Nassau Cty.*, No. 05 Civ. 5445, 2011 WL 6826121, at *18 (E.D.N.Y. Dec. 22, 2011) (approving rates based in part on the attorneys' "special expertise"). For all of these reasons, the hourly rates claimed by Google are both reasonable and justified.

## CONCLUSION

For the foregoing reasons, Google respectfully requests that this Court order Defendants to pay Google's attorneys' fees in the total amount of $775,673.81.

DATED: December 16, 2022
New York, New York

Respectfully submitted,

*/s/ Laura Harris*

Laura Harris
Andrew Michaelson
Kathleen E. McCarthy
Matthew Bush
KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036
Telephone: (212) 790-5356
Fax: (212) 556-2222
lharris@kslaw.com
amichaelson@kslaw.com
kmccarthy@kslaw.com
mbush@kslaw.com

Sumon Dantiki (*pro hac vice*)
KING & SPALDING LLP
1700 Pennsylvania Ave., NW, 2nd Floor
Washington, DC 20006
Telephone: (202) 626-5591
Fax: (202) 626-3737
sdantiki@kslaw.com

*Counsel for Plaintiff Google LLC*