UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
GOOGLE LLC,

                       Plaintiff,                    Civil Action No.: 1:21-cv-10260-DLC

- against -

DMITRY STAROVIKOV;
ALEXANDER FILIPPOV;
and Does 1-15,

                       Defendants.
-------------------------------------------------------------------X

## DMITRY STAROVIKOV'S MEMORANDUM OF LAW IN OPPOSITION TO GOOGLE MOTION FOR ATTORNEYS' FEES

 

/s/ Igor Litvak
_____
Igor Litvak, Esq.
Attorneys for Defendants
The Litvak Law Firm
1733 Sheepshead Bay Rd., Suite 22
Brooklyn, NY 11235
Tel/Fax: 718-989-2908
Email: Igor@LitvakLawNY.com

# TABLE OF CONTENTS

**CONTENTS**

**PRELIMINARY STATEMENT** ................................................................................................... 1

**ARGUMENT** .................................................................................................................................. 3

    **APPLICABLE LAW GOVERNING REASONABLENESS OF ATTORNEY'S FEES AS MONETARY SANCTION** ...................................................................................................... 3

    **THE COURT SHOULD SUBSTANTIALLY REDUCE CLAIMED ATTORNEY'S FEES AS THEY ARE BOTH UNREASONABLE AND NOT WARRANTED UNDER THE CIRCUMSTANCES** ............................................................................................................ 6

**CONCLUSION** ............................................................................................................................ 11

**CERTIFICATE OF SERVICE** ................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240 (1975) .................................. 4

Anschutz Petroleum Marketing Corp. v. E.W. Saybolt & Co., 112 F.R.D. 355 (S.D.N.Y. 1986) . 3

Bonded Life Fund, LLC v. Axa Equit. Life Ins. Co., 2014 U.S. Dist. LEXIS 47079 (S.D.N.Y. Mar. 31, 2014) ............................................................................................................................. 5

Caisse Nationale de Credit Agricole-CNCA v. Valcorp, Inc., 28 F.3d 259 (2d Cir. 1994) ........... 4

Eastway Constr. Corp. v. City of New York, 821 F.2d 121 (2d Cir. 1987) ....................... 3, 4, 5, 9

Estate of Calloway v. Marvel Entertainment Group, 9 F.3d 237 (2d Cir. 1993) ........................... 5

Faraci v. Hickey-Freeman Co., 607 F.2d 1025 (2d Cir. 1979) ...................................................... 3

Fox v. Boucher, 603 F. Supp. 216, 220 (S.D.N.Y. 1985) .............................................................. 4

Francois v. Mazer, 523 Fed.Appx. 28, 29 (2013) .......................................................................... 6

Heimbaugh v. City of San Francisco, 591 F. Supp. 1573 (N.D. Cal. 1984) .................................. 4

Index Fund v. Hagopian, 107 F.R.D. 95 (S.D.N.Y. 1985) ($100) .................................................. 4

Luciano v. Olsten Corp., 109 F.3d 111 (2d Cir. 1997) .................................................................. 6

Matusick v. Erie County Water Authority, 757 F.3d 31 (2d Cir. 2014) ......................................... 6

Nixon v. Individual Head of St. Joseph Mortgage Co., Inc., 612 F. Supp. 253, 256 (N.D. Ind. 1985) .............................................................................................................................................. 4

Pennsylvania v Delaware Val. Citizens' Council for Clean Air, 478 U.S. 546 (1986) .................. 6

Rock v. Enfants Riches Deprimes, LLC, 2020 U.S. Dist. LEXIS 15081, at 10 (S.D.N.Y. Jan. 29, 2020) .............................................................................................................................................. 3

Rock v. Enfants Riches Deprimes, LLC, 2020 U.S. Dist. LEXIS 15081 (S.D.N.Y. Jan. 29, 2020) ....................................................................................................................................................... 9

Tequila Centinela, S.A. de C.V. v. Bacardi & Co., 248 F.R.D. 64 (D.D.C. 2008) ........................ 6

United States ex rel. Evergreen Pipeline Constr. Co. v Merritt-Meridian Constr. Corp., 890 F. Supp 1213 (S.D.N.Y. 1995) ........................................................................................................... 5

Weisman v. Rivlin, 598 F. Supp. 724 (D.D.C. 1984) ($200) ......................................................... 4

Weiss v. Weiss, 984 F. Supp. 682 (S.D.N.Y. 1997) ....................................................................... 3

**Other Authorities**

S. M. Kassin, An Empirical Study of Rule 11 Sanctions 6, n.20 .................................................... 4

**Rules**

Rule 11 ............................................................................................................................................ 4

Defendant DMITRY STAROVIKOV (hereinafter, "Defendant") respectfully submits this memorandum of law in opposition to Plaintiff's Motion for Attorney's fees awarded by this Court on November 15, 2022, as monetary sanctions for Defendant's misconduct.

## PRELIMINARY STATEMENT

On November 15, 2022, the Court issued a Decision and Order, in which it ordered default judgment against Defendants and imposed monetary sanction in the amount of Plaintiff's reasonable attorneys' fees, costs, and expenses associated with litigating the case against the Defendants since March 14, 2022, assessed jointly and severally against Defendants and their attorney Igor Litvak. Attorney Igor Litvak settled the amount of attorney fees owed to Plaintiff through the mediation ordered by this Court. Additionally, Attorney Litvak, with the Court's approval, withdrew his representation for Defendant ALEXANDER FILIPPOV. As such, this memorandum of law is submitted on behalf of Mr. Starovikov only.

To justify its proposed amount of attorneys' fees, Plaintiff describes its legal services as follows: "briefing for Defendants' Motion to Vacate the Entry of Default and Google's cross-motion for Default Judgment and Permanent Injunction; discovery and related items, including the Parties' 26(f) plan, Defendants' deficient initial disclosures, Defendants' responses to Google's discovery requests, and related motion practice; settlement discussions and related tasks; and briefing for the Parties' respective sanctions motions." Harris Decl at ¶8, Dkt. 138. Accordingly, Plaintiff seeks an award of "$775,673.81 for attorneys' fees incurred in these activities, reflecting over 916.1 hours billed by Google's outside counsel at King & Spalding LLP."

Defendant's position is that the proposed amount of fees is highly inflated, unreasonable and should be significantly reduced to serve the sanctioning purpose of the Court's Order.

1

Plaintiff claims that "the attorneys representing Google in this action have cross-border investigation and cybersecurity expertise relevant to the highly technical and complex subject matter at issue in this case." Pl. Mem. at 17. However, if the Court deeply looks into Google's activities that are subject to this fee issue, the claimed topics involved some basic discovery communications with a solo practitioner and application of basic litigation skills which simply cannot justify Plaintiff counsel's highly inflated attorney's fees exceeding $1,000 per hour as they are not required "special expertise."

Moreover, the Court must substantially reduce the total amount of fees because the proposed legal bill is not reasonable as 1) multiple lawyers work on the same task simultaneously; 2) billing time was excessive and not "useful and of a type ordinarily necessary" to secure the final result obtained from the litigation, and 3) there are repeated entries for non-productive time and/or duplicative activities.

In any event, even if assuming that the total amount is reasonable, which it is not, the Court should exercise its discretion to award a fee substantially less than the lodestar amount as the requested amount is grossly disproportionate to Defendant's alleged misconduct during this litigation. The Court should note that Defendant Starovikov's improper conduct was not willful as he negligently made several mistakes in light of the fact that he was a total stranger to American jurisprudence and specifically to his discovery obligations.

Further, given the current situation in Russia, Defendant does not have financial resources to pay the proposed amount of Google's fees. Any judgment exceeding several thousand dollars would be futile as it will never be satisfied given Defendant's ruined reputation and horrendous financial conditions in Russia, which is buried with severe sanctions. It is critical to note that Attorney Litvak is willing to pay a substantial part of the total amount pursuant to his settlement with Google; thus, Goggle is more than adequately compensated for its litigation

2

costs. Also, the Court should use, as a starting point, the reduced amount of fees after deducting Attorney Litvak's portion of the payment.

Finally, Defendant has already been severely punished for his misconduct as the Court ordered default judgment against him. Thus, any monetary sanction would be duplicative and unnecessary. Also, there is no need to deter Defendant from the repetition of the same misconduct here, as he lost the case by default.

Thus, it is respectfully requested that this Court substantially reduce the proposed amount of Google's attorneys' fees.

## ARGUMENT

## APPLICABLE LAW GOVERNING REASONABLENESS OF ATTORNEY'S FEES AS MONETARY SANCTION

It is well-established that district courts have the authority **to not award the entire lodestar amount of attorneys' fees** as sanction. See Eastway Constr. Corp. v. City of New York, 821 F.2d 121, 122 (2d Cir. 1987), cert. denied, 484 U.S. 918 (1987); Faraci v. Hickey-Freeman Co., 607 F.2d 1025 (2d Cir. 1979)(reducing the fee award to $200 where Defendant's legal fees amounted to $11,500 and the District Judge exercised his discretion to allow $2,500 as a sanction); Rock v. Enfants Riches Deprimes, LLC, No. 17-cv-2618 (ALC), 2020 U.S. Dist. LEXIS 15081, at 10 (S.D.N.Y. Jan. 29, 2020)(awarding $10,000 instead of $100,000 noting that "joint and several liability for the attorneys' fees could be excessive if Mr. Liebowitz and his firm are held liable for the entire amount of attorneys' fees . . . Instead, a sanction of $10,000 is more tailored to "serve the sanctioning purpose" in this case"); Weiss v. Weiss, 984 F. Supp. 682, 686 (S.D.N.Y. 1997)(sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person . . . ."); Anschutz Petroleum Marketing Corp. v. E.W. Saybolt & Co., 112 F.R.D. 355, 357 (S.D.N.Y. 1986)

("adequate deterrence may permissibly fall short of full compensation").

In Eastway, the Second Circuit noted that "[t]he course of the law concerning use of attorney's fees as one of an array of sanctions against frivolous litigation has recognized that a lodestar amount need not be routinely awarded." Eastway Constr. Corp., 821 F.2d at 122 (awarding $5,000 as a sanction, instead of the lodestar amount of $52,912.50) The case law under Rule 11 also reflects the exercise of discretion to **award only that portion of a defendant's attorney's fee thought reasonable to serve the sanctioning purpose of the Rule**. E.g., Nixon v. Individual Head of St. Joseph Mortgage Co., Inc., 612 F. Supp. 253, 256 (N.D. Ind. 1985) ($250 for each of defendants' two attorneys), aff'd, 787 F.2d 595 (7th Cir. 1986); Fox v. Boucher, 603 F. Supp. 216, 220 (S.D.N.Y. 1985) ($3,000)), aff'd, 794 F.2d 34 (2d Cir. 1986); Index Fund v. Hagopian, 107 F.R.D. 95, 99 (S.D.N.Y. 1985) ($100); Weisman v. Rivlin, 598 F. Supp. 724, 726-27 (D.D.C. 1984) ($200); Heimbaugh v. City of San Francisco, 591 F. Supp. 1573, 1277 (N.D. Cal. 1984) ($50). See also S. M. Kassin, An Empirical Study of Rule 11 Sanctions 6, n.20, and accompanying text (Federal Judicial Center 1985) (reporting 65 cases in which "**some portion**" **of Defendant's attorney's fees has been awarded under Rule 11**).

In fact, in determining the amount of a "reasonable" attorneys' fee award, a court must remember that "**the principal objective of the imposition of Rule 11 sanctions is not compensation of the victimized party but rather the deterrence of baseless filings and the curbing of abuses**." Caisse Nationale de Credit Agricole-CNCA v. Valcorp, Inc., 28 F.3d 259, 266 (2d Cir. 1994). Because the general American rule is that a prevailing party cannot recover attorneys' fees, Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247, 44 L. Ed. 2d 141, 95 S. Ct. 1612 (1975), the courts must be mindful that: "Rule 11 is not a free-shifting mechanism and does not create an entitlement in adverse parties to compensatory damages or attorney's fees . . . . Rather it is intended "to maintain the integrity of the system of federal

practice and procedure." Estate of Calloway v. Marvel Entertainment Group, 9 F.3d 237, 241 (2d Cir. 1993), cert. denied, 128 L. Ed. 2d 459, 114 S. Ct. 1829 (1984).

Hence, the Second Circuit has held that the "**lodestar amount need not be routinely awarded**" and "**a fee substantially less than the lodestar amount is permissible**" when courts are setting the amount of Rule 11 sanctions. Eastway Constr. Corp.. 821 F.2d at 122-23. Moreover, Rule 11 sanctions do not "shift the entire cost of litigation; they shift only the cost of a discrete event." United States ex rel. Evergreen Pipeline Constr. Co. v Merritt-Meridian Constr. Corp., 890 F. Supp 1213, 1226-1227 (S.D.N.Y. 1995). As such, the courts should exercise their discretion "**to award only that portion of a defendant's attorney's fee thought reasonable to serve the sanctioning purpose of the Rule**." Eastway, 821 F.2d at 123.

Finally, it should be noted that the Advisory Committee notes for Rule 11(c) suggest consideration of the following when making a determination on sanctions:

> (1) Whether the improper conduct was willful or negligent; (2) whether it was part of a pattern of activity, or an isolated event; (3) whether it infected the entire pleading, or only one particular count or defense; (4) whether the person has engaged in similar conduct in other litigation; (5) whether it was intended to injure; (6) what effect it had on the litigation process in either time or expense; (7) whether the responsible person is trained in law; (8) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; and (9) what amount is needed to deter similar activity by other litigants.

Bonded Life Fund, LLC v. Axa Equit. Life Ins. Co., 2014 U.S. Dist. LEXIS 47079, at 3-5 (S.D.N.Y. Mar. 31, 2014) (citing Rule 11(c) Advisory Comm. Notes (1993).

Separately, in addition to the determination of attorney's fee "reasonable to serve the sanctioning purpose," the Court should turn to the reasonableness of the number of hours expended by counsel. "The touchstone inquiry is whether the time expended on particular tasks was reasonable" and "the parties cannot be reimbursed for nonproductive time or duplicative

activities." Tequila Centinela, S.A. de C.V. v. Bacardi & Co., 248 F.R.D. 64, 71 (D.D.C. 2008). Thus, the Court must "examine[] the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case." Luciano v. Olsten Corp., 109 F.3d 111, 116 (2d Cir. 1997) (citations omitted). During that review, district courts may make across-the-board percentage cuts in hours instead of engaging in an item-by-item approach. See, e.g., Matusick v. Erie County Water Authority, 757 F.3d 31 (2d Cir. 2014) (upholding 50% across-the-board reduction); Francois v. Mazer, 523 Fed.Appx. 28, 29 (2013) (upholding 40% across-the-board reduction).

### THE COURT SHOULD SUBSTANTIALLY REDUCE CLAIMED ATTORNEY'S FEES AS THEY BOTH UNREASONABLE AND NOT WARRANTED UNDER THE CIRCUMSTANCES

As a starting point, the Court should reduce the total amount of fees by deducting Attorney Litvak's portion of payment, pursuant to his settlement with Google. More importantly, it is respectfully requested that the Court must substantially reduce the total amount of fees because the proposed legal bill is not reasonable as 1) multiple lawyers work on the same task simultaneously; 2) billing time was excessive and not "useful and of a type ordinarily necessary" to secure the final result obtained from the litigation, see Pennsylvania v Delaware Val. Citizens' Council for Clean Air, 478 U.S. 546, 561 (1986) ; 3) there is billing for non-productive time or duplicative activities; 4) highly inflated attorney's fees exceeding $1,000 per hour cannot be justified as the performed tasks involved primarily discovery communications and standards motion practice which do not require "special expertise."

First, the bill entries often indicate that multiple lawyers work on the same task simultaneously. For example, several attorneys "reviewed defendants' motion papers," a rather standard 20-page motion to vacate entry of default accompanied by two 5-page declarations, billing $6,000 total.

> 03/14/22 Meyer, Chris 1.8 1,025.10 Review defendants' motion papers
>
> 03/14/22 Michaelson, Andrew 1.5 1,759.50 Review defendants' motion papers regarding default
>
> 03/14/22 Roniger, Luke 1.0 858.50 Review Defendants' motion to vacate entry of default and supporting case law
>
> 03/14/22 Weeks, Paul 2.1 1,704.68 Review Defendants' motion to vacate default and potential responses thereto
>
> 03/15/22 Roniger, Luke 0.8 686.80 Review Defendants' motion to vacate entry of default and supporting materials

Dkt. No. 138-1 at 1-2. After this "review," the attorneys participated in a "team meeting," billing another $4,600:

> 03/14/22 Meyer, Chris 0.9 512.55 Meet with M. Bush, L. Roniger, and P. Weeks regarding reply motion for default
>
> 03/14/22 Roniger, Luke 0.9 772.65 Meet with P. Weeks, C. Meyer, and M. Bush regarding next steps for response to Defendants' Motion to Vacate Entry of Default
>
> 03/14/22 Weeks, Paul 0.9 730.58 Participate in call with M. Bush, L. Roniger, and C. Meyer to discuss response to Defendants' motion to vacate default and to dismiss action
>
> 03/15/22 Harris, Laura 1.0 969.00 Participate in team meeting regarding Defendants' motion to vacate default
>
> 03/15/22 Roniger, Luke 1.0 858.50 Meet with team regarding response to Defendants' motion to vacate entry of default
>
> 03/15/22 Weeks, Paul 1.0 811.75 Participate on team call to discuss Defendants' motion to vacate default and to dismiss and our response thereto

Id. The Court should note that these duplicative work activities permeate the whole bill as multiple lawyers simultaneously review the same documents and then later discuss those documents among "team members." This practice is a casebook example of impermissible billing.

7

Second, there are multiple instances where the same task was performed by a group of people, which constitutes billing for non-productive time or duplicative activities. For example, the same task was performed on 08/08-08/10/22 by multiple attorneys "drafting and revising" a **2-page letter** to the Court, resulting in total billing of roughly $11,000:

> 08/09/22 Roniger, Luke 1.8 1,499.40 Meet with L. Harris, M. Bush, P. Weeks, and S. Hiers regarding response to Litvak correspondence and corresponding research needs
>
> 08/09/22 Weeks, Paul 2.3 1,867.03 Draft time line of defendants' and Litvak's representation throughout the litigation as a potential appendix to discovery letter regarding deficient responses to discovery questions
>
> 08/09/22 Weeks, Paul 2.4 1,948.20 Draft discovery letter to the Court regarding defendants' and Litvak's deficient responses to discovery questions
>
> 08/10/22 Harris, Laura 0.8 775.20 Revise draft letter to the Court
>
> 08/10/22 Roniger, Luke 1.1 916.30 Revise letter to Court regarding Defendants' discovery deficiencies
>
> 08/10/22 Weeks, Paul 2.4 1,948.20 Revise discovery letter to the Court regarding defendants' and Litvak's deficient responses to discovery questions in light of two-page limit
>
> 08/10/22 Weeks, Paul 2.4 1,948.20 Draft discovery letter to the Court regarding defendants' and Litvak's deficient responses to discovery questions

Id. at 29-30.

Third, if the Court deeply looks into Google counsel activities that are subject to this fee issue, the claimed topics involved some basic discovery communications with a solo practitioner and general motion practice, which simply cannot justify Plaintiff counsel's highly inflated attorney's fees exceeding $1,000 per hour as they are not required "special expertise." Thus, the hourly rates claimed by Google are both unreasonable and unjustified as allegedly "necessary" tasks were performed by a senior partner charging a much higher hourly rate when

8

they could have been completed by a cheaper associate or support staff.

In any event, even if assuming that the total amount is reasonable, which it is not, the Court should exercise its discretion to award a fee substantially less than the lodestar amount as the requested amount is grossly disproportionate to Defendant's alleged misconduct during this litigation. See, e.g., Rock v. Enfants Riches Deprimes, LLC, No. 17-cv-2618 (ALC), 2020 U.S. Dist. LEXIS 15081, at 10 (S.D.N.Y. Jan. 29, 2020)("sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person . . . ."). As stated above, the well-established case law indicates that "lodestar amount need not be routinely awarded" and "a fee substantially less than the lodestar amount is permissible" when courts are setting the amount of sanctions. Eastway Constr. Corp.. 821 F.2d at 122-23.

Here, applying Rule 11 (c) factors, monetary sanction should be greatly reduced. The Court should note that Defendant Starovikov's improper conduct was not willful as he negligently made several mistakes in light of the fact that he was a total stranger to American jurisprudence and specifically to his discovery obligations.

Specifically, Defendant made a mistake in his affidavits by not asking Attorney Litvak to correct the word "work" to "worked." However, given the circumstances, including their counsel's reasonable, albeit mistaken, belief that Defendant still worked at Valtron, his limited English, and the fact that he reviewed much more closely only the legal brief, which stated "worked at Vatron," this mistake was reasonable and excusable.

Second, Defendant wanted to pursue counterclaims in good faith to clear his name after being called a cybercriminal by Google all over the world.

Third, the Court states that Defendant should have been put on notice about this lawsuit in December of 2021 because Google was shutting down its servers. Dkt. No. 116 at 27. However, it was never established that Defendant had access to or controlled any servers. In fact,

9

Defendant always maintained that he was just a software engineer at Valtron, who, as a result of the pandemic, worked from home for almost two years before being fired from Valtron. He completed specific tasks given to him by Vatron CEO and he always maintained that he knew nothing about any servers.

Fourth, Defendant never categorically stated that he could somehow stop the botnet or remove it from the Internet. He simply wanted to do his best and to provide his assistance to Google to settle this matter. The extent of his ability to do so was never examined or utilized, as the parties never substantively discussed this opportunity.

Fifth, Defendant never refused to provide discovery; instead, Defendant produced the entire discovery material he had in his possession. In fact, Defendant was confused by the Court's decision to dismiss the matter due to the alleged failure to mount his defense as he reasonably thought that the burden to prove the case was on Goggle, thus, making sufficiency of evidence to support his defense irrelevant. Further, the parties got involved in a standard discovery dispute. To that extent, if Plaintiff wanted to receive additional discovery, it should have filed a motion to compel, and if ordered by the Court, Defendant would have complied and provided additional discovery, including his smartphones.

Sixth, Defendant has a continued relationship with Valtron's CEO; he never denied that. It was a relationship he wanted to keep, but it did not mean he could just go to Valtron's offices and take and do whatever he wanted without Valtron's permission. Defendant never had any practical ability to get private keys to Bitcoin addresses without permission or cooperation from Valtron and its CEO, and his September settlement offer had nothing to do with private keys. Instead, Defendant just wanted to be compensated for being labeled a cybercriminal by Google and the resulting reputational harm caused by that label.

Considering all the above, Defendant's misconduct was anything but willful.

Moreover, it is critical to note that Defendant has not been trained in law, let alone United States law. As a result, since Defendant had no familiarity whatsoever with the discovery concept, as it does not exist in the Russian jurisprudence, he might have misunderstood certain discovery obligations even after their counsel's advice, However, the Court should not punish him with draconian payment of Google's attorney's fees for his honest confusion.

Further, given the current situation in Russia, Defendant does not have the financial resources to pay the proposed amount of Google's fees. Any judgment exceeding several thousand dollars would be futile as it will never be satisfied given Defendant's ruined reputation, and horrendous financial condition in Russia, which is buried in severe sanctions.

Finally, Defendant has already been severely punished for his misconduct as the Court ordered default judgment against him. Thus, any monetary sanction would be duplicative and unnecessary. Also, there is no need to deter Defendant from the repetition of the same misconduct here, as he lost the case by default.

Last but not least, since Plaintiff voluntarily withdrew its claim for damages against Defendant, the only remaining relief against Defendant was injunctions. As such, by receiving default judgment as a sanction, Plaintiff fully achieved its litigation goals; thus, awarding it monetary sanction would be a "bonus" relief Plaintiff never anticipated obtaining. Thus, the amount of this "windfall," if any, should be greatly reduced.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court substantially reduce the proposed amount of Google's attorneys' fees.

Dated: January 20, 2023  
    Brooklyn, New York

Respectfully Submitted,

/s/ Igor Litvak_____  
Igor Litvak, Esq.

11

## CERTIFICATE OF SERVICE

I hereby certify that I caused the above document to be served on counsel of record for Plaintiff by filing it via the Court's CM/ECF system on this day, January 20th, 2023.

/s/ Igor Litvak
Igor Litvak, Esq.